WADE MILLER LAW
Wade A. Miller CBN 208980
5072 Mount Casas Drive
San Diego, CA 92117

Attorneys for Plaintiff
Aaron Stanz



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Plaintiff Aaron Stanz, individually and on behalf of Jet Genius Holdings, Inc. as a shareholder thereto,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Defendants Jordan Brown (individually and in his capacity as CEO, Director, and Chairman of co-defendant Jet Genius Holdings, Inc.), Jet Genius Holdings, Inc., Jet Genius Florida Holdings, Inc., C3jets LLC, Jet Genius Holdings Inc., Bowman Aviation LLC, and Does 1-20,**<br><br>**Defendants.** | **Case No.** '22CV1164 GPC JLB<br><br>**Complaint for Injunctive Relief and Damages for Violation of the Defend Trade Secrets Act of 2016, California Uniform Trade Secrets Act, Breach of Contract, Breach of Fiduciary Duty, Fraud, Conspiracy, Accounting, Unjust Enrichment** |

**NOW COMES**, Plaintiff Aaron Stanz ("Plaintiff"), individually and on behalf of Jet Genius Holdings, Inc. as a shareholder thereto, by and through his undersigned counsel, and hereby files this Complaint and alleges causes of action against Defendants Jordan Brown (individually and in his capacity as CEO, Director, and Chairman of co-defendant Jet Genius Holdings, Inc.), Jet Genius Holdings, Inc., Jet Genius Florida Holdings, Inc., C3jets LLC, Bowman Aviation LLC, and Does 1-20 (collectively, "Defendants"), and in support thereof avers as follows:

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## INTRODUCTION

1. This action stems from a years-long business relationship in the private aviation industry between the Plaintiff and Defendants and the coordinated scheme orchestrated by the Defendants in a conspiracy to defraud the Plaintiff of more than one-hundred twenty-five million dollars ($125,000,000) of revenue and value which rightfully belonged to the company he co-founded and rightfully owns 49.5% of. The company Plaintiff co-founded, Defendant Jet Genius Holdings, Inc., was independently valued by Defendants' own professionals at approximately sixty-seven million dollars ($67,000,000). Through intimidation and under duress, plaintiff was forced to surrender his Board oversight, remove his rights as a shareholder, and reduce his equitable shareholdings and years long efforts in his own company by way of a fraudulent promise and contract by the Defendants to pay millions of dollars they owe to the Internal Revenue Service ("IRS") for unpaid Federal Excise Tax ("FET"), which the Defendants failed to pay and have now subjected the Plaintiff to imminent irreparable injury.

2. Defendants misappropriated Plaintiff's (and his company's) intellectual property and set up new companies to evade the FET and dilute Plaintiff's shareholder value. The sole person who shares commonality in this conspiracy by way of his control over the actions of all Defendants, is Defendant Jordan Brown ("Brown"), the architect of this elaborate conspiracy to defraud, who did so by breaching the contractual obligations of the companies, his fiduciary duties to the Plaintiff and fellow shareholders, and set in course events which utilized his position as Chairman, CEO, and fiduciary of Plaintiff's company to instead misappropriate its intellectual property to funnel millions of dollars throughout interstate commerce into new companies and holdings controlled by Defendant Brown throughout the private aviation industry for the unjust personal enrichment of Defendant Brown and his co-conspirators.

3. Defendant Brown's actions were done at all times in breach of his fiduciary duties through not just the dilution of shareholder value, but in breach of his fiduciary and contractual duties to address the existing obligations for millions of dollars of unpaid FET owed to the IRS, leading to the current imminent irreparable injury to the Plaintiff by actions of the IRS threatened

to be taken as soon as today, August 8, 2022.

4. Defendant Brown admitted that the IRS's pending actions against the Plaintiff are Defendant Brown's own responsibility due to the wrongful and fraudulent actions of the Defendants, and have left Plaintiff with no remedy available other than to seek an emergency Temporary Restraining Order and Preliminary Injunction in the instant case to force Defendants to address their FET obligations to the IRS, seize their ongoing means of utilizing the platform and technology misappropriated by the Defendants to evade the FET obligations, and restore the rights of the shareholders through oversight and representation to rectify the harmful actions of the Defendants.

**PARTIES**

5. Plaintiff Aaron Stanz ("Stanz" or "Plaintiff") is a competent adult and citizen of the State of California for all times relevant in this action until March 1, 2022, where he obtained a leasehold in the State of Kansas, but has not yet made his primary residency in the State of Kansas. Plaintiff is the Co-founder, Chief Technology Officer, major shareholder, and former Director of JGH, and a major shareholder of JGFH. Plaintiff holds 25% of the shares of JGH, and is the rightful owner of 49.5% of JGH after being wrongfully forced to relinquish 24.5% of the equity in his own company – JGH – as detailed in the Shareholder Agreement, through the fraudulent actions of the Defendants, and he seeks rescission of such relinquishment due to Defendants' actions in this matter.

6. Defendant Jet Genius Florida Holdings Inc. ("JGFH") is a company incorporated in the State of Florida and has its principal place of business in the State of Florida and throughout the United States, where it operates as an air charter broker to match client travel needs with available air charter operators for commercial purposes in interstate commerce.

7. Defendant Jet Genius Holdings Inc. ("JGH") is a company incorporated in the State of California and has its principal place of business in the State of California and throughout the United States, where it operates as an air charter broker to match client travel needs with



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

available air charter operators for commercial purposes in interstate commerce.

8. Defendant Jordan Brown ("Brown") is a natural person and is a citizen of the State of Florida. Defendant Brown is the Chairman and CEO of JGH and JGFH, the sole Member of Defendant C3jets LLC, and the sole Member of Defendant Bowman Aviation. Defendant Brown and his wife Stacy are the Trustees of non-party Brown Family Trust.

9. Defendant C3jets LLC ("C3 Jets") is an Idaho limited liability company with its principal place of business in the State of Idaho and throughout the United States, where it operates private aircraft for commercial purposes in interstate commerce. Defendant C3 Jets is believed to be engaged in an aircraft lease or lease-purchase agreement for a certain aircraft, a 2000 year Hawker 800XP, Serial Number 258448, Tail Number N15RY. Defendant C3 Jets is further believed to be engaged in a lease or lease-purchase agreement for a certain aircraft, a 1998 year Hawker 800XP, Serial Number 258354, Tail Number N789HA.

10. Defendant Bowman Aviation LLC is a Florida limited liability company with its principal place of business in the State of Florida where it performs contract services (via Defendant Jordan Brown) for JGH and JGFH to provide unknown services which upon information and belief include air charter broker services and aircraft sales for commercial purposes in interstate commerce.

11. Does defendants 1 through 20 are the agents or employees of the named defendants and acted within the scope of that agency or employment. The capacities of Does 1 through 20 are unknown to plaintiff.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction of this action pursuant to the DTSA, 18 U.S.C. § 1836(c), the CFAA, 18 U.S.C. § 1030, et seq., and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

13. This Court has further proper jurisdiction under 28 U.S.C. § 1331 because Plaintiff



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

is a citizen of the State of California and resident of Kansas, Defendant Jordan Brown is a citizen of the State of Florida, Defendant Jet Genius Florida Holdings Inc. is a company incorporated in the State of Florida and has its principal place of business in the State of Florida, Defendant C3 Jets is a limited liability company domiciled in the state of Idaho and has its principal place of business in the State of Idaho and throughout the United States, and Defendant Jet Genius Holdings Inc. is a company incorporated in the State of California and has its principal place of business in California, Defendant Bowman Aviation LLC is a limited liability company domiciled in the State of Florida and has its principal place of business in Florida.

14. The amount in controversy is more than $75,000.00.

15. Venue is proper in this court because the contract was consummated in this jurisdiction and Plaintiff Stanz was damaged in this jurisdiction. Additionally, Defendant Jet Genius Holdings Inc. has its principal place of business in this jurisdiction.

**WADE MILLER LAW**
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

16. Jet Genius Holdings, Inc. was formed in California in 2016 and started operating in 2017. It is a company that creates a technical business-to-business logistics platform servicing the private aviation industry. The founders are Plaintiff Stanz, Defendant Brown, and non-party Alexander Wolf ("Shareholder Wolf"). Shareholder Wolf is a childhood friend of Defendant Brown. Plaintiff Stanz and Defendant Brown were both 49.5% shareholders, and Alexander Wolf was a 1% shareholder. Defendant Brown has at all times been the CEO.

