NICHOLAS D. BRAUNS (Bar No. 257694)
braunsn@higgslaw.com
EDWIN M. BONISKE (Bar No. 265701)
boniske@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101-7910
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Attorneys for Defendants
JORDAN BROWN and C3jets, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AARON STANZ individually and on behalf of JET GENIUS HOLDINGS, INC. as shareholder thereto,

Plaintiffs,

v.

JORDAN BROWN, individually and in his capacity as CEO, Director, and Chairman of co-defendant JET GENIUS HOLDINGS, INC.; JET GENUIS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3 JETS LLC; BOWMAN AVIATION LLC; DOES 1-20,

Defendants.

Case No. 3:22-cv-01164-GPC-JLB

**DEFENDANTS' JORDAN BROWN AND C3 JETS, LLC'S MOTION TO DISMISS THE COMPLAINT AND TO STRIKE PURSUANT TO FED.R.CIV.P. 12(b)(1), 12(b)(6), 12(b)(7), AND 12(f)**

Date: December 16, 2022
Time: 1:30 p.m.
Ctrm: 2D
Judge: Hon. Gonzalo P. Curiel

# TABLE OF CONTENTS

Page


I. INTRODUCTION AND BACKGROUND ........ 1

A. Plaintiff's Complaint Fails for Lack of Jurisdiction ........ 1

B. Plaintiff Fails to Plead Fraud or Conspiracy with Particularity ........ 1

C. Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law ........ 2

D. Plaintiff Fails to Join Indispensable Parties ........ 2

E. The Federal Government Considers Plaintiff a "Bad Actor," Barring Him From Obtaining the Relief He Seeks as a Matter of Law ........ 2

F. Plaintiff Sues the Same Corporation He Claims to Represent in the Complaint ........ 4

II. STATEMENT OF FACTS ........ 6

III. LEGAL STANDARD ........ 7

IV. LEGAL ARGUMENTS ........ 8

A. Plaintiff Fails to Allege Federal Subject Matter Jurisdiction, and This Court Should Not Exercise Supplemental Jurisdiction Over The State Law Claims ........ 8

1. Plaintiff Lacks Standing to Pursue The First and Second Causes of Action (for alleged violations of DTSA and CUTSA) Individually, And Purportedly On Behalf of JGH, So There Is No Federal Question Subject Matter Jurisdiction Under 28 U.S.C. §1331 ........ 8

2. Plaintiff Fails to Allege Complete Diversity As Required Under 28 U.S.C. §1332 ........ 11

3. There Is No Federal Question Jurisdiction Under The CFAA And The Immaterial And Impertinent Reference To 18 U.S.C. §1030 In ¶12 Should Be Stricken ........ 12

4. The Court Should Not Exercise Supplemental Jurisdiction Over The State Law Claims In The Second, Third, Fourth, Fifth, Sixth, Seventh, And Eighth Causes of Action ........ 13

5. The Complaint Fails To State Claims For Trade Secret Misappropriation Under DTSA Or CUTSA (First And Second Causes of Action) ........ 13

6. Plaintiff Has Not Adequately Described The Subject Matter Of The Trade Secret(s). ........ 14

7. Plaintiff's Conclusory Allegations Are Insufficient to Support A Cause of Action for Misappropriation of "JGH Intellectual Property." ........ 15

8. Plaintiff Has Not Adequately Pled Any Damage Resulting From the Alleged Transfer of Intellectual Property from JGH to JGFH ........ 16

**TABLE OF CONTENTS**
(continued)


**Page**

B. The SEC's Judgment Against Plaintiff Necessitated the Corporate Restructuring Of JGH, Hence Plaintiff Cannot Sufficiently Allege Actionable "Duress" ....17

C. Draft Valuations of CFG Include Both JGH and JFGH, Nullifying Any Claims of Misappropriation ....18

D. The Fourth Cause of Action for Purported Breach of Fiduciary Duties Should Be Dismissed Because it is Also a Shareholder Derivative Claim ....18

E. The Complaint Fails to State Fraud Allegations with Particularity as Required by Fed.R.Civ.P. 9 (b) ....19

F. The Complaint Fails to Allege a Conspiracy Because Defendant Brown Cannot Conspire with Himself in Whatever Capacity ....21

G. Plaintiff's Claim for Unjust Enrichment is Barred ....22

H. Plaintiff Fails to Join an Indispensable Party ....23

V. CONCLUSION ....24

# TABLE OF AUTHORITIES

Page

CASES

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 7,8

*Bader v. Anderson*
179 Cal.App.4th 775 (2009) .......... 9, 10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 9

*California Dinosaur Development, Inc. v. White*
(1989) 216 Cal.App.3d 1310 .......... 22

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*
276 F.3d 1150 (9th Cir.2002) .......... 23

*Diodes, Inc. v. Franzen*
260 Cal.App.2d 244 (1968) .......... 15

*Durell v. Sharp*
(2010) 183 Cal.App.4th 1350 (2010) .......... 2, 22

*E. & J. Gallo Winery v. Instituut Voor Landbouw*
*En Visserijonderzoek*, 2018 WL 2463869 at *7, *18-19 .......... 16

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014) .......... 8

*Fantasy Inc. v. Fogerty*
984 F.2d 15247 (9th Cir. 1993) .......... 12

*Firetrace USA, LLC v. Jesclard*
800 F. Supp. 2d 1042 (D. Ariz. 2010) .......... 16

*Grosset v. Wenaas*
42 Cal.4th 1100 (2008) .......... 5

*Hoefer v. Fluor Daniel, Inc.*
92 F.Supp.2d 1055 (C.D. Cal. 2000) .......... 22

*Imax Corp. v. Cinema Techs., Inc.*
152 F.3d 1161 (9th Cir. 1998) .......... 15

*In re Digimarc Corp. Derivative Litigation*
549 F.3d 1223 (9th Cir. 2008) .......... 11

# TABLE OF AUTHORITIES
(continued)

**Page**

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV-11-1062-JVS-ANx, 2015 U.S. Dist. LEXIS 192303, 2015 WL 13357646, at *3 (C.D. Cal. May 6, 2015) ..... 14

*Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2014 WL 721844 at *3 (N.D. Cal. Feb. 24, 2014) ..... 16

*Jones v. H.F. Ahmanson & Co.* 1 Cal.3d 93 (1969) ..... 5

*Kendall v. Visa U.S.A., Inc.* 518 F.3d 1042 (9th Cir. 2008) ..... 21

*Lauriedale Assocs., Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439 ..... 22

