WADE MILLER LAW
Wade A. Miller CBN 208980
5072 Mount Casas Drive
San Diego, CA 92117

Attorneys for Plaintiff
Aaron Stanz

WADE MILER LAW
Attorneys at Law
507 MOUNT CASAS DRIVE
SAN DIEGO, CA 92117

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**Plaintiff Aaron Stanz, individually and on behalf of Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc. as a shareholder,**

**Plaintiff,**

**v.**

**Defendants Jordan Brown (individually and in his capacity as CEO, Director, and Chairman of co-defendants Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc.), Jet Genius Holdings, Inc., Jet Genius Florida Holdings, Inc., C3jets LLC, Bowman Aviation, Inc., Jet Agency Global LLC, C3 Limo LLC, Brown Family Trust, and Does 1-20,**

**Defendants.**

**Case No. 3:22-cv-01164-GPC-JLB**

**First Amended Complaint for Injunctive Relief and Damages for Violation of the Racketeer Influenced and Corrupt Organization Act, Defend Trade Secrets Act of 2016, California Uniform Trade Secrets Act, Breach of Contract, Breach of Fiduciary Duty, Fraud, Conspiracy, Accounting, Unjust Enrichment, Equitable Indemnity**

**<u>FIRST AMENDED COMPLAINT OF PLAINTIFF AARON STANZ</u>**

**NOW COMES**, Plaintiff Aaron Stanz ("Plaintiff"), individually and on behalf of Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc. as a shareholder, by and through his undersigned counsel, and hereby files this First Amended Complaint pursuant to F.R.C.P. 15 and alleges causes of action against Defendants Jordan Brown (individually and in his capacities as CEO, Director, and Chairman of both of co-defendants Jet Genius Holdings, Inc. and Jet Genius

Florida Holdings, Inc.), Jet Genius Holdings, Inc., Jet Genius Florida Holdings, Inc., C3jets LLC, Bowman Aviation, Inc., Jet Agency Global LLC, C3 Limo LLC, Brown Family Trust, and Does 1-20 (collectively, "Defendants"), and in support thereof avers as follows:

**INTRODUCTION**

1. This action stems from a years-long business relationship in companies in the private aviation industry between the Plaintiff and Defendants, which through Defendant Jordan Brown's greed and illegal actions devolved into a coordinated scheme orchestrated by Defendant Jordan Brown to siphon off the assets of the companies and defraud its clients, whilst ignoring its tax obligations and enriching Defendant Jordan Brown personally with millions of dollars. This scheme misappropriated the intellectual property which rightfully belonged to the company Plaintiff co-founded and rightfully owns 49.5% of, which enabled Defendant Jordan Brown to create an enterprise which misdirected over $125,000,000 in revenue from Plaintiff's company. Defendant Jordan Brown fraudulently directed the assets and revenue to support his lavish lifestyle under a scheme where the enterprise defrauded its clients by charging them for more than $5,000,000 in taxes which were illegally kept for the enterprise instead of remitting to the Internal Revenue Service as required by law. Defendant Jordan Brown oversaw this scheme to expand this enterprise into new ventures while severely indebting the company he and Plaintiff co-founded with millions of dollars of unpaid taxes owed to the Internal Revenue Service, including nearly $1,300,000 which it has individually assessed against Plaintiff.

2. The company Plaintiff co-founded with Defendant Jordan Brown ("Brown" or "Defendant Brown"), Defendant Jet Genius Holdings, Inc., was independently valued by Defendants' own professionals at approximately $67,000,000. Plaintiff first learned there might be unremitted taxes during events leading up to a failed attempt by the shareholders to wrest control of the business from Brown. Through intimidation and under duress from Brown's threats to destroy Plaintiff's company, and Plaintiff's fear of Brown's volatile temper, Plaintiff was fraudulently induced into an agreement to surrender his Board oversight, remove his rights as a shareholder, and reduce his equitable shareholdings and years long efforts in his own company.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

3. Plaintiff was fraudulently induced to surrender these rights through a series of false promises and a contract from Defendants Jet Genius Holdings, Inc. and Brown where they falsely agreed to implement corporate controls and good faith efforts to segregate funds for owed taxes and begin payment towards millions of dollars already owed to the Internal Revenue Service ("IRS") for unpaid Federal Excise Tax ("FET"). Defendants Jet Genius Holdings, Inc. and Brown instead took the opportunity, after fraudulently inducing the Plaintiff to agree, to cancel a financial audit in progress, ignore the FET, and disregard the required corporate formalities and oversight for a properly re-constituted Board comprised of three Directors as required by California law.

4. This unilaterally enabled Brown to wrongfully take invalid sole control of the Board, and he used this position to direct the breach of agreements, establishment of unauthorized subsidiaries and new companies, approval of self-dealing contracts, misappropriation of trade secrets and intellectual property, and orchestration of an elaborate enterprise scheme to defraud the clients and business partners of the company. This scheme grew to over $5,000,000 collected for FET over the course of several years through contracts and charges which the clients and business partners of the business were falsely informed was for remittance to IRS, when in reality it was unlawfully invested into the enterprise.

5. This scheme enabled Defendant Brown to take at least $1,000,000 in base salary, millions of dollars in additional commissions on client bookings, an additional $2,000,000 in disproportionate "distributions" to Brown only as a shareholder in comparison to $23,500 aggregate to <u>*all*</u> other shareholders, as well as hundreds of thousands of dollars' worth of sham "loans" sent to the businesses in the enterprise designed to benefit Defendant Brown and his family. Brown oversaw this siphoning of millions of dollars for himself and the enterprise while ignoring the past due FET and incurring additional FET, including from charges collected from his own clients' trips which he used to enhance his commissions rather than fulfilling his obligations to remit to IRS as required by Federal law. The Defendants' actions have now subjected the Plaintiff to imminent irreparable injury.

6. Defendants misappropriated Plaintiff's intellectual property and invalidly set up new companies to evade FET and dilute Plaintiff's shareholder value. Brown, as orchestrator of this enterprise by way of his control over the actions of all Defendants, directed Plaintiff's misappropriated intellectual property to be embedded throughout the enterprise, thus enabling him to defraud his business partners, shareholders, clients, and the Federal Government. The fraudulently charged FET collected from customers – who ultimately may be responsible for FET assessed against purchasers of air travel – was not held in trust for the IRS as required both by law and as fraudulently promised by Defendant Brown and Jet Genius Holdings, Inc. in the agreements they induced Plaintiff to cede his rights under, but instead used by Brown to preside over, fund, and operate the enterprise. This enabled Brown to breach the contractual obligations of the companies, his fiduciary duties to the Plaintiff and fellow shareholders, and pay himself millions of dollars while ignoring requisite corporate formalities, while exploiting his position as Chairman, CEO, and fiduciary of Plaintiff's company to misappropriate its intellectual property and funnel millions of dollars throughout interstate commerce into new companies and holdings controlled by Defendant Brown and his immediate family in the private aviation industry.

7. Brown illegally collected FET for his own benefit and operation of the enterprise, leading to the current imminent irreparable injury faced by the Plaintiff by actions of the IRS which have assessed nearly $1,300,000 against Plaintiff individually. Brown admitted that the IRS's pending actions against the Plaintiff are Brown's own responsibility due to the wrongful and fraudulent actions of the Defendants, and have left Plaintiff with no remedy available other than to seek a Preliminary Injunction in the instant case to force Defendants to cease their criminal actions and misappropriation of Plaintiff's intellectual property, address their FET obligations to the IRS, and to cease their ongoing use of the platform and technology misappropriated by the Defendants to facilitate their criminal collection of FET from air passengers without remittance to IRS

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## PARTIES

8. Plaintiff is a competent adult and was a citizen of the State of California until March 1, 2022, when he obtained a leasehold in the State of Kansas and now is a resident of the State of Kansas. Plaintiff is the co-founder, Chief Technology Officer, major shareholder, and former Director of JGH, and a major shareholder of JGFH. Plaintiff currently owns 25% of the shares of JGH and JGFH, and is the rightful owner of 49.5% of both JGH and JGFH after being fraudulently induced by Defendants Brown and JGH to relinquish 24.5% of the equity as detailed in the Shareholder Agreement, and he seeks rescission of such relinquishment and enforcement of the valid provisions of the Shareholder Agreement due to Defendants' actions in this matter.

9. Defendant Jet Genius Florida Holdings Inc. ("JGFH") is a company incorporated and with its principal place of business in the State of Florida. JGFH operates throughout the United States in its capacity as an air charter broker to match client travel needs with available air charter operators for commercial purposes in interstate commerce.

10. Defendant Jet Genius Holdings Inc. ("JGH") is a company incorporated in the State of California and with its principal place of business in the State of Florida. Prior to 2020, JGH's principal place of business was in the State of California. JGH operates throughout the United States in its capacity as an air charter broker to match client travel needs with available air charter operators for commercial purposes in interstate commerce.

11. Defendant Brown is a natural person and citizen of the State of Florida. Defendant Brown is the Chairman and CEO of JGH and JGFH, the sole Member of Defendant C3jets LLC, and upon information and belief the sole member of Defendant Jet Agency Global LLC, the sole shareholder of Defendant Bowman Aviation, Inc., and along with his wife Stacy Brown a Trustee of Defendant Brown Family Trust defined below.

12. Defendant C3jets LLC ("C3 Jets") is an Idaho limited liability company with its principal place of business in the State of Idaho and throughout the United States, where it operates private aircraft for commercial purposes in interstate commerce. Defendant C3 Jets is believed to be engaged in an aircraft lease or lease-purchase agreement for a certain aircraft, a

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

2000 year Hawker 800XP, Serial Number 258448, Tail Number N15RY. Defendant C3 Jets is further believed to be engaged in a lease or lease-purchase agreement for a certain aircraft, a 1998 year Hawker 800XP, Serial Number 258354, Tail Number N789HA. Upon information and belief, C3 Jets' sole member is Defendant Brown.

13. Defendant Bowman Aviation, Inc. ("Bowman Aviation FL") is a Florida corporation with its principal place of business in the State of Florida where it performs contract services (via Defendant Brown) for JGH and JGFH which upon information and belief include air charter broker services and aircraft sales for commercial purposes in interstate commerce. Upon information and belief, Bowman Aviation FL is the corporate successor in interest to a Bowman Aviation, Inc. of California incorporated by Defendant Brown in California in 2011, inactive in 2020, and suspended by California in 2021 ("Bowman Aviation CA"). The details and corporate formalities which combined the operations of Bowman Aviation CA with Bowman Aviation FL are known to Defendant Brown and unknown to Plaintiff. Actions throughout the events in this complaint were undertaken by either Bowman Aviation FL or Bowman Aviation CA, which are together referred to herein as "Bowman Aviation".

14. Defendant Jet Agency Global LLC ("Jet Agency") is a limited liability company domiciled and with its principal place of business in the State of Florida. Upon information and belief Jet Agency is operated by Defendant Brown as its sole member and manager. Brown has admitted that Jet Agency is considered the "same company" as Defendants JGH and JGFH.

15. Defendant C3 Limo LLC ("C3 Limo") is a limited liability company domiciled and with its principal place of business in the State of Florida, which is managed by its managing member, Chasen Dobos, who is Defendant Brown's stepson as well as the VP of Operations for JGFH. Defendant Brown's wife Stacy was the managing member at its formation in September 2020 and Chasen Dobos is listed as the managing member as of March 2022 on its annual report. According to the most recent public filing with the State of Florida, C3 Limo utilized the official JGFH and JGH company address in Florida as C3 Limo's registered office until April 14, 2022 and the official email address which remains on file with the State of Florida for the business to

receive annual report filings from the State of Florida remains a “FlyCFG.com” domain email address, which is part of the JGH Intellectual Property defined herein.

16. Defendant Brown Family Trust, upon information and belief, is a Florida Trust referred to as Brown Family Trust dated July 26, 2021 (“Brown Family Trust”) which is the name listed on the share certificates of Defendant JGFH which were improperly assigned to the Brown Family Trust despite the JGH requirement in the Shareholder Agreement defined herein to establish an employee equity incentive plan.

17. Does 1 through 20 are the agents, employees, co-trustees, or employees of the named defendants and acted within the scope of that agency, employment, or trusteeship. The capacities of Does 1 through 20 are unknown to plaintiff.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal questions jurisdiction), because Plaintiff’s federal claims, pursuant to 18 U.S.C. § 1836(c) and 18 U.S.C. § 1962 arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a), where supplemental jurisdiction exists “over all other claims that are so related to claims in this action . . . that they form part of the same case or controversy under Article III of the United States Constitution.” 28 U.S.C. § 1367(a).

19. This Court has further proper jurisdiction under 28 U.S.C. § 1332(a), based on the diversity of the parties. Plaintiff is a citizen of the State of Kansas, Brown is a citizen of the State of Florida, JGH is a corporation domiciled in California with its principal place of business in the State of Florida, JGFH is a corporation domiciled and with its principal place of business in the State of Florida, C3 Jets is a limited liability company domiciled and with its principal place of business in the State of Idaho, Bowman Aviation, is a corporation domiciled and with its principal place of business in the State of Florida and is the successor in interest to Bowman Aviation CA which conducted its business primarily in the State of California, C3 Limo is a limited liability



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

company domiciled and with its principal place of business in the State of Florida, Jet Agency is a limited liability company domiciled and with its principal place of business in the State of Florida, and Brown Family Trust upon information and belief is a Florida Trust.

20. The amount in controversy is more than $75,000.00, exclusive of costs.

21. Venue is proper in this court because the contract was consummated in this jurisdiction, Plaintiff Stanz was damaged in this jurisdiction, the intellectual property in dispute was primarily developed in this jurisdiction and subject to this jurisdiction, and the crimes alleged predominantly were sent through the wires from this jurisdiction. Additionally, JGH had its principal place of business in this jurisdiction, and along with Defendant Brown and Plaintiff consented to hear disputes relating to the agreements in question in the courts of this jurisdiction, and Defendants C3 Jets, Bowman Aviation, Jet Agency, and C3 Limo all received the misappropriated intellectual property that was developed in this jurisdiction and governed by the contract which subjects them to this jurisdiction.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

22. JGH was formed in California in 2016 and started operating in 2017 to offer a technical business-to-business logistics platform servicing the private aviation industry. JGH's founders are Plaintiff Stanz, Defendant Brown, and non-party Alexander Wolf ("Shareholder Wolf"), a childhood friend of Brown. Stanz and Brown were both 49.5% shareholders, and Shareholder Wolf was a 1% shareholder. Brown always has been JGH's CEO.

23. Plaintiff Stanz was the Chief Technology Officer ("CTO") of JGH as he uniquely possesses the technical expertise on setting up, architecting, developing, and managing development for innovative technologies that simplify and accelerate business processes for aircraft charter brokering, which made up JGH's "GRID" logistics platform (the "Technical Expertise"). Plaintiff's Technical Expertise enabled JGH's GRID technology platform to significantly decrease time and costs associated with buy-side and sell-side actions required to

complete complex transactions for brokering and provisioning a chartered aircraft, at all stages of a transaction, from seeking interested clients (lead collection), initial client contact, quoting available aircraft options, obtaining beneficial pricing, generating contracts, sending contracts, contract signing, facilitating and recording several substages of financial transactions (including pre-flight ground transportation, and post-flight ground transportation), provisioning an aircraft to be available at a specific location and time, correlating post-flight feedback and post-flight marketing for future flights, and creating internal software controls to monitor staff and resources to achieve maximum business output, measure staff responsiveness, monitor staff throughput capacity, track and record financial transactions, generate contracts, send contracts, list global aircraft inventory, and more (collectively, the "JGH Platform" and/or the "GRID").

24. Stanz believed that all was well with business until the summer of 2018 when Shareholder Wolf informed Plaintiff that the company had unpaid FET despite having adequate capital to pay FET at the time it was due. The unpaid FET owed was approximately $935,000 in May 2018, and has ballooned to over $6,721,350 since then.

25. After discovering that Defendant Brown was illegally not remitting the owed FET to IRS, Plaintiff and Shareholder Wolf sought to have JGH's financials audited, and received proposals from various firms, including one from Barnthouse & Associates on July 23, 2018 and KPMG LLP on August 3, 2018. When the Board was presented with these audit proposals, at an August 22, 2018 shareholder meeting Brown admonished Stanz and Shareholder Wolf for bringing up the audit issue, said that this criminal act was his decision alone and stated - while quoting what Defendant Brown said were the words of Mark Zuckerberg - "I'm CEO, B*tch!" and abruptly left the meeting shortly thereafter.

26. At an August 29, 2018 shareholder meeting, despite having two proposals for audits from additional firms, at the demand of Defendant Brown all shareholders acquiesced to vote in favor of an audit with a firm Defendant Brown favored, Lavine, Lofgren, Morris & Engelberg, LLP ("LLME").

27. Plaintiff notified Defendant Brown at the August 29, 2018 shareholders meeting

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

that Brown's actions could bankrupt the company. In response, Brown admitted that his actions were improper and selfish. Shareholder Wolf offered to find $300K to remedy the problem, and Plaintiff warned Brown that JGH's Directors and shareholders could be exposed to the IRS for Brown's failure to pay the FET. Plaintiff admonished Defendant Brown that "they [IRS] are going to come after you." After Plaintiff Stanz and Shareholder Wolf confronted Brown of his bad actions, he pretended to proceed with the audit process through LLME in order to quiet Stanz and Shareholder Wolf's persistence on the audit issue. An engagement with LLME was scheduled to commence on September 10, 2018 as reported in the September 5, 2018 Board minutes, confirmed in the September 12, 2018 Board minutes that LLME was engaged, and recorded in the September 19, 2018 Board minutes that LLME had been retained for the audit with retainer wire transfer.

28. After the shareholders initially confronted Brown about the FET, he became verbally abusive and hostile, and threatened to disrupt business to the point of bankrupting the company. Stanz believed these threats and feared Brown's volatile nature and potential for violent outbursts, especially with his predilection to maintain firearms in the JGH workplace. Stanz believed that if Brown followed through on his threat to bankrupt the company, there would be no facility left to pay the FET owed to the IRS, potentially exposing the JGH shareholders – including Stanz – to personal liability to the IRS.