17. Plaintiff Stanz was the CTO as he uniquely possesses the technical expertise on setting up, architecting, developing, and managing development for innovative technologies that simplify and accelerate business processes for aircraft charter brokering, which made up the logistics platform (the "Technical Expertise"). Plaintiff's Technical Expertise enabled JGH's technology platform to significantly decrease time and costs associated with buy-side and sell-side actions required to complete complex transactions for brokering and provisioning a chartered

aircraft, at all stages of a transaction, from seeking interested clients (lead collection), initial client contact, quoting available aircraft options, obtaining beneficial pricing, generating contracts, sending contracts, contract signing, facilitating and recording several substages of financial transactions (including pre-flight ground transportation, and post-flight ground transportation), provisioning an aircraft to be available at a specific location and time, correlating post-flight feedback, and post-flight marketing for future flights, and creating internal software controls to monitor staff and resources to achieve maximum business output, measure staff responsiveness, monitor staff throughput capacity, track and record financial transactions, generate contracts, send contracts, list global aircraft inventory, and more (collectively, the "JGH Platform").

18. Plaintiff believed that all was well with business until the summer of 2018 until Shareholder Wolf informed Plaintiff Stanz that the company had unpaid FET despite, at the time that they were due and owing, having the cashflow to do so. But, because the FET had not been paid, the FET owed were approximately $935,000 on May 2018. The FET owed has increased to $1.3M since then.

19. After discovering that Defendant Brown was not paying the owed FET, Plaintiff and Shareholder Wolf sought to have the JGH's financials audited and received proposals from various firms, including one from Barnthouse & Associates on July 23, 2018 and KPMG LLP on August 3, 2018. When confronted with various audit proposals, at the August 22 shareholder meeting and asked about the audit, Defendant Brown admonished Plaintiff and Wolf for bringing up the issue yet again, said that it was his decision alone because - while quoting what Defendant Brown said were the words of Mark Zuckerberg - Brown stated "I'm CEO, B*tch!" and abruptly left the meeting shortly thereafter.

20. At the August 29, 2018 shareholder meeting, despite having two proposals for audits from additional firms, at the demand of Defendant Brown all shareholders acquiesced to vote in favor of an audit with the firm Lavine, Lofgren, Morris & Engelberg, LLP ("LLME") which was the firm Defendant Brown had selected.

21. Plaintiff notified Defendant Brown at the August 29, 2018 shareholders meeting



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

that Defendant Brown's actions could bankrupt the company. In response, Defendant Brown admitted that his actions were improper and selfish. Shareholder Wolf offered to find $300K to remedy the problem, and Plaintiff warned Defendant Brown that Directors would now be exposed to the IRS for his failure to pay the FET. Plaintiff admonished Defendant Brown that "they [IRS] are going to come after you." After Plaintiff Stanz and Shareholder Wolf confronted Defendant Brown of his bad actions, Defendant Brown proceeded with the audit process through LLME. An engagement with LLME was scheduled to be committed on September 10, 2018. This was reported in the September 5, 2018 Board minutes, confirmed on September 12, 2018 in the Board minutes that the audit firm had been engaged, and further confirmed at the board meeting on September 19, 2018, and the Board minutes that LLME had been retained and the retainer wired confirm the events at these board meetings.

22. After confronting Defendant Brown about the FET, he became verbally abusive and hostile. Defendant Brown threated to disrupt business to the point of bankrupting the company. Plaintiff Stanz believed these threats. Plaintiff Stanz also believed if Defendant Brown followed through on his threat to bankrupt the company that there would be no facility left to pay back the monies owed to the IRS. And, if this happened, Plaintiff Stanz may be personally liable to the IRS for the past due FET.

23. Under duress, Plaintiff Stanz entered into the Shareholder Agreement (attached hereto as a true and correct copy as Exhibit "A") and its contemporaneously executed assignment of intellectual property by Plaintiff to JGH (attached hereto as a true and correct copy as Exhibit "B") wherein Plaintiff Stanz would cede almost half of his shares (lowering him from a 49.5% shareholder to a 25% shareholder) to Defendant Brown on the condition that revenue would be used to pay the taxes owed to the IRS, and that valuable intellectual property would not be transferred without proper documentation or compensation to Plaintiff.

24. After the Shareholder Agreement was executed on November 7, 2018, the shareholders were never informed that the audit was completed, and upon information and belief Defendant Brown canceled the audit.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

25. Defendant Brown used his position as the controlling responsible party for all Defendants to fraudulently induce the Plaintiff into a contract between the Plaintiff and Defendant JGH, signed by Defendant Brown as Chairman of the Board and CEO (the "Shareholder Agreement") wherein the Plaintiff agreed to reduce his shareholdings in Defendant Jet Genius Holdings, Inc. ("JGH") to 25% of the shares of JGH, from shareholdings which originally represented 49.5% of the value of JGH, as well as Plaintiff's rightful position on JGH's Board of Directors, with the false promises by Defendants Brown and JGH agreeing to cease the previous wrongful history of failing to pay owed FET assessed through its private aviation service business by dedicating accounts to collect the FET, to refrain from misappropriating the assets or intellectual property of Plaintiff and JGH, to refrain from establishing subsidiaries or third-party companies to dilute JGH shareholder value, or self-deal, or attempt to hide FET or assets from the IRS, and to protect the interest of the minority shareholders of JGH in Defendant Brown's position on the Board as obligated as a fiduciary of the shareholders of JGH, and in contravention of the Shareholder Agreement, Section 6, which states that "The Company will continue to work toward a settlement with the IRS related to past excise taxes that avoids personal liability of the Company's past and current officers and directors in connection therewith".

26. Rather than fulfilling his duties as a fiduciary, from the moment Defendant Brown obtained Plaintiff's signature on the Shareholder Agreement and obtained control of the Board of Directors of JGH (and in contravention of the thorough plan by the Board of JGH and its advisors to proceed upon a path for to pay IRS under a plan for an amount equal to roughly one-million three-hundred thousand dollars ($1,300,000) which JGH owed for its previously unpaid FET), Defendant Brown instead chose to conspire with the Defendants to drain the value of JGH by misappropriating its intellectual property and trade secrets – which were rightfully Plaintiff's and were agreed to be assigned to JGH alongside of 24.5% of Plaintiff's rightful 49.5% equity shareholdings in his own company which he co-founded – and instead create *new* companies to siphon the JGH value from, all while ignoring the FET obligations and continuing to hide assets and obligations from the IRS in the new companies represented by the Defendants, while

generating over one-hundred-twenty-five million ($125,000,000) in revenue and yet further incurring over seven-million dollars ($7,000,000) of additional unpaid and unallocated FET.

27. Despite knowing of and being advised on the $1,300,000 in unpaid FET, and having a path agreed to by its shareholders and advisors to satisfy the FET owed to the IRS, Defendant Brown orchestrated the Shareholder Agreement in November of 2018 to occur contemporaneously with the resignation as directors of the only two directors other than Defendant Brown, the Plaintiff, and Shareholder Alexander Wolf (the “Board Coup”). After orchestrating the Board Coup, Defendant Brown cancelled a financial audit which was in progress and which had been agreed to by Plaintiff, Shareholder Wolf, and JGH to track Defendant Brown’s activities. Defendant Brown instead conceived a plan against the Plaintiff and JGH to neglect the FET obligations already contracted to, and he funneled the assets, intellectual property, trade secrets, client lists, and revenue of JGH into the other entities which Defendant Brown controlled.

28. Not even one year after the Board Coup, and during the time which Defendant Brown should have been fulfilling his fiduciary duties to the shareholders of JGH, Defendant Brown sought to establish Defendant Jet Genius Florida Holdings, Inc. (“JGFH”), and caused JGFH to be formed in the State of Florida on August 27, 2019 to serve as a “shell” which Defendant Brown could solidify his efforts from the Board Coup, and create a new entity which would have absolutely no oversight or accountability to the shareholders of JGH in, allowing JGH’s assets, intellectual property, business accounts, employees, and clients to be siphoned into JGFH without visibility to the JGH shareholders.

29. Once control in JGFH was solidified and Defendant Brown had installed himself as the sole director and executive of JGFH, Defendant Brown continued his conspiracy with JGFH to defraud the Plaintiff as a shareholder of JGH by taking the JGH Platform, Plaintiff’s Technical Expertise, the software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names, business methods, client lists, proprietary designs, and trade secrets (collectively the “JGH Intellectual Property”) in a series of

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

*undocumented* sham transactions despite the plan for JGH to account for the JGH Intellectual Property, and in violation of the Shareholder Agreement Section 4.