*Lomayaktewa v. Hathaway* 520 F.2d 1324 (9th Cir.1975) ..... 24

*Magpali v. Farmers Group, Inc.* 48 Cal.App.4th 471 (1996) ..... 20

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEGBLM, 2007 ..... 20

*McBride v. Boughton* (2004) 123 Cal.App.4th 379 ..... 22

*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457 ..... 22

*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779 ..... 22

*Mesa Safe Company, Inc. v. Amazon.com Services, Inc.* (C.D. Cal. Oct. 4, 2019) 2019 WL 6723422 *5 ..... 14, 19, 20, 21

*Mosier v. Stonefield Josephson, Inc.* 815 F.3d 1161 (9th Cir. 2016) ..... 23

*Nelson v. Anderson* 72 Cal.App.4th 111 (1999) ..... 9

*Northrop Corp. v. McDonnell Douglas Corp.* 705 F.2d 1030 (9th Cir.1983) ..... 24

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.* 96 F.3d 1151 (9th Cir. 1996) ..... 23

# TABLE OF AUTHORITIES
(continued)


**Page**

*Pellerin v. Honeywell Int'l, Inc.*
877 F.Supp.2d 983 (S.D. Cal. 2012) .......... 15

*Purcell v. U.S.*
1 F.3d 932 (9th Cir. 1993) .......... 4

*Sargent Fletcher, Inc. v. Able Corp.*
110 Cal.App.4th 1658 (2003) .......... 14

*Schrage v. Schrage*
69 Cal.App.5th 126 (2021) .......... 19

*Slodov v. U.S.*
436 U.S. 238 (1978) .......... 4

*Smith v. Allstate Ins. Co.*
160 F. Supp. 2d 1150 (S.D. Cal. 2001) .......... 20

*Sunnyside Development Co., LLC v. Opsys Limited*, No. C 05–0553 MHP, 2005 WL 1876106, at *5–6 (N.D. Cal. Aug. 8, 2005 .......... 20

*Tenzer v. Superscope, Inc.*
39 Cal. 3d 18 (1985) .......... 19, 20

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*
117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......... 19, 20

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS 48637, 2018 WL 1456697, at *8 (N.D. Cal. Mar. 23, 2018) .......... 14

*Wilbur v. Locke*
423 F.3d 1101 (2005) .......... 23

**STATUTES**

15 U.S.C. § 78 .......... 3

18 U.S.C. § 1030 .......... 12, 13

28 U.S.C. § 1331 .......... 8, 11

28 U.S.C. § 1332 .......... 1, 11

## TABLE OF AUTHORITIES
(continued)


**Page**

18 U.S.C. § 1836 ........ 1, 5, 12

28 U.S.C. § 1367 ........ 13

18 U.S.C. § 1839 ........ 14, 15

26 U.S.C. § 6672 ........ 17

Cal. Corp. Code § 300 ........ 2, 5

Cal. Corp. Code § 800 ........ 2, 5,9, 10

Cal. Civ. Code § 3426 ........ 5, 14

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ........ 1, 12

17 C.F.R. Part 230 § 230.504 ........ 3

Securities Exchange Act of 1933, 15 U.S.C. § 77 ........ 3

Securities Exchange Act of 1934, 15 U.S.C. § 78 ........ 3

**OTHER AUTHORITIES**

Internal Revenue Manual ("IRM") Section 5.17.7.1.1 and 5.17.7.1.2 ........ 4

IRC Section 6672(d) ........ 17

# TABLE OF AUTHORITIES
(continued)

Page

## RULES

"Bad Actor" Rule 506 Under Regulation D of the Securties Act of 1933 ................ 3

Fed.R.Civ.P. 8 .................................................................................................. 7

Fed.R.Civ.P.10b-5 ............................................................................................. 3

Fed.R.Civ.P. 12 ............................................................... 1, 2, 12, 21, 23, 24

Fed.R.Civ.P 19 ............................................................................................... 23

Fed.R.Civ.P. 506 ........................................................................................... 3, 6

# I.
# INTRODUCTION AND BACKGROUND

Defendants Jordan Brown and C3jets, LLC ("Defendants") move this Court under Rule 12 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), raising challenges to the Complaint as summarized here, and as discussed in detail below:

## A. Plaintiff's Complaint Fails for Lack of Jurisdiction

Plaintiff Aaron "Angel" Stanz' Complaint must be dismissed under Fed.R.Civ.P Rule 12 based upon (1) lack of subject matter jurisdiction for failure to state a federal claim under either the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836(b)(1) or the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g); (2) failure to adequately define the alleged trade secret, to sufficiently allege a misappropriation, or allege cognizable damages for the DTSA claims in Count One and the California Uniform Trade Secret Act ("CUTSA") claims in Count Two; (3) lack of subject matter jurisdiction for failure to allege complete diversity under 28 U.S.C. §1332 (and because there are no valid federal claims or complete diversity); and (4) the complex and predominant State law claims in Counts 2-8, which should lead this Court not to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). The Complaint's unexplained reference to federal question jurisdiction under 18 U.S.C. § 1030, et seq. (CFAA) should be stricken under Fed.R.Civ.P. 12(f).

## B. Plaintiff Fails to Plead Fraud or Conspiracy with Particularity

Fed.R.Civ.P. 9(b) requires Plaintiff to allege fraud with particularity. Instead of doing so, Plaintiff's Complaint unintelligibly contends that he sues the California and Florida corporations – both in his individual capacity and purportedly as a shareholder derivative plaintiff – impossibly alleging the Corporations are at once victims, perpetrators, and conspirators. Thus, the Fifth and Sixth Causes of Action labelled Fraud and Conspiracy, respectively, fail to state claims under Fed.R.Civ.P. 12(b)(6). Plaintiff goes on to aver a purported breach of contract dispute between

shareholders and business partners, presenting incomplete pieces of a purported shareholder derivative claim, including alleged breaches of fiduciary duties, without satisfying the statutory prerequisites of the California Corporations Code (Cal. Corp. C.) §§300, 800.

**C. Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law**

The existence of an enforceable written contract precludes an unjust enrichment theory between the parties to the contract. See *Durell v. Sharp*, 183 Cal.App.4th 1350, 1370 (2010) ["As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. [Citation.] An unjust enrichment theory is inapplicable because [plaintiff] alleges the parties entered into express contracts."].