29. Throughout the negotiations surrounding the audit and the attempt by the shareholders to wrest control of JGH from Brown in the late summer and fall of 2018, Plaintiff and JGH discussed a modification to the corporate structure which would implement controls to protect the shareholders and address the FET. Under duress, on November 7, 2018 Plaintiff Stanz entered into the Shareholder Agreement (attached hereto as a true and correct copy as *Exhibit "A"*) and its contemporaneously executed assignment of intellectual property by Plaintiff to JGH (attached hereto as a true and correct copy as *Exhibit "B"*) wherein Stanz would relinquish almost half his shares (lowering him from a 49.5% shareholder to a 25% shareholder) on the condition that revenue would be used to pay the taxes owed to the IRS, that valuable intellectual property

including the JGH Platform would not be transferred without proper documentation or compensation to Plaintiff, and that of the 24.5% share reduction by Plaintiff, 10% of the shares would be allocated for a properly constructed employee equity incentive plan. As part of the Shareholder Agreement, Brown required Plaintiff Stanz and Shareholder Wolf to no longer serve on the Board of Directors, under the false promise by Brown and JGH to fill the vacancies with two new independent Directors (the "Board Coup").

30. After consummating Brown's power grab in the Board Coup, Brown ignored the corporate formalities and requirement to fill vacancies, as provided for in the Article III Section 4 of the Bylaws of Jet Genius Holdings, Inc. dated January 20, 2017 signed by Defendant Brown. (hereinafter "Bylaws" attached hereto as a true and correct copy as *Exhibit "C"*) Defendant Brown – the invalidly sole remaining Director of JGH – ignored the requirement in the Bylaws to fill the vacancies of JGH's Board, and both Brown and JGH subsequently disregarded the corporate formalities of the Bylaws and California law for a corporation to maintain a Board of Directors of at least three persons, which was never rectified. Brown and JGH further failed to maintain the accurate reporting of JGH's invalid Board in contravention of the requirement in Article VII Section 7 of the Bylaws to file accurate statements with the Secretary of State of California listing the Directors and business addresses of the Directors, since no such filings would reflect the three requisite Directors required in California Corporations Code Section 212 for a corporation with three shareholders.

31. Brown then used the invalidly structured JGH to assist in his architecture of a criminal enterprise to enrich himself and his family to the detriment of JGH and its shareholders. The financial audit by LLME – an integral part of the negotiations of the Shareholder Agreement which was in progress and which had been agreed to by Stanz, Shareholder Wolf, Brown, and JGH to track Brown's activities – was never completed, and upon information and belief was cancelled by Brown almost immediately after the Board Coup.

32. Brown's complete and fraudulent control of JGH through the false promises under the Shareholder Agreement and Bylaws by Defendants Brown and JGH thus set the stage to allow

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Brown to continue his illegal history of failing to pay owed FET (which he agreed to segregate and collect in dedicated accounts) and provided him the resources and control to begin swiftly misappropriating the assets and intellectual property of Plaintiff and JGH. Brown attempted to accomplish this when he promptly began directing the agents and attorneys of JGH to improperly establish subsidiaries and third-party companies to further dilute JGH shareholder value by misappropriating the JGH Platform including the GRID, further enabling him to commence a plethora of self-dealing transactions and contracts all in violation of the Shareholder Agreement. Brown did such at all times as a fiduciary, and his self-dealing and evasion of FET and hiding of assets from the IRS through the new companies and recipients of JGH assets – among which are Brown's co-defendants – was done in contravention of his duties to protect the interests of the minority shareholders of JGH, and in contravention of his wrongfully and invalidly constituted position on the Board of JGH. All of this was done in violation of the Shareholder Agreement, Section 6, which states that "The Company will continue to work toward a settlement with the IRS related to past excise taxes that avoids personal liability of the Company's past and current officers and directors in connection therewith."

33. Rather than fulfilling his duties as a fiduciary, from the moment Defendant Brown obtained Plaintiff's signature on the Shareholder Agreement and seized control of the improperly constituted Board of Directors of JGH (and in contravention of the agreed upon plan by the Board of JGH and its advisors to proceed to pay IRS under a plan for an amount equal to roughly $1,300,000 which JGH owed for its previously unpaid FET) Brown chose to conspire with the Defendants and the CFG Personnel as defined below to drain the value of JGH by misappropriating Plaintiff's and JGH's intellectual property and trade secrets such as the JGH Platform including the GRID and the JGH Intellectual Property defined below. The JGH Platform including the GRID rightfully belong to Plaintiff, and only were agreed to be assigned to JGH alongside of 24.5% of Plaintiff's rightful 49.5% equity shareholdings in a valid assignment to his own company which he co-founded. Brown instead oversaw the invalid transfer of assets in breach of the Shareholder Agreement under an invalidly constituted Board, which purportedly



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

enabled him to invalidly establish *new* companies to siphon JGH's shareholder value, while illegally ignoring the FET obligations and hiding assets and obligations from the IRS in the new companies represented by the Defendants. This was done while the business generated over $125,000,000 in revenue, yet saw its unpaid FET balance balloon to nearly $7,000,000 collected from clients but unremitted to IRS.

34. Despite Brown and JGH having a path agreed to by its shareholders and advisors to satisfy the $1,300,000 in FET owed to the IRS, following the Board Coup and each year thereafter Brown failed to meet the FET obligations. Less than one year after the Board Coup, during the time which Defendant Brown should have been fulfilling his fiduciary duties to the shareholders of JGH, Defendant Brown breached his obligations under the Shareholder Agreement and his fiduciary duties by improperly incorporating Defendant JGFH in the State of Florida on August 27, 2019 to serve as a "shell" which Defendant Brown could solidify his efforts from the Board Coup by creating a *new* entity which would have absolutely no oversight or accountability to the shareholders of JGH.

35. This scheme, which JGH lacked the requisite corporate formalities to authorize due to the vacancies on JGH's Board, enabled Brown to siphon JGH's assets, intellectual property (such as the JGH Platform including the GRID and the JGH Intellectual Property defined below), as well as the business accounts, employees, client lists, and domain names into JGFH without visibility to the JGH shareholders. Many of the assets in the JGH Intellectual Property were purportedly transferred by Brown in a surreptitious manner to hide the assets from the IRS.

36. This scheme was orchestrated not to benefit JGH's shareholders, but to instead benefit the Defendants. For instance, when establishing the share structure for JGFH, not only did Defendant Brown fail to allocate 10% of Plaintiff's relinquished shares to an employee equity incentive plan as agreed to with Plaintiff and JGH in the Shareholder Agreement, Brown extended this improper "mirroring" of JGH shares to allocate 10% of the JGFH shares not to an employee equity incentive plan but instead to Brown individually, thus enabling Brown to

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

wrongfully allocate his shareholdings to Defendant Brown Family Trust, which upon information and belief both Defendant Brown and his wife Stacy are Trustees of. No valid employee equity incentive plan was established.

37. Following the Board Coup, any effective effort which could be afforded by Plaintiff or the JGH shareholders to seek recourse was futile, as Defendant Brown improperly constituted the entirety of JGH's Board in contravention of California Corporate Law and the Bylaws. Notice to the Board for JGFH further was futile, as the JGH shareholders and Plaintiff were not provided with executed copies of the governance documents or structure of JGFH, it was incorporated without Plaintiff's or the JGH shareholders' knowledge, it's Board was comprised of parties unknown to Plaintiff which upon information and belief is solely Brown, and Defendant Brown substituted new shareholders and classes of shares within JGFH in conflict of the original structure of JGH and the Shareholder Agreement.

38. Once Brown's control in JGFH was solidified following the Board Coup, he continued his conspiracy to defraud the Plaintiff and the shareholders of JGH by structuring the GRID, the JGH Platform, Plaintiff's Technical Expertise, the software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names (such as jetcharter.com, jetagency.com, and flycfg.com), business methods, client lists, proprietary designs, and trade secrets (collectively the "JGH Intellectual Property") all underneath JGFH in a series of ***undocumented*** sham transactions, despite the plan for JGH to account for the JGH Intellectual Property, and in violation of the Shareholder Agreement Section 4. Brown misappropriated the JGH Intellectual Property through JGFH, C3 Jets, Jet Agency, Bowman Aviation, and C3 Limo.

39. The misappropriation of the JGH Intellectual Property was conducted without any valid license and created over $125,000,000 in unjustly enriched revenue to JGFH and its co-defendants without any valid compensation to Plaintiff or JGH. The sham nature of any supposed transfers of the JGH Intellectual Property is supported by the fact that transfers were not disclosed to the IRS despite the unpaid FET assessments against JGH and the requirements to disclose

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

assets of JGH, as well as the fact that none of the compensation rightfully owed to Plaintiff under Shareholder Agreement Section 4 for any *permissible* transfer was made. The JGH Intellectual Property was continually misappropriated to unjustly enrich third-party companies which were hidden from the JGH shareholders and structured solely with Defendant Brown and his family in control positions, but most brazenly it was misappropriated to defraud the clients of JGH and JGFH even after Brown agreed to rectify the FET situation. None of the exploitation of the JGH Intellectual Property by third parties without license was ever authorized by the Plaintiff, and he certainly did not consent to any usage by Brown or his co-defendants in a scheme to defraud the clients of JGH and JGFH.

40. Defendant Brown created additional schemes to defraud the JGH shareholders, the Plaintiff, the JGH and JGFH clients, and the Federal Government by making millions of dollars of fraudulent undocumented “loans” to Defendants Brown individually, C3 Jets, Jet Agency, C3 Limo, and Bowman Aviation with the fraudulently obtained revenue to expand this enterprise. The undocumented loans include at least $3,536,036 to Defendant Brown individually, $343,329 to Jet Agency, $135,571 to Bowman Aviation, $54,791 to C3 Limo, and $861,018 to C3 Jets (collectively the “Undocumented Multi-million Dollar Loans”) all while hiding this activity from the IRS while it continued to increase its attempts to assess and collect its unpaid FET against JGH, and all while Brown improperly remained the sole control person, Director, fiduciary, and CEO of JGH. In addition to the Undocumented Multi-million Dollar Loans, JGFH lists as a liability $177,437 of C3 Limo’s American Express account in the name of Chasen Dobos, Defendant Brown’s stepson and JGFH’s VP of Operations, despite an outstanding undocumented loan from JGFH to C3 Limo.

41. Defendant Brown’s fraudulent scheme generated more than $125,000,000 revenue without benefit to JGH or Plaintiff despite utilizing the GRID, the JGH Platform and JGH Intellectual Property without authorization, all while Brown falsely promised the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and its shareholders and would be properly documented. Defendant Brown made these promises, and indeed JGH’s

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

professionals such as Chis Popov of Watkins Firm, APC ("Attorney Popov") indicated to Plaintiff and JGH's outside tax advisors that JGH was proceeding towards a plan for repayment to the IRS as required in the Shareholder Agreement Section 6. Defendant Brown instead willfully ignored the previous $1,300,000 existing FET and repayment plan as obligated in the Shareholder Agreement to be paid in conjunction of the Board Coup, and secretly incurred nearly $5,200,000 *in additional* unpaid FET to the IRS, despite unjustly enriching himself with a base salary of at least $1,000,000 per year in addition to the commissions he charged the JGH and JGFH clients, and despite JGH's effective insolvency and multi-million tax debt to the IRS.

42. In June of 2021, the pressure from the IRS for its unpaid FET began to escalate, and through a series of discussions Defendants Brown and JGFH approached the Plaintiff with a *new* shareholder agreement which purported to give the Plaintiff shareholdings in JGFH (the "JGFH Draft"). The JGFH Draft was materially different than the existing Shareholder Agreement and contained numerous provisions which sought Plaintiff's indemnification of Defendant Brown for actions in violation of his fiduciary duties, for malfeasance, for fraud, and for failure to pay FET: in other words, the JGFH Draft attempted to force Plaintiff to waive the very rights he preserved in the instant case by not signing the JGFH Draft. Defendants Brown and JGFH presented Stanz with the JGFH Draft in the atmosphere of mounting pressure from the IRS against Plaintiff individually.

43. In or around October of 2021, the IRS, through its Revenue Officer Cindy Neville ("RO Neville") commenced contacting the Plaintiff regarding JGH's unpaid $1,300,000 in FET (which Defendants Brown and JGH already were obligated to pay and further confirmed during the Board Coup and as part of the Shareholder Agreement) and informed Plaintiff that several million additional FET was owed and assessed, and that Plaintiff bore individual responsibility as a shareholder. Plaintiff was informed by IRS that he would bear responsibility, despite the $1,300,000 figure for FET greatly exceeding the entirety of Plaintiff's historical compensation from JGH yet representing only a single year's worth of Brown's compensation he designated to himself. IRS informed the Plaintiff his responsibility stemmed from his name being listed on the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

initial bank account signature card prior to 2018.

44. Plaintiff was surprised and shocked to learn that he was being held responsible, since he had only been placed on the bank account signature card in 2017 under duress at Defendant Brown's direction when JGH's operations were under threat of shutting down while Defendant Brown was vacationing in the Caribbean: Defendant Brown directed the Plaintiff and ex-Controller John Oxide to arrange for an emergency bank account opening, and Brown directed former company staff accountant Laurie Rector to place Brown's signature stamp on the bank account documents, and further directed Plaintiff to sign since he was the only shareholder who would be physically present at the bank given Brown's impromptu Caribbean vacation. Plaintiff only agreed to sign the bank signature card so JGH's operations would not shut down immediately and did so only under duress at the direction and instruction to do so while Defendant Brown was trapsing about the Caribbean instead of tending to critical JGH operations. Defendant Brown directed Plaintiff to take no part in the financial affairs of JGH and Plaintiff agreed that Defendant Brown would have sole responsibility for the financial affairs and operations of JGH. Notwithstanding this agreement throughout the company's existence, when the IRS inquired about the unpaid FET Defendant Brown wrongfully directed the attention of IRS to Plaintiff's signature on the JGH bank card, despite knowing that Plaintiff had no participation or involvement with any of the company's financial affairs, and omitted the fact that Defendant Brown had directed Plaintiff to agree to such an arrangement under the immediate threat of JGH's business operations being shut-down.

45. After discovering the ongoing unpaid FET and tax matters, all discussions regarding the JGFH Draft were ceased by Plaintiff, who informed the Defendants that the most important issue was to resolve the past due FET. Defendants Brown, JGFH, and JGH, however, persisted in pressuring Plaintiff to accept the JGFH draft despite the threats against Plaintiff from IRS, and Plaintiff futilely requested JGH to provide him counsel and representation in the IRS proceedings. Defendants Brown and JGH refused to provide Plaintiff with legal representation or reimbursement for representation as required by the Bylaws of JGH, leaving Plaintiff to fend for

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

himself before the IRS despite JGH's requirement to provide Plaintiff with such representation. Not only did they leave Plaintiff without representation, they instead continued to pressure Plaintiff to acquiesce to the JGFH Draft despite, as Plaintiff subsequently learned, JGFH's incorporating documents' substitution of additional shareholders into JGFH who were not identical to JGH's shareholders in contravention of the Shareholder Agreement, including Defendant Brown Family Trust, and the establishment of a new class of shares that did not match the existing share structure of JGH.

46. Defendant Brown was fully aware that the IRS was incorrectly looking at Plaintiff as a responsible person for FET despite having no control or participation in JGH's finances other than the agreement under duress to sign the bank card while Defendant Brown retreated to the Caribbean on the brink of JGH's collapse, and yet Brown informed the IRS that Plaintiff was in fact a responsible party despite knowing this was not true. Brown used this opportunity to direct IRS to look towards Plaintiff as a responsible party, whilst simultaneously ensuring that Plaintiff would not have the adequate resources or representation to appear and defend himself before the IRS, or to protest the FET assessment against Plaintiff individually, by denying Plaintiff access to company counsel or reimbursement for independent counsel, in direct violation of JGH's Bylaws. When confronted about the FET, Defendant Brown admitted on November 4, 2021 "*I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point, please stop bringing it up!*"

47. Plaintiff, however, would not "get over it" nor stop bringing it up, because he did not believe (correctly so) that Defendant Brown was capable of "rais[ing] the money tomorrow to cover it" from outside parties, and realized that Defendant Brown's admission that he "would do it again" regarding Defendant Brown's willful and criminal failure to pay both the past due FET and continually accrued FET was directly in contradiction to his obligations as a fiduciary as Chairman of the Board, Director, and CEO of JGH to take care of the FET as agreed in the Shareholder Agreement. This was the entire substance of the Shareholder Agreement negotiated

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

following the Board Coup, and Plaintiff's relinquishment of 24.5% of Plaintiff's equity in his own company and seat on the Board would never occurred had Plaintiff known that Brown intended to deviated from the plan to address the FET situation in good faith.

48. Plaintiff further would not "get over it" or stop bringing it up, because he had first-hand knowledge that Defendant Brown had taken millions of dollars in compensation and self-dealing undocumented "loans" from JGFH and JGH instead of paying the FET, including the Defendants' Undocumented Multi-million Dollar Loans, and subsequent to Defendant Brown's creation of JGFH in August of 2019 over $125,000,000 in revenue had been unjustly generated in JGFH through the JGH Intellectual Property while JGH was left effectively insolvent. Brown let FET further accrue interest and fees remaining unpaid, with no meaningful revenue or assets other than the JGH Intellectual Property which had been misappropriated by Brown and his co-defendants, yet JGFH at all times possessed the resources and revenue to adequately address the FET. The misappropriation of the JGH Intellectual Property was done in dereliction of Defendant Brown's fiduciary duties despite the JGH Intellectual Property being the most likely source of revenue for the effectively insolvent JGH through the licensing or sale of the JGH Intellectual Property on the open market.