30. Defendant Brown continued to misappropriate the JGH Intellectual Property into JGFH, and then started processes with the JGH Intellectual Property which would create over $125,000,000 in unjustly enriched revenue to JGFH without any licensing or compensation to JGH, and without the compensation owed to Plaintiff under the Shareholder Agreement Section 4 for any permissible transfer, and then used this unjustly enriched revenue to establish *even more* third-party companies such as Defendant C3 Jets which were hidden from the JGH shareholders and structured solely with Defendant Brown and his family in control positions. Once in these control positions, Defendant Brown created additional schemes to defraud the JGH shareholders and the Plaintiff by making hundreds of thousands of dollars of fraudulent undocumented "loans" to the third-party companies controlled by Defendant Brown from its unjustly enriched revenue, including more than three-million three-hundred thousand dollars ($3,300,000) to himself individually, all while hiding this activity from the IRS while it continued to increase its attempts to assess and collect its unpaid FET against JGH, and all while Defendant Brown remained the sole control person, Director, fiduciary, and CEO of JGH.

31. Defendant Brown continued his conspiracy to defraud the Plaintiff and the JGH shareholders by creating the Defendants' collective operations and businesses servicing the private aviation industry in a lucrative model which would generate in excess of $125,000,000 revenue, all while falsely promising the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and would be properly documented. Defendant Brown made these promises, and indeed JGH's professionals such as Chis Popov of Watkins Firm, APC ("Attorney Popov") indicated to Plaintiff and JGH's outside tax advisors that JGH was proceeding towards a plan for repayment to the IRS as required in the Shareholder Agreement Section 6. Defendant Brown instead willfully ignored the previous $1,300,000 existing FET and repayment plan as obligated in the Shareholder Agreement to be paid in conjunction of the Board Coup, and secretly incurred *an additional* $7,000,000 in unpaid FET to the IRS despite unjustly enriching himself with

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

millions of dollars through JGFH.

32. In June of 2021, the pressure from the IRS for its unpaid FET began to escalate, and through a series of discussions Defendants Brown and JGFH began to approach the Plaintiff with a *new* shareholder agreement which purported to give the Plaintiff shareholdings in JGFH (the "JGFH Draft"). The JGFH draft was materially different than the existing Shareholder Agreement, and contained numerous provisions which sought Plaintiff's indemnification of Defendant Brown for actions in violation of his fiduciary duties, for malfeasance, for fraud, or for failure to pay FET: in other words, the JGFH draft attempted to force Plaintiff to waive the very rights he preserved in the instant case by not signing the JGFH draft.

33. In or around October of 2021, the IRS, through its Revenue Officer Cindy Neville ("RO Neville") commenced contacting the Plaintiff regarding the JGH unpaid $1,300,000 in FET Defendant Brown and Defendant JGH already were obligated to pay as part of the Shareholder Agreement and Board Coup events, and informed the Plaintiff that additional several million additional FET was owed and assessed and the Plaintiff bore individual responsibility as a shareholder, even though the $1,300,000 for the FET greatly exceeded the entirety of Plaintiff's historical compensation with JGH, but was a fraction of Defendant Brown's total compensation in the Defendants, because Plaintiff had been on the initial bank account signature card prior to 2018. RO Neville informed the Plaintiff that he would be personally responsible for the $1,300,000 unpaid FET, and that the IRS would seek to assess him individually for the unpaid FET.

34. After discovering the ongoing unpaid FET and tax matters, all discussions regarding the JGFH Draft were ceased by Plaintiff, who informed the Defendants that the most important issue was to resolve the past due FET. When confronted about the FET, Defendant Brown admitted on November 4, 2021 "*I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point, please stop bringing it up!*"

35. Plaintiff, however, would not "get over it" nor stop bringing it up, because he did



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

not believe (correctly so) that Defendant Brown was capable of "rais[ing] the money tomorrow to cover it" from any outside parties, and realized that Defendant Brown's admission that he "would do it again" regarding Defendant Brown's willful failure to pay both the past due FET and continually accrued FET was directly in contradiction to his obligations as Chairman of the Board, Director, and CEO as a fiduciary of JGH to take care of the FET as agreed in the Shareholder Agreement, which obligated Defendant Brown to do such when demanding that Plaintiff give up his seat on the Board and relinquish 24.5% of Plaintiff's equity in his own company.

36. Plaintiff further would not "get over it" or stop bringing it up, because he had first-hand knowledge that Defendant Brown had taken millions of dollars in compensation from JGFH and JGH instead of paying the FET, and that subsequent to Defendant Brown's creation of JGFH in August of 2019 over $125,000,000 in revenue had been unjustly generated in JGFH while JGH was left in squander over the FET previously owed to IRS and accruing but unpaid, in dereliction of Defendant Brown's fiduciary duties.

37. On February 2, 2022, Plaintiff received an enterprise valuation report prepared on behalf of Defendant JGFH by professional aviation industry valuation firm Avicor Aviation, Inc. of Beaverton, Oregon ("Avicor"). The report, prepared by Lilliam Tamm of Avicor at Defendant JGFH's election and own expense, provided a fair market valuation for JGFH of $14,368,000 (the "First Avicor Valuation" attached hereto as a true and correct copy as Exhibit "C"). On March 28, 2022, Plaintiff received a *second* valuation report prepared by Lilliam Tamm of Avicor on behalf of JGFH, this time inclusive of a separate valuation analysis related specifically to the technology and JGH Intellectual Property, which derived a fair market value of JGFH with the JGH Intellectual Property of $66,710,000 (the "Second Avicor Valuation" attached hereto as a true and correct copy as Exhibit "D").

38. In or around March of 2022, RO Neville increased her outreach to the Plaintiff, and informed him that the IRS intended to individually assess Plaintiff for Defendant JGH's unpaid FET. Shortly thereafter, Plaintiff through his counsel, John Kirk ("Attorney Kirk", who's



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

*pro hac vice* motion is forthcoming), proposed to JGFH's corporate counsel in Florida, Kyle Louramore ("Attorney Louramore") and Sarah Klee ("Attorney Klee") of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") as well as JGH's tax counsel in California, Mitchell Dubick of Higgs Fletcher & Mack LLP ("Attorney Dubick") that the IRS would be receptive to a payment towards the proposed assessed JGH Corporate Trust Fund recovery account with IRS in the amount of one-hundred and twenty-five-thousand dollars ($125,000) which would tentatively allow the IRS to defer seeking an individual assessment for the unpaid FET against the Plaintiff individually as a shareholder of JGH (the "First IRS FET Proposal"). On March 23, 2022, Plaintiff, through Attorney Kirk, proposed that since payment would be coming from JGFH on behalf of JGH, a possible way for structuring such a payment could be done via a license agreement for the JGH Intellectual Property from JGFH which would allow JGH to make a payment for the unpaid FET (the "JGH Intellectual Property Proposal"). Defendants failed to respond to Plaintiff's JGH Intellectual Property Proposal.

39. On April 26, 2022 Plaintiff received a surprised mailing from Stearns Weaver sent via Certified Mail enclosing a stock certificate for Nine Hundred Fifty Nine Thousand Six Hundred Fifteen (959,615) Class A Shares of JGFH (the "JGFH Stock Certificate") issued in Plaintiff's name, and issued despite Plaintiff never having executed the JGFH Draft. The shares were sent unsolicited to Plaintiff and appeared to represent 24.5% of the outstanding shares of JGFH, yet there are more than one class of shares listed on the JGFH Stock Certificate, which is in contravention of the Shareholder Agreement Section 2(b) that without prior written consent, the company shall not "authorize or issue additional shares of common stock or any other class or series of capital stock in the Company". At no point did Defendants indicate to Plaintiff that he was already listed as a shareholder when negotiating the JGFH Draft.

40. In or around May of 2022, Plaintiff discovered non-party C3 Limo LLC ("C3 Limo") a limited liability company incorporated in the state of Florida and has its principal place of business in the State of Florida. C3 Limo is an agent of Defendant Jet Genius Florida Holdings Inc. and its Officers up to on or around April 14, 2022 included Defendant Brown's wife, Stacy



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Brown, and it's current Manager, Chasen Dobos, is Defendant Brown's stepson. Upon information and belief, Defendant JGFH's attorneys Stearns Weaver formed C3 Limo and serve as registered agent thereto.

41. Upon information and belief, C3 Limo received an undocumented loan for more than $40,000 from the Defendants, in violation of Defendant Brown's obligations under the Shareholder Agreement.