The Complaint alleges the existence of a written agreement, the "Shareholder Agreement," which Plaintiff claims Defendants breached when some unspecified "trade secret" transferred from Jet Genuis Holding, Inc. ("JGH," the California corporation) to Jet Genuis Florida Holdings, Inc. ("JGFH," the Florida corporation). Plaintiff then claims the same transfer was an "unjust enrichment" to Defendants. As a matter of law, Plaintiff cannot advance an unjust enrichment claim.

**D. Plaintiff Fails to Join Indispensable Parties**

Plaintiff seeks "temporary, preliminary, and permanent injunctive relief to restore Plaintiff *and non-party shareholder Wolf* to the Board of Directors of Defendants and to order a new shareholder agreement with customary protective and minority shareholder rights reflective of those initially held by Plaintiff *and non-party Wolf*." [Complaint, Prayer for Relief, page 36:2-5.]

Plaintiff's efforts to appoint Wolf as a director makes Wolf an indispensable party, and his failure to do so runs afoul of Fed.R.Civ.P. 12(b)(7).

**E. The Federal Government Considers Plaintiff a "Bad Actor," Barring Him From Obtaining the Relief He Seeks as a Matter of Law**

To place this Complaint, and Plaintiff himself, in context: on May 24, 2018,

this Court entered its Final Judgment as to Plaintiff, granting all claims for relief sought in the United States Securities and Exchange Commission's ("SEC") Complaint. The Court thereby permanently restrained and enjoined Plaintiff from violating:

(1) The Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c);

(2) Sections 77q(a)(1) and (a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), and Rule 10b-5 (17 C.F.R. 240.10b-5); and,

(3) 15 U.S.C. §§ 78u(d)(2) and 78t(e);

Based on the violations that led to the injunction, this Court imposed a five-year ban on Plaintiff's involvement in securities offerings and ordered him to disgorge his unlawfully obtained profits. (See Request for Judicial Notice ("RJN") Exhibit E (filed contemporaneously)).

As noted in the above-referenced SEC Complaint filed in this Court, the State of Illinois also enjoined Plaintiff from violating Illinois Consumer Protection laws because Plaintiff (1) charged thousands of telephone consumers for services without authorization and (2) falsely stated in annual reports and financial statements published with OTC during 2014 that he had no legal or disciplinary history. (See RJN Exhibit B (SEC Complaint at ¶¶32, 46-49)).

Plaintiff is a confirmed serial fraudster, which informed this Court's Final Judgment in the SEC proceedings, in which the Court deemed Plaintiff a "Bad Actor" under Regulation D (Rule 506(d) and (e)) of the Securities Act of 1933. See 17 C.F.R. Part 230 §§ 230.504 and 230.506[1]. As explained below, the SEC injunction against Plaintiff foreclosed Defendant JGH's ability to obtain investor financing to expand the business and to satisfy the alleged Federal Excise Tax ("FET") liabilities. As a Bad Actor, Plaintiff could not remain a Director of JGH,

---

[1] Plaintiff's claims in Complaint ¶23 that "under duress..." he transferred "...almost half of his shares to Defendant Brown..." should be considered in the context of the "Bad Actor" rule codified in paragraphs (d) and (e) of Rule 506 in Regulation D of the Securities Act of 1933.

and his beneficial ownership of both JGH and Defendant JGFH remains an insurmountable obstacle to the relief Plaintiff seeks in his Complaint.

Plaintiff's status as a Bad Actor also explains his failure to allege any facts in support of the purported "duress[2] " that led Plaintiff to transfer his stock to Defendants. Plaintiff's compulsion for entering the November 7, 2018 agreements was this Court's determination that Plaintiff was a "Bad Actor" after final judgment in the SEC enforcement proceedings, not some amorphous "duress" orchestrated by Defendant.

**F. Plaintiff Sues the Same Corporation He Claims to Represent in the Complaint**

By way of background, Defendants negotiated with Plaintiff for months to restructure JGH and JGFH for a number of normal and legitimate business reasons, including satisfaction of the alleged FET liabilities. Despite these ongoing negotiations, Plaintiff filed this Complaint on August 8, 2022 suddenly, and without notice, thus terminating discussions. Plaintiff's "Complaint for Injunctive Relief and Damages for Violation of the Defend Trade Secrets Act of 2016, California Uniform Trade Secrets Act, Breach of Contract, Breach of Fiduciary Duty, Fraud, Conspiracy, Accounting, [and] Unjust Enrichment" purports to pursue claims ". . . individually and on behalf of Jet Genius Holdings, Inc. as a shareholder thereto(sic)." Notwithstanding Plaintiff's assertions that he pursues claims on behalf of JGH in addition to his individual claims, Plaintiff names the same JGH as a defendant in his: (1) Third Cause of Action for Breach of Contract; (2) Fourth Cause of Action for Breach of Fiduciary Duty; (3) Fifth Cause of Action for Fraud; (4) Sixth Cause of Action for Conspiracy; (5) Seventh Cause of Action for

[2] No alleged facts support Plaintiff's claims that he had no reasonable alternative to entering into the November 7, 2018 agreements (Ex. A and B to his Complaint) nor that he was under 'economic duress' from a prospective IRS assessment individually for Federal Excise Taxes ("FET") based on an IRS determination that he was a "responsible person" liable for the FET debt. *See* Internal Revenue Manual ("IRM") Section 5.17.7.1.1 and 5.17.7.1.2; *Slodov v. U.S.,* 436 U.S. 238 (1978); *Purcell v. U.S.*, 1 F.3d 932, 937 (9th Cir. 1993).

Accounting; and (6) Eighth Cause of Action for Unjust Enrichment.

As elaborated below, Plaintiff cannot simultaneously pursue claims *against* defendant JGH while pursuing claims *on behalf of* the same defendant JGH purportedly as a shareholder's derivative action because of the actual and obvious conflict of interest. See *Grosset v. Wenaas*, 42 Cal.4th 1100, 1108 (2008); *Jones v. H.F. Ahmanson & Co.* 1 Cal.3d 93, 106 (1969).