49. On February 2, 2022, Plaintiff received an enterprise valuation report prepared on behalf of Defendant JGFH by professional aviation industry valuation firm Avicor Aviation, Inc. of Beaverton, Oregon ("Avicor"). The report, prepared by Lilliam Tamm of Avicor at Defendant JGFH's election and own expense, provided a fair market valuation for JGFH of $14,368,000 (the "First Avicor Valuation" attached hereto as a true and correct copy as *Exhibit "D"*). On March 28, 2022, Plaintiff received a *second* valuation report prepared by Lilliam Tamm of Avicor on behalf of JGFH, this time inclusive of a separate valuation analysis related specifically to the technology and JGH Intellectual Property such as the JGH Platform including the GRID, which derived a fair market value of $66,710,000 (the "Second Avicor Valuation" attached hereto as a true and correct copy as *Exhibit "E"*).

50. In or around March of 2022, RO Neville increased her outreach to Plaintiff Stanz,

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

and informed him that the IRS intended to individually assess him for Defendant JGH's unpaid FET. Shortly thereafter, Plaintiff through his counsel, John Kirk ("Attorney Kirk", who's *pro hac vice* motion is forthcoming), proposed to JGFH's corporate counsel in Florida, Kyle Louramore ("Attorney Louramore") and Sarah Klee ("Attorney Klee") of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") as well as JGH and Brown's counsel in California, Mitchell Dubick of Higgs Fletcher & Mack LLP ("Attorney Dubick") that the IRS would be receptive to a payment towards the proposed assessed JGH Corporate Trust Fund recovery account with IRS in the amount of $125,000 which would tentatively allow the IRS to defer seeking an individual assessment for the unpaid FET against the Plaintiff as a shareholder of JGH (the "First IRS FET Proposal"). On March 23, 2022, Plaintiff, through Attorney Kirk, provided notice to the Board of JGH that since payment would be coming from JGFH on behalf of JGH, a possible way for structuring such a payment could be done via a license agreement for the JGH Intellectual Property which would allow JGH to make a payment for the unpaid FET (the "JGH Intellectual Property Proposal"), and further informed JGH's Board of its obligations to pay for Plaintiff's legal expenses as required by the Bylaws for Plaintiff's dealings with the IRS regarding the FET. Defendants failed to respond to Plaintiff's JGH Intellectual Property Proposal and Defendant Brown and JGH ignored the First IRS FET Proposal and refused to provide Plaintiff with counsel or reimbursement for counsel to appear before as required by the Bylaws, despite consenting to Shareholder Wolf receiving such representation as required.

51. On April 26, 2022 Plaintiff received a surprised mailing from Stearns Weaver sent via Certified Mail enclosing a stock certificate for 959,615 Class A Shares of JGFH (the "JGFH Stock Certificate") issued in Plaintiff's name, and issued despite Plaintiff never having executed the JGFH Draft. The shares were sent unsolicited to Plaintiff and appeared to represent 24.5% of the outstanding shares of JGFH, yet there was a new class of shares listed on the JGFH Stock Certificate, which is in contravention of the Shareholder Agreement Section 2(b) that without prior written consent, the company shall not "authorize or issue additional shares of common stock or any other class or series of capital stock in the Company". Defendant Brown further

established new shareholders in contravention of the Shareholder Agreement substituting Defendant Brown Family Trust for Brown's own shareholdings, thus allocating shares which were agreed to be provided for an employee equity incentive plan under the Shareholder Agreement to Brown personally instead of the employees. At no point did Defendants indicate to Plaintiff that he was already listed as a shareholder when negotiating the JGFH Draft, and Plaintiff was not provided with the official incorporation documents, Bylaws, or Board resolutions, which further made any attempts by Plaintiff to provide demand to the Board of JGFH futile since Plaintiff was never informed he was a shareholder or that such governance documents existed, and only was provided the mailed the JGFH Stock Certificate.

52. In or around May of 2022, Plaintiff discovered the existence of Defendant C3 Limo. C3 Limo is an agent of Defendant JGFH, and its Officers up to on or around April 14, 2022 included Defendant Brown's wife, Stacy Brown, and it's current Manager, Chasen Dobos, is Defendant Brown's stepson as well as JGFH's VP of Operations. C3 Limo utilized the official JGFH and JGH company address in Florida as its own registered office from its formation in September 2020 until April 14, 2022 and it continues to utilize the JGH Intellectual Property, for instance its official email on file with the State of Florida for the business to receive official annual report filings from the State of Florida remains a "FlyCFG.com" domain owned email address, which is part of the JGH Intellectual Property defined herein.

53. Upon information and belief, Defendant C3 Limo received an undocumented loan for more than $54,000 from Defendant JGFH, in violation of Defendant Brown's obligations under the Shareholder Agreement, and Defendant Brown conspired with C3 Limo through its agents Stacy Brown and Chasen Dobos to utilize company resources of JGH and JGFH to provide C3 Limo with undocumented loans, and to utilize JGFH staff and the JGH Intellectual Property for C3 Limo's purposes without benefit to JGFH, JGH or their respective shareholders. For instance, in July and August of 2021, C3 Limo sent marketing emails through the JGH email distributions lists without "opt-in" from JGH clients, and these client lists are explicitly part of the JGH Intellectual Property. JGFH staff confirmed on the official company staff messaging

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

platform that Brown personally directed staff to email JGFH clients to inform them they could book private car services through C3 Limo throughout Florida. And when asked on the same official company messaging platform about the terms of the undocumented loans to C3 Limo from JGFH, Controller Roya Arabi ("Ms. Arabi") confirmed she was "not aware of any terms or expectation of pay back at this time – this is an accumulation of of [sic] activities between the companies." (emphasis added) Undocumented loans without terms or the expectation of payback, sent from JGFH to C3 Limo with revenue and resources rightfully belonging to JGH, and derived from proceeds of Brown's illegal enterprise are sham loans and unauthorized disbursements without benefit to JGH or JGFH shareholders.

54. In or around May 3, 2022, after being previously informed that the Defendants had ignored the JGH Intellectual Property Proposal which would allow a payment for the First IRS FET Proposal, RO Neville notified Plaintiff that the IRS had individually assessed Plaintiff for $1,300,000 of Defendants' unpaid FET. In order around May 10, 2022 Plaintiff proposed to Defendants that a possible solution to the unpaid FET, the JGH Intellectual Property Proposal, the JGFH Draft, and the "subsidiaries" of Defendants JGH and JGFH (Defendant C3 Jets and Jet Agency), would be possible by way of a merger between Defendants JGH, JGFH, C3 Jets, and Jet Agency (the "Proposed Merger").

55. In or around June 2, 2022, California counsel for JGH Attorney Popov confirmed that the Proposed Merger structure was ready, and introduced his colleague at Watkins Firm, APC, Dominick Severance ("Attorney Severance") who would be assisting Attorney Popov with the Proposed Merger. On June 9, 2022 Attorney Popov sent the Proposed Merger drafts for Plaintiff, Shareholder Wolf, and all Defendants to review, along with Attorneys Popov, Dubick, Louramore, Klee, and Kirk.

56. In or around June 22, 2022 Plaintiff was informed that Shareholder Wolf and the Defendants had signed the definitive documents for the Proposed Merger, and was asked why he had not signed the same. On June 22, 2022 Plaintiff – while being asked why he had not signed the definitive documents on the Proposed Merger – received a call from RO Neville, who

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

informed Plaintiff that the IRS intended to immediately file a lien against Plaintiff for the $1,300,000 IRS had personally assessed against Plaintiff for Defendants' unpaid FET. Plaintiff, Attorney Kirk, and RO Neville negotiated an extension by IRS to allow time for the Proposed Merger and a payment plan by Defendants for their unpaid FET to be created, and RO Neville tentatively agreed for a forty-five (45) day extension to allow the Proposed Merger to advance, which would extend until August 8, 2022 as the date which IRS would refrain from filing the assessed lien for JGH's unpaid FET against Plaintiff individually.

57. After speaking with RO Neville and reviewing the Proposed Merger documents, Plaintiff began reviewing the balance sheet (attached hereto as a true and correct copy as *Exhibit "F"*) and profit and loss documents of JGFH which he had been provided in or around May 11, 2022, and Plaintiff observed more than $10,000,000 of balance sheet items which were not addressed in the Proposed Merger, which included and are collectively referred to as the "Balance Sheet Items" as follows: over $3,300,000 in loans issued to Defendant Brown personally; over $343,329 issued to Defendant Jet Agency, over $135,571 in loans issued to Defendant Bowman Aviation, Inc.; $861,018,000 in loans issued to Defendant C3 Jets; $54,000 in loans issued to Defendant C3 Limo as well as an apparent liability for unknown reasons which purports that JGFH owes as a liability $177,437 on an American Express card in the name of C3 Limo managing member and Defendant Brown's stepson Chasen Dobos; $125,000 of loans *owed to* Shareholder Wolf – who subsequently informed Plaintiff that Defendants in fact owe Shareholder Wolf hundreds of thousands more than the $125,000 listed; an additional loan *owed to* Premium Merchant funding in excess of $574,000; and a loan *owed to* the Small Business Administration Payroll Protection Program in excess of $572,000.

58. On or about June 29, 2022 Plaintiff, through Attorney Kirk made inquiry to the Balance Sheet items, and followed up on July 14, 2022 and July 20, 2022 on the status of explanation for the Balance Sheet items. On July 8, 2022 Plaintiff, Defendants, Shareholder Wolf, and Attorneys Louramore, Popov, Klee, and Kirk discussed the Proposed Merger status along with Defendant JGFH's Controller Ms. Arabi and Plaintiff reiterated his need to review the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Balance Sheet Items and other customary diligence requests.

59. On July 14, 2022, Ms. Arabi informed the Plaintiff that she was not aware of *"any formal agreements/document* regarding the loans between companies and [Brown]. The balances are created by transfers and payment from said accounts" (emphasis added). Less than three minutes later, Defendant Brown suggested that he desired to "file bankruptcy and split all the assets" to which Shareholder Wolf reminded Defendant Brown that bankruptcy would not resolve the IRS FET obligations that were being personally assessed against the shareholders of JGH.

60. Despite requesting documentation for diligence that Plaintiff wished to conduct on the Balance Sheet Items, at no point prior to July 14, 2022 did Plaintiff realize that out of the millions of dollars *that Plaintiff knows of* in loans issued by Defendant Brown in violation of the JGH Shareholder Agreement to Defendant Brown individually, or to entities controlled by Defendant Brown such as C3 Jets, Jet Agency, and Bowman Aviation, or held by his immediate family such as C3 Limo, that none of the loans had been documented or formalized, and yet Brown repeatedly pressured Plaintiff to sign the Proposed Merger documents as prepared by Defendants under duress and without the ordinary and customary shareholder rights Plaintiff was entitled to.

61. On or about July 29, 2022 Plaintiff received indication from RO Neville that the IRS would accept a revised version of the First IRS FET Proposal, wherein the IRS would accept a payment of $100,000 instead of $125,000, and if the Defendants did such the IRS would refrain from filing the lien assessed against the Plaintiff. (the "Second IRS FET Proposal") Plaintiff proposed the Second FET Proposal, Defendant Brown indicated that the Defendants could pay such, and the Defendants subsequently disavowed any intention to pay the Second IRS FET Proposal.

62. On August 5, the Plaintiff discussed the unpaid FET and imminently pending lien from IRS with RO Neville, who agreed to extend a deadline for payment of the Second IRS FET Proposal or a plan that the Proposed Merger was substantially completed, which created the imminence of the irreparable injury faced by Plaintiff at the time of filing his original complaint,

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

with such imminence only obviated after filing when he was informed by the IRS that his assessment and file would be transferred to the IRS' Kansas office before new action would be taken. There has been no indication that Defendants will satisfy the Second IRS FET Proposal, and the Defendants have failed entirely to present any Proposed Merger given the Undocumented Multi-million Dollar Loans and wrongfully misappropriated JGH Intellectual Property, and all Defendants continue to benefit from the JGH Intellectual Property and the JGH Platform despite JGH's assessment by the IRS and the imminent injury still faced by Plaintiff for the IRS' threatened lien.

63. Following the filing of his complaint, Plaintiff further learned of Brown's actions harming the business. Throughout the summer of 2021 when researching proposed funding sources for JGH, and during the summer of 2022 when discussing the Proposed Merger with Defendants, Plaintiff had conducted research and outreach on potential acquisition partners and/or licensees of the JGH Intellectual Property. One of the most readily identifiable candidates was Executive Charter Services, Inc., ("ECS") led by CEO Jason Johnson ("Johnson").

64. Plaintiff had been familiar with ECS and Johnson in a business capacity for several years, knowing that Johnson had previously led and sold for acquisition a very successful charter platform known as CharterPad, and that Johnson had started ECS following the acquisition of CharterPad. Johnson understood the technology, and Plaintiff had discussed high level possible arrangements for licensing the JGH Intellectual Property or potentially acquiring some of Plaintiff's shareholdings or the entirety of JGH to satisfy the FET debt. Plaintiff believed Johnson capable of the sophistication needed to grow and exit companies in the private aviation industry, and knew that he had an appreciation for the potential of technology and intellectual property developed to create lasting shareholder value following Johnson's success with CharterPad and continued success through ECS. Discussions were positive albeit preliminary, but took a dark turn in summer of 2022.

65. Johnson expressed interest in the JGH Intellectual Property. The likelihood of ECS rescuing JGH from its tax debt (and thus effective insolvency) was severely harmed, however, as

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

was Plaintiff's interests in the JGH Intellectual Property through Brown's actions against Mr. Johnson which Plaintiff learned the details of after filing his initial complaint. While Plaintiff and Defendants were discussing the Proposed Merger, JGFH was in litigation with ECS over a former employee. In the midst of this litigation, and during the events of the Proposed Merger, Plaintiff learned that Brown called Mr. Johnson in the early morning hours after midnight in late July 2022 threatening his life, and threatening the life of another of the employee's of ECS if the litigation between ECS and JGFH continued. Brown threatened that he had people who would do his "wet work" for him (alluding to murder-for-hire) and that when people are pushed far enough, they could "become a school shooter".

66. Brown then sent pictures and texts to Mr. Johnson showing the exterior of the ECS employee's residence, which Brown had sent someone outside of, and in the texts from the person at the ECS employee's residence the statement that the "residence is the best plan of action no way out with 2 guys in it." Johnson believed the threats to his employee and immediately contacted law enforcement and the Federal Bureau of Investigation, who subsequently opened an investigation into Brown's threats. None of the Defendants disclosed these actions during the discussions of the Proposed Merger. Following Brown's threats of murder in late July, the discussions about ECS potentially licensing or acquiring the JGH Intellectual Property ceased, as Johnson expressed to Plaintiff that he could not work with a deal where Brown was leading the company after threatening his life while he was in the middle of litigation with Brown.

67. Plaintiff further learned through discussions with Xavier Williamson ("Williamson"), who had joined ECS after previously being one of the highest producing sales personnel of JGH and JGFH – that Brown was trying to allocate the resources of JGH and JGFH into Jet Agency. After filing Plaintiff's initial complaint, Stanz and Mr. Williamson discussed the structure of JGFH's sales staff, and Mr. Williamson expressed his surprise in Plaintiff's complaint that the Plaintiff had required his surrendered shares be allocated to an employee equity incentive plan. Williamson informed Plaintiff that no such plan existed, and that despite growing in size of sales personnel, Brown was attempting to further reduce the productivity of sales personnel by

directing them towards a "jet card" subscription model which would be underneath the Jet Agency banner.

68. Contrary to providing employees with equity incentive, the jet card model offered larger up-front commissions based on larger pre-paid travel bookings by JGFH clients, but once under the jet card model the clients would be further kept away from the sales personnel and they would likely forfeit their commissions. Williamson informed Plaintiff that Brown was attempting to channel the clients of JGFH into Jet Agency underneath this jet card model, further diluting Plaintiff's value.

## FACTUAL ALLEGATIONS REGARDING RICO

69. Defendant Brown has spent his entire career in the private aviation business and is intimately familiar with its applicable rules and regulations. While most of the factual allegations above regarding all Defendants relate to events and conduct alleged with the internal affairs, contracts, and intellectual property of JGH and JGFH, Plaintiff Stanz has also been harmed through the criminal actions of the Defendants in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

70. JGH and JGFH as air charter brokers are required by 26 U.S.C. § 4281(a) to pay FET of 7.5% of the transportation price imposed on the transportation of persons by air. The tax obligation is imposed upon the person making the payment for the transportation under 26 U.S.C. § 4281(d). Unless the aircraft operator collects and pays the FET on behalf of JGH or JGFH, the obligation falls to the clients of JGH and JGFH and subjects them to FET. Failure to pay FET is a criminal violation of 26 U.S.C § 7202, which provides that the willful failure to collect, account for, and pay over such tax is a felony subject to imprisonment up to 5 years.

71. While the obligation is on JGH and JGFH's clients to pay the FET, charter brokers like JGH and JGFH are supposed to collect the tax from clients to hold in trust on their behalf, as to ensure clients are not committing felonies by failing to pay the FET. In addition to 7.5% of the amount of the airfare owed by the person purchasing the air transportation, FET includes a flat fee

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

for each "domestic segment" (defined as 1 takeoff and 1 landing) of the travel. The combined 7.5% and domestic segment fees that make up FET are a "trust fund" tax, meaning that it is imposed on the *purchaser* of the transportation but is collected and held "in trust" for the IRS by the seller of the transportation. Once the FET is collected, the person or company collecting it is required to account for and pay over the tax to the IRS on a regular basis and required to report and account for it on Form 720 with IRS filed quarterly.

72. Due to the length of time Defendant Brown worked in the private jet charter industry, at all times pertinent to this matter he was familiar with the air transportation FET, understood how the tax was calculated and collected, and understood that he was the primary person responsible for causing the FET to be collected and for truthfully accounting for and paying the collected tax to IRS. Moreover, Defendant Brown was intimately familiar with the requirements for collecting and reporting FET accurately, and that purchasers and passengers were ultimately responsible for FET which is why it was a "trust fund" tax. The collection and remittance on behalf of the clients of JGH and JGFH was critically important, since failure to remit would expose clients for potential violations of 26 U.S.C. § 4281 if the tax was not remitted to the IRS. For these reasons, Brown ensured that <u>*all*</u> of the contracts that went to clients of JGH and JGFH through the JGH Platform utilizing the JGH Intellectual Property informed the clients that the price they were given in the Client Contract, defined below, "<u>includes all applicable fees including Federal Excise Tax and segment fees</u>" (emphasis added) or directly lists FET as a line item for the client in the pricing.