42. In or around May 3, 2022, after being previously informed that the Defendants had ignored the JGH Intellectual Property Proposal which would allow a payment for the First IRS FET Proposal, RO Neville notified Plaintiff that the IRS had individually assessed Plaintiff for $1,300,000 of Defendants' unpaid FET. In order around May 10, 2022 Plaintiff proposed to Defendants that a possible solution to the unpaid FET, the JGH Intellectual Property Proposal, the JGFH Draft, and the "subsidiary" of Defendants JGH and JGFH, Defendant C3 Jets, would be possible by way of a merger between Defendants JGH and JGFH, along with C3 Jets as a wholly owned subsidiary (the "Proposed Merger").

43. In or around June 2, 2022, California counsel for JGH Attorney Popov confirmed that the Proposed Merger structure was ready, and introduced his colleague at Watkins Firm, APC Dominick Severance ("Attorney Severance") who would be assisting Attorney Popov with the Proposed Merger. On June 9, 2022 Attorney Popov sent the Proposed Merger drafts for Plaintiff, Shareholder Wolf, and all Defendants to review, along with Attorneys Popov, Dubick, Louramore, Klee, and Kirk.

44. In or around June 22, 2022 Plaintiff was informed that Shareholder Wolf and the Defendants had signed the definitive documents for the Proposed Merger, and was asked why he had not signed the same. On June 22, 2022 Plaintiff while being asked why he had not signed the definitive documents on the Proposed Merger spoke with RO Neville, who informed Plaintiff that the IRS intended to file a lien against Plaintiff for the $1,300,000 it had personally assessed against Plaintiff for Defendants' unpaid FET. Plaintiff, Attorney Kirk, and RO Neville instead agreed to an extension by IRS to allow time for the Proposed Merger and a payment plan by



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Defendants for their unpaid FET to be created, and RO Neville tentatively agreed for a forty-five (45) day extension to allow the Proposed Merger to advance, and which would extend until August 8, 2022 as the date which IRS would refrain from filing the assessed lien for Defendants' unpaid FET against Plaintiff individually.

45. After speaking with RO Neville and reviewing the Proposed Merger documents, Plaintiff began reviewing the balance sheet (attached hereto as a true and correct copy as Exhibit "E") and profit and loss documents of JGFH which he had been provided for the first time in or around May 11, 2022, and Plaintiff observed more than ten-million ($10,000,000) of balance sheet items which were not addressed in the Proposed Merger, which included and are collectively referred to as the "Balance Sheet Items" as follows: in excess of three-million three-hundred thousand ($3,300,000) in loans issued to Defendant Brown personally; over two-hundred thousand ($200,000) in loans issued to Defendant Bowman Aviation LLC ("Defendant Bowman"); six-hundred and twenty-thousand dollars ($620,000) in loans issued to Defendant C3 Jets; forty-three thousand dollars ($43,000) in loans issued to non-party C3 Limo LLC – whose sole member, Chasen Dobos, is Defendant Brown's stepson; one-hundred twenty-five thousand dollars ($125,000) of loans *owed to* Shareholder Wolf – who subsequently informed Plaintiff that Defendants in fact owe Shareholder Wolf in excess of eight-hundred thousand dollars ($800,000); in addition to a loan *owed to* Premium Merchant funding in excess of five-hundred seventy-four thousand dollars ($574,000); and a loan *owed to* the Small Business Administration Payroll Protection Program in excess of five-hundred and seventy-two thousand dollars ($572,000).

46. On or about June 29, 2022 Plaintiff, through Attorney Kirk made inquiry to the Balance Sheet items, and followed up on July 14, 2022 and July 20, 2022 on the status of explanation for the Balance Sheet items. On July 8, 2022 Plaintiff, Defendants, Shareholder Wolf, and Attorneys' Louramore, Popov, Klee, and Kirk discussed the merger status along with Defendant JGFH's Accountant Roya Arabi ("Ms. Arabi") and Plaintiff reiterated his need to review the Balance Sheet Items and other customary diligence requests in conjunction with the Proposed Merger.



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

47. On July 14, 2022, Ms. Arabi informed the Plaintiff that she was not aware of *"any formal agreements/document* regarding the loans between companies and Jordan. The balances are created by transfers and payment from said accounts" (emphasis added). Less than three minutes later, Defendant Brown suggested that he desired to "file bankruptcy and split all the assets" to which Shareholder Wolf reminded Defendant Brown that bankruptcy would not resolve the IRS FET obligations that were being personally assessed against the shareholders of JGH.

48. Despite requesting documentation for diligence that Plaintiff wished to conduct on the Balance Sheet Items, at no point prior to July 14, 2022 did Plaintiff realize that out of the millions of dollars *that Plaintiff knows of* in loans issued by Defendant Brown in violation of the JGH Shareholder Agreement to Defendant Brown individually, or to entities controlled by Defendant Brown such as C3 Jets and Bowman Aviation, or held by his immediate family such as non-party C3 Limo LLC, that none of them had been documented or formalized. Yet, Plaintiff had been repeatedly pressured to sign the Proposed Merger documents as prepared by Defendants.

49. On or about July 29, 2022 Plaintiff received indication from RO Neville that the IRS would accept a revised version of the First IRS FET Proposal, wherein the IRS would accept a payment of $100,000 instead of $125,000, and if the Defendants did such the IRS would refrain from filing the lien assessed against the Plaintiff. (the "Second IRS FET Proposal"). Plaintiff proposed the Second FET Proposal, Defendant Brown indicated that the Defendants could pay such, and the Defendants subsequently disavowed any intention to pay the Second IRS FET Proposal.

50. On August 5, the Plaintiff discussed the unpaid FET and imminently pending lien from IRS with RO Neville, who agreed to extend a deadline for payment of the Second IRS FET Proposal or a plan that the Proposed Merger was substantially completed, which now creates the imminence of the irreparable injury faced by Plaintiff, as there is no indication that Defendants will satisfy the Second IRS FET Proposal, and the Defendants have failed entirely to present any Proposed Merger given the undocumented obligations and wrongfully misappropriated JGH



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Intellectual Property.

**<u>FIRST CAUSE OF ACTION</u>**

**DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836(b)(1)**

**(AGAINST DEFENDANTS JORDAN BROWN, JET GENIUS FLORIDA HOLDINGS, INC., C3JETS LLC, AND BOWMAN AVIATION)**

51. Plaintiff realleges and incorporates by reference each allegation contained herein above.

52. Plaintiff, individually and on behalf of the Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property. The JGH Intellectual Property is material to JGH's business and services used in interstate commerce, specifically the technology software and platform architected by Plaintiff enabled JGH clients throughout the United States to book private air travel throughout the United States, by matching these clients with air charter operators throughout the United States.

53. The JGH Platform, Plaintiff's Technical Expertise, software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names, business methods, client lists, proprietary designs, and trade secrets in the JGH Intellectual Property are precisely the type of Trade Secrets Congress sought to protect when it enacted the Defend Trade Secrets Act of 2016 in May of 2016.

54. In December of 2018, shortly after the events of the Board Coup and the creation of the Shareholder Agreement, Defendant Brown and the Plaintiff discussed in California the JGH Intellectual Property in great detail with JGH's advisors. The JGH Intellectual Property was material and relevant to the Shareholder Agreement, which is why Defendant Brown and JGH required the Plaintiff to assign to JGH rights for the JGH Intellectual Property contemporaneously along with the Shareholder Agreement, and required such to occur as part of the internal affairs of JGH in the State of California. *See Exhibits "A" and "B"*.

55. Plaintiff was not opposed to signing the Shareholder Agreement along with assignment of rights of the JGH Intellectual Property, because he knew it was being assigned to

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

JGH for the purposes of JGH, and Defendant Brown had bound JGH to honor the payment of past due FET to the IRS. But Defendant Brown had other plans, and by August 27, 2019, less than three years ago, Defendant Brown created Defendant JGFH.

56. As soon as Defendant JGFH was created, Defendant Brown and Defendant JGFH conspired to remove the JGH Intellectual Property even though no license or payment for its use was in place, no consent of the shareholders was received, and no listing of the JGH Intellectual Property with the IRS as part of JGH's value was disclosed. But the JGH Intellectual Property had tremendous value, since Defendant JGFH was able to misappropriate the JGH Intellectual Property without payment or license to create more than $125,000,000 revenue derived from the JGH Intellectual Property, from August 2019 to the present, all without a proper license, payment, or agreement for the JGH Intellectual Property, and all while Defendants Brown and JGFH knew that JGH was already assessed by the IRS for $1,300,000 in unpaid FET.