Unlike his third, fourth, fifth, sixth, seventh and eighth causes of action, Plaintiff's First Cause of Action, purportedly based on 18 U.S.C. §1836(b)(1), names as defendants "Jordan Brown, (individually and as CEO, Director and Chairman of co-defendant Jet Genius Holdings, Inc.), Jet Genius Florida Holdings, Inc., C3 Jets LLC, and Bowman Aviation." Plaintiff's Second Cause of Action, purportedly based on the California Uniform Trade Secrets Act (Cal. Civ. Code §3426, et seq.), also names as defendants "Jordan Brown and Jet Genius Florida Holdings, Inc., C3 Jets LLC and Bowman Aviation." Although Plaintiff attempted to style these claims as a shareholder's derivative action, the Complaint does not satisfy the prerequisites under the California Corporation's Code § 800(b)(2). The role of managing the business of the corporation, including the prosecution, defense, and control of corporate litigation, is vested in its Board of Directors, not in its shareholders. See Cal. Corp. Code §300.

Admissions in the Complaint and its attachments: (1) establish Plaintiff lacks standing to pursue purported trade secret misappropriation claims individually; (2), establish Plaintiff and JGH share California citizenship, precluding complete diversity; and, (3) confirm that any such purported transfer of "JGH Intellectual Property" was authorized as part of a restructuring of the enterprise Charter Flight Group ("CFG"), also referred to as "the Company." See Exhs. C & D to Compl. Consequently, the Complaint neither states a valid federal claim, nor alleges complete diversity. Accordingly, the Court should not exercise supplemental jurisdiction over the State law claims in the Second through Eighth Causes of

Action. The Complaint should be dismissed pursuant to Rule 12(b)(6), 12(b)(7), and 12(b)(1) of the Federal Rules of Civil Procedure.

## II.
## STATEMENT OF FACTS

JGH and JGFH, together with non-party Jet Agency, LLC, operate as Charter Flight Group, or "CFG." Complaint, Exhibit D, page 4 of 53. CFG is a technology-enabled air charter brokerage firm, whose technology allows it to book trips using both outside brokers and in-house sales staff. *Id.* Defendant Brown is the CEO of CFG, Plaintiff is the Chief Technology Officer, or "CTO." Complaint at ¶¶ 5 and 8.

On May 24, 2018, this Court entered a Final Judgment which labeled Plaintiff a "Bad Actor," prohibiting Plaintiff – *or any company in which he owned more than 20% stock* – from participating in Rule 506 offerings. RJN E. Once the Federal Government labeled Plaintiff a Bad Actor, CFG was blocked from obtaining investor financing unless it took action to reorganize the ownership and management of CFG to comply with SEC rules and regulations. RJN E.

After exploring a number of solutions, CFG and Plaintiff entered into a "Stockholder Agreement," whereby Plaintiff agreed to drastically reduce his stock ownership in the company and to withdraw as a director in order to both comply with SEC "Bad Actor" rules, and to enable CFG to continue raising financing from outside investors. Complaint, Exhibit A, ¶ 25.

Of unique and critical import in the context of this action, simultaneous with his execution of the Stockholder Agreement, Plaintiff executed a "Proprietary Information and Inventions Agreement." Complaint, Exhibit B. Under the agreement, Plaintiff agreed that:

/ / /

> "Company shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, *sui generis* database rights and all other intellectual

> property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with [JGH] that relate to the charter aircraft broker business to the fullest extent allowed by California Labor Code section 2870. . .(collectively "Inventions") and I will promptly disclose all Inventions to Company." [Complaint, Exhibit B, page 2 of 5.]

On August 27, 2019, CFG established JGFH during the course of a larger corporate restructure and business transition from California to Florida. Complaint, ¶ 28. Upon completion of the restructure and transition to Florida, CFG attempted to memorialize Plaintiff's identical stake in the restructured company, and presented Plaintiff with a new Shareholder Agreement covering his interest and employment conditions at CFG/JGFH. Complaint, ¶ 32. Plaintiff refused to sign the agreement; CFG nevertheless issued Plaintiff Nine Hundred Fifty-Nine Thousand Six Hundred Fifteen (959,615) shares of stock in JGFH without requiring he sign the revised shareholder agreement. Complaint, Exhibit A; ¶ 39. In so doing, CFG ensured Plaintiff's ownership in JGH (i.e., 959,615 shares of stock) and JGFH (i.e., 959,615 shares of stock) remained identical.

## III.
## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and a complaint that fails to do so is subject to dismissal pursuant to Fed.R.Civ.P. 8(a)(2) and 12(b)(6). Allegations of fraud must be pleaded with particularity pursuant to Fed.R.Civ.P. 9(b). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege facts sufficient

to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Plaintiff must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 557.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citation omitted). "When considering plausibility, courts must also consider an 'obvious alternative explanation' for the defendant's behavior." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)(quoting *Iqbal*, 556 U.S. at 682).

## IV.
## LEGAL ARGUMENTS

### A. Plaintiff Fails to Allege Federal Subject Matter Jurisdiction, and This Court Should Not Exercise Supplemental Jurisdiction Over The State Law Claims

#### 1. *Plaintiff Lacks Standing to Pursue The First and Second Causes of Action (for alleged violations of DTSA and CUTSA) Individually, And Purportedly On Behalf of JGH, So There Is No Federal Question Subject Matter Jurisdiction Under 28 U.S.C. §1331*

Plaintiff fails to allege that he is entitled to pursue any cause(s) of action on behalf of JGH, nor does the Complaint allege Plaintiff satisfied the statutory pre-requisites for pursuing shareholder's derivative claims on behalf of JGH. Plaintiff cannot act on behalf of JGH as to his first and second causes of action *while simultaneously suing JGH* based on his third, fourth, fifth, sixth, seventh and eighth causes of action. Based on the self-evident conflict of interest, Plaintiff cannot bring any cause(s) of action on behalf of JGH while simultaneously suing JGH. A

plaintiff shareholder who does not follow the pre-litigation provision of Cal. Corp. C. § 800(b)(2) has no standing to bring the action on behalf of the corporation. *See Bader v. Anderson*, 179 Cal.App.4th 775, 793 (2009); *Nelson v. Anderson*, 72 Cal.App.4th 111, 127 (1999).

Pursuant to Section 800(b)(2), a plaintiff shareholder must allege with particularity (1) the demand it made on the board for action, or, alternatively, why such demand would have been futile; and (2) allege further that it informed the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or board a true copy of the complaint "which plaintiff proposes to file." See Cal. Corp. Code §800(b)(2).

Equally problematic are Plaintiff's claims to ownership of trade secrets in paragraphs 52 and 57, which contradict each other and these contradictory and mutually exclusive claims to ownership of the undefined trade secrets at issue are repeated in paragraphs 64, 139 and, by incorporation, paragraphs 51, 63, 74, 92, 107, 120, and 138.