73. Brown was intimately familiar that willfully failing to remit the tax to IRS is a felony after a prominent criminal case involving the failure to accurately report FET was filed by the United States Government against the CEO of a well-known air charter broker, Wayne John Rizzi, who waived the indictment by the government and agreed to a prison sentence for his violations of 26 U.S.C § 7202 for charging but not reporting or paying FET to the IRS, as detailed in the Plea Agreement in <u>*U.S. v. Rizzi*</u>, No. CR 14 00102 (C.D. Cal. 2014).

74. While Brown's unpaid FET scheme dates back to a minimum of JGH's

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

incorporation as assessed by the IRS, over the past five years Defendant Brown orchestrated a scheme to use the JGH Intellectual Property to defraud the passengers purchasing air transportation from JGH and JGFH of more than $5,000,000 in FET the clients were charged for and which Defendant Brown instead pocketed for the enterprise and invested in its growth rather than remitting to the IRS. The structure of the investment and retention of these fraudulently charged taxes to clients enabled the enterprise to grow, which thus enabled Brown to siphon funds from the unlawfully obtained revenue for his own personal enrichment, as well as the growth and investment in the enterprise through C3jets, C3 Limo, Bowman Aviation, and Jet Agency such as the Undocumented Multi-million Dollar Loans.

75. Defendant Brown made the ultimate decisions regarding the collection, handling, and payment of the FET to IRS. Brown coordinated with his subordinates in the enterprise to facilitate the contracts being sent to collect the FET from clients, and did so through the enterprise's agents including Ryan Sargent, Chasen Dobos, and Roya Arabi. The finance, operations, and booking staff of the Defendants would regularly enter into written agreements with the charter air operators who provided the aircraft JGH and JGFH customers would fly on, and these written contracts would further specify that JGH or JGFH – not the jet providers – were responsible for collecting, accounting for, and paying FET to the IRS. The enterprise's agents, at the direction of Brown, sent the client contracts for the passengers through the JGH Platform utilizing the JGH Intellectual Property. The contracts omitted the fact that FET is imposed on *purchasers* for air transportation and ultimately the responsibility of these clients as purchasers/passengers, and instead provided them with written assurances that the prices *included **all** FET and segment fees*. Brown thus orchestrated a scheme that enabled the enterprise to use the JGH Platform and JGH Intellectual Property to send contracts for the clients of JGH and JGFH which would charge clients for FET and account for the tax as a "trust fund" tax owed to IRS as required by 26 U.S.C § 4281, but instead of remitting the payment to IRS Brown willfully directed it to enrich himself and his family, and invest in expanding the enterprise in a felonious violation of 26 U.S.C § 7202.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

76. Defendant Brown structured the enterprise with multiple companies and operations processes which utilized the JGH Intellectual Property to further this conspiracy through the JGH Platform, and directed the personnel and resources of the enterprise to optimize a process where passengers would be charged FET, the FET would be reported to the IRS, but the FET proceeds collected would be placed as revenue inside the enterprise's accounts. Once in these accounts, the proceeds were then routed throughout the enterprise to derive income to Brown and his family, as well as investing in the enterprise's growth through loans and investments such as the Undocumented Multi-million Dollar Loans. Brown's enterprise includes at a minimum JGH, JGFH, C3 Jets, C3 Limo, Bowman Aviation, and Jet Agency, operating under the banner of "Charter Flight Group" (hereinafter the "CFG Enterprise"). The CFG Enterprise was structured in a way that allowed Brown to willfully evade over $5,000,000 FET payments owed over nearly 5 years, a felony violation of 26 U.S.C § 7202, which was then used to derive income from the CFG Enterprise and invest in the CFG Enterprise's growth.

77. Brown directed the employees of JGH and JGFH to help facilitate the scheme that grew the CFG Enterprise (an organizational chart showing the employees and structure of JGH, JGFH, C3 Jets, and Jet Agency as part of the CFG Enterprise is attached hereto as a true and correct copy as *Exhibit "G"*). After his control was consolidated following the Board Coup, Brown set about to establish JGFH, C3 Limo, and Jet Agency. He then linked Bowman Aviation and C3 Jets to further service and grow the CFG Enterprise. Brown communicated regularly with Chief Operating Officer Ryan Sargent to structure the collection of payments and money movement between the various entities in the CFG Enterprise, and directed him to route funds between the various companies including the funds from the unpaid FET. Once funds were in accounts controlled by Brown, he routed payments and loans to himself and his family held entities such as C3 Limo with Chasen Dobos. Brown also directed Deb Fouts, the payroll manager of JGH and JGFH to route funds, including FET proceeds to allow Brown to disburse funds and commissions to himself, and further directed Controller Ms. Arabi to oversee the flow of finances including the Undocumented Multi-million Dollar Loans and disbursements made

from funds collected including those from unlawful FET proceeds.

78. JGFH's VP of Operations Chasen Dobos was directed by Brown to maintain client services relationships on "day of flight" travel, to send the operator contracts to the CFG Enterprise's third-party operators which confirmed the CFG Enterprise would pay FET, and to suggest ground transportation to the CFG Enterprise's clients through C3 Limo despite the client lists and customers being part of the JGH Intellectual Property. Ryan Sargent, Deb Fouts, Chase Dobos, and Roya Arabi (collectively the "CFG Personnel") were all instructed to route the payments and account for FET by Defendant Brown. The technical booking process Brown orchestrated to run this scheme to defraud clients involved using the JGH Intellectual Property including the JGH Platform, which are rightfully Plaintiff's intellectual property misappropriated by the Defendants, and Brown architected this fraud and misappropriation to be conducted through the CFG Personnel.

79. The scheme for the CFG Enterprise's felonious "harvesting" of FET payments from clients to invest into and derive income from the enterprise instead of remitting as required to IRS used seemingly innocuous business processes which make up the JGH Platform and JGH Intellectual Property, as further detailed. First, there is a booking process, where a client makes a trip request to a broker such as an agent of JGH, JGFH, C3 Jets, or Jet Agency through the JGH Platform ("Broker"). The Broker sources available aircraft pricing from several operators such as C3 Jets and others, and generates multiple quotes to send to the client ("Client Quote"). The client receives the Client Quotes and chooses a final quote to sign as a contract (hereinafter "Client Contract" which the CFG Enterprise Client Contracts from Q2 2017-Q1 2019, Q2 2019-Q1 2020, and Q2 2020-Present are attached hereto as true and correct copies in *Exhibit "H"*).

80. The Broker secures aircraft with a contract to the operator ("Operator Contract"). The Broker may cancel the Operator Contract in favor of a new contract with upgraded aircraft features, and the Client Contract may get updated with additional line items. Similarly, the Operator Contract may get updated with additional line items. The Broker pays for the flight, and then the client pays the Broker, via credit card and a digital signature form, via credit card

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

through a digital booking form, or starting in 2019 for JGH and JGFH through a wire submission via digital signature form or digital booking (the "Client Payment Methods").

81. All of the Client Payments Methods utilize the internet, electronic mail, and banking systems within the United States and throughout interstate commerce. Client Contracts always listed FET explicitly listed either as a line item inclusive in the price, or in the contract terms stating pricing includes FET, and Operator Contracts provide either Net pricing – where the operator will pay FET – or Net Net pricing – where the Broker will pay FET. For Net Net transactions, the Operator may or may not explicitly state Broker pays FET in an Operator Contract, and where the Operator Contract often will list $0.00 as a line item for taxes and/or FET, it indicates the Operator will *not* pay FET and or taxes and that the Broker is responsible for collecting tax from the client and remitting FET to the IRS.

82. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH directed JGH to allow unpaid FET to accrue while fraudulently collecting such payments from passengers as early as the first quarter of 2017. In 2017, Brown left an unpaid FET balance of $93,005.77 in the first quarter, $274,260.29 in the second quarter, $519,727.88 in the third quarter, and $717,114.76 in the fourth quarter. Despite FET owed and accrued, Defendant Brown willfully caused the enterprise to send documents to the JGH passengers and utilized the JGH Intellectual Property and the JGH Platform to send passengers and operators Operator Contracts and Client Contracts that falsely stated charges for FET were included from JGH, and sent these fraudulent documents to collect payment through the Client Payment Methods (the "Fraudulently Charged FET"). The Fraudulently Charged FET in 2017 amounted to $93,005.77 in the first quarter, $181,254.52 in the second quarter, $245,467.59 in the third quarter, and $197,386.88 in the fourth quarter. The totals of the Fraudulently Charged FET in 2017 amounted to $717,114.76.

83. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH continued to direct JGH to allow unpaid FET to accrue while fraudulently collecting such payments from passengers throughout 2018. In 2018, Brown left an unpaid FET

balance of $943,190.72 in the first quarter, $1,136,607.51 in the second quarter, $1,331,038.54 in the third quarter, and $1,554,019.40 in the fourth quarter. Despite FET owed and accrued, Defendant Brown willfully caused the enterprise to send documents to the JGH passengers and utilized the JGH Intellectual Property and the JGH Platform to facilitate the Fraudulently Charged FET. The Fraudulently Charged FET in 2018 amounted to $226,075.96 in the first quarter, $193,416.79 in the second quarter, $194,431.03 in the third quarter, and $222,980.86 in the fourth quarter. The totals of the Fraudulently Charged FET in 2018 amounted to $836,904.64.

84. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH and JGFH continued to direct the CFG Enterprise and CFG Personnel to allow unpaid FET to accrue while fraudulently collecting such payments from passengers throughout 2019, both through JGH and JGFH after its incorporation. In 2019, Brown left an unpaid FET balance of $1,759,943.57 in the first quarter, $2,002,537.08 in the second quarter, $2,249,398,47 in the third quarter, and $2,507,387.60 in the fourth quarter. Despite FET owed and accrued, Defendant Brown willfully caused the CFG Enterprise to send documents to the CFG Enterprise's passengers and utilized the JGH Intellectual Property and the JGH Platform to facilitate the Fraudulently Charged FET. The Fraudulently Charged FET in 2019 amounted to $177,869.29 in the first quarter, $250,648.39 in the second quarter, $266,861.13 in the third quarter, and $207,989.13 in the fourth quarter. The totals of the Fraudulently Charged FET in 2019 amounted to $903,368.20.

85. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH and JGFH continued to direct the CFG Enterprise and CFG Personnel to allow unpaid FET to accrue while fraudulently collecting such payments from passengers throughout 2020, both through JGH and JGFH after its incorporation. FET calculations within the JGH Platform, unbeknownst to Plaintiff, were directed by Brown to be changed in 2020 to disable FET calculations on quotes and contracts, and the industry was impacted by COVID-19 which made difficulty ascertaining the full numbers for 2020. during the COVID-19 outbreak affecting the travel industry. In 2020, Brown left an unpaid FET balance of $2,667,750.96 in the first

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

quarter, $2,792,750.96 in the second quarter, $2,992,750.96 in the third quarter, and $3,192,750.96 in the fourth quarter. Despite FET owed and accrued, Defendant Brown willfully caused the CFG Enterprise to send documents to the CFG Enterprise's passengers and utilized the JGH Intellectual Property and the JGH Platform to facilitate the Fraudulently Charged FET. The Fraudulently Charged FET in 2020 Plaintiff believes amounts to around $135,363.36 in the first quarter, which due to the changes to the JGH Platform which were rolled back in December 2020 is the only quarter Plaintiff has totals for, but the totals for 2020 Fraudulently Charged FET are believed by Plaintiff to be an amount in excess of $732,110.25.

86. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH and JGFH continued direct the CFG Enterprise and CFG Personnel to allow unpaid FET to accrue while fraudulently collecting such payments from passengers throughout 2021, both through JGH and JGFH after its incorporation. In 2021, Brown left an unpaid FET balance of $3,585,292.53 in the first quarter, $4,163,662.06 in the second quarter, $5,082,066.92 in the third quarter, and $5,484,896.60 in the fourth quarter. Despite FET owed and accrued, Defendant Brown willfully caused the CFG Enterprise and CFG Personnel to send documents to the CFG Enterprise's passengers and utilized the JGH Intellectual Property and the JGH Platform to facilitate the Fraudulently Charged FET. The Fraudulently Charged FET in 2021 amounted to $395,794.68 in the first quarter, $578,369.53 in the second quarter, $405,723.11 in the third quarter, and $790,511.73 in the fourth quarter. The totals of the Fraudulently Charged FET in 2021 amounted to $2,170,399.05.

87. Defendant Brown, as the responsible person for FET, and sole control person of the finances of JGH and JGFH continued to direct the CFG Enterprise and CFG Personnel to allow unpaid FET to accrue while fraudulently collecting such payments from passengers throughout 2022 and continues to let FET accrue through JGFH. This year, Brown left an unpaid FET balance of $6,178,643.10 in the first quarter. Plaintiff does not have access to the records and payment beyond the first quarter, but during 2022 and upon information and belief, despite FET owed and accrued, Defendant Brown willfully caused the CFG Enterprise and CFG

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Personnel to send documents to the CFG Enterprise's passengers and utilized the JGH Intellectual Property and the JGH Platform to facilitate the Fraudulently Charged FET. The Fraudulently Charged FET that Plaintiff knows of so far this year amounted to $546,627.94 in the first quarter.

88. In total, the Fraudulently Charged FET from the first quarter of 2017 up until the most recent quarter Plaintiff has records for of this year has totaled at least $5,581,789.81, and was collected at the direction of Defendant Brown throughout interstate commerce and through the wires over the course of *thousands* of flights chartered through the JGH Platform and utilizing the JGH Intellectual Property and CFG Personnel, all with the intention to derive income from and invest in the expansion of the CFG Enterprise. Plaintiff will provide evidence of over 3,000 instances of Fraudulently Charged FET as part of his forthcoming RICO Case Statement as required by local rules of this Honorable Court. Due to the voluminous nature of the predicate acts alleged which will be included in Plaintiff's RICO Case Statement, Plaintiff alleges the following examples of Fraudulently Charged FET from January 2017 to present, all of which were on contracts personally overseen by Defendant Brown. All of the clients below are CFG Enterprise clients whom are part of Defendant Brown's personal broker book, meaning he was the actual Broker with the Client Contract for each trip, and he received commission for each trip in addition to his $1,000,000 base salary, commission which further derived from charging FET to the client which was not remitted to IRS. All of the Client Contracts (and many of the Operator Contracts) specifically reference inclusion of FET, and all of the Operator Contracts were structured to require the CFG Enterprise to collect FET. Willful non-payment of collected but unremitted FET is a felonious violation of 26 U.S.C § 7202. Brown as Broker maintained relationships directly with each of the below listed clients, each of whom the CFG Enterprise informed on the Client Contract (which included Brown as Broker) that the client pricing included all FET, and the clients were all charged for FET through the Client Payment Methods, and the charges were directed into the CFG Enterprise to enable Brown and the CFG Enterprise to derive income from the scheme and invest in the growth of the CFG Enterprise. FET was not segregated into a separate account as required by the Shareholder Agreement and was further not

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

disbursed to the IRS trust fund accounts. Defendant Brown admitted to the Plaintiff that he is responsible for the unpaid FET when he stated: *"I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point. Please stop bringing it up!*" Instances from the first quarter of 2017 through the most recent quarter of this year include the following:

a. In the first quarter of 2017, client Dan Hennelly booked a flight through the JGH Platform from Fort Lauderdale, FL to Marathon, FL and back on February 2, 2017 for $11,697.80 of which $814.98 was FET collected and unpaid, and which the Client Contract specified FET as a line item, the Operator Contract with Red Wing Aeroplane Co. required FET to be paid by JGH, and Defendant Brown signed the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged through a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

b. In the second quarter of 2017, client Judy Schuda booked a flight through the JGH Platform from Van Nuys, CA to Scottsdale, AZ and back on April 13, 2017 for $9,826.07 of which $683.82 was FET collected and unpaid, and which the Operator Contract with Clay Lacy Aviation required FET to be paid by JGH, and Defendant Brown is named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

c. In the third quarter of 2017, client David Rosenberg booked a flight through the JGH Platform from Cincinnati, OH to Westhampton Beach, NY on August 26, 2017 for $15,485.18 of which $1,080.08 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Worldwide Jet required FET to be paid by JGH, and JGH d/b/a Charter Flight Group is

named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

d. In the fourth quarter of 2017, client David McKenzie booked a flight through the JGH Platform from Los Angeles, CA to Las Vegas, NV and back on on December 1, 2017 for $12,922.60 of which $897 was FET collected and unpaid, and which the Operator Contract with Starjet stated that the provided price excluded FET, and Defendant Brown is named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

e. In the first quarter of 2018, client David Rosenberg booked a flight through the JGH Platform from Cincinnati, OH to Teterboro, NJ on March 25, 2018 for $8,753.03 of which $610.38 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Red Wing Aeroplane Co. required FET to be paid by JGH, and JGH d/b/a Charter Flight Group is named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

f. In the second quarter of 2018, client Kirk Brown booked a flight through the JGH Platform from Westhampton Beach, NY to Portland, OR on June 13, 2018 for $37,438.62 of which $2,609.95 was FET collected and unpaid, was a Net-Net transaction, and a JGH company representative is named on the Operator Contract with XO Jet. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

g. In the third quarter of 2018, client David Lipman booked a flight through



WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

the JGH Platform from Wadesboro, NC to Lewisburg, WV on July 18, 2018 for $15,499.40 of which $1,079.89 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Delta Private Jets required FET to be paid by JGH, and a JGH company representative is named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

h. In the fourth quarter of 2018, client Bryan Hoffman booked a flight through the JGH Platform from Baton Rouge, LA to Raleigh, NC and back on November 6, 2018 for $31,968.52 of which $2,226.85 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Summit Aviation required FET to be paid by JGH, and a JGH company representative signed the Client Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

i. In the first quarter of 2019, client Katherine Birdsall booked a flight through the JGH Platform from Provo, UT to Teterboro, NJ and then to Boston, MA and back to Teterboro, NJ and then back to Provo, UT on February 7, 2019 for $73,713.30 of which $5,140.50 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract Delta Private Jets specified FET to be paid by JGH, and Defendant Brown is named on the Operator Contract. The Client Contract specified that FET would be paid, FET was charged to a Client Payment Method, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker on the trip. Plaintiff believes this trip falsely specified that FET was included, and that FET was charged and unremitted for the trip to IRS, because a total of $205,924.17 in FET was owed for this quarter and yet only $28,054.88 was paid, meaning over eighty-six percent of FET was charged but unremitted out of a total of 170 eligible