57. Rather than fulfilling his obligations as a fiduciary to the shareholders of JGH, Defendant Brown instead conspired to unjustly enrich himself and his fellow Defendants, while allowing JGH and the Plaintiff to face increased pressure by the IRS for the unpaid $1,300,000 in FET, and all while knowing that JGH was the rightful and sole owner of the JGH Intellectual Property which JGFH had been utilizing to create hundreds of millions of dollars in revenue without any payment to JGH or to the IRS.

58. Defendant JGFH's own independent aviation industry valuation firm, Avicor, engaged by Defendant Brown and JGFH to determine the enterprise value of the Defendants concluded that the value of the JGH Intellectual Property represented a multiplier that was more than $50,000,000 out of the nearly $67,000,000 enterprise valuation as demonstrated by the disparity between the First Avicor Valuation and Second Avicor Valuation.

59. Plaintiff suggested to the Defendants that the JGH Intellectual Property had not been properly accounted for, and proposed that a payment towards a license in the amount of $125,000 which would be allocated to the IRS unpaid FET as suggested by RO Neville in the First IRS FET proposal would be acceptable, and the Defendants ignored Plaintiff's proposal

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

despite having no legal rights to the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any consideration for by any of the Defendants.

60. Defendants Bowman Aviation and C3 Jets each are also culpable in the misappropriation of the JGH Intellectual Property, because without JGFH's wrongful use of the JGH Intellectual Property they would not have been able to receive the unauthorized loans from JGFH, nor would they have received their shares in the more than $125,000,000 revenue generated by JGFH which ensured hundreds of thousands of dollars each in revenue received from JGFH to Bowman Aviation and C3 Jets.

61. All the Defendant have been unjustly enriched by the misappropriation of the JGH Intellectual Property, and the Plaintiff has already been harmed by this misappropriation given his individual assessment by the IRS for $1,300,000 in JGH's unpaid FET, an assessment which Defendants would have been able to prevent had it provided a payment towards a license of $125,000 to IRS' satisfaction and agreement that such payments would allow it to refrain from assessing the Plaintiff individually for Defendants' unpaid FET.

62. Plaintiff was further harmed by the Defendants' misappropriation of the JGH Intellectual Property when he relinquished both his Board seat and 24.5% of the equity and shareholdings in his company based upon the false promises that the JGH Intellectual Property would be properly documented and that the FET would be paid as set forth in the plan by LLME and the IRS. Had Plaintiff known that rather than fulfilling his obligations as a fiduciary and party binding JGH to the Shareholder Agreement, that Defendant Brown would instead conspire to

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

misappropriate the JGH Intellectual Property to create new value for JGFH, C3 Jets, Bowman Aviation, and Defendant Brown individually, Plaintiff would not have surrendered his Board seat or relinquished his rightful claim for the 24.5% of the company he agreed to relinquish under the Shareholder Agreement.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT**

**(CAL. CIV. CODE § 3426, *ET SEQ.*)**

**(AGAINST JORDAN BROWN AND JET GENIUS FLORIDA HOLDINGS, INC. C3JETS LLC, AND BOWMAN AVIATION)**

63. Plaintiff realleges and incorporates by reference each allegation contained herein above.

64. Plaintiff, individually and on behalf of the Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property. The JGH Intellectual Property is material to JGH's business and services lawfully belonging in the State of California, specifically the technology software and platform architected by Plaintiff enabled JGH clients to book private air travel by matching these clients with air charter operators.

65. The JGH Platform, Plaintiff's Technical Expertise, the software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names, business methods, client lists, proprietary designs, and trade secrets in the JGH Intellectual Property are precisely the type of Trade Secrets the Legislature sought to protect when it enacted the Uniform Trade Secrets Act of 1984.

66. In December of 2018, shortly after the events of the Board Coup and the creation of the Shareholder Agreement, Defendant Brown and the Plaintiff discussed the JGH Intellectual Property in great detail with JGH's advisors. The JGH Intellectual Property was material and relevant to the Shareholder Agreement, which is why Defendant Brown and JGH required the



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Plaintiff to assign to JGH rights for the JGH Intellectual Property contemporaneously along with the Shareholder Agreement. *See Exhibits "A" and "B".*

67. Plaintiff was not opposed to signing the Shareholder Agreement along with assignment of rights of the JGH Intellectual Property, because he knew it was being assigned to JGH for the purposes of JGH, and Defendant Brown had bound JGH to honor the payment of past due FET to the IRS. But Defendant Brown had other plans, and by August 27, 2019, less than three years ago, Defendant Brown created Defendant JGFH.

68. As soon as Defendant JGFH was created, Defendant Brown and Defendant JGFH began conspiring to remove the JGH Intellectual Property even though no license or payment for its use was in place, no consent of the shareholders was received, and no listing of the JGH Intellectual Property with the IRS as part of JGH's value was disclosed. But the JGH Intellectual Property had tremendous value, since Defendant JGFH was able to misappropriate the JGH Intellectual Property without payment or license to create more than $125,000,000 revenue derived from the JGH Intellectual Property, from August 2019 to the present, all without a proper license, payment, or agreement for the JGH Intellectual Property, and all while Defendants Brown and JGFH knew that JGH was already assessed by the IRS for $1,300,000 in unpaid FET.

69. Rather than fulfilling his obligations as a fiduciary to the shareholders of JGH, Defendant Brown instead enriched himself and his fellow Defendants, while allowing JGH and the Plaintiff to face increased pressure by the IRS for the unpaid $1,300,000 in FET, and all while knowing that JGH was the rightful and sole owner of the JGH Intellectual Property which JGFH had been utilizing to create hundreds of millions of dollars in revenue without any payment to JGH or to the IRS.

70. Defendant JGFH's own independent aviation industry valuation firm, Avicor, engaged by Defendant Brown and JGFH to determine the enterprise value of the Defendants concluded that the value of the JGH Intellectual Property represented a multiplier that was more than $50,000,000 out of a nearly $67,000,000 enterprise valuation as demonstrated by the disparity between the First Avicor Valuation and Second Avicor Valuation *See Exhibits "C" and*



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

*"D"*.

71. Plaintiff suggested to the Defendants that the JGH Intellectual Property had not been properly accounted for, and proposed that a payment towards a license in the amount of $125,000 which would be allocated to the IRS unpaid FET as suggested by RO Neville in the First IRS FET proposal would be acceptable, and the Defendants ignored Plaintiff's proposal despite having no legal rights to the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any consideration for by any of the Defendants.

72. Defendants Bowman Aviation and C3 Jets each are also culpable in the misappropriation of the JGH Intellectual Property, because without JGFH's wrongful use of the JGH Intellectual Property they would not have been able to receive the unauthorized loans from JGFH, nor would they have received their shares in the more than $125,000,000 revenue generated by JGFH which ensured hundreds of thousands of dollars each in revenue received from JGFH to Bowman Aviation and C3 Jets.

73. All the Defendant have been unjustly enriched by the misappropriation of the JGH Intellectual Property, and the Plaintiff has already been harmed by this misappropriation given his individual assessment by the IRS for $1,300,000 in JGH's unpaid FET, an assessment which Defendants would have been able to prevent had it provided a payment towards a license of $125,000 to IRS' satisfaction and agreement that such payments would allow it to refrain from assessing the Plaintiff individually for Defendants' unpaid FET.

74. Plaintiff was further harmed by the Defendants' misappropriation of the JGH

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Intellectual Property when he relinquished both his Board seat and 24.5% of the equity and shareholdings in his company based upon the false promises that the JGH Intellectual Property would be properly documented and that the FET would be paid as set forth in the plan by LLME and the IRS. Had Plaintiff known that rather than fulfilling his obligations as a fiduciary and party binding JGH to the Shareholder Agreement, that Defendant Brown would instead conspire to misappropriate the JGH Intellectual Property to create new value for JGFH, C3 Jets, Bowman Aviation, and Defendant Brown individually, Plaintiff would not have surrendered his Board seat or relinquished his rightful claim for the 24.5% of the company he agreed to relinquish under the Shareholder Agreement.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

## (AGAINST JORDAN BROWN AND JET GENIUS HOLDINGS, INC., AND JET GENIUS FLORIDA HOLDINGS, INC.)

75. Plaintiff realleges and incorporates by reference each allegation contained herein above.

76. On November 7, 2018, Plaintiff Stanz and Defendant Brown entered into a contract, the Shareholder Agreement consummated in Del Mar, California. *See Exhibit "A"*.