The specific language creating irreconcilable contradictions and further demonstrating Plaintiff's irremediable conflict of interest appear as follows:

> "¶52. Plaintiff, individually and on behalf of the (sic) Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property. . ."
>
> "¶57. . . . Defendant Brown instead conspired to unjustly enrich himself . . . while knowing that JGH was the rightful and sole owner of the JGH Intellectual Property. . . ."
>
> "¶64. Plaintiff, individually and on behalf of Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property. . . ."
>
> "¶139. Defendants were unjustly enriched by the misappropriate (sic) of JGH's and Plaintiff's trade secrets contained in the JGH Intellectual Property. . . ."

Thus, Plaintiff alleges he is the rightful and legal owner of the "trade secrets"

referenced in the Complaint as "JGH Intellectual Property" – both individually and on behalf of JGH. Complaint ¶52. However, also according to Plaintiff, Brown and JGH required Plaintiff to "assign to JGH rights for the 'JGH Intellectual Property' contemporaneously with the shareholder agreement." *Id.* at ¶54, referencing Complaint. Exhs. "A" and "B". Contrary to the assertion that Plaintiff assigned the "JGH Intellectual Property" to JGH at the time of the November 7, 2018 Shareholder Agreement (Ex. A to Complaint.), the Proprietary Information and Inventions Agreement also attached to the Complaint states that it memorializes the agreement between Plaintiff and JGH concerning the "JGH Intellectual Property" in existence since the commencement of Plaintiff's employment with the Company, broadly defined "to include any relationship of service to the Company that [Plaintiff] may have had prior to actually becoming an employee." *See* Ex. B to Complaint at 1, Docket or ECF No. ("D") # 1-3 at p. 2. Thus, Plaintiff concedes that at all relevant times JGH owned all right, title, and interest to what Plaintiff describes as the "JGH Intellectual Property." *See* Ex. B to Compl. at 1, D# 103 at p. 2.

This admission is confirmed in paragraph 57, which again admits that "JGH was the rightful and *sole owner* of the JGH Intellectual Property." Emphasis added. A plaintiff shareholder filing a derivative action seeking redress on behalf of a corporation "must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be apparent to the court." *Bader v. Anderson*, 179 Cal.App.4th 775, 789 (2009). When alleging "demand futility," Cal. Corp. Code. § 800(b)(2) requires a shareholder to make allegations "with particularity," meaning that "general averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice." *Id.* at 790. Instead, the shareholder must apprise the court "of facts specific to each director from which [the court] can conclude that that particular director could or could not be expected to fairly evaluate the claims of the

shareholder plaintiff." *Id.*

Accordingly, the First and Second Causes of Action for purported misappropriation of trade secrets should be dismissed for failure to state a claim because Plaintiff lacks standing, having failed to comply with prerequisites for a shareholder's derivative claim.

2. *Plaintiff Fails to Allege Complete Diversity As Required Under 28 U.S.C. §1332*

One basis for federal court jurisdiction is the complete diversity of all parties on one side of an action from all parties on the other side of the action. 28 U.S.C. § 1332; *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008)("Diversity jurisdiction requires complete diversity between the parties – each defendant must be a citizen of a different state from each plaintiff.")(citation omitted).

Plaintiff purports to invoke this Court's diversity jurisdiction, albeit by ellipsis in omitting 28 U.S.C. §1332, alleging in ¶14 of the Complaint that "The amount in controversy is more than $75,000" -- after noting "Defendant Jet Genius Holdings, Inc. is a company incorporated in the State of California and has its principal place of business in California," while admitting "Plaintiff is a citizen of the State of California . . ." in ¶13. Plaintiff further concedes he "is a competent adult citizen of the State of California for all relevant times in this action until March 1, 2022, where he obtained a leasehold in the State of Kansas, but has not yet made his primary residency in the State of Kansas." *See* Compl. ¶5. Thus, Plaintiff remains a primary resident of the State of California. There is not complete diversity of citizenship between Plaintiff and all defendants under 28 U.S.C. 1332(a)(1), which is presumably why Plaintiff only avers in ¶13 that jurisdiction is proper under 28 U.S.C. § 1331.

///

3. *There Is No Federal Question Jurisdiction Under The CFAA And The Immaterial And Impertinent Reference To 18 U.S.C. §1030 In ¶12 Should Be Stricken*

Fed.R.Civ.P. 12(f) states that a district court "may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)(quotation marks, citation, and first alteration omitted).

In a further futile attempt to create the appearance of federal jurisdiction, Plaintiff alleges in pertinent part in paragraph 12:

> "12. This Court has original subject matter jurisdiction of this action pursuant to . . . the CFAA, 18 U.S.C. § 1030, et seq. . ."

Plaintiff's Complaint, however, is devoid of any cause of action or any allegations supporting a cause of action pursuant to 18 U.S.C. §1030(g). To place Plaintiff's jurisdictional allegations in context, the attachments incorporated in the Complaint further undermine any semblance of jurisdiction based on either 18 U.S.C. §1836(c) or 18 U.S.C. §1030(g):

> "¶23. Under duress, Plaintiff Stanz entered into the Shareholder Agreement (attached hereto as a true and correct copy as Exhibit 'A') and its contemporaneously executed assignment of intellectual property by Plaintiff to JGH (attached hereto as a true and correct copy as Exhibit 'B'). . ." Exhibit 'B' at ¶2 provides in pertinent part '. . . Company [JGH] shall own all right, title and interest (including patent rights, trade secret rights, mask work rights, sui generis data based rights throughout the world) relating to any and all inventions. . . .' (Document 1-3, p. 2 of 5)

Lastly, paragraph 4 of Exhibit "B" (Document 1-3, p. 3 of 5) provides in pertinent part "I [Plaintiff] also recognize and agree that I have no expectation of privacy with respect to Company's telecommunications, networking or information systems (including, without limitation, e-mail messages and voice messages) and that my activity and any files or messages on or using any of these systems may be

monitored at any time without notice." This admission forfeits any claim based on 18 U.S.C. §1030(g).