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

trips.

j. In the second quarter of 2019, client Charlie McKinney booked a flight through the JGH Platform from Dallas, TX to San Antonio, TX, and back on April 1, 2019 for $15,954.22 of which $1,108.40 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Monarch Air specified FET to be paid by JGH, and Operator Contract is signed by a CFG Enterprise. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip along with Ryan Sargent as Brokers for the trip.

k. In the third quarter of 2019, client Mark Elliot booked a flight through the JGH Platform from Atlanta, GA to Chicago, IL and back on August 15, 2019 for $20,466.62 of which $1,425.66 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Flightworks specified Net-Net terms indicating FET to be paid by JGFH, and a CFG Enterprise representative is named on the Operator Contract. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

l. In the fourth quarter of 2019, client David Almeida booked a flight through the JGH Platform from Teterboro, NJ to Opa-Locka, FL and back on October 06, 2019 for $29,900.00 of which $2,038.12 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which the Operator Contract with Century Jet specified FET to be paid by JGFH, and Operator Contract is signed by a CFG Enterprise representative. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

m. In the first quarter of 2020, client Russell Lindmark booked a flight through the JGH Platform from Kansas City, MO to Opa-Locka, FL and back on January 22, 2020 for $92,247.28 of which $6,428.24 was FET collected and unpaid, and which the Client Contract specified that pricing included FET, and which was a Net-Net transaction, and a JGFH company representative is named on the Operator Contract with United States Aviation. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

n. In the second quarter of 2021, client Donna Smith booked a flight through the JGH Platform from Baltimore, MD to Jackson, WY on June 5, 2021 for $31,933.42 of which $2,226.41 was FET collected and unpaid, and which the Client Contract specified FET as a line item, and Defendant Brown is named on the Operator Contract with Fly Exclusive. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip.

o. In the third quarter of 2021, client Gary Kovacs booked a flight through the JGH Platform from Tuscaloosa, AL to Opa-Locka, FL on September 24, 2021 for $35,998.53 of which $2,510.93 was FET collected and unpaid, and which the Client Contract specified FET as a line item, and which the Operator Contract with VeriJet contains a clause stating that the undersigned *is not to collect FET* as FET will be remitted by the Operator, of which Defendant Brown signed the aforementioned clause, and Defendant Brown additionally signed the Operator Contract in its entirety. The Client Contract falsely specified that FET would be paid, FET was charged to a Client Payment Method and unremitted to IRS, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker for the trip. Even more flagrant to the FET charged to a Client Payment Method and yet unremitted is the fact that the Operator Contract with VeriJet – seemingly to ensure that FET would be paid – required JGFH to *not* charge FET

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

since the Operator would remit it to IRS, and Defendant Jordan Brown signed agreeing to such, and yet still charged Mr. Kovacs for FET even though the Operator was paying the FET, and even with this additional fraudulent collection of FET by Defendant Jordan Brown it *still* was unremitted to IRS and Brown took a direct commission.

p. In the fourth quarter of 2021, client David Ziebarth booked a flight through the JGH Platform from Tampa, FL to Binghamton, NY on October 12, 2021 for $20,519.60 of which $1,431.00 was FET collected and unpaid, and which the Client Contract specified FET as a line item, and JGFH d/b/a Charter Flight Group is named on the Operator Contract with Executive Airlink. The Client Contract specified that FET would be paid, FET was charged to a Client Payment Method, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker on the trip. Plaintiff believes this trip falsely specified that FET was included, and that FET was charged and unremitted for the trip to IRS, because a total of $915,511.73 in FET was owed for this quarter and yet only $125,000 was paid, meaning over eighty-six percent of FET collected was charged but unremitted out of a total of 478 eligible trips.

q. In the first quarter of 2022, client Catherine Oppenheimer booked a flight through the JGH Platform from Santa Fe, NM to Teterboro, NJ and back on February 28, 2022 for $82,498.05 of which $5,755.05 was FET collected and which the Client Contract specified FET as a line item, and a JGFH company representative is named on the Operator Contract with Maine Aviation Aircraft Charter. The Client Contract specified that FET would be paid, FET was charged to a Client Payment Method, and Defendant Jordan Brown personally was paid a commission for this trip as the Broker on the trip. Plaintiff believes this trip falsely specified that FET was included, and that FET was charged and unremitted for the trip to IRS, because a total of $955,377.03 in FET was owed for this quarter and yet only $272,118 was paid, meaning nearly two-thirds of total FET was charged but unremitted out of 444 eligible trips.

89. In total, the Fraudulently Charged FET from the first quarter of 2017 up until the

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

most recent quarter Plaintiff has data on for this year has totaled at least $5,581,789.81, far exceeding the amount the IRS has personally assessed against the Plaintiff, and yet instead of satisfying the IRS debts assessed against the Plaintiff, Defendant Brown and the CFG Enterprise derived millions of dollars from the CFG Enterprise and invested millions of dollars in the CFG Enterprise's expansion, including co-defendants which Brown controls individually or through his family such as C3 Jets, Jet Agency, Bowman Aviation, and C3 Limo. The $5,581,789.81 was collected throughout interstate commerce and through Client Payment Methods sent through the wires over the course of *thousands* of flights chartered through the JGH Platform and utilizing the JGH Intellectual Property and CFG Personnel. After the CFG Personnel were instructed to route payments at Defendant Brown's direction, Brown allocated these funds throughout the CFG Enterprise, including to derive income and personal purchases to benefit Defendant Brown and his family.

90. Defendant Brown directed the CFG Personnel to mingle the finances of the various entities throughout the CFG Enterprise, including notes and payments wrongfully disbursed to C3 Limo and C3 Jets as well as the Undocumented Multi-million Dollar Loans, even though there were no terms or payment schedules or documentation for these "loans". When asked by Controller Ms. Arabi and staff member Lillian Tamm about the corporate loans and balance sheets, Brown instructed the CFG Personnel to "treat [C]ali and [F]lorida as [the] same company and [J]et [A]gency" but further that C3 Jets was on an "island". The Undocumented Multi-million Dollar Loans and disbursements were all part of the same CFG Enterprise operated by Brown, which was funded by the Fraudulently Charged FET, and extended beyond the "same company" which Brown treated JGH, JGFH, and Jet Agency as, with such extension by Brown routing the FET scheme proceeds to C3 Jets, C3 Limo, Bowman Aviation, and Brown individually. Ms. Arabi confirmed when asked about the financial structure among the CFG Enterprise Defendants that there were not "*any formal agreements/document* regarding the loans between companies and Jordan. The balances are created by transfers and payment from said accounts." (emphasis added)

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

91. Brown additionally used the JGH Intellectual Property and CFG Personnel to facilitate business to C3 Limo, and falsely claimed to the company that JGH owned a Hawker 800XP (which in fact Brown placed in C3 Jets and funded with the Fraudulently Charged FET through the undocumented loan from JGFH to C3 Jets) and additionally utilized the CFG Personnel to participate in the design and marketing of a restaurant purchased at the Van Nuys Airport – Mavericks – which upon information and belief is a redesign of an existing airport restaurant and bar which has been invested in by Defendant Brown and which CFG Enterprise staff and resources have been used to advance the deal and further the CFG Enterprise.

**FIRST CAUSE OF ACTION**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**

**(AGAINST ALL DEFENDANTS)**

**CLAIM 1**

**18 U.S.C. § 1962(c)**

92. Plaintiff realleges and incorporates by reference Paragraphs 1-91 as if set forth fully herein.

93. Defendants Brown, Jet Genius Holdings, Inc., Jet Genius Florida Holdings, Inc., C3jets LLC, Bowman Aviation, Inc., Jet Agency Global LLC, and C3 Limo LLC (collectively the "CFG Enterprise Defendants") associated together for the common purpose – led by Brown – to create fraudulent schemes to misappropriate the JGH Platform and JGH Intellectual Property, which rightfully belong to the Plaintiff, throughout interstate commerce as actionable under 18 U.S.C. § 1836(b) as alleged by Plaintiff in his Second Cause of Action, to collect more than $5,000,000 in charged but unpaid FET from the CFG Enterprise's clients. The misappropriation is actionable under 18 U.S.C. § 1836(b) and is a crime actionable and predicate act under RICO in this jurisdiction.

94. The CFG Enterprise Defendants had a formal or informal organization where

Defendant Brown used the JGH Platform to create Operator Contracts and Client Contracts which Defendant Brown would direct CFG Personnel to send to collect FET from CFG Enterprise clients with these fraudulent documents, and then route the funds from these proceeds throughout the various entities under the control of the CFG Enterprise.

95. There are thousands of instances in this pattern of the CFG Enterprise charging FET to clients under Client Contracts set through the wires which stated FET was included in the pricing in addition to the Operator Contracts which the CFG Enterprise falsely agreed it would collect and remit FET under, a pattern detailed above in Paragraph 88(a)-(q) from at least January 2017 to this current year. The CFG Enterprise pattern used Plaintiff's misappropriated intellectual property in the JGH Intellectual Property and JGH Platform to then enable Brown and the CFG Personnel to send these fraudulent documents throughout interstate commerce informing the clients that their charges included FET which was owed to the IRS on behalf of the clients, but which Defendant Brown instead routed to benefit the CFG Enterprise in a felonious violation of 26 U.S.C § 7202.

96. Defendant Brown and the CFG Enterprise Defendants were aware of at least the general existence of the CFG Enterprise and knew that it extended beyond each of their individual roles.

97. The Fraudulently Charged FET documents were sent electronically throughout interstate commerce and purported to collect required tax excised by the IRS for air transportation governed by the Federal Aviation Administration, and the scheme effected interstate commerce. The misappropriated JGH Platform and JGH Intellectual Property were used in interstate commerce by the CFG Enterprise Defendants to coordinate the scheme.

98. Defendant Brown and the CFG Enterprise Defendants individually and with the CFG Personnel and through entities controlled by the CFG Enterprise Defendants and Defendant Brown participated in the conduct, affairs, or operation of the enterprise through a pattern of racketeering activity over more than five years involving the scheme to fraudulently use the JGH Intellectual Property including the JGH Platform to collect FET from clients of the CFG

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Enterprise for the benefit of the CFG Enterprise Defendants, and they sent these fraudulent documents which stated FET would be collected on behalf of clients to the clients electronically via the wire, thereby constituting wire fraud under 18 U.S.C §§ 1341 and 1343, and did so from at least January of 2017 throughout the present year.

99. Defendant Brown knowingly participated in and furthered this scheme through thousands of acts of wire fraud, having devised a scheme or artifice to defraud and obtaining money or other property by a means of false or fraudulent pretenses or representations, for the purpose of executing such scheme or artifice or attempting to do so, and directed the CFG Personnel and the CFG Enterprise to send thousands of Client Contracts falsely stating that the pricing for payment collected from clients included FET, which instead generated over $5,000,000 in illegal proceeds to benefit the CFG Enterprise Defendants.

100. The thousands of transmittals of fraudulent misrepresentations about the nature of the FET payment collected poses a continued threat of fraudulent activity with continuing this scheme, and in fact Defendant Brown and the CFG Enterprise Defendants have continued this scheme as recently as this summer. Brown himself admitted that he "was responsible for the FET mess. [he] will have to answer to this...[he] would do it again." These acts are interrelated by distinguishing characteristics and are not isolated events.

101. Alternatively, the acts above are a regular way of conducting Defendant Brown and the CFG Enterprise Defendants' business. The CFG Enterprise utilizes the CFG Personnel to regularly send Client Contracts to the clients to collect FET through the JGH Platform and utilizing the JGH Intellectual Property, seemingly as a regular manner of conducting business.

102. The scheme by Defendant Brown and the CFG Enterprise Defendants has involved and does still involve the misappropriated JGH Intellectual Property and JGH Platform, which rightfully belong to the Plaintiff.

103. Plaintiff has suffered injury derivatively to his reputation and business in the harm to his reputation and the disruption of his business activities. Plaintiff's business has been damaged and his interests derivatively as a shareholder have been damaged for all instances of

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

fraudulent FET charged through the JGH Platform and JGH Intellectual Property by the CFG Enterprise Defendants. The fraudulent collection of FET from clients and then felonious failure to remit to IRS have subjected Plaintiff as a shareholder derivatively to damage of his shareholdings in JGH and JGFH being subject to criminal charges. Plaintiff has further suffered damage to his shareholdings derivatively through these actions by his shareholdings to civil liability from shareholders assessed FET responsibility individually by IRS, which is not a speculative injury but a concrete injury as evidenced by IRS already assessing shareholders of JGH for personal liability of the FET, thereby exposing Plaintiff as shareholder to diluted value derivatively for exposure for Contribution and Indemnity sought from JGH shareholders for the CFG Enterprise Defendants' criminal actions. Plaintiff has further suffered injury to his business derivatively by the CFG Enterprise Defendants' criminal actions in the damage to the JGH Intellectual Property and JGH Platform being used to commit crimes, which has damaged the valuable intellectual property already valued independently over $50,000,000.

104. Plaintiff has suffered injury to his reputation and business in the harm to his reputation and the disruption of his business activities. Plaintiff has suffered injury individually in his property and business in the more than $1,300,000 of assessments by the IRS against Plaintiff for the fraudulently charged FET which have negatively impacted Plaintiff's business and property with such assessment publicly listed as a liability of Plaintiff and which will further subject him to harm when the IRS issues its lien on the assessment. This harm is the direct result of the FET fraudulently charged to JGH clients by the CFG Enterprise Defendants to clients from their criminal actions from January 1, 2017 through December 31, 2019. Plaintiff has further suffered injury to his business by the CFG Enterprise Defendants' criminal actions in the damage to the JGH Intellectual Property and JGH Platform – which are rightfully the property of the Plaintiff – in their misappropriation by the CFG Enterprise Defendants, and the subsequent use of this property to commit crimes, which has damaged the valuable intellectual property already valued independently over $50,000,000.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

## CLAIM 2

### 18 U.S.C. § 1962(b)

105. Plaintiff realleges and incorporates by reference Paragraphs 1-104 as if set forth fully herein.

106. Through the above pattern of racketeering activity dating back to at least 2017, Defendant Brown and the CFG Enterprise Defendants acquired and have maintained an interest or control in an enterprise engaged in interstate commerce that was connected to the pattern of racketeering activity

107. Plaintiff has suffered injury to his reputation and business in the harm to his reputation and the disruption of his business activities, both in the damage done to the JGH Platform and JGH Intellectual Property by the damage caused by using them in Defendant Brown's criminal enterprise, but also in the damage of the more than $1,300,000 in assessments by the IRS against Plaintiff individually despite Defendant Brown and the CFG Enterprise Defendants' collection of more than $5,000,000 in charged FET payments which instead were routed to the benefit of the CFG Enterprise. This injury was caused by Defendant Brown and the CFG Enterprise Defendants' acquisition or control of the CFG Enterprise, and is independent from the injury caused by the pattern of racketeering.

108. This injury was proximately caused by the racketeering activity engaged in by Defendant Brown and the CFG Enterprise Defendants in that the acts described above forced Plaintiff to expend substantial sums of money and resources to address the IRS' assessment against him individually for the unpaid FET, sever disruptions to his business activities and operations as a technologist whose intellectual property has been misappropriated to orchestrate this enterprise, and significant risk to his reputation by directly involving the companies which he is a rightful owner of to the involvement of the criminal actions described above.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

**CLAIM 3**

**18 U.S.C. § 1962(a)**

109. Plaintiff realleges and incorporates by reference Paragraphs 1-108 as if set forth fully herein.

110. Defendant Brown and the CFG Enterprise Defendants derived millions of dollars in income from the above pattern of racketeering activity. Defendant Brown and the CFG Enterprise Defendants took millions of dollars in distributions, loans, commissions, and salary from the more than $5,000,000 in fraudulently charged but unpaid FET collected from the clients of JGH and JGFH.

111. Defendant Brown and the CFG Enterprise Defendants invested the income from the racketeering activities into the enterprise and/or used such income to operate the enterprise, including to expand the enterprise through the Undocumented Multi-million Dollar Loans to C3 Jets, Bowman Aviation, Jet Agency, and C3 Limo, to expand the CFG Enterprise into additional enterprise activities such as acquiring aircraft, acquiring luxury rental vehicles, brokering private jet travel, introducing and expanding a jet card business model in Jet Agency with the JGH Intellectual Property, directing JGH Intellectual Property to arrange luxury ground transportation for CFG Enterprise Clients through C3 Limo, and purchasing a restaurant and bar at the Van Nuys airport in California, as well as development of luxury waterfront real estate in North Palm Beach, Florida through the Brown Family Trust.

112. Plaintiff has suffered injury to his reputation and business in the harm to his reputation and the disruption of his business activities, both in the damage done to the JGH Platform and JGH Intellectual Property by the damage caused by using them in the CFG Enterprise, but also in the damage of the more than $1,300,000 in assessments by the IRS against Plaintiff individually despite Defendant Brown and the CFG Enterprise Defendants' collection of more than $5,000,000 in charged FET payments which instead were routed to the benefit of the CFG Enterprise. This injury was caused by the CFG Enterprise Defendants' investment of income derived from the CFG Enterprise through the criminal collection without remission of

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

FET from the CFG Enterprise clients, and the investment of the income into the expansion of the CFG Enterprise such as the Undocumented Multi-million Dollar Loans and the investment of the income derived from the CFG Enterprise criminal scheme into the expansion of the CFG Enterprise to the "loans" to C3 Jets, Bowman Aviation, Jet Agency, and C3 Limo. This injury is independent from the injury caused by the pattern of racketeering and the CFG Enterprise Defendants' acquisition or control of the CFG Enterprise.