77. Plaintiff Stanz reliqnuished 24.5% of his 49.5% stake in Jet Genius Holdings, Inc. as well as Plaintiff's seat on JGH's Board of Directors, to Defendant Brown, CEO and Chairman of JGH. In return, Defendant Brown agreed to ensure that as JGH received revenue, he would ensure that the company would in good faith withhold the revenue in a separate bank account to be used to pay past due federal excise taxes as required in Section 6 of the Shareholder Agreement.

78. Other important parts of the Shareholder Agreement were that:

79. (1) Defendant Brown would not take money from the company for himself without written consent from Plaintiff Stanz, Section 2(e),

80. (2) Defendant Brown would not take any loans from the company without written consent from Plaintiff Stanz, Section 2(e),

81. (3) Upon the closing of a "corporate event" Section 4, Plaintiff would receive the following amounts:

| | |
|---|---|
| From November 7, 2018 - November 1, 2019 | $909,451.00 |
| November 2, 2019 - November 1, 2020 | $727,561.00 |
| November 2, 2020 - November 1, 2021 | $545,671.00 |
| November 2, 2021 - November 1, 2022 | $363,780.00 |

82. "Corporate event" is described in Section 4. Corporate Event Payment.

83. To date, Defendant Brown has failed to set aside funds in a separate bank account. Defendant Brown has failed to make any payments to the IRS towards the FET owed to the IRS, failed to disclose any transfer of the JGH Intellectual Property to the IRS, and failed to make payments to Plaintiff for any purported permissible transfers of the JGH Intellectual Property as required by Section 4, because such purported transfer was undocumented and fraudulent.

84. Defendant Brown and JGH created Defendants JGFH and C3 Jets in violation of Section 2(d) of the Shareholder Agreement.

85. Defendant Brown loaned millions of dollars to himself individually, in violation of Section 2(e) of the Shareholder Agreement.

86. Defendant Brown loaned hundreds of thousands of dollars to Defendants C3 Jets and Bowman Aviation and non-party C3 Limo, all of which are entities wholly owned by Defendant Brown or his assigns, in violations of Section 2(e) of the Shareholder Agreement.

87. Although demand has been made that Defendant Brown set aside monies to pay the IRS, Defendant Brown has failed to do so.

88. Plaintiff is entitled to $1,300,000, the amount of monies that the IRS is threatening to lien against him personally because no reasonable payments have been made to the IRS nor have any monies been set aside in a separate account to pay the IRS, and is entitled for such payment to be made directly to the IRS FET on his behalf.

89. Plaintiff is entitled to the 24.5% of JGH that was relinquished as part of the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Shareholder Agreement.

90. Plaintiff is entitled to a seat on JGH's Board of Directors, which was relinquished as part of the Shareholder Agreement.

91. Plaintiff is entitled to attorneys' fees per contract according to California Civil Code §1717, *See Section 14. of the Contract, Exhibit "A".*

**FOURTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(AGAINST JORDAN BROWN, JET GENIUS HOLDINGS, INC., AND JET GENIUS FLORIDA HOLDINGS, INC.)**

92. Plaintiff realleges and incorporates by reference each allegation contained herein above.

93. At all times relevant, Defendant Brown was the Chairman of the Board, CEO, and Director of Defendant JGH and JGFH.

94. Plaintiff is the rightful owner of 49.5% of the equity value of Defendants JGH and JGFH, and is the current owner of 25% of the equity value and shareholdings of Defendants JGH and JGFH.

95. Defendant Brown as Director, Chairman, and CEO of Defendants JGH and JGFH owed fiduciary duties to the shareholders of JGH and JGFH.

96. Defendant Brown, as fiduciary to the shareholders of JGH and JGFH was prohibited from taking actions in dereliction of those duties, including misappropriation of assets of another, self-dealing, co-mingling funds, and failing to administer tax obligations to the IRS.

97. Defendant Brown knowingly conspired to take the JGH Intellectual Property for the benefit of JGFH with no benefit to the JGH shareholders, whilst the shareholders were subject to individual assessments and liens by the IRS for Defendant Brown's intentional actions not to pay the IRS for the unpaid $1,300,000 FET already in place at the time of the Shareholder Agreement's execution.

98. At the time of the Shareholder Agreement's execution, JGH and Defendant Brown

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

had already agreed to a payment strategy and audit by LLME to the IRS, and after December 2018 Defendant Brown was the sole director of JGH.

99. After the Shareholder Agreement was executed, Defendant Brown cancelled the audit with LLME, and disregarded the previously existing plan to satisfy the IRS' $1,300,000 FET assessment.

100. After the Shareholder Agreement was executed, Defendant Brown created third-party entites such as JGFH and C3 Jets, which were not wholly owned subsidiaries in contravention of the Shareholder Agreement and in contravention of his duty of loyalty to the shareholders of JGH.

101. After the Shareholder Agreement was executed, Defendant Brown caused the JGH Intellectual Property to be placed in use by JGFH, C3 Jets, and Bowman Aviation, in dereliction of his duty of loyalty to the shareholders of JGH, and did so while knowingly hiding the JGH Intellectual Property from the IRS and not disclosing such actions, all while subject to the $1,300,000 in unpaid FET and continually accruing millions in additional unpaid FET.

102. Defendant Brown admitted to the Plaintiff that he is responsible for the unpaid FET when he stated: "I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point. Please stop bringing it up!"

103. Defendant Brown issued more than $3,300,000 in personal loans to himself from JGFH while JGH was subject to millions of dollars in unpaid FET, in violation of the Shareholder Agreement and in dereliction of his duties of loyalty and are to the shareholders of JGH and JGFH. *See Exhibit "E"*.

104. Defendant Brown issued hundreds of thousands of dollars of loans to entities he controlled individually or through his assigns, from JGFH while JGH was subject to millions of dollars in unpaid FET, in violation of the Shareholder Agreement and in dereliction of his duties of loyalty and are to the shareholders of JGH and JGFH. *See Exhibit "E"*.

105. At all times as a fiduciary, Defendant Brown's actions were imputed to the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

corporations and Defendants JGH and JGFH are further responsible for all of the above-mentioned actions by Defendant Brown, and Defendant Brown has admitted his responsibility for the failure to pay FET as his own obligation.

106. Plaintiff has been harmed by Defendants' actions by having the $1,300,000 in unpaid FET to the IRS assessed against himself individually, and the harm was proximately caused by Defendant Brown's actions, inactions, and self-dealing, in dereliction of his fiduciary duties, all of which were substantial factors in the harm to Plaintiff.

## FIFTH CAUSE OF ACTION

## FRAUD

## AGAINST ALL DEFENDANTS

107. Plaintiff realleges and incorporates by reference each allegation contained herein above.

108. Defendant Brown represented to Plaintiff that he would pay the FET on multiple occasions.

109. Once control in JGFH was solidified and Defendant Brown had installed himself as the sole director and executive of JGFH, Defendant Brown continued his conspiracy with JGFH to defraud the Plaintiff as a shareholder of JGH by taking JGH's software platform, websites, technology infrastructure, servers, business methods, client lists, and trade secrets (collectively the "JGH Intellectual Property") in a series of *undocumented* sham transactions despite the advice to JGH by advisors that the JGH Intellectual Property must be properly accounted for. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

unpaid FET, and was not given any consideration for by any of the Defendants. *See Exhibits "A" and "B".*

110. Defendant Brown continued to misappropriate the JGH Intellectual Property into JGFH, and then started processes with the JGH Intellectual Property which would create over $125,000,000 in unjustly enriched revenue to JGFH without any licensing or compensation to JGH, and then used this unjustly enriched revenue to establish *even more* third-party companies such as Defendant C3 Jets which were hidden from the JGH shareholders and structured solely with Defendant Brown and his family in control positions. Once in these control positions, Defendant Brown created additional schemes to defraud the JGH shareholders and the Plaintiff by making hundreds of thousands of dollars of fraudulent undocumented "loans" to the third-party companies controlled by Defendant Brown from its unjustly enriched revenue, as well as more than three-million three-hundred thousand dollars ($3,300,000) to himself individually, all while hiding this activity from the IRS while it continued to increase its attempts to assess and collect its unpaid FET against JGH, and all while Defendant Brown remained the sole control person, Director, fiduciary, and CEO of JGH. *See Exhibit "E".*

111. Defendant Brown continued his conspiracy to defraud the Plaintiff and the JGH shareholders by creating the Defendants' collective operations and businesses servicing the private aviation industry in a lucrative model which would generate in excess of $125,000,000 revenue, all while falsely promising the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and would be properly documented. Defendant Brown made these promises, and indeed JGH's counsel Chis Popov of Watkins Firm, APC ("Attorney Popov") confirmed with the Plaintiff and JGH's outside tax counsel's that JGH would proceed with the plan for repayment to the IRS as required in the Shareholder Agreement Section 6, despite Defendant Brown willfully ignoring the previous $1,300,000 existing FET and repayment plan as obligated in the Shareholder Agreement to be paid in conjunction of the Board Coup, and instead while secretly incurring an additional $7,000,000 in unpaid FET to the IRS despite unjustly enriching himself with millions of dollars through JGFH.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

112. In June of 2021, the pressure from the IRS for its unpaid FET began to escalate, and through a series of discussions Defendants Brown and JGFH began to approach the Plaintiff with a *new* shareholder agreement which purported to give the Plaintiff shareholdings in JGFH (the "JGFH Draft"). The JGFH draft was materially different than the existing Shareholder Agreement, and contained numerous provisions which sought Plaintiff's indemnification of Defendant Brown for actions in violation of his fiduciary duties, for malfeasance, for fraud, or for failure to pay FET: in other words, the JGFH draft attempted to force Plaintiff to waive the very rights he preserved in the instant case by not signing the JGFH draft.