4. *The Court Should Not Exercise Supplemental Jurisdiction Over The State Law Claims In The Second, Third, Fourth, Fifth, Sixth, Seventh, And Eighth Causes of Action*

Pursuant to 28 U.S.C. § 1367(c)(3) and absent a valid basis for original federal jurisdiction, this Court should not exercise its supplemental jurisdiction pursuant to § 1367(a). Additionally, even if the Court does not dismiss the DTSA claim in the First Cause of Action, it should decline to exercise supplemental jurisdiction over the balance of State law claims in the remaining causes of action because they raise novel and complex issues of State law and the State law claims substantially predominate over the purported misappropriation of trade secrets claim in Count One. See 28 U.S.C. §§1367(c)(1) and (c)(2).

5. *The Complaint Fails To State Claims For Trade Secret Misappropriation Under DTSA Or CUTSA (First And Second Causes of Action)*

The Complaint fails to adequately define what trade secret(s) Plaintiff contends are at issue, including with respect to what, if any, individual ownership he has in any such trade secret(s). Indeed, Plaintiff references his and/or JGH's purported trade secrets in broad, categorical terms identifying types of information that generally may qualify as protectable trade secrets rather than listing particular trade secrets that Plaintiff believes were misappropriated. The Complaint is also permeated with conclusory allegations and lacks particularity with respect to whether any such purported transfer of the "JGH Intellectual Property" to JGFH was not pursuant to a licensing agreement or similar authorization by JGH's Board and/or JGH's Chief Executive Officer Jordan Brown.

The elements of a trade secret misappropriation claim under DTSA are substantially similar to those under CUTSA. Plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions

damaged the plaintiff. *See, InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV-11-1062-JVS-ANx, 2015 U.S. Dist. LEXIS 192303, 2015 WL 13357646, at *3 (C.D. Cal. May 6, 2015)(quoting *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal.App.4th 1658, 1665 (2003)); *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS 48637, 2018 WL 1456697, at *8 (N.D. Cal. Mar. 23, 2018)(applying California precedent interpreting the CUTSA to DTSA claims because "the elements of a trade secret misappropriation claim under the DTSA are substantially similar" to the CUTSA). Thus, the analysis regarding trade secret misappropriation applies to both the federal and state claims in the First and Second Causes of Action unless otherwise noted.

6. *Plaintiff Has Not Adequately Described The Subject Matter Of The Trade Secret(s).*

The DTSA and CUTSA define a trade secret as information that: (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner. See 18 USC § 1839(3); Cal. Civ. Code § 3426.1(d).

The Complaint alleges misappropriation of "trade secrets" that include what Plaintiff refers to as "JGH Intellectual Property," which is vaguely defined in ¶29 as "...software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names, business methods, client lists, proprietary designs, and [circularly] *trade secrets*." (Emphasis added). Compounding the confusion about what Plaintiff attempts to describe, in ¶52 Plaintiff alleges:

> [The] trade secrets [are] referenced in this complaint as JGH Intellectual Property. The JGH Intellectual Property is material to JGH's business and services used in interstate commerce, specifically the technology software and platform architected by Plaintiff enabled JGH clients throughout the United States to book private air travel throughout the United States, by matching these clients with air charter operators throughout the United States.

The Second Cause of Action under CUTSA does not define the purported trade secret(s) allegedly misappropriated any clearer in ¶65, which states: "The JGH Platform, Plaintiff's Technical Expertise, the software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names, business methods, client lists, proprietary designs, and trade secrets in JGH Intellectual Property...."

Although Plaintiff need not spell out all the details of the trade secret, the Complaint must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F.Supp.2d 983, 988 (S.D. Cal. 2012)(quoting *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 253 (1968); see also, *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998). The Complaint's conclusory and generalized allegations are insufficient. Moreover, the lack of specificity is exacerbated by the fact the Complaint does not distinguish between what trade secret(s) Plaintiff purportedly owns and which, if not all, are owned by JGH.

7. *Plaintiff's Conclusory Allegations Are Insufficient to Support A Cause of Action for Misappropriation of "JGH Intellectual Property."*

Misappropriation is not sufficiently alleged because there is no plausible allegation that JGFH improperly acquired trade secrets. Misappropriation under DTSA and CUTSA includes both acquisition by improper means or through use. See 18 U.S.C. §1839(5)(A), (5)(B)(ii)(III); *InfoSpan*, 2015 WL 13357646, at *3, *10-11.

The Complaint is impermissibly vague when it comes to *what* was misappropriated, or *how* such misappropriation was done. The closest the Complaint comes is the following:

///

> ¶2. Defendants misappropriated Plaintiff's (and his company's) intellectual property and set up new companies to evade the FET and dilute Plaintiff's shareholder value. . . .[Defendant] did so by breaching the contractual obligations of the companies, his fiduciary duties to the Plaintiff and his fellow shareholders, and set in course events which utilized his position as Chairman, CEO, and fiduciary of Plaintiff's company to instead misappropriate its intellectual property. . . .
>
> ¶ 26. . . .Defendant Brown instead chose to conspire with Defendants to drain the value of JGH by misappropriating its intellectual property and trade secrets. . . .
>
> ¶ 56. . . .But the JGH Intellectual Property had tremendous value, since Defendant JGFH was able to misappropriate the JGH

None of these conclusory allegations adequately explain Plaintiff's theory of misappropriation for Defendants, or this Court.

8. *Plaintiff Has Not Adequately Pled Any Damage Resulting From the Alleged Transfer of Intellectual Property from JGH to JGFH*

"In order to satisfy the third element of a trade secret misappropriation claim, a plaintiff must plead facts showing that "misappropriation caused damage to the plaintiff." *E. & J. Gallo Winery v. Instituut Voor Landbouw – En Visserijonderzoek*, 2018 WL 2463869 at *7, *18-19, citing *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2014 WL 721844 at *3 (N.D. Cal. Feb. 24, 2014). See also *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 n.5 (D. Ariz. 2010) ("Damages are "an essential element of . . . [a] misappropriation of trade secret . . . claim[]," and a claim fails as a matter of law without a cognizable theory of proximately caused damages.")

The gravamen of Plaintiff's claims under DTSA and CUTSA is that Defendant(s) misappropriated some unspecified trade secret(s) from JGH to JGFH. Plaintiff holds the *exact* same ownership interest in JGFH as he does in JGH, and continues to serve as the Chief Technology Officer of "The Company" known as CFG. Although Plaintiff claims as damages the $1,300,000 in unpaid FET for which he is also a responsible party (a damages theory Defendant debunks below)

he otherwise alleges no harm arising from the alleged transfer of intellectual property from JGH to JGFH.