113. This injury was proximately caused by the racketeering activity engaged in by Defendant Brown and the CFG Enterprise Defendants in that the acts described above forced Plaintiff to expend substantial sums of money and resources to address the IRS' assessment against him individually for the unpaid FET, sever disruptions to his business activities and operations as a technologist whose intellectual property has been misappropriated to orchestrate this enterprise, and significant risk to his reputation by directly involving the companies which he is a rightful owner of to the involvement of the criminal actions described above.

**<u>CLAIM 4</u>**

**18 U.S.C. § 1962(d)**

114. Plaintiff realleges and incorporates by reference Paragraphs 1-113 as if set forth fully herein.

115. Defendant Brown and the CFG Enterprise Defendants knowingly and willfully became members of the aforementioned conspiracy in that they agreed to participate, directly or indirectly, in the affairs of the enterprise to accomplish the objective of the enterprise - to defraud the clients of JGH and JGFH out of millions of dollars collected over the course of several years in proceeds under fraudulent documents directed by Defendant Brown to those clients, which misrepresented the collection of FET owed to IRS and which went to further the CFG Enterprise. The CFG Enterprise Defendants benefited from the criminally misappropriated JGH Platform and JGH Intellectual Property, which rightfully belong to the Plaintiff, to further the criminal scheme to defraud clients of FET payments described above.

116. The thousands of predicate acts of wire fraud and misappropriation of the JGH Platform and JGH Intellectual Property conducted by the CFG Enterprise to further the conspiracy were part of a pattern of racketeering activity, and Defendant Brown and the CFG Enterprise Defendants and CFG Personnel knowingly took part in the commission of these acts to further the scheme described above. Specifically, Defendant Brown created or caused to be created false documents which misrepresented the collection of FET, and sent or caused those documents to be sent by CFG Personnel electronically through the JGH Platform containing the false statements about the collection of FET, and then took the proceeds from the FET lawfully owed on behalf of the CFG Enterprise Clients to the IRS and used the proceeds to invest in and operate the CFG Enterprise.

117. Defendant Brown was well aware throughout January of 2017 to the present that failure to collect FET was a felony offense and was directly knowledgeable of the facts of *U.S. v. Rizzi* which held a charter broker criminally liable for failure to remit less than $500,000 in collected but unpaid FET to the IRS. Defendant Brown further was aware and agreed to allocate FET to dedicated accounts for the trust fund after signing the Shareholder Agreement. Despite knowledge that the collection of FET and use of FET to fund the enterprise was a crime, Defendant Brown caused more than tenfold the amounts of FET which was undisputed in the *Rizzi* case to be directed to benefit the CFG Enterprise Defendants.

118. Plaintiff has suffered injury to his reputation and business in the harm to his reputation and the disruption of his business activities, both in the damage done to the JGH Platform and JGH Intellectual Property by the damage caused by using them in the CFG Enterprise Defendants' criminal enterprise, but also in the damage of the more than $1,300,000 in assessments by the IRS against Plaintiff individually despite Defendant Brown and the CFG Enterprise Defendants' collection of more than $5,000,000 in charged FET payments which instead were routed to the benefit of the enterprise. This injury was caused by Defendant Brown and the CFG Enterprise Defendants' acquisition or control of the enterprise, and is independent from the injury caused by the pattern of racketeering.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

119. Plaintiff's injury was proximately caused by the racketeering activity engaged in by Defendant Brown and the CFG Enterprise Defendants in that the acts described above forced Plaintiff to expend substantial sums of money and resources to address the IRS' assessment against him individually for the unpaid FET, sever disruptions to his business activities and operations as a technologist whose intellectual property has been misappropriated to orchestrate this enterprise, and significant risk to his reputation by directly involving the companies which he is a rightful owner of to the involvement of the criminal actions described above.

**<u>SECOND CAUSE OF ACTION</u>**

**DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836(b)(1)**

**(AGAINST DEFENDANTS JORDAN BROWN, JET GENIUS HOLDINGS, INC., JET GENIUS FLORIDA HOLDINGS, INC., C3JETS LLC, BOWMAN AVIATION, INC., JET AGENCY GLOBAL LLC, AND C3 LIMO LLC)**

120. Plaintiff realleges and incorporates by reference Paragraphs 1-119 as if set forth fully herein.

121. Plaintiff, individually or alternatively on behalf of Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property, which includes the JGH Platform and the technology developed by Plaintiff known as the GRID. The JGH Intellectual Property is material to JGH's business and services used in interstate commerce, specifically the technology software and JGH Platform architected and built by Plaintiff which has enabled his company to grow and expand JGH clients throughout the United States, allowing them to book private air travel throughout the United States, by matching these clients with air charter operators throughout the United States.

122. The JGH Platform, Plaintiff's Technical Expertise, software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names such as jetcharter.com, jetagency.com, and flycfg.com, business methods, client lists, proprietary designs, and trade secrets in the JGH Intellectual Property are precisely the type of Trade Secrets Congress sought to protect when it enacted the Defend Trade Secrets Act of 2016 in May of

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

2016.

123. In December of 2018, shortly after the events of the Board Coup and the creation of the Shareholder Agreement, Defendant Brown and the Plaintiff discussed the JGH Intellectual Property in great detail with JGH's advisors. The JGH Intellectual Property was material and relevant to the Shareholder Agreement, which is why Defendant Brown and JGH fraudulently induced Plaintiff to assign to JGH rights for the JGH Intellectual Property contemporaneously along with the Shareholder Agreement. *See Exhibits "A" and "B"* Any such assignment has been voided by the conduct of the Defendants, and the JGH Intellectual Property and JGH Platform are the intellectual property of the Plaintiff, and alternatively of JGH, which at no point could have made a valid transfer of the JGH Intellectual Property without a properly formed Board, without notifying shareholders, without issuing payment to Plaintiff, without notifying IRS, and without any valid licensing agreement.

124. Plaintiff was not opposed to signing the Shareholder Agreement along with assignment of rights of the JGH Intellectual Property, because he believed it would be assigned to JGH for the purposes of JGH, and Defendant Brown had bound JGH to honor the payment of past due FET to the IRS. But Defendant Brown had other plans, and by August 27, 2019, less than three years from the date of filing Plaintiff's complaint, Brown purportedly incorporated Defendant JGFH, despite JGH lacking the requisite corporate formalities to establish such, and in contravention of the Shareholder Agreement.

125. As soon as Defendant JGFH was created, Defendant Brown and JGFH conspired to misappropriate the JGH Intellectual Property even though no valid license or business justification for its use was in place, no consent of the shareholders was received, and no listing of the JGH Intellectual Property with the IRS as part of JGH's value was disclosed. Defendant Brown has additionally misappropriated the JGH Platform and JGH Intellectual Property without cause for the benefit of Defendants C3 Jets, Bowman Aviation, and Jet Agency, and C3 Limo (together with Defendants Brown and JGFH the "IP Defendants"). The JGH Intellectual Property had tremendous value, and since Defendant Brown's initial misappropriation of the JGH

Intellectual Property, it has been used to create more than $125,000,000 in revenue derived from the JGH Intellectual Property and JGH Platform, just in the period from August 2019 to the present, all without a valid transfer, license, payment, or agreement for the JGH Intellectual Property, and all while the IP Defendants knew that JGH and Plaintiff personally were assessed by the IRS for $1,300,000 in unpaid FET.

126. Rather than fulfilling his obligations as a fiduciary to the shareholders of JGH, Defendant Brown instead conspired with the CFG Personnel to unjustly enrich the IP Defendants, while allowing JGH and the Plaintiff to face increased pressure by the IRS for the unpaid $1,300,000 in FET, all while knowing that either Plaintiff or alternatively JGH were the rightful and owner of the JGH Intellectual Property which had been misappropriated to create hundreds of millions of dollars in revenue for the IP Defendants without a valid license to use, and without a valid payment to JGH, Plaintiff, or to the IRS, all of which were payments which Defendant Brown explicitly agreed to make.

127. Defendant JGFH's own independent aviation industry valuation firm, Avicor, engaged by Defendant Brown and JGFH to determine the enterprise value of the Defendants concluded that the value of the JGH Intellectual Property represented a multiplier that was more than $50,000,000 out of the nearly $67,000,000 enterprise valuation as demonstrated by the disparity between the First Avicor Valuation and Second Avicor Valuation.

128. Plaintiff suggested to the Defendants that the JGH Intellectual Property had not been properly accounted for and proposed that a payment towards a license in the amount of $125,000 which would be allocated to the IRS unpaid FET as suggested by RO Neville in the First IRS FET proposal would be acceptable, and the Defendants Brown and JGFH ignored Plaintiff's proposal despite having no legal rights to the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between the IP Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

JGH's business could plausibly be claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, nor was proper consideration provided by any of the IP Defendants who benefited from the misappropriation of the JGH Intellectual Property.

129. JGH further lacked the requisite corporate formalities to validly license the JGH Intellectual Property – the most significant asset JGH possessed – due to an improperly constituted Board solely controlled by Brown. JGH could not possibly have entered into any valid license while it was effectively insolvent without providing a similar license on the open market or to potential licensees as would be required if a license was valid or using effective business judgment or justification with any plausible basis, and no such license could have rationally occurred without disclosing such intention to license the most significant asset JGH possessed while it was already subject to IRS liens without disclosure to IRS.

130. The IP Defendants each are also culpable in the misappropriation of the JGH Intellectual Property, because without use of the JGH Intellectual Property they would not have been able to receive the unauthorized loans from JGFH, nor would they have received their shares in the more than $125,000,000 revenue generated by JGFH which ensured hundreds of thousands of dollars each in revenue received from JGFH to Bowman Aviation and C3 Jets, nor would they have received the proceeds and revenues they directly benefited from by using the JGH Intellectual Property to receive clients lists and jet agency membership models, in the case of C3 Jets, nor receive commissions from client lists in the case of Bowman Aviation, nor would any IP Defendants benefit from the client lists and with direct revenue benefit to each.. The IP Defendants have further each directly used the JGH Intellectual Property without a valid license: from booking trips through the JGH Platform for JGFH, Bowman Aviation, and C3 Jets; to Jet Agency utilizing the JGH Intellectual Property to offer jet card subscriptions to CFG Enterprise clients; to C3 Limo utilizing the JGH Intellectual Property to market its ground transportation services to CFG Enterprise clients and utilize CFG Personnel to arrange transportation through

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

the JGH Platform as well as utilizing the JGH Intellectual Property on C3 Limo's official State of Florida records as its official contact information.

131. The IP Defendants have been unjustly enriched by the misappropriation of the JGH Intellectual Property, and the Plaintiff has already been harmed by this misappropriation given his individual assessment by the IRS for $1,300,000 in JGH's unpaid FET, an assessment which Defendants Brown and JGFH would have been able to prevent had they provided a payment towards a license of $125,000 to IRS' satisfaction and agreement that such payments would allow it to refrain from assessing the Plaintiff individually for Defendants' unpaid FET.

132. Plaintiff was further harmed by the Defendants' misappropriation of the JGH Intellectual Property when he relinquished both his Board seat and 24.5% of the equity and shareholdings in his company based upon the false promises that the JGH Intellectual Property would be properly documented and that the FET would be paid as set forth in the plan by LLME and the IRS and as required by law for Defendant Brown to not commit criminal collection and non-payment of FET. Had Plaintiff known that rather than fulfilling his obligations as a fiduciary and party binding JGH to the Shareholder Agreement, that Defendant Brown would instead conspire to misappropriate the JGH Intellectual Property to create new value for the IP Defendants and Brown individually, Plaintiff would not have surrendered his Board seat or relinquished his rightful claim for the 24.5% of the company under the Shareholder Agreement.

## <u>THIRD CAUSE OF ACTION</u>

## CALIFORNIA UNIFORM TRADE SECRETS ACT

## (CAL. CIV. CODE § 3426, *ET SEQ.*)

## (AGAINST DEFENDANTS JORDAN BROWN, JET GENIUS HOLDINGS, INC., JET GENIUS FLORIDA HOLDINGS, INC., C3JETS LLC, BOWMAN AVIATION, INC., JET AGENCY GLOBAL LLC, AND C3 LIMO LLC)

133. Plaintiff realleges and incorporates by reference Paragraphs 1-132 as if set forth fully herein.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

134. Plaintiff, individually or alternatively on behalf of Jet Genius Holdings, Inc. is the rightful and legal owner of the trade secrets referenced in this complaint as the JGH Intellectual Property, which includes the JGH Platform and the technology developed by Plaintiff known as the GRID. The JGH Intellectual Property is material to JGH's business and services lawfully belonging in the State of California, specifically the technology software and JGH Platform architected and built by Plaintiff which has enabled his company to grow and expand JGH clients, allowing them to book private air travel by matching these clients with air charter operators.

135. The JGH Platform, Plaintiff's Technical Expertise, software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names such as jetcharter.com, jetagency.com, and flycfg.com, business methods, client lists, proprietary designs, and trade secrets in the JGH Intellectual Property are precisely the type of Trade Secrets the Legislature sought to protect when it enacted the Uniform Trade Secrets Act of 1984. The JGH staff led by Plaintiff as CTO who were employed to develop the JGH Platform including the GRID developed the majority of the software in the State of California.

136. In December of 2018, shortly after the events of the Board Coup and the creation of the Shareholder Agreement, Defendant Brown and the Plaintiff discussed in California the JGH Intellectual Property in great detail with JGH's advisors. The JGH Intellectual Property was material and relevant to the Shareholder Agreement, which is why Defendant Brown and JGH fraudulently induced the Plaintiff to assign to JGH rights for the JGH Intellectual Property contemporaneously along with the Shareholder Agreement, and required such to occur as part of the internal affairs of JGH in the State of California. *See Exhibits "A" and "B"*. Any such assignment has been voided by the conduct of the Defendants, and the JGH Intellectual Property and JGH Platform are the intellectual property of the Plaintiff, and alternatively of JGH, which at no point could have made a valid transfer of the JGH Intellectual Property without a properly formed Board, without notifying shareholders, without issuing payment to Plaintiff, without notifying IRS, and without any valid licensing agreement.

137. Plaintiff was not opposed to signing the Shareholder Agreement along with

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

assignment of rights of the JGH Intellectual Property, because he believed it would be assigned to JGH for the purposes of JGH, and Defendant Brown had bound JGH to honor the payment of past due FET to the IRS. But Defendant Brown had other plans, and by August 27, 2019, less than three years from the date of filing Plaintiff's complaint, Brown purportedly incorporated Defendant JGFH, despite JGH lacking the requisite corporate formalities to establish such, and in contravention of the Shareholder Agreement.

138. As soon as Defendant JGFH was created, Defendant Brown and JGFH conspired to misappropriate the JGH Intellectual Property even though no valid license or business justification for its use was in place, no consent of the shareholders was received, and no listing of the JGH Intellectual Property with the IRS as part of JGH's value was disclosed. Defendant Brown has additionally misappropriated the JGH Platform and JGH Intellectual Property without cause for the benefit of the IP Defendants. The JGH Intellectual Property had tremendous value, and since Defendant Brown's initial misappropriation of the JGH Intellectual Property, it has been used to create more than $125,000,000 in revenue derived from the JGH Intellectual Property and JGH Platform, just in the period from August 2019 to the present, all without a valid transfer, license, payment, or agreement for the JGH Intellectual Property, and all while the IP Defendants knew that JGH and Plaintiff personally were assessed by the IRS for $1,300,000 in unpaid FET.

139. Rather than fulfilling his obligations as a fiduciary to the shareholders of JGH, Defendant Brown instead conspired with the CFG Personnel to unjustly enrich the IP Defendants, while allowing JGH and the Plaintiff to face increased pressure by the IRS for the unpaid $1,300,000 in FET, all while knowing that either Plaintiff or alternatively JGH were the rightful and owner of the JGH Intellectual Property which had been misappropriated to create hundreds of millions of dollars in revenue for the IP Defendants without a valid license to use, and without a valid payment to JGH, Plaintiff, or to the IRS, all of which were payments which Defendant Brown explicitly agreed to make.

140. Defendant JGFH's own independent aviation industry valuation firm, Avicor,

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

engaged by Defendant Brown and JGFH to determine the enterprise value of the Defendants concluded that the value of the JGH Intellectual Property represented a multiplier that was more than $50,000,000 out of the nearly $67,000,000 enterprise valuation as demonstrated by the disparity between the First Avicor Valuation and Second Avicor Valuation.

141. Plaintiff suggested to the Defendants that the JGH Intellectual Property had not been properly accounted for and proposed that a payment towards a license in the amount of $125,000 which would be allocated to the IRS unpaid FET as suggested by RO Neville in the First IRS FET proposal would be acceptable, and the Defendants Brown and JGFH ignored Plaintiff's proposal despite having no legal rights to the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between the IP Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly be claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, nor was proper consideration provided by any of the IP Defendants who benefited from the misappropriation of the JGH Intellectual Property.

142. JGH further lacked the requisite corporate formalities to validly license the JGH Intellectual Property – the most significant asset JGH possessed – due to an improperly constituted Board solely controlled by Brown. JGH could not possibly have entered into any valid license while it was effectively insolvent without providing a similar license on the open market or to potential licensees as would be required if a license was valid or using effective business judgment or justification with any plausible basis, and no such license could have rationally occurred without disclosing such intention to license the most significant asset JGH possessed while it was already subject to IRS liens without disclosure to IRS.

143. The IP Defendants each are also culpable in the misappropriation of the JGH

Intellectual Property, because without use of the JGH Intellectual Property they would not have been able to receive the unauthorized loans from JGFH, nor would they have received their shares in the more than $125,000,000 revenue generated by JGFH which ensured hundreds of thousands of dollars each in revenue received from JGFH to Bowman Aviation and C3 Jets, nor would they have received the proceeds and revenues they directly benefited from by using the JGH Intellectual Property to receive clients lists and jet agency membership models, in the case of C3 Jets, nor receive commissions from client lists in the case of Bowman Aviation, nor would any IP Defendants benefit from the client lists and with direct revenue benefit to each. The IP Defendants have further each directly used the JGH Intellectual Property without a valid license: from booking trips through the JGH Platform for JGFH, Bowman Aviation, and C3 Jets; to Jet Agency utilizing the JGH Intellectual Property to offer jet card subscriptions to CFG Enterprise clients; to C3 Limo utilizing the JGH Intellectual Property to market its ground transportation services to CFG Enterprise clients and utilize CFG Personnel to arrange transportation through the JGH Platform as well as utilizing the JGH Intellectual Property on C3 Limo's official State of Florida records as its official contact information.