113. In or around October of 2021, the IRS, through its Revenue Officer Cindy Neville ("RO Neville") commenced contacting the Plaintiff regarding the JGH unpaid $1,300,000 in FET Defendant Brown and Defendant JGH already were obligated to pay as part of the Shareholder Agreement and Board Coup events, and informed the Plaintiff that additional several million additional FET was owed and assessed and the Plaintiff bore individual responsibility as a shareholder for the FET because Plaintiff had been on the initial bank account signature card prior to 2018. RO Neville informed the Plaintiff that he would be personally responsible for the $1,300,000 unpaid FET, and that the IRS would seek to assess him individually for the unpaid FET.

114. After discovering the ongoing unpaid FET and tax matters, all discussions regarding the JGFH Draft were ceased by Plaintiff, who informed the Defendants that the most important issue was to resolve the past due FET. When confronted about the FET, Defendant Brown admitted on November 4, 2021 "*I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point, please stop bringing it up!*"

115. Plaintiff, however, would not "get over it" nor stop bringing it up, because he did not believe (correctly so) that Defendant Brown was capable of "rais[ing] the money tomorrow to cover it" from any outside parties, and realized that Defendant Brown's admission that he "would do it again" regarding Defendant Brown's willful failure to pay both the past due



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

FET and continually accrued FET was directly in contradiction to his obligations as Chairman of the Board, Director, and CEO as a fiduciary of JGH to take care of the FET as agreed during the preparation of the Shareholder Agreement, which obligated Defendant Brown to do such when demanding that Plaintiff give up his seat on the Board and relinquish 24.5% of Plaintiff's equity in his own company.

116. Plaintiff further would not "get over it" or stop bringing it up, because he had first-hand knowledge that Defendant Brown had taken millions of dollars in compensation from JGFH and JGH instead of paying the FET, and that subsequent to Defendant Brown's creation of JGFH in August of 2019 over $125,000,000 in revenue had been unjustly generated in JGFH while JGH was left in squander over the FET previously owed to IRS and accruing but unpaid, in dereliction of Defendant Brown's fiduciary duties. *See Exhibit "E"*.

117. In fact, Defendant Brown's intentions from the beginning were to never pay the FET, and Defendant Brown has admitted his culpability for failure to pay the FET and stated that if given the chance to do such over again, he would.

118. Plaintiff relied on the representations of Defendant Brown and did so until the IRS threatened to file a lien against him personally on August 8, 2022.

119. Plaintiff's reliance on Defendant Brown's representation was a substantial factor in causing him substantial harm.

**SIXTH CAUSE OF ACTION**

**CONSPIRACY**

**(AGAINST ALL DEFENDANTS)**

120. Plaintiff realleges and incorporates by reference each allegation contained herein above.

121. Defendants C3 Jets and Bowman Aviation are agents of Defendant Jet Genius Florida Holdings, Inc. and Defendant Jordan Brown.

122. Defendant Brown caused Defendant JGFH to be formed after seizing



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

control of JGH and after agreeing to the Shareholder Agreement.

123. After securing control of JGH, Defendant Brown coordinated with the newly formed JGFH to benefit from the misappropriated JGH Intellectual Property, enabling JGFH to begin accruing in excess of $125,000,000 which should have been revenue of JGH. Defendant Brown further created C3 Jets to benefit from its business relationship with JGFH, and continued to flow money to Defendant Bowman Aviation.

124. Using the misappropriated JGH Intellectual Property, Defendant Brown caused undocumented loans to be disbursed to C3 Jets and JGFH, with no reciprocal benefit from JGFH or the Defendants to Plaintiff or JGH, and using the misappropriated JGH Intellectual Property to unjustly enrich themselves while JGH and Plaintiff were left to fend for themselves with the IRS. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any consideration for by any of the Defendants. *See Exhibit "A"*.

125. Defendants were aware that the JGH Intellectual Property would be misappropriated and were aware that it's misappropriation would unjustly enrich the Defendants.

126. Defendants were aware and knew that Plaintiff and JGH would be harmed with the continued assessment for FET by IRS which Defendant Brown was ignoring, and they misappropriated the JGH Intellectual Property while hiding the same value from the IRS.

127. Defendants knowingly benefited from the misappropriated JGH Intellectual Property and monies rightfully belonging to the Plaintiff by way of his shareholdings in JGH, at all times knowing that there already had been in excess of $1,300,000 in unpaid FET assessed by IRS which the JGH Intellectual Property could have been utilized to generate revenue to pay

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

towards. Defendants instead coordinated an elaborate scheme to generate revenue to pay themselves millions of dollars and ignore the unpaid FET.

**SEVENTH CAUSE OF ACTION**

**ACCOUNTING**

**(AGAINST ALL DEFENDANTS)**

128. Plaintiff has a contractual relationship with Defendant Brown. *See Exhibits "A" and "B"*.

129. Monies are due to Plaintiff because of Defendant Brown's breach of this contract.

130. Additionally, both Plaintiff Stanz and Defendant Brown are current shareholders of JGH and JGFH.

131. Plaintiff had no knowledge that he was a shareholder of Defendant JGFH until it mailed him unsolicited shares in JGFH, and Plaintiff has almost no visibility into the business accounts, financial health, contractual obligations, indebtedness, or loans issued by Defendant JGFH.

132. Plaintiff has already been subject to IRS assessment for unpaid FET to the IRS by Defendants for his shareholdings in JGH, and his recently discovered shareholding in JGFH may further expose Plaintiff to similar exposure especially in light of Defendant Brown's past failure to pay FET.

133. Defendant JGFH's accountant Ms. Arabi admitted that she was not aware of "*any formal agreements/document* regarding the loans between companies and Jordan. The balances are created by transfers and payment from said accounts". (emphasis added)

134. The loans Ms. Arabi admitted she was not aware of formal agreements or documentation to include transfers of funds from JGFH to Defendants Brown, C3 Jets, Bowman Aviation, and non-party C3 Limos, whose managing member is Defendant Brown's stepson and which up until April of 2022 had Defendant Brown's wife as a member.



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

135. All of the loans Ms. Arabi admitted she was not aware of formal agreements or documentation to involve transfers in violation of the Shareholder Agreement.

136. Monies are due to Plaintiff because of the breach of this shareholder agreement as well.

137. A balance is due to Plaintiff and can only be ascertained by an accounting.

**EIGHTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(AGAINST ALL DEFENDANTS)**

138. Plaintiff realleges and incorporates by reference each allegation contained herein above.

139. Defendants were unjustly enriched by the misappropriate of JGH's and Plaintiff's trade secrets contained in the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any consideration for by any of the Defendants.

140. Defendant JGFH generated in excess of $125,000,000 after its incorporation, all of which was generated utilizing the JGH Intellectual Property, and at no times which it had a license or agreement or share of revenue to JGH for.

141. Without the misappropriation of the JGH Intellectual Property, JGFH would not have been able to generate in excess of $125,000,000 revenue, would not have been able to make undocumented loans in excess of $3,300,000 to Defendant Brown, would not have



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

been able to make undocumented loans in excess of $600,000 to Defendant C3 Jets, and would not have been able to make more than $200,000 in undocumented loans to Defendant Bowman Aviation. *See Exhibit "E"*.