As to the FET liability, the Complaint implies that somehow the assessment of the "responsible person" penalty on Plaintiff is damage caused by Defendant. A DTSA/CUTSA action is obviously not the proper means for Plaintiff to challenge whether he was damaged by Defendants for their joint failure to pay the $1.3 million in FET. (See 26 U.S.C. 6672(d).) Indeed, the IRS finding that Plaintiff is a "responsible person" is presumed correct, which places the burden on Plaintiff to prove otherwise.

The IRS determined Plaintiff to be "responsible" for Plaintiff's $1,300,000 FET penalty assessment. Plaintiff has a perfectly appropriate method to contest whether he was a "responsible person" for the penalty; namely: an IRS administrative proceeding; Tax Court and/or an IRC Section 6672(d) action in district court for redetermination and/or contribution from other responsible person(s). Plaintiff fails to plead that he has either (a) exhausted administrative or other remedies for challenging the assessment or (b) paid any portion thereof and seeks a reimbursement (or can no longer seek refund from the IRS). Accordingly, Plaintiff's claims for damages related to the IRS FET penalty assessment of $1,300,000 against him as a "responsible person" are uncertain and speculative.

**B. The SEC's Judgment Against Plaintiff Necessitated the Corporate Restructuring Of JGH, Hence Plaintiff Cannot Sufficiently Allege Actionable "Duress"**

As explained above, Plaintiff's elliptical and conclusory allegations of "duress," relating to the November 7, 2018 agreements attached as Exhibits A and B to the Complaint, fail even to acknowledge the existence of the May 2018 SEC judgment against Plaintiff making him a "Bad Actor" for purposes of the corporations' attempts to raise additional capital to buy him out and/or to satisfy the alleged FET liabilities.

/ / /

### C. Draft Valuations of CFG Include Both JGH and JFGH, Nullifying Any Claims of Misappropriation

Plaintiff attached to his Complaint draft "enterprise valuations" of CFG aka "the Company," which "Company" includes the combined assets of JGH and JGFH as well as third-party Jet Agency LLC. The draft valuations require clarification and context. First, these draft "enterprise valuations" (see, Exs. C & D (Documents 1-4 and 1-5, respectively)), are indisputably "drafts" and neither draft purports to be a final valuation. Second, both draft valuations were of CFG, which included JGH and JGFH together (along with third-party Jet Agency LLC) contradicting the allegations of misappropriation of JGH Intellectual Property. Third, the first draft valuation from February 2022 does not support Plaintiff's claims there is any significant value for JGH Intellectual Property. Fourth, the draft valuations indicate that Plaintiff is a twenty-five percent (25%) shareholder of JGFH, but curiously neglect to report on the ownership of JGH. Fifth, the draft valuations do not include nor account for the alleged FET liability and, thus, are materially incomplete and inaccurate. Sixth, the draft valuations do not account for this pending litigation and its continuing damage to the Company's value.

By attaching and purporting to rely on these unauthenticated "draft" valuations of CFG, Plaintiff concedes that whatever the purported value of JGH Intellectual Property, it has been properly considered in corporate planning, including Plaintiff's problematic ownership in JGFH. Even assuming *arguendo* there was a transfer of JGH Intellectual Property to JGFH for any purpose(s), the inclusion of both entities as part of "the Company" being valued further supports the inference that any such alleged transfer was done pursuant to proper notice and corporate authorization.

### D. The Fourth Cause of Action for Purported Breach of Fiduciary Duties Should Be Dismissed Because it is Also a Shareholder Derivative Claim

The Fourth Cause of Action for breach of fiduciary duty should be dismissed for the same reasons identified above in Section III.A.1. regarding Plaintiff's lack

of standing to assert misappropriation of trade secret claims on behalf of JGH (and/or JGFH) for failure to satisfy the prerequisites of a shareholder's derivative action. See *Schrage v. Schrage*, 69 Cal.App.5th 126, 148-152 (2021).

**E. The Complaint Fails to State Fraud Allegations with Particularity as Required by Fed.R.Civ.P. 9 (b)**

The Complaint fails to allege fraud with particularity as required by Rule 9(b). Plaintiff advances a fraud theory premised upon false promises, alleging:

> ¶ 25. Defendant Brown used his position as the controlling responsible party for all Defendants to fraudulently induce the Plaintiff into a contract . . .with **false promises** by Defendants Brown and JGH . . . .
>
> ¶ 31. Defendant Brown continued his conspiracy to defraud the Plaintiff and the JGH shareholders. . .all while **falsely promising** the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and would be properly documented."
>
> ¶¶ 67/72. Plaintiff . . .relinquished both his Board seat and 24.5% of the equity and shareholdings in his company based upon the **false promises** that the JGH Intellectual Property would be properly documented and the FET would be paid. . . ."
>
> ¶ 111. Defendant Brown continued his conspiracy to defraud the Plaintiff and the JGH shareholders . . . **while falsely promising** the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and would be properly documented."

False promise is a subspecies of fraud. A plaintiff asserting a promissory fraud claim must plead and prove that the defendant made a promise to him that it had no intention of performing." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.* 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015). For false promise, ". . .something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.* 39 Cal. 3d 18, 30–31 (1985) (citation omitted); see also, *Mesa Safe Company, Inc. v. Amazon.com Services, Inc.* 2019 WL 6723422 *5 (C.D. Cal. Oct. 4, 2019) ["alleged nonperformance of a contract is not sufficient alone to support an allegation of fraudulent intent".) A "plaintiff in an action on a fraudulent promise must produce evidence of the

promisor's intent to mislead him." (Id.) "[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Magpali v. Farmers Group, Inc.* 48 Cal.App.4th 471, 481, (1996) quoting *Tenzer*, supra.

In dismissing a cause of action for promissory fraud, the Federal Court for the Central District of California stated: "As with the [second amended complaint], the [third amended complaint] does not allege facts supporting fraudulent intent at the time any alleged false representations were made, a necessary element to plead fraud under California law. [Citation.] Instead, the [third amended complaint merely alleges contractual nonperformance...[t]herefore, [Plaintiff] has not [alle]ged sufficient facts that [Defendant] fraudulently intended to induce [Plaintiff]." *Mesa Safe Company, Inc. v. Amazon.com Services, Inc.* 2019 WL 6723422 *5, *14 (C.D. Cal. Oct. 4, 2019) emphasis in original.