144. The IP Defendants have been unjustly enriched by the misappropriation of the JGH Intellectual Property, and the Plaintiff has already been harmed by this misappropriation given his individual assessment by the IRS for $1,300,000 in JGH's unpaid FET, an assessment which Defendants Brown and JGFH would have been able to prevent had they provided a payment towards a license of $125,000 to IRS' satisfaction and agreement that such payments would allow it to refrain from assessing the Plaintiff individually for Defendants' unpaid FET.

145. Plaintiff was further harmed by the Defendants' misappropriation of the JGH Intellectual Property when he relinquished both his Board seat and 24.5% of the equity and shareholdings in his company based upon the false promises that the JGH Intellectual Property would be properly documented and that the FET would be paid as set forth in the plan by LLME and the IRS and as required by law for Defendant Brown to not commit criminal collection and non-payment of FET. Had Plaintiff known that rather than fulfilling his obligations as a fiduciary

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

and party binding JGH to the Shareholder Agreement, that Defendant Brown would instead conspire to misappropriate the JGH Intellectual Property to create new value for the IP Defendants and Brown individually, Plaintiff would not have surrendered his Board seat or relinquished his rightful claim for the 24.5% of the company under the Shareholder Agreement.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(AGAINST JORDAN BROWN, JET GENIUS HOLDINGS, INC., AND JET GENIUS FLORIDA HOLDINGS, INC., AND BROWN FAMILY TRUST)**

146. Plaintiff realleges and incorporates by reference Paragraphs 1-145 as if set forth fully herein On November 7, 2018, Plaintiff Stanz and Defendant Brown entered into a contract, the Shareholder Agreement consummated in Del Mar, California. *See Exhibit "A"*.

147. Plaintiff Stanz relinquished 24.5% of his 49.5% stake in Jet Genius Holdings, Inc. as well as Plaintiff's seat on JGH's Board of Directors, to Defendant Brown, CEO and Chairman of JGH. In return, Defendant Brown agreed to ensure that as JGH received revenue that the company would in good faith withhold the revenue in a separate bank account to be used to pay past due federal excise taxes as required in Section 6 of the Shareholder Agreement.

148. Other important parts of the Shareholder Agreement were that:

(1) Defendant Brown would not take money from the company for himself without written consent from Plaintiff Stanz, Section 2(e),

(2) Defendant Brown would not take any loans from the company without written consent from Plaintiff Stanz, Section 2(e),

(3) Upon the closing of a "corporate event" Section 4, Plaintiff would receive the following amounts:

| | |
|---|---|
| November 7, 2018 - November 1, 2019 | $909,451.00 |
| November 2, 2019 - November 1, 2020 | $727,561.00 |
| November 2, 2020 - November 1, 2021 | $545,671.00 |





WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

November 2, 2021 - November 1, 2022 $363,780.00

149. "Corporate event" is described in Section 4. Corporate Event Payment.

150. To date, Defendant Brown has failed to set aside funds in a separate bank account. Defendant Brown has failed to make payments towards the FET owed to the IRS, failed to disclose any transfer of the JGH Intellectual Property to the IRS, and failed to make payments to Plaintiff for any purported permissible transfers of the JGH Intellectual Property as required by Section 4, because such purported transfers were undocumented and fraudulent.

151. Defendant Brown and JGH created Defendants JGFH, C3 Jets, and Jet Agency in violation of Section 2(d) of the Shareholder Agreement. Brown and JGH lacked the requisite corporate formalities to establish JGFH, and JGFH is an *alter ego* of JGH and equitable successor in interest to the Shareholder Agreement. Defendant Brown Family Trust is subject to the Shareholder Agreement for the improper transfer of the 10% shareholdings allocated to an employee equity incentive plan that it instead received from Defendant Brown, who was aware of the fraudulent nature of the transfer in his capacity as Chairman of JGH, his knowledge that JGH did not have a properly constituted Board at the time of JGFH's creation, and in his capacity as purported CEO of JGFH at the time of incorporation, and as a Trustee of the Brown Family Trust.

152. Defendant Brown, JGFH, and JGH created a new class of shares listed within JGFH, which is in contravention of the Shareholder Agreement Section 2(b) that without prior written consent, the company shall not "authorize or issue additional shares of common stock or any other class or series of capital stock in the Company"

153. Defendant Brown loaned millions of dollars to himself individually, in violation of Section 2(e) of the Shareholder Agreement.

154. Defendant Brown loaned hundreds of thousands of dollars to Defendants C3 Jets and Bowman Aviation and C3 Limo, all of which are entities wholly owned by Defendant Brown or his assigns, in violations of Section 2(e) of the Shareholder Agreement.

155. Although demand has been made that Defendant Brown, JGH, and JGFHset aside monies to pay the IRS, they failed to do so.





WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

156. Defendant Brown and Defendant JGH further breached a contract by failing to adhere to the Bylaws. The Bylaws are undisputed by the parties to be an enforceable contract. The Bylaws require JGH to provide counsel for Plaintiff, or alternatively to reimburse Plaintiff for counsel's fees for any action before a tribunal or agency such as the IRS for actions relating to the operations or management or governance of the corporation. *See Exhibit "C"* Plaintiff is covered in the Bylaws as a former Director or Officer and was entitled for immediate reimbursement at the time of the IRS proceedings for such representation or reimbursement for representation. Plaintiff has incurred over $75,000 in legal fees in his dealings with the IRS without reimbursement by JGH, and when Plaintiff requested such representation or reimbursement Defendant Brown and JGH refused to provide counsel even though no such refusal was given for Shareholder Wolf, and Brown and JGH further refused reimbursement for Plaintiff's fees.

157. Defendant Brown and JGH further have failed to adhere to the Bylaws by failing to fill the vacancies of Directors Brown as required by Article III Section 4 of the Bylaws. *See Exhibit "C"* Defendant Brown invalidly remained as the sole Director of JGH and ignored the requirements of the Bylaws to fill vacancies of JGH's Board. As a corporation with 3 shareholders, JGH was required to maintain a Board of three persons per the California Corporations Code Section 212. JGH and Brown failed to do such, and accordingly failed to maintain the requirements of Article VII Section 7 of the Bylaws to file accurate statements with the Secretary of State of California listing the Directors and business addresses of the Directors, since no such filings following the Board Coup properly reflected the three requisite Directors.

158. Plaintiff is entitled to recission of all corporate actions taken by JGH and every Defendant formed after the Board Coup, as JGH lacked the requisite corporate authority to take any such actions.

159. Plaintiff is entitled to $1,300,000, the amount of monies that the IRS is threatening to lien against him personally because no reasonable payments have been made to the IRS nor have any monies been set aside in a separate account by JGH to pay the IRS, and is entitled for

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

such payment to be made directly to the IRS FET trust fund on his behalf. Plaintiff is further entitled to $75,000 plus all additional fees owed by Plaintiff to counsel for Plaintiff's dealings with the IRS as required by the Bylaws.

160. Plaintiff is entitled to recission of any intellectual property assignment purported for the JGH Intellectual Property including the JGH Platform including the GRID, which was materially part of the Shareholder Agreement due to Defendants' breach of the Shareholder Agreement.

161. Plaintiff is entitled to the 24.5% of JGH that was relinquished as part of the Shareholder Agreement, and 24.5% of JGFH for any mirroring of shares purported, inclusive of the 10% of shareholdings by JGFH held by the Brown Family Trust.

162. Plaintiff is entitled to appoint a representative to a seat on JGH's Board of Directors, which was relinquished as part of the Shareholder Agreement and is equitably entitled to appoint a representative to JGFH's Board of Directors which should reflect that JGFH is an *alter ego* of JGH and constitutes a subsidiary which must have governance similarly reflected to that of JGH.

163. Plaintiff is entitled to attorneys' fees per contract for all fees related to the instant case according to California Civil Code §1717, *See Section 14. of the Contract, Exhibit "A".*

## <u>FIFTH CAUSE OF ACTION</u>

## BREACH OF FIDUCIARY DUTY

## (AGAINST JORDAN BROWN, JET GENIUS HOLDINGS, INC., AND JET GENIUS FLORIDA HOLDINGS, INC.)

164. Plaintiff realleges and incorporates by reference Paragraphs 1-163 as if set forth fully herein.

165. At all times relevant, Defendant Brown was the Chairman of the Board, CEO, and Director of Defendants JGH and JGFH.

166. Plaintiff is the rightful owner of 49.5% of the equity value of Defendants JGH and

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

JGFH, and is the current owner of 25% of the equity value and shareholdings of Defendants JGH and JGFH.

167. Defendant Brown as Director, Chairman, and CEO of Defendants JGH and JGFH owed fiduciary duties to the shareholders of JGH and JGFH.

168. Defendant Brown, as fiduciary to the shareholders of JGH and JGFH was prohibited from taking actions in dereliction of those duties, including misappropriation of assets of another, self-dealing, co-mingling funds, and failing to administer tax obligations to the IRS.

169. Defendant Brown, as fiduciary to the shareholders of JGH and JGFH was prohibited from taking actions in dereliction of those duties, including the commission of felonies and fraud upon the Federal Government, the clients of the CFG Enterprise, and the charter Operator partners and Brokers which the CFG Enterprise depends on for revenue, and he breached these duties when he willfully violated 26 U.S.C § 7202 in the fraudulent collection without remission of FET from CFG Enterprise clients.

170. Defendant Brown knowingly conspired to take the JGH Intellectual Property for the benefit of JGFH with no benefit to the JGH shareholders, whilst the shareholders were subject to individual assessments and liens by the IRS for Defendant Brown's willful actions not to pay the IRS for the unpaid $1,300,000 FET already in place at the time of the Shareholder Agreement's execution.

171. At the time of the Shareholder Agreement's execution, JGH and Defendant Brown had already agreed to a payment strategy and audit by LLME to the IRS, and after December 2018 Defendant Brown was the sole director of JGH.

172. After the Shareholder Agreement was executed, Defendant Brown cancelled the audit with LLME, and disregarded the previously existing plan to satisfy the IRS' $1,300,000 FET assessment.

173. After the Shareholder Agreement was executed, Defendant Brown created third-party entities such as JGFH, C3 Jets, and Jet Agency which were not wholly owned subsidiaries in contravention of the Shareholder Agreement and in contravention of his duty of loyalty to the

shareholders of JGH.

174. After the Shareholder Agreement was executed, Defendant Brown caused the JGH Intellectual Property to be misappropriated by JGFH, C3 Jets, Jet Agency, C3 Limo, and Bowman Aviation, in dereliction of his duty of loyalty to the shareholders of JGH, and did so while knowingly hiding the JGH Intellectual Property from the IRS and not disclosing such actions, all while subject to the $1,300,000 in unpaid FET and continually accruing millions in additional unpaid FET.

175. Defendant Brown admitted to the Plaintiff that he is responsible for the unpaid FET when he stated: "I am responsible for the FET mess. I will have to answer to this. GET OVER IT. Who gives a f*ck. We can raise the money tomorrow to cover it. I would do it again. It's what I did to get the company to this point. Please stop bringing it up!"

176. Defendant Brown owed a duty of loyalty to the employees who were equitable shareholders of JGH and JGFH which the Shareholder Agreement required 10% of the shareholdings relinquished by Plaintiff to JGH to be established for under a valid employee equity incentive plan. Defendant Brown established no such plan and further breached his fiduciary duty by failing to establish such a plan upon the incorporation of JGFH.

177. Defendant Brown issued more than $3,300,000 in personal loans to himself from JGFH while JGH was subject to millions of dollars in unpaid FET, in violation of the Shareholder Agreement and in dereliction of his duties of loyalty and care to the shareholders of JGH and JGFH. *See Exhibit "F"*.

178. Defendant Brown issued hundreds of thousands of dollars of loans to entities he controlled individually or through his assigns, from JGFH while JGH was subject to millions of dollars in unpaid FET, in violation of the Shareholder Agreement and in dereliction of his duties of loyalty and care to the shareholders of JGH and JGFH. *See Exhibit "F"*.

179. At all times as a fiduciary, Defendant Brown's actions were imputed to the corporations and Defendants JGH and JGFH are further responsible for all of the above-mentioned actions by Defendant Brown, and Defendant Brown has admitted his responsibility for

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

the failure to pay FET as his own obligation.

180. Defendants JGH and JGFH are vicariously liable for all actions of Brown in breach of his fiduciary duties, as he is the control person of JGH and JGFH, improper sole director, chairman, and CEO of each.

181. Plaintiff has been harmed by Defendants' actions by having the $1,300,000 in unpaid FET to the IRS assessed against himself individually, and the harm was proximately caused by Defendant Brown's actions, inactions, and self-dealing, in dereliction of his fiduciary duties, all of which were substantial factors in the harm to Plaintiff.

**SIXTH CAUSE OF ACTION**

**FRAUD**

**(AGAINST ALL DEFENDANTS)**

182. Plaintiff realleges and incorporates by reference Paragraphs 1-181 as if set forth fully herein.

183. Defendant Brown represented to Plaintiff that he would pay the FET on multiple occasions and admitted his responsibility for the failure to pay FET.

184. Once control in JGFH was solidified following the Board Coup and Defendant Brown had installed himself as the sole director and executive of JGFH, Defendant Brown continued his conspiracy to defraud the Plaintiff as a shareholder of JGH by taking the JGH Intellectual Property in a series of *undocumented* sham transactions despite the advice to JGH by advisors that the JGH Intellectual Property must be properly accounted for. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between the IP Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly be claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any valid

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

consideration for by any of the Defendants. *See Exhibits "A" and "B"*.

185. Defendant Brown continued to misappropriate the JGH Intellectual Property into JGFH, and then started processes with the JGH Intellectual Property which would create over $125,000,000 in unjustly enriched revenue to JGFH without any licensing or compensation to JGH, and then used this unjustly enriched revenue to establish *even more* third-party companies such as Defendant C3 Jets which were hidden from the JGH shareholders and structured solely with Defendant Brown and his family in control positions. Once in these control positions, Defendant Brown created additional schemes to defraud the JGH shareholders and the Plaintiff by making millions of dollars of fraudulent Undocumented Multi-million Dollar Loans to the third-party companies controlled by Defendant Brown or his family from its unjustly enriched revenue, as well as more than $3,300,000 to himself individually, all while hiding this activity from the IRS while it continued to increase its attempts to assess and collect its unpaid FET against JGH, and all while Defendant Brown remained the sole control person, Director, fiduciary, and CEO of JGH. *See Exhibit "F"*.

186. As defined in Plaintiff's First Cause of Action above, the CFG Personnel were involved with the business and operations of all CFG Enterprise Defendants. Defendants C3 Jets, C3 Limo, Bowman Aviation, and Jet Agency each were recipients of undocumented "loans" created and authorized by Defendant Brown through JGFH and the JGFH Personnel which enabled Defendant Brown's continued conspiracy to defraud the Plaintiff and the JGH shareholders. They were recipients through fraudulent "loans" derived from fraudulently collected FET as described in Plaintiff's First Cause of Action, in the CFG Enterprise which allowed the CFG Enterprise Defendants' collective operations and businesses servicing the private aviation industry to generate in excess of $125,000,000 revenue. The CFG Enterprise Defendants did such while fraudulently promising the JGH shareholders and Plaintiff that these actions were for the benefit of JGH and would be properly documented.

187. Defendant Brown made these promises, and indeed JGH's counsel Chis Popov of Watkins Firm, APC ("Attorney Popov") confirmed with the Plaintiff and JGH's outside counsel

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

that JGH would proceed with the plan for repayment to the IRS as required in the Shareholder Agreement Section 6, despite Defendant Brown willfully ignoring the previous $1,300,000 existing FET and repayment plan as obligated in the Shareholder Agreement to be paid in conjunction of the Board Coup, and instead while secretly incurring an additional $7,000,000 in unpaid FET to the IRS despite unjustly enriching himself with millions of dollars through JGFH.

188. Defendant Brown's intentions from the beginning were to never pay the FET, and Defendant Brown has admitted his culpability for failure to pay the FET and stated that if given the chance to do such over again, he would, despite knowing that the collection without remission of FET through the Fraudulently Charged FET was a felony.

189. The Shareholder Agreement was a document intended to fraudulently induce Plaintiff to relinquish his shareholdings and assign his intellectual property rights to the JGH Intellectual Property. Brown immediately canceled the audit in progress, failed to properly constitute a valid Board for JGH, and began siphoning the assets and the JGH Intellectual Property for the benefit of the CFG Enterprise Defendants. This fraudulent inducement further caused Plaintiff to relinquish shareholdings which were agreed to be allocated to an employee equity incentive plan of 10% of the shareholdings of JGH, and which Defendant Brown instead allocated to himself and the Brown Family Trust. Upon fraudulently incorporating JGFH as *alter ego* of JGH, Brown transferred equity which would rightfully be subject to the same employee equity incentive plan to the Brown Family Trust, and transferred such with fraudulent intent given his signature on the Shareholder Agreement, his capacity as a fiduciary of JGH as Director and CEO, his capacity as a fiduciary of JGFH as its purported sole Director, and his capacity as a fiduciary of the Brown Family Trust as a Trustee. Such a transfer was done with the intent to defraud Plaintiff and the JGH shareholders, and as Trustee of the Brown Family Trust the Trust is equally culpable for participating in this fraud due to the fraudulent actions and conveyance carried out by its Trustee.

190. All of the Defendants materially benefitted from the fraud against the Plaintiff.

191. Plaintiff relied on the representations of Defendant Brown and did so until the IRS

threatened to file a lien against him personally on August 8, 2022.