**IMMINENT IRREPARABLE INJURY**

142. The unpaid FET by the Defendants represents an imminent irreparable injury to the Plaintiff. The IRS has already assessed $1,300,000 in the Defendants' unpaid FET against the Plaintiff individually, and Defendant Brown has admitted his responsibility for all FET. Despite the Plaintiff's efforts to request Defendants to pay their existing FET obligations, or to make a good faith payment to IRS as proposed by the First IRS FET Proposal and Second IRS FET Proposal, Defendants have refused to pay the FET Defendant Brown has already admitted he owes, and which the IRS has already assessed against JGH and now its shareholders individually.

143. The amount of FET assessed individually against the Plaintiff by IRS is more than the entirety of his historical compensation at any time by the Defendants, which instead created a scheme to generate over $125,000,000 in revenue to enrich themselves while ignoring the FET obligations, including millions of dollars personally received by Defendant Brown.

144. Plaintiff has requested exhaustively that IRS extend him time before filing the lien, and the IRS has made clear that proposals such as the First IRS FET Proposal and Second FET proposal would be acceptable to allow it to refrain from filing the lien against Plaintiff individually. The very fact that a corporation's unpaid FET are now being assessed against the individual shareholders thereto demonstrates the severity of the Defendants' conduct in allowing such an occurrence to transpire, especially in light of the hundreds of millions they generated while already subject to payment of $1,300,000 in FET.

145. The imminence and irreparable injury can be prevented by an order by this court forcing Defendants to pay FET, which they are already obligated to do. The imminence and irreparable injury can be prevented if IRS allows an extension for a plan for repayment of the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

$1,300,000 FET by Defendants, which only the Defendants can prevent. Should the IRS file the lien against the Plaintiff, the imminent irreparable injury will further continue.

146. The imminence of the irreparable injury for the Defendants unpaid FET obligations does not stop after the IRS files the lien against Plaintiff, and will only cease when the Defendant's pay their unpaid FET in the amount of $1,300,000 already assessed and threatened to be liened against the Plaintiff. Although this injury could still potentially be avoided should the Defendants do what they are already obligated to do, Plaintiff has no recourse or remedies to force them to do such other than seeking injunctive relief through this Honorable Court. Upon having the lien assessed, Plaintiff's access to credit, reputation, business relationships, potential to gain lawful employment, purchase property, or enter business relationships or banking relationships will be irreparably injured by an assessment of $1,300,000 which is in excess of the entirety of the compensation Plaintiff has ever received from Defendants

147. Plaintiff will further address the imminent irreparable injury in his forthcoming Motion for Injunctive relief and Memorandum of Points and Authorities in Support thereof.

**RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

On the First Cause of Action:

1. Against Defendants Jordan Brown, Jet Genius Florida Holdings, Inc., C3jets LLC and Bowman Aviation LLC, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., as shareholder thereto, seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover the JGH Intellectual Property, trade secret information, and other legitimate business interests and to require Defendants to immediately pay IRS the $1,300,000 in already assessed FET against Plaintiff individually and Jet Genius Holdings, Inc.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

2. Against Defendants Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc., Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to restore Plaintiff and non-party shareholder Wolf to the Board of Directors of Defendants, and to order a new shareholder agreement with customary protective and minority shareholder rights reflective of those initially held by Plaintiff and non-party Wolf.

3. Against Defendant Jet Genius Holdings, Inc. Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief in the form of an order Defendant Jet Genius Holdings, Inc., to immediately pay $1,300,000 of its owed FET which has been personally assessed against Plaintiff with the IRS, with an immediate payment of $125,000 or such other amount as acceptable by IRS to refrain from filing a lien.

4. Against Defendants Jordan Brown, Jet Genius Florida Holdings, Inc., C3jets LLC and Bowman Aviation LLC, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Jet Genius Holdings, Inc., as exemplary damages, or such amount to be determined at trial.

5. Against Defendants Jordan Brown, Jet Genius Florida Holdings, Inc., C3jets LLC and Bowman Aviation LLC, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Jet Genius Holdings, Inc., as punitive damages, or such amount to be determined at trial.

6. Against Defendant Jordan Brown, Plaintiff individually seeks, two times the 24.5% equity shareholdings in Jet Genius Holdings, Inc. rightfully belonging to Plaintiff that were relinquished unjustly at the Shareholder Agreement's execution as exemplary damages, or such amount to be determined at trial.

7. Against Defendants Jordan Brown and Jet Genius Holdings, Inc., Plaintiff individually seeks, two times the 24.5% equity shareholdings in Jet Genius Florida Holdings, Inc. rightfully belonging to Plaintiff, which should have been reflected in Jet Genius Florida Holdings,

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Inc., which were relinquished unjustly by Plaintiff at the Shareholder Agreement's execution as exemplary damages, or such amount to be determined at trial

8. Attorneys' Fees

On the Second Cause of Action:

1. Against Defendants Jordan Brown, Jet Genius Florida Holdings, Inc., C3jets LLC and Bowman Aviation LLC, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Jet Genius Holdings, Inc., as exemplary damages, or such amount to be determined at trial.

2. Against Defendants Jordan Brown, Jet Genius Florida Holdings, Inc., C3jets LLC and Bowman Aviation LLC, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Jet Genius Holdings, Inc., as punitive damages, or such amount to be determined at trial.

3. Attorneys' Fees

On the Third Cause of Action:

1. Against Defendant Jet Genius Holdings, Inc. Plaintiff seeks rescission of the Shareholder Agreement and restoration of Plaintiff an non-party shareholder Wolf to the Board of Directors of Defendant Jet Genius Holdings, Inc., and restoration of Plaintiff's shareholdings representing the 24.5% equity value he wrongfully relinquished under the Shareholder Agreement.

2. Against Defendant Jet Genius Florida Holdings, Inc. Plaintiff seeks ascension of Plaintiff and non-party shareholder Wolf to the Board of Directors of Defendant Jet Genius Florida Holdings, Inc., and restoration of Plaintiff's shareholdings representing the 24.5% equity value he wrongfully relinquished under the Shareholder Agreement, without which Defendant Jet Genius Florida Holdings, Inc., would not exist.

3. Against Defendant Brown and Jet Genius Holdings, Inc., Plaintiff seeks damages

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

of $909,451 for any purported transfer in breach of the Shareholder Agreement which is found to have occurred prior to November 1, 2019, $727,561 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2020, $545,671 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2021, and $363,780 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2022.

4. Exemplary and Punitive Damages in an amount to be determined at trial

5. Attorneys' Fees as provided in the Shareholder Agreement

On the Fourth Cause of Action:

1. Against Defendants Jordan Brown, Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc., exemplary and punitive damages in an amount to be determined at trial.

2. Attorneys' Fees

On the Fifth Cause of Action:

3. Against all Defendants, exemplary and punitive damages in an amount to be determined at trial.

4. Attorneys' Fees

On the Sixth Cause of Action:

5. Against all Defendants, exemplary and punitive damages in an amount to be determined at trial.

6. Attorneys' Fees

On the Seventh Cause of Action:

7. An accounting ordered by this Honorable Court, to provide Plaintiff with injunctive relief by ordering the immediate furnishment to Plaintiff of all usual and customary information rights as a shareholder, or such other information Plaintiff may reasonably request or this Honorable Court see fit into the financial health, transactional history, books and records, bank statements, and accounts of Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

8. An accounting ordered by this Honorable Court, to provide Plaintiff with injunctive relief by ordering the immediate furnishment to Plaintiff of all usual and customary information rights regarding any monies which egressed between the accounts of Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc., which Plaintiff as shareholder of may reasonably request or this Honorable Court see fit into the transactional history, books and records, bank statements, of any monies from the accounts for Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc. egressing to those of all of the other Defendants.

On the Eighth Cause of Action:

9. Against Defendant Jet Genius Florida Holdings, Inc., Plaintiff individually and as a shareholder of Jet Genius Holdings, Inc. seeks damages in the amount of the more than $125,000,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

10. Against Defendant Jordan Brown, Plaintiff seeks damages in the amount of the more than $3,300,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

11. Against Defendant C3jets LLC, Plaintiff seeks damages in the amount of the more than $600,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

12. Against Defendant Bowman Aviation LLC, Plaintiff seeks damages in the amount of the more than $200,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

13. Against all Defendants, jointly and severally, the cumulative sum of the total damages set forth above in this Count Eight.

14. Attorneys' fees

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Respectfully submitted,

Dated: August 8, 2022

WADE MILLER LAW

By: / s / Wade A. Miller
Wade A. Miller, Esq.

-and-

John A. Kirk, Esq.
Pennsylvania #308436
(*pro hac vice to be submitted*)
Distributed Law Group

ATTORNEYS FOR PLAINTIFF
AARON STANZ

**WADE MILLER LAW**
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117