The District Court further explained: "As the Court noted in its prior order, alleged nonperformance of a contract is not sufficient alone to support an allegation of fraudulent intent. *Tenzer*, 39 Cal.3d at 30; see also UMG, 117 F. Supp. 3d at 1110; *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEGBLM, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007) ("In the instant case, the only allegations in the complaint that could demonstrate defendants' fraudulent intent are claims that defendant ultimately did not perform the material terms of the contract. Plaintiffs' reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced."); *Sunnyside Development Co., LLC v. Opsys Limited*, No. C 05–0553 MHP, 2005 WL 1876106, at *5–6 (N.D. Cal. Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made."); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153 –54 (S.D. Cal. 2001) (merely alleging that

defendant breached a contract did not adequately plead that it entered into the agreement with no intent to perform). Having added no additional allegations demonstrating fraudulent intent at the time the alleged misrepresentations were made, [Plaintiff] fails to plead the intent prong of its claim for promissory fraud. It is not enough for [Plaintiff] to allege, as it has done in the [third amended complaint], that [Defendant] breached certain conditions of its contract." (*Mesa Safe Company, Inc. v. Amazon.com Services, Inc.* (C.D. Cal. Oct. 4, 2019) 2019 WL 6723422 *5, emphasis added.)

Plaintiff's fifth cause of action has conclusory allegations only. While Plaintiff certainly alleges Defendant breached a contract, he does not provide the requisite factual details supporting his false promise allegations. This is particularly true as to the corporations. The conspiracy claims, based on vague allegations of fraud and a single person conspiracy similarly fail. Thus, Plaintiff's Fifth Cause of Action for Fraud and Sixth Cause of Action for Conspiracy should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**F. The Complaint Fails to Allege a Conspiracy Because Defendant Brown Cannot Conspire with Himself in Whatever Capacity**

In *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), the court affirmed dismissal of Appellants' First Amended Complaint ("FAC") without leave to amend, holding "...that the [FAC] failed to plead evidentiary facts sufficient to establish a conspiracy." The court quoted from *Twombly*, supra, in the context of anti-trust conspiracy allegations:

> [A] plaintiff's obligation to provide the "grounds" for his "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. (Citations omitted)... In applying these standards to a [conspiracy claim] we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.

*Id.* at 1046-47 (emphasis supplied).

Since corporations and limited liability companies can only act through their officers and agents, Plaintiff's Sixth Cause of Action labeled "Conspiracy" against all defendants must fail because the only officer or agent identified is Defendant Brown. It beggars reason to suggest that Brown agreed with himself, but Brown is the only person identified as acting for the defendant entities. Moreover, pursuant to the intracorporate conspiracy doctrine a corporation cannot conspire with its officers, employees, or agents as a matter of law. *See e.g., Hoefer v. Fluor Daniel, Inc.*, 92 F.Supp.2d 1055, 1057 (C.D. Cal. 2000).

**G. Plaintiff's Claim for Unjust Enrichment is Barred**

It is well settled under California law that a cause of action for unjust enrichment does not exist. (See e.g., *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387; *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1490; *California Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315 and *Lauriedale Assocs., Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439, 1448.) Unjust enrichment is not "even a remedy." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.) Rather, it is a "general principle, underlying various legal doctrines and remedies." (*Id.*, emphasis added.) In fact, it has been held that unjust enrichment "is synonymous with restitution." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793; see also *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.)

Here, Plaintiff alleges "unjust enrichment" as the Eighth Cause of Action against all defendants. *See*, Complaint at 33:6-37:3. Well-established California law makes it clear that the existence of an enforceable written contract precludes an unjust enrichment theory between the parties to the contract. (See *Durell v. Sharp* (2010) 183 Cal.App.4th 1350, 1370 ["As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. [Citation.] An unjust enrichment theory is inapplicable because [plaintiff] alleges

the parties entered into express contracts."].) The Ninth Circuit has upheld this notion, stating, "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." (*Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016); see also *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ["unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.")

Plaintiff's third cause of action (for breach of contract) alleges he entered into a shareholder agreement with Defendants – which he alleges Defendant breached when he ". . .failed to make payments to Plaintiff for any purported permissible transfers of the JGH Intellectual Property as required by Section 4 . . . ." Complaint at ¶ 83.

Plaintiff's eighth cause of action alleges "Defendants were unjustly enriched by the misappropriate (sic) of JGH's and Plaintiff's trade secrets contained in the JGH Intellectual Property. . . ." Complaint at ¶ 139.

Plaintiff seeks recovery of the same damages for the same act under both contract and unjust enrichment theories. Because unjust enrichment does not lie when an enforceable, binding agreement exists defining the rights of the parties, Plaintiff's unjust enrichment count fails as a matter of law.

**H. <u>Plaintiff Fails to Join an Indispensable Party</u>**

Rule 12(b)(7) permits defendants to challenge the Complaint's failure to join "persons whose presence is needed for a just adjudication" under Fed.R.Civ.P 19. It is well-settled that in an action to set aside a contract, all parties to the contract must be present. *See Wilbur v. Locke* 423 F.3d 1101, 1113 (2005), (stating "it is a 'fundamental principle' that a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.") (citing *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156–57 (9th Cir.2002)); *Northrop Corp. v. McDonnell Douglas Corp.*, 705

F.2d 1030, 1044 (9th Cir.1983) ("[A]ll parties who may be affected by a suit to set aside a contract must be present"); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable").

In this case, Plaintiff seeks "temporary, preliminary, and permanent injunctive relief to restore Plaintiff *and non-party shareholder Wolf* to the Board of Directors of Defendants and to order a new shareholder agreement with customary protective and minority shareholder rights reflective of those initially held by Plaintiff *and non-party Wolf*." Complaint, Prayer for Relief, page 36:2-5. Wolf will certainly be affected if the shareholder agreement is set aside and he is appointed as a director, and Plaintiff's failure to include him in this lawsuit is improper under Fed.R.Civ.P 12(b)(7).

## V. CONCLUSION

For the forgoing reasons, Defendants respectfully request the Court dismiss the Complaint pursuant to Rule 12(b)(6), 12(b)(7), and 12(b)(1) of the Federal Rules of Civil Procedure.

*Respectfully Submitted,*

Dated: September 9, 2022

HIGGS FLETCHER & MACK LLP

By: */s/ Nicholas D. Brauns*
NICHOLAS D. BRAUNS
EDWIN M. BONISKE
Attorneys for Defendants
JORDAN BROWN AND C3 JETS LLC

11226081.1