192. Plaintiff's reliance on Defendant Brown's representation was a substantial factor in causing him substantial harm.

**SEVENTH CAUSE OF ACTION**

**CONSPIRACY**

**(AGAINST ALL DEFENDANTS)**

193. Plaintiff realleges and incorporates by reference Paragraphs 1-192 as if set forth fully herein.

194. The CFG Personnel were involved with the business and operations of all of the CFG Enterprise Defendants. Defendants C3 Jets, Bowman Aviation, Jet Agency, and C3 Limo are agents of JGFH, JGH, and Defendant Jordan Brown. Defendant Brown, the CFG Personnel, and the CFG Enterprise Defendants all conspired to send the Client Contracts informing clients of the CFG Enterprise that FET was included in the contract pricing they received, and the CFG Enterprise successfully collected over $5,000,000 in FET paid for by the CFG Enterprise clients which was not remitted to the IRS, in violation of 26 U.S.C § 7202.

195. Defendant Brown caused JGFH to be formed after seizing control of JGH and after agreeing to the Shareholder Agreement following the Board Coup and did such without a properly constituted Board for JGH.

196. After securing control of JGH, Defendant Brown coordinated with the invalidly incorporated JGFH and the CFG Personnel to benefit from the misappropriated JGH Intellectual Property, enabling JGFH to begin accruing more than $125,000,000 which should have been revenue of JGH. Defendant Brown further created C3 Jets and Jet Agency to benefit from its business relationship with JGFH, and continued to invest the proceeds of revenue from the misappropriated JGH Intellectual Property as well as the Fraudulently Charged FET to into Defendants C3 Jets, Jet Agency, Bowman Aviation and C3 Limo. Defendant Brown further conspired with the Brown Family Trust to transfer shares obtained through fraudulent inducement

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

of the Plaintiff instead of establishing a valid employee equity incentive plan.

197. Using the misappropriated JGH Intellectual Property, Defendant Brown caused Undocumented Multi-million Dollar Loans to be disbursed to himself individually, C3 Jets, C3 Limo, Jet Agency and Bowman Aviation, with no reciprocal benefit from JGFH or the Defendants to Plaintiff or JGH, and the IP Defendants used the misappropriated JGH Intellectual Property to unjustly enrich themselves while JGH and Plaintiff were left to fend for themselves with the IRS. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between the IP Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly be claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any valid consideration owed to Plaintiff or JGH by any of the Defendants. *See Exhibit "A"*.

198. The IP Defendants were aware that the JGH Intellectual Property was misappropriated and were aware that it's misappropriation would unjustly enrich the Defendants.

199. The IP Defendants were aware and knew that Plaintiff and JGH would be harmed with the continued assessment for FET by IRS which Defendant Brown was ignoring, and they misappropriated the JGH Intellectual Property while hiding the same value from the IRS.

200. All Defendants knowingly benefited from the misappropriated JGH Intellectual Property and monies rightfully belonging to the Plaintiff by way of his shareholdings in JGH, at all times knowing that there already had been in excess of $1,300,000 in unpaid FET assessed by IRS which the JGH Intellectual Property could have been utilized to generate revenue to pay towards. Defendants instead coordinated an elaborate scheme to generate revenue to pay themselves millions of dollars and ignore the unpaid FET.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

**<u>EIGHTH CAUSE OF ACTION</u>**

**ACCOUNTING**

**(AGAINST DEFENDANTS JET GENIUS HOLDINGS, INC., AND JET GENIUS FLORIDA HOLDINGS, INC.)**

201. Plaintiff realleges and incorporates by reference Paragraphs 1-200 as if set forth fully herein.

202. Plaintiff has a contractual relationship with Defendant Brown. *See Exhibits "A" and "B"*.

203. Monies are due to Plaintiff because of Defendant Brown's breach of this contract.

204. Additionally, both Plaintiff Stanz and Defendant Brown are current shareholders of JGH and JGFH.

205. Plaintiff had no knowledge that he was a shareholder of Defendant JGFH until it mailed him unsolicited shares in JGFH, and Plaintiff has almost no visibility into the business accounts, financial health, contractual obligations, indebtedness, or loans issued by Defendant JGFH.

206. Plaintiff has already been subject to IRS assessment for unpaid FET to the IRS by Defendants for his shareholdings in JGH, and his recently discovered shareholding in JGFH may further expose Plaintiff to similar exposure especially in light of Defendant Brown's past failure to pay FET.

207. Defendant JGFH's accountant Ms. Arabi admitted that she was not aware of "". (emphasis added)

208. The loans Ms. Arabi and other CFG Personnel admitted they were not aware of formal agreements or documentation to include transfers of funds from JGFH to Defendants Brown, C3 Jets, Jet Agency, Bowman Aviation, C3 Limo, whose managing member is Defendant Brown's stepson and which up until April of 2022 had Defendant Brown's wife Stacy as a member.

209. All of the loans Ms. Arabi admitted she was not aware of formal agreements or

documentation to involve transfers in violation of the Shareholder Agreement.

210. Monies are due to Plaintiff because of the breach of this Shareholder Agreement as well.

211. A balance is due to Plaintiff and can only be ascertained by an accounting.

## NINTH CAUSE OF ACTION

## UNJUST ENRICHMENT

## (AGAINST DEFENDANTS JORDAN BROWN, JET GENIUS HOLDINGS, INC., JET GENIUS FLORIDA HOLDINGS, INC., C3JETS LLC, BOWMAN AVIATION, INC., JET AGENCY GLOBAL LLC, AND C3 LIMO LLC)

212. Plaintiff realleges and incorporates by reference Paragraphs 1-211 as if set forth fully herein.

213. The IP Defendants were unjustly enriched by the misappropriation of JGH's and Plaintiff's trade secrets contained in the JGH Intellectual Property. No document, license, or agreement similar to Plaintiff's JGH Intellectual Property Proposal was created between Defendants and JGH, and no payment for any transfer owed to Plaintiff as provided for in Section 4 of the Shareholder Agreement was ever discussed or proposed, because no such permissible transfer ever occurred. No permissible transfer in the ordinary course of JGH's business could plausibly be claimed when any such transfer was not disclosed to the shareholders, was not referenced for the Section 4 Shareholder Agreement obligations, was not documented, was not disclosed to the IRS when already assessing JGH for unpaid FET, and was not given any consideration for by any of the Defendants.

214. Defendant JGFH generated in excess of $125,000,000 after its incorporation, all of which was generated utilizing the JGH Intellectual Property, and at no times which it had a license or agreement or share of revenue to JGH for.

215. Without the misappropriation of the JGH Intellectual Property, JGFH would not have been able to generate in excess of $125,000,000 revenue, would not have been able to make undocumented loans in excess of $3,300,000 to Defendant Brown, would not have been able to

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

make undocumented loans in excess of $860,000 to Defendant C3 Jets, and would not have been able to make more than $135,571 in undocumented loans to Defendant Bowman Aviation nor $343,329 to Defendant Jet Agency, nor $54,791 to Defendant C3 Limo LLC. *See Exhibit "F"*.

**TENTH CAUSE OF ACTION**

**EQUITABLE INDEMNITY**

**(AGAINST DEFENDANT JORDAN BROWN)**

216. Plaintiff realleges and incorporates by reference Paragraphs 1-215 as if set forth fully herein.

217. Jordan Brown applied for an Employer Identification Number ("EIN") with the IRS for JGH. By applying for the EIN, Jordan Brown agreed to make all necessary payments to the IRS. Jordan Brown was granted the EIN on November 30, 2016. However, Brown failed to fulfill his obligation to the IRS and did not pay the FETs that he withheld for many years.

218. Plaintiff Stanz is part owner of JGH. Because of this, Plaintiff Stanz is currently being compelled by the IRS to make these late FET payments to them and continues to incur costs and attorneys' fees.

219. Plaintiff requests that Defendant Brown indemnify Plaintiff for all monies, taxes, fees, and/or costs incurred and continues to occur and/or levied on Plaintiff for Brown's failure to pay any FETs to which Brown is responsible.

220. Costs and fees are to be determined at trial.

**IMMINENT IRREPARABLE INJURY**

221. Plaintiff realleges and incorporates by reference Paragraphs 1-220 as if set forth fully herein.

222. The unpaid FET by the Defendants represents an imminent irreparable injury to the Plaintiff. The IRS has already assessed $1,300,000 in the Defendants' unpaid FET against the Plaintiff individually, and Defendant Brown has admitted his responsibility for all FET. Despite the Plaintiff's efforts to request Defendants to pay their existing FET obligations, or to make a

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

good faith payment to IRS as proposed by the First IRS FET Proposal and Second IRS FET Proposal, Defendants have refused to pay the FET Defendant Brown has already admitted he owes, and which the IRS has already assessed against JGH and now its shareholders individually.

223. The amount of FET assessed individually against the Plaintiff by IRS is more than the entirety of his historical compensation at any time by the Defendants, which instead created a scheme to generate over $125,000,000 in revenue to enrich themselves while ignoring the FET obligations, including millions of dollars personally received by Defendant Brown.

224. Plaintiff has requested exhaustively that IRS extend him time before filing the lien, and the IRS has made clear that proposals such as the First IRS FET Proposal and Second FET proposal would be acceptable to allow it to refrain from filing the lien against Plaintiff individually. The very fact that a corporation's unpaid FET are now being assessed against the individual shareholders thereto demonstrates the severity of the Defendants' conduct in allowing such an occurrence to transpire, especially in light of the hundreds of millions they generated while already subject to payment of $1,300,000 in FET.

225. The imminence and irreparable injury in Plaintiff's original complaint was given an extension when the IRS transferred Plaintiff's file to the Kansas division of IRS, but at any time the imminence may arise again and the Plaintiff reserves the right to seek redress by moving this Court to hold an emergency hearing should the need arise. The imminence and irreparable injury can be prevented entirely by the Defendant Brown, JGH, and JGFH, all of which are already responsible for the $1,300,000 FET and which only the Defendants can prevent. Should the IRS file the lien against the Plaintiff, the imminent irreparable injury will continue.

## RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

On the First Cause of Action:

Against All Defendants, Plaintiff demands judgment, jointly and severally, in an amount in excess of $1,300,000 for the IRS FET assessment against Plaintiff in addition to all amounts

the IP Defendants are found liable for under Plaintiff's Second Cause of Action as a predicate act, together with treble damages, attorneys' fees, punitive damages, prejudgment interest and post-judgment interest, an award of costs of pursuing this suit, and all other damages recoverable under law as well as such other further relief as the Court deems proper.

On the Second Cause of Action:

1. Against the IP Defendants, jointly and severally, Plaintiff individually or on behalf of Jet Genius Holdings, Inc., as shareholder thereto, seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover the JGH Intellectual Property, trade secret information, and other legitimate business interests of Plaintiff and Jet Genius Holdings, Inc and preclude Defendants further misappropriation.

2. Against the IP Defendants, Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief in the form of an order to immediately pay $1,300,000 of its owed FET which has been personally assessed against Plaintiff with the IRS, with an immediate payment of $125,000 or such other amount as acceptable by IRS to refrain from filing a lien.

3. Against the IP Defendants, jointly and severally, Plaintiff individually or on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Plaintiff and/or Jet Genius Holdings, Inc., as exemplary damages, or such other amounts to be determined at trial.

4. Against the IP Defendants, jointly and severally, Plaintiff individually and on behalf of Jet Genius Holdings, Inc., seeks, two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Plaintiff and/or Jet Genius Holdings, Inc., as punitive damages, or such other amounts to be determined at trial.

5. Against Defendant Jordan Brown and Jet Genius Holdings, Inc., Plaintiff individually seeks, two times the 24.5% equity shareholdings in Jet Genius Holdings, Inc. rightfully belonging to Plaintiff that were relinquished unjustly at the Shareholder Agreement's execution as exemplary damages, or such amount to be determined at trial.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

6. Against Defendants Jordan Brown and Jet Genius Florida Holdings, Inc., and Jet Genius Holdings, Inc., Plaintiff individually seeks, two times the 24.5% equity shareholdings in Jet Genius Florida Holdings, Inc. rightfully belonging to Plaintiff, which should have been reflected in Jet Genius Florida Holdings, Inc., which were relinquished unjustly by Plaintiff at the Shareholder Agreement's execution as exemplary damages, or such amount to be determined at trial

7. Attorneys' Fees

On the Third Cause of Action:

1. Against the IP Defendants , jointly and severally, Plaintiff individually or on behalf of Jet Genius Holdings, Inc., seeks two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Plaintiff and/or Jet Genius Holdings, Inc., as exemplary damages, or such amount to be determined at trial.

2. Against the IP Defendants, jointly and severally, Plaintiff individually or on behalf of Jet Genius Holdings, Inc., seeks two times the more than $125,000,000 in unjustly enriched revenues rightfully belonging to Plaintiff and/or Jet Genius Holdings, Inc., as punitive damages, or such amount to be determined at trial.

3. Attorneys' Fees

On the Fourth Cause of Action:

1. Against Defendant Jet Genius Holdings, Inc. Plaintiff seeks rescission of the Shareholder Agreement and restoration of Plaintiff's designee to the Board of Directors of Defendant Jet Genius Holdings, Inc., and restoration of Plaintiff's shareholdings representing the 24.5% equity value he wrongfully relinquished under the Shareholder Agreement.

2. Against all Defendants, recission of each and every agreement or contract entered after the Board Coup if this Court finds such agreement or contract could not have been properly entered into without a properly constituted Board for Jet Genius Holdings, Inc. Plaintiff seeks immediate elections in accordance of the Bylaws of Jet Genius Holdings, Inc., should this Court deem it necessary and proper.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

3. Against Defendant Jet Genius Florida Holdings, Inc. Plaintiff seeks ascension of Plaintiff's designee to the Board of Directors of Defendant Jet Genius Florida Holdings, Inc., and restoration of Plaintiff's shareholdings representing the 24.5% equity value he wrongfully relinquished under the Shareholder Agreement, without which Defendant Jet Genius Florida Holdings, Inc., would not exist.

4. Against Defendant Brown and Jet Genius Holdings, Inc., Plaintiff seeks damages of $909,451 for any purported transfer in breach of the Shareholder Agreement which is found to have occurred prior to November 1, 2019, $727,561 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2020, $545,671 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2021, and $363,780 for any purported transfer in breach of the Shareholder Agreement which was found to have occurred prior to November 1, 2022.

5. Against Defendant Brown Family Trust, Plaintiff seeks forfeiture of 10% of its equity shareholdings of JGFH to be reallocated as equitably determined by the Court.

6. Exemplary and Punitive Damages in an amount to be determined at trial

7. Attorneys' Fees as provided in the Shareholder Agreement

On the Fifth Cause of Action:

1. Against Defendants Jordan Brown, Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc., jointly and severally, exemplary and punitive damages in an amount to be determined at trial.

2. Attorneys' Fees

On the Sixth Cause of Action:

1. Against all Defendants, jointly and severally, exemplary and punitive damages in an amount to be determined at trial.

2. Attorneys' Fees

On the Seventh Cause of Action:

1. Against all Defendants, jointly and severally, exemplary and punitive damages in

an amount to be determined at trial.

2. Attorneys' Fees

On the Eighth Cause of Action:

1. An accounting ordered by this Honorable Court, to provide Plaintiff with equitable relief by ordering the immediate furnishment to Plaintiff of all usual and customary information rights as a shareholder, or such other information Plaintiff may reasonably request or this Honorable Court see fit into the financial health, transactional history, books and records, bank statements, and accounts of Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc.

2. An accounting ordered by this Honorable Court, to provide Plaintiff with equitable relief by ordering the immediate furnishment to Plaintiff of all usual and customary information rights regarding any monies which egressed between the accounts of Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc., which Plaintiff as shareholder of may reasonably request or this Honorable Court see fit into the transactional history, books and records, bank statements, of any monies from the accounts for Defendants Jet Genius Holdings, Inc., and Jet Genius Florida Holdings, Inc. egressing to those of all of the other Defendants.

On the Ninth Cause of Action:

1. Against the CFG Enterprise Defendants, jointly and severally, Plaintiff individually and/or as a shareholder of Jet Genius Holdings, Inc. seeks damages in the amount of the more than $125,000,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

2. Against Defendant Jordan Brown, Plaintiff seeks damages in the amount of the more than $3,300,000 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

3. Against Defendant C3jets LLC, Plaintiff seeks damages in the amount of the more than $861,018 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

4. Against Defendant Bowman Aviation, Inc., Plaintiff seeks damages in the amount of the more than $135,571 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

5. Against Defendant C3 Limo LLC, Plaintiff seeks damages in the amount of the more than $54,791 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc., recission or cancellation of $177,437 in the credit card American Express account under the name Chasen Dobos purported to be a liability of JGFH, and such other exemplary and punitive damages in an amount to be determined at trial

6. Against Defendant Jet Agency Global LLC, Plaintiff seeks damages in the amount of the more than $343,329 in unjustly enriched revenue to be returned to Jet Genius Holdings, Inc. and such other exemplary and punitive damages in an amount to be determined at trial.

7. Against all Defendants, jointly and severally, the cumulative sum of the total damages set forth above in this Ninth Cause of Action.

8. Attorneys' fees.

On the Tenth Cause of Action:

1. Against All Defendants, jointly and severally, exemplary and punitive damages in an amount to be determined at trial.

2. Plaintiff requests that Defendant Brown indemnify Plaintiff for all monies, taxes, fees, and/or costs incurred and continues to occur and/or levied on Plaintiff for Brown's failure to pay any FET to which Brown is responsible.

3. Attorneys' fees and costs to be determined at trial.

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Respectfully submitted,

Dated: March 2, 2023

WADE MILLER LAW

By: / s / Wade A. Miller
Wade A. Miller, Esq.

-and-

John A. Kirk, Esq.
Pennsylvania #308436
(*pro hac vice to be submitted*)
Distributed Law Group

ATTORNEYS FOR PLAINTIFF
AARON STANZ

**WADE MILLER LAW**
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

WADE MILLER LAW
Attorneys at Law
5072 Mount Casas Drive
San Diego, CA 92117

Complaint Verification

I, Aaron ("Angel") Stanz, declare:

1. I am the Plaintiff in the above-entitled matter.
2. I have read the foregoing (pleading, e.g., complaint) and know the contents thereof.
3. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

Executed on March 2, 2023

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 2, 2023

By: / s / *Aaron Stanz*