1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 | AARON STANZ, individually and on behalf of JET GENIUS HOLDINGS, INC. as shareholder thereto,

Case No.:  22-cv-1164-GPC

**ORDER:**

**(1) GRANTING REQUESTS FOR JUDICIAL NOTICE;**

**(2) GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND**

**3) GRANTING PLAINTIFF LEAVE TO AMEND**

**[ECF Nos. 30, 31, 33, 34, 38]**

12
13                                    Plaintiff,

14 | v.

15 | JORDAN BROWN, individually and in his capacity as CEO, Director, and Chairman of co-defendants JET GENIUS HOLDINGS, INC. and JET GENIUS FLORIDA HOLDINGS, INC.; JET GENIUS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3 JETS LLC; BOWMAN AVIATION LLC; JET AGENCY GLOBAL LLC; C3 LIMO LLC; BROWN FAMILY TRUST; and DOES 1-20,

16
17
18
19
20
21
22
23                                    Defendants.

24

25        On March 2, 2023, Plaintiff Aaron Stanz ("Plaintiff" or "Stanz") filed his First

26 Amended Complaint ("FAC") against Defendants Jordan Brown, individually and on

27                                    1

28

behalf of Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc. as a shareholder; Jet Genius Holdings, Inc.; Jet Genius Florida Holdings, Inc.; C3jets LLC; Jet Agency Global LLC; C3 Limo LLC; Bowman Aviation, Inc.; Brown Family Trust; and Does 1-20. ECF No. 25 ("FAC" or "Compl.").

All Defendants subsequently filed Motions to Dismiss. ECF Nos. 30, 31, 33, 34, 38. Plaintiff filed Oppositions, (ECF Nos. 41, 46, 47, 55, 56),[1] and Defendants filed Replies, (ECF Nos. 48, 52, 53, 58, 59). A hearing was held on the motions on May 26, 2023 and the matter was taken under submission. For the reasons that follow, the Court **GRANTS** Defendants' Motions to Dismiss with **leave to amend**.

## FACTUAL BACKGROUND

Plaintiff's action stems from a years-long business relationship with Defendant Jordan Brown in the private aviation industry in which Federal Excise Tax ("FET") was collected from clients but not remitted to the IRS as required by law. Compl. ⁋ 1. Plaintiff is the co-founder, Chief Technology Officer, major shareholder, and former director of Jet Genius Holdings and major shareholder of Jet Genius Florida Holdings. Compl. ⁋ 8. Defendants Jet Genius Holdings, Inc. ("JGH") and Jet Genius Florida Holdings, Inc. ("JGFH") are air charter brokers that match clients with available air charter operators. Compl. ⁋⁋ 9, 10. Plaintiff alleges Defendant Jet Agency Global LLC ("JAG") is the same company as JGH and JGFH. Compl. ⁋ 14. Defendants JGH, JGFH, and JAG operate together as "Charter Flight Group" ("CFG"). Compl., Exhibit E at 5.

---

[1] Plaintiff's counsel is reminded of and encouraged to consult the Local Rules prior to any future filings that may occur in this Court. Plaintiff's counsel has struggled with rules non-compliance throughout the course of this litigation. Relevant to the pending Motions and Oppositions, Plaintiff is reminded of Local Rule 5.1(a) (type no smaller than 14-point font) and 7.1(h) (briefs exceeding 10 pages must have table of contents and table of authorities), among others.

2

Defendant C3jets LLC ("C3jets") operates private aircraft for commercial purposes and is believed by Plaintiff to be engaged in various aircraft lease or lease-purchase agreements. Compl. ¶ 12. Defendant Bowman Aviation, Inc. ("Bowman Aviation") performs contract services for JGH and JGFH. Compl. ¶ 13. Defendant C3 Limo LLC ("C3 Limo") is a company Plaintiff alleges is managed by various members of Brown's family and uses JGH's and JGFH's company address and official email address to conduct business. Compl. ¶ 15. Plaintiff alleges Defendant Brown Family Trust is a trust listed on JGFH share certificates which were improperly assigned to the trust. Compl. ¶ 16. Last, Defendant Jordan Brown ("Brown") is the Chairman and CEO of JGH and JGFH, and allegedly the sole member of C3jets, JAG, Bowman Aviation, and, along with his wife, is a trustee of the Brown Family Trust. Compl. ¶¶ 11, 12.

JGH was formed between Plaintiff Stanz, Defendant Brown, and non-party Alexander Wolf ("Wolf") in California in 2016 to offer a "technical business-to-business logistics platform servicing the private aviation industry." Compl. ¶ 22. Originally, Stanz and Brown were each 49.5% shareholders. Compl. ¶ 22. Brown was, and remains, CEO, and Stanz was Chief Technology Officer and states he used his technical expertise to create JGH's "GRID" logistics platform, which "significantly decrease[d] time and costs associated with buy-side and sell-side actions required to complete complex transactions for brokering and provisioning a chartered aircraft, at all stages of a transaction," including lead collection, client contact, quoting aircraft options, generating and sending contracts, provisioning an aircraft, and monitoring staff and resources. Compl. ¶ 23.

Plaintiff essentially alleges that, beginning in 2017, Defendants misappropriated Plaintiff's intellectual property in a scheme to charge clients for FET, which Defendants represented to clients would be collected and remitted to the IRS as required by law, but instead Defendant Brown used this money to enrich his lifestyle and further the

22-cv-1164-GPC

enterprise's interests. Compl. ¶ 95.[2] Plaintiff states that JGH and JGFH, operating as air charter brokers, are required pursuant to 26 U.S.C. § 4281(a) to pay a FET of 7.5% of the transportation price of air travel as well as a flat fee for each "domestic segment" of travel. Compl. ¶¶ 70-71. Plaintiff states that air charter brokers are required to collect the FET from clients, hold this money in trust on their behalf, and remit the FET to the IRS on a regular basis. Compl. ¶ 71. Plaintiff states a failure to pay FET is a felony criminal violation under 26 U.S.C. § 7202. Compl. ¶ 70.

Plaintiff states Wolf informed him in summer 2018 that JGH had unpaid FET, despite having had adequate capital to meet the IRS demand. Compl. ¶ 24. Plaintiff alleges the unpaid FET at this time was approximately $935,000, but has since "ballooned to over $6,721,350 . . . ." Compl. ¶ 24. Plaintiff says that after discovering this, he sought to have JGH's financials audited at an August 22, 2018 shareholder meeting, but that Brown "admonished Stanz and Shareholder Wolf for bringing up the audit issue, and [stated] that this criminal act was his [(Brown's)] decision alone . . . ." Compl. ¶ 25. Plaintiff states the shareholders, "at the demand of Defendant Brown," voted in favor of the audit firm favored by Brown. Compl. ¶ 26. Plaintiff alleges the audit was later abandoned. Compl. ¶ 31.

The FAC alleges that after Brown was confronted about the unpaid FET, "he became verbally abusive and hostile, and threatened to disrupt business to the point of bankrupting the company." Compl. ¶ 28. Stanz became worried that if Brown bankrupted the company, JGH shareholders, including himself, could become personally liable to the IRS for the unpaid FET. Compl. ¶ 28. Plaintiff alleges that throughout the audit negotiations and after an attempt by shareholders to "wrest control of JGH from Brown,"

---

[2] Plaintiffs FAC at paragraphs 88(a)-(q) identify seventeen instances in which Plaintiff alleges Defendants collects FET from clients and failed to remit. Compl. ¶¶ 88(a)-(q).

Plaintiff began discussions with JGH to modify the corporate structure in an attempt to protect shareholders and address the FET. Compl. ¶ 29. Stanz alleges that:

> Under duress, on November 7, 2018, [he] entered into the Shareholder Agreement . . . and its contemporaneously executed assignment of intellectual property by Plaintiff to JGH wherein Stanz would relinquish almost half his shares (lowering him from a 49.5% shareholder to a 25% shareholder) on the condition that revenue would be used to pay the taxes owed to the IRS, that valuable intellectual property including [GRID] would not be transferred without property documentation or compensation to Plaintiff, and that of the 24.5% share reduction by Plaintiff, 10% of the shares would be allocated for a properly constructed employee equity incentive plan. As part of the Shareholder Agreement, Brown required Plaintiff Stanz and Shareholder Wolf to no longer serve on the Board of Directors, under the false promise by Brown and JGH to fill the vacancies with two new independent Directors.

Compl. ¶ 29 (collectively the "2018 Agreement"); ECF No. 29-1 (Shareholder Agreement); ECF No. 29-2 (Intellectual Property Assignment).

Plaintiff states that after the 2018 Agreement, Brown, in violation of JGH Bylaws and California law, remained sole Director of JGH. Compl. ¶ 30. The FAC alleges that Brown at this point "structured JGH to assist in his architecture of a criminal enterprise to enrich himself and his family." Compl. ¶ 31. Plaintiff states Brown "began directing the agents and attorneys of JGH to improperly establish subsidiaries and third-party companies to further dilute JGH shareholder value by misappropriating the JGH Platform including the GRID . . . ." Compl. ¶ 32. Brown is alleged to have used these new companies to ignore his FET obligations and hide assets from the IRS. Compl. ¶ 33. On August 27, 2019, Brown is alleged to have improperly incorporated JGFH in Florida to serve as a shell company by which Brown could create a "new entity which would have absolutely no oversight or accountability to the shareholders of JGH." Compl. ¶ 34.

22-cv-1164-GPC

Plaintiff states he received a stock certficiate for 959,615 Class A shares of JGFH on April 26, 2022. Compl. ⁋ 51.

Plaintiff alleges all of this was done in violation of the 2018 Agreement, which stated Brown would work toward a settlement with the IRS. Compl. ⁋ 32. Instead, the FAC alleges the business continued to generate over $125,000,000 in revenue and the unpaid FET grew to nearly $7,000,000. Compl. ⁋ 33. In addition, Stanz states the employee equity incentive plan, also agreed to the in 2018 Agreement, never materialized and instead Brown allocated shareholdings to the Brown Family Trust. Compl. ⁋ 36. Further, the FAC alleges that Plaintiff's intellectual property, including GRID, was moved in a series of "undocumented sham transactions" from JGH to JGFH in violation of the 2018 Agreement and Plaintiff was never awarded compensation for such transactions. Compl. ⁋ 38. Plaintiff alleges that Defendant Brown continued to create additional schemes "by making millions of dollars of fraudulent undocumented 'loans' to Defendants Brown individually, C3 Jets, JAG, C3 Limo, and Bowman Aviation . . . ." Compl. ⁋ 40 (collectively known as the "undocumented loans").[3] Plaintiff alleges these undocumented loans, absent terms payback terms, were unauthorized disbursements without benefit to JGH or JGFH shareholders. Compl. ⁋ 53.

Plaintiff states that in June 2021, Defendants Brown and JGFH approached Plaintiff with a new shareholder agreement that would give Plaintiff JGFH shareholdings and require Plaintiff's indemnification of Brown for actions in violation of his fiduciary duties, for malfeasance, for fraud, and for failure to pay FET. Compl. ⁋ 42 (the "2021 Agreement") (it does not appear to the Court that Plaintiff signed this agreement).

---

[3] The FAC states Plaintiff discovered the existence of Defendant C3 Limo in May 2022, which uses the JGFH and JGH company address as its registered office and "continues to utilize the JGH Intellectual Property." Compl. ⁋ 52. Plaintiff also believes C3 Limo received an undocumented loan from JGFH and JGH. Compl. ⁋ 53.

22-cv-1164-GPC

In October 2021, the IRS contacted Plaintiff to inform him of his individual responsibility for the $1,300,000 in unpaid FET. Compl. ¶ 43. Plaintiff claims the IRS was holding him personally responsible because his name was listed on a bank card he states he only signed under duress. Compl. ¶¶ 43-44. Plaintiff alleges he confronted Brown about the unpaid FET, and Brown admitted on November 4, 2021 that he was the one responsible and that he could "raise the money tomorrow" to address the IRS debt. Compl. ¶ 46.

Plaintiff states that in March 2022, the IRS "increased [its] outreach . . . and informed him that the IRS intended to individually assess [Plaintiff] for Defendant JGH's unpaid FET." Compl. ¶ 50. At this point, Plaintiff alleges he approached Defendants Brown, JGH, and JGFH with a proposal from the IRS to make a small payment of $125,000, which would allow the IRS to defer its individual assessment against Stanz. Compl. ¶ 50. Brown failed to respond to this proposal or reimburse him for his legal expenses, as Stanz states is required by JGH Bylaws. Compl. ¶ 50.

On May 3, 2022, the IRS notified Plaintiff that it had assessed him for $1.3 million of the unpaid FET. Compl. ¶ 54. Plaintiff states that at this point, he proposed to Defendants that a possible solution was to merge Defendants JGH, JGFH, C3 Jets, and JAG. Compl. ¶ 54. Plaintiff negotiated an extension with the IRS until August 8, 2022 to allow time for the proposed merger. Compl. ¶ 56. Proposed merger drafts and balance sheets were sent to Plaintiff, Shareholder Wolf, and all Defendants, and it was at this point that Plaintiff noticed "more than $10,000,000 of the balance sheet items . . . were not addressed in the proposed merger" and included millions of dollars in undocumented loans. Compl. ¶¶ 55-57.

Plaintiff states he later learned that Brown further harmed the business when he threatened the life of the CEO of Executive Charter Services ("ECS") in late July 2022. Compl. ¶¶ 62, 65. Plaintiff states that there had been talks of ECS acquiring JGH and

22-cv-1164-GPC

satisfying the FET debt, and that as a result of Brown's threats, the deal fell through. Compl. ¶¶ 62-66.

On July 29, 2022, the IRS informed Plaintiff that it would accept a payment of $100,000 from Defendants in exchange for not filing a lien against Plaintiff. Compl. ¶ 61. Plaintiff informed Defendant Brown of this, but he has yet to comply. Compl. ¶ 62. Plaintiff filed his initial Complaint in this Court on August 8, 2022. ECF No. 1. Plaintiff later filed a Motion to Amend, (ECF No. 16), which this Court granted, (ECF No. 24). On March 3, 2023, Plaintiff filed the First Amended Complaint. ECF No. 25. Plaintiff alleges two causes of action pursuant to federal law: (1) violation of RICO, 18 U.S.C. § 1962; and (2) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1). Plaintiff alleges eight state law causes of action: (1) violation of the California Uniform Trade Secrets Act; (2) breach of contract; (3) breach of fiduciary duty; (4) fraud; (5) conspiracy; (6) accounting; (7) unjust enrichment; and (8) equitable indemnity. Compl. ¶¶ 92-220. Plaintiff seeks damages, attorneys' fees, and injunctive relief. Compl. at 74-81.

## LEGAL STANDARDS

Defendants' Motions to Dismiss argue that Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 12(b)(7) for failure to join an indispensable party. Some Defendants also move under Rule 12(f) to strike portions of Plaintiff's FAC.

### I.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal for lack of subject matter jurisdiction should be granted if the complaint, considered in its entirety, fails to allege facts sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). The Plaintiff bears the burden of

22-cv-1164-GPC

proving that a federal court has subject matter jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

A Rule 12(b)(1) attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, defendant asserts that the allegations in the complaint are insufficient to prove federal subject matter jurisdiction. *Id.* The court resolves a facial attack as a Rule 12(b)(6) motion to dismiss—the court accepts the factual allegations in the complaint as true and determines if the allegations are sufficient to properly invoke federal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a factual attack, defendant disputes the very truth of the factual allegations themselves that are said to invoke subject matter jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. To resolve a factual attack, the court is permitted to review evidence beyond the complaint. *Id.*

Defendants do not appear to dispute the truthfulness of the underlying allegations, simply that they do not give rise to federal subject matter jurisdiction. Thus, this is a facial attack, and the Court will determine whether the allegations in Plaintiff's Complaint, taken as true, sufficiently support a finding of subject matter jurisdiction.

## II.     Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to provide "detailed factual allegations," but the plaintiff must plead sufficient facts that, if accepted as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint will survive a motion to dismiss when it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

22-cv-1164-GPC

*Twombly*, 550 U.S. at 570). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct charged." *Iqbal*, 556 U.S. at 678. Further, under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.   Federal Rule of Civil Procedure 12(b)(7)

Under Rule 12(b)(7), a defendant may move to dismiss for a failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). A Rule 19 motion poses three questions: (1) whether the nonparty should be joined under Rule 19(a); (2) if the nonparty is necessary under Rule 19(a), whether it is feasible to order the nonparty be joined; and (3) if joinder is not feasible, whether the case can proceed without the nonparty, or whether the nonparty is an "indispensable party" such that the action must be dismissed. *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1070 (S.D. Cal. 2021) (citing *EEOC V. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005)).

### IV.   Federal Rule of Civil Procedure 12(f)

Rule 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken

could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

## REQUESTS FOR JUDICIAL NOTICE

Defendant JGFH filed a Request for Judicial Notice in support of its Motion to Dismiss. ECF No. 30-3. JGFH requests judicial notice of the following documents:

1. The initial Complaint, filed in this action, on August 8, 2022 by Plaintiff Aaron Stanz.

2. The First Amended Complaint, filed in this action, on March 3, 2023 by Plaintiff Aaron Stanz.

Defendants Jordan Brown; JGH; C3 jets; Bowman Aviation; JAG; and C3 Limo request judicial notice of the following documents:

1. Case docket of case filed on May 21, 2018 in the Southern District of California by the Securities and Exchange Commission ("SEC") against Bud Genius, Inc. and Aaron Stanz, Case No. 18-cv-1005.

2. Complaint filed in *U.S. SEC v. Bud Genius, Inc., et al*., S.D. Cal., Case No. 18-cv-1005.

3. Consent of Aaron Stanz filed on May 22, 2018 in *U.S. SEC v. Bud Genius, Inc., et al*., S.D. Cal., Case No. 18-cv-1005.

4. Consent of Bud Genius, Inc. filed on May 22, 2018 in *U.S. SEC v. Bud Genius, Inc., et al*., S.D. Cal., Case No. 18-cv-1005.

5. Final Judgment as to Aaron Stanz filed on May 24, 2018 in *U.S. SEC v. Bud Genius, Inc., et al*., S.D. Cal., Case No. 18-cv-1005.

6. Final Judgment as to Bud Genius, Inc. filed on May 24, 2018 in *U.S. SEC v. Bud Genius, Inc., et al*., S.D. Cal., Case No. 18-cv-1005.

7. Certified copy of the Complaint for Injunctive and Other Relief filed by the State of Illinois on February 10, 2009 against U.S. Credit Find, Inc. and Aaron Stanz in

22-cv-1164-GPC

Case No. 2009-CH-0021, before the State of Illinois in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois.

8. Certified copy of the Answer filed on March 9, 2009 in *People of the State of Illinois v. U.S. Credit Find, Inc., et al.*, Case No. 2009-CH-0021.

9. Certified copy of the Final Judgment and consent Decree filed on May 22, 2009 in *People of the State of Illinois v. U.S. Credit Find, Inc., et al.*, Case No. 2009-CH-0021.

ECF Nos. 31-2; 33-2; 34-2; 38-2.

Defendants JAG, C3 Limo, and Bowman Aviation request judicial notice of two additional documents:

1. A true and correct copy of Florida Division of Corporations Entity Details for C3 Limo, LLC.

2. A true and correct copy of Florida Division of Corporations Entity Details for Bowman Aviation, Inc.

ECF Nos. 33-2; 34-2.

The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments, complaints, and other publicly filed documents, are "proper subjects of judicial notice." *Shetty v. Cwalt, Inc.*, 2017 WL 3394161, at *2 (N.D. Cal. Aug. 8, 2017) (citing *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)). "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

22-cv-1164-GPC

Here, the documents requested for judicial notice are publicly filed records. Plaintiff does not oppose Defendants' requests for judicial notice. Accordingly, the Court **GRANTS** the requests for judicial notice.

## DISCUSSION

Defendants advance a number of arguments for why Plaintiff's FAC should be dismissed in its entirety. For the most part, the arguments overlap.

## I.     PLAINTIFF'S DERIVATIVE CLAIMS

Plaintiff's FAC appears to allege causes of action individually, as well as "on behalf of Jet Genius Holdings, Inc. and Jet Genius Florida Holdings, Inc. as a shareholder . . . ." Compl. at 1. To the extent that Plaintiff proceeds on behalf of JGH and JGFH, the Court interprets this as a derivative suit. Defendants JGH and JGFH argue Plaintiff does not have standing to bring his action on behalf of JGH and JGFH shareholders because Plaintiff has failed to comply with Federal Rule of Civil Procedure 23.1, California law, and Florida law, which requires Plaintiff to first make a demand to the board of directors prior to commencing a derivative action in court, or to plead with particularity why such demand would have been futile. ECF No. 30-1 at 13 (JGFH); 38-1 at 10-12 (JGH). Further confusion is created by the fact that Plaintiff's FAC does not specify which claims are derivative or direct.

A derivative suit allows individual shareholders to bring "'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991) (emphasis in original) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). To prevent abuse, a prerequisite to a derivative suit is that the shareholder demonstrate "'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Id.* at 96 (quoting *Ross*, 396 U.S. at 534). This prerequisite has been codified in Rule 23.1, which states in relevant parts:

22-cv-1164-GPC

(a)  **Prerequisites**. The rule applies when one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. . .

(b)  **Pleading Requirements**. The complaint must be verified and must:

. . .

(3) state with particularity:
>    (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>    (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1 (a), (b)(3)(A) & (B).

Rule 23.1 "contemplates both the demand requirement and the possibility that demand may be excused," however, "it does not *create* a demand requirement of any particular dimension." *Kamen*, 500 U.S. at 96. Rather, a district court should look to state law to determine if the futility exception to the demand requirement is met or if any demand actually made on behalf of the shareholder is sufficient. *Id.* at 92. Here, JGFH is incorporated in Florida and Florida law controls; JGH is incorporated in California and California law controls. Compl. ¶¶ 9, 10. Plaintiff makes no allegation in the FAC that he initiated pre-suit demand to either JGH or JGFH. As such, the Court will determine if Plaintiff has met the standard for the futility exception under JGH's and JGFH's respective state laws.

**A. JGFH Demand Futility**

Florida law requires a derivative suit complaint to be "verified and allege with particularity . . . [t]he reason or reasons the shareholder did not make the effort to obtain the desired action from the board of directors or comparable authority." Fla. Stat. § 607.0742(2)(c) (2020). The Court finds that Plaintiff has not adequately alleged with particularity why pre-suit demand on JGFH would have been futile. Plaintiff states,

"[n]otice to the Board for JGFH further was futile, as the JGH shareholders and Plaintiff were not provided with executed copies of the governance documents or structure of JGFH, it was incorporated without Plaintiff's or the JGH's shareholders' knowledge, its Board was comprised of parties unknown to Plaintiff which upon information and belief is solely Brown, and Defendant Brown substituted new shareholders and classes of shares within JGFH in conflict of the original structure of JGH and the Shareholder Agreement." Compl. ⁋ 37. Defendant further states demand was futile because "Plaintiff was never informed he was a shareholder or that [] governance documents existed." Compl. ⁋ 51.

The Court does not see how these allegations relate to demand futility. Plaintiff alleges he was never given JGFH governance documents, including incorporation documents, bylaws, or Board resolutions, however Plaintiff does not state he asked for them, or why these documents are necessary in the first instance to his demand. Compl. ⁋ 51. The Court is further confounded by Plaintiff's allegation that he was not aware he was a shareholder of JGFH where his FAC states that he received a stock certificate representing 24.5% of JGFH Class A Shares on April 26, 2022, approximately three months before filing his initial Complaint. *See* Compl. ⁋ 51. As such, Plaintiff has not sufficiently pled demand futility as it relates to JGFH.

**B. JGH Demand Futility**

As to JGH, California law requires a Plaintiff "[1] allege[] in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and [2] allege[] further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." Cal. Corp. Code § 800(b)(2). Under California law, "general averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice to show demand

15

futility." *Bader v. Anderson*, 101 Cal. Rptr. 3d 821, 833 (Cal. Ct. App. 2009). Instead,

"'the court must be apprised of facts specific to each director from which it can conclude

that that particular director could or could not be expected to fairly evaluate the claims of

the shareholder plaintiff.'" *Id.* (quoting *Shields v. Singleton*, 19 Cal. Rptr. 2d 459, 466

(Cal. Ct. App. 1993)).

The Court finds Plaintiff has not met these two requirements in § 800(b)(2).

Plaintiff states that "[f]ollowing the Board Coup, any effective effort which could be

afforded by Plaintiff or the JGH shareholders to seek recourse was futile, as Defendant

Brown improperly constituted the entirety of JGH's Board . . . ." Compl. ⁋ 37. This is the

only explanation Plaintiff provides as to why he did not serve demand on the JGH Board

and is not sufficient. This statement is exactly the type of "general averment" California

law seeks to avoid. However, even if the Court were to find that demand would have

been futile, Stanz has not alleged he met the second requirement under § 800(b)(2) to

provide JGH, in writing, the ultimate facts of each cause of action alleged in the FAC or

provide the JGH Board a proposed copy of the complaint Plaintiff intended to filed.

Thus, the Court finds Plaintiff has not shown he met the prerequisites to bring

derivative claims against JGH or JGFH in this Court. Plaintiff should either initiate

demand on JGH and JGFH Boards or allege with further particularity why such demand

is futile under Florida and California law. As such, the Court **DISMISSES** all derivative

claims asserted by Plaintiff on behalf of JGH and JGFH shareholders.

## II.   PLAINTIFF'S INDIVIDUAL FEDERAL CLAIMS

Plaintiff also asserts his causes of action individually. Compl. at 1. Thus, the Court

must determine if Plaintiff has pled sufficient facts to state a claim for each cause of

action. Plaintiff asserts two federal causes of action: (1) violation of RICO pursuant to §§

1962; and (2) violation of the Defend Trade Secrets Act pursuant to § 1836(b)(1).

/ / /

**A. First Cause of Action: RICO, 18 U.S.C. § 1962**

Pursuant to 18 U.S.C. § 1962, Plaintiff alleges Defendants associated for a common purpose to misappropriate Plaintiff's intellectual property and to "collect more than $5,000,000 in charged but unpaid FET from the CFG Enterprise's clients." Compl. ₱ 93. Although Plaintiff's FAC is difficult to follow, it appears Plaintiff pleads both 18 U.S.C. §1836(b), misappropriation of trade secrets, and mail and wire fraud under 18 U.S.C. §§1341, 1343 as predicate acts. Compl. ₱ 93, 98. Defendants do not dispute that these statutes can properly serve as predicate acts and primarily argue Plaintiff has not sufficiently pled injury under civil RICO. Plaintiff appears to plead claims under 18 U.S.C. §§ 1962(a)-(d). The Court discusses each in turn.

**i.      18 U.S.C. § 1962(a)**

18 U.S.C. § 1962(a) states that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income . . . in . . . operation of . . . any enterprise." The Ninth Circuit has reasoned that "a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). A plaintiff "must include allegations of injury from the use and investment of racketeering proceeds, not merely injury from the predicate acts of racketeering themselves." *Sea-Land Serv., Inc. v. Atl. Pac. Intern., Inc.*, 57 F. Supp. 2d 1048, 1054 (D. Haw. 1999).

Here, Plaintiff states the injuries to his reputation, intellectual property, and the personal assessment by the IRS were caused by Defendants' investment of the fraudulently collected FET into the enterprise. Compl. ₱ 112. However, the Court finds these injuries are not distinct from the injuries he alleges elsewhere in the FAC and is not

distinct from the injuries he claims result from the racketeering activities themselves. *See* Compl. ¶¶ 103-104, 107-108, 112-113. Thus, the Court finds Plaintiff has not sufficiently pled a distinct injury resulting from the Defendants' *investment* of any alleged racketeering proceeds, and this claim must be **DISMISSED**.

### ii.     18 U.S.C. § 1962(b)

18 U.S.C. § 1962(b) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." § 1962(b) requires "a specific nexus between the control of the enterprise and the racketeering activity." *Sea-Land*, 57 F. Supp. 2d at 1055. Plaintiff has not met this burden. Plaintiff has not pled facts showing that there is a nexus between Defendants' control of the enterprise and the alleged scheme to collect and not remit clients' FET. Thus, Plaintiff has failed to plead a cause of action under § 1962(b), and the claim must be **DISMISSED**.

### iii.     18 U.S.C. §§ 1962(c)

Under 18 U.S.C. § 1962(c), a plaintiff must allege the defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). As to the Section 1962(c) claim, Defendants argue Plaintiff has not adequately pled causation under civil RICO. *See* ECF No. 30-1 at 15. The Court agrees for the reasons stated below.

### iv.     18 U.S.C. § 1964(c)

RICO's provision for civil actions provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue …

22-cv-1164-GPC

and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

To maintain a cause of action under RICO, a plaintiff must show not only that the defendant's violation was a "but for" cause of his injury, but that it was the proximate cause as well. *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). This means there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id*. Directness of the relationship is important for three reasons. "First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Id*. at 269-270. Second, courts would have to adopt complicated apportionment rules to avoid multiple recoveries. *Id*. Third, directly injured victims can generally be counted on to sue, "without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id*. (citing *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 541–42 (1983)). These three policy concerns guide a court's evaluation of the directness of the injury under RICO. *Id*. at 270.

At its core, the case involves Federal Excise Tax that was allegedly collected by JGH from clients but not remitted to the IRS as required by law. Compl. ¶ 1.  From there, it is difficult to follow what Plaintiff alleges is his precise RICO injury, but the Court makes out the following allegations of injury and finds each defective in turn. *See* Compl. ¶¶ 103-104. First, Plaintiff states he "suffered injury derivatively to his reputation and business." Compl. ¶ 103. He states that his interests as a shareholder have been damaged due to the fraudulently charged FET. *Id.* However, shareholders do not generally have standing to assert RICO claims in an individual capacity. *Ahn v. Hanil Dev. Inc.*, 2010 WL 11520673, at *2 (C.D. Cal. Jan. 21, 2010); *see also*, *Gaff v. Fed. Deposit Ins. Corp*., 814 F.2d 311, 315 (6th Cir.), *on reh'g in part*, 828 F.2d 1145, 1147-48 (6th Cir. 1987) (finding that as a general precept of corporate law a shareholder of a corporation does not

22-cv-1164-GPC

have a personal or individual right of action for damages based solely on an injury to the corporation). A shareholder "must show either an injury distinct from that to other shareholders or a special duty between [the defendants and the shareholder] if they are to having standing to assert RICO claims based on injury to the corporation." *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988). Plaintiff has shown neither. Any injury to his interests as a shareholder resulting from the collected and unremitted FET is not distinct from that of any other shareholder. Any "derivative[ injury to] his reputation and business" is just that—derivative—and does not meet the direct, proximate cause standard required under civil RICO. Further, Plaintiff has not pled that the Defendants owed him a special duty.

Second, Plaintiff states he has suffered injury as a result of Defendants' use of his intellectual property to commit criminal acts, and that the use of his intellectual property in the commission of crimes has damaged the value of his property. Compl. ⁋ 103. For the reasons discussed below, the Court finds that Plaintiff has not pled with particularity the substance of his intellectual property, and thus this cannot establish a legitimate injury under § 1962(c). Further, to prevail on his misappropriation of IP theory, Plaintiff will be required to demonstrate that his assignment of IP to JGH was obtained through fraud. This additional inquiry means any injury to Plaintiff resulting from the misappropriation of IP is "too remote" to form direct injury because the link between the failure to pay FET and harm to Plaintiffs' IP is "purely contingent" on whether he was fraudulently induced to relinquish his rights. *Holmes*, 503 U.S. at 271.  As the *Holmes* Court observed: "quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Holmes*, 503 U.S. at 269.

22-cv-1164-GPC

Third, Plaintiff states he has suffered injury as a result of the $1.3 million that has been personally assessed against him by the IRS. Compl. ℙ 104. Proximate cause analysis under civil RICO looks to who is the direct victim of the allegedly wrongful conduct. In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the Court found plaintiff had not pled proximate cause because the plaintiff was not the "direct victim of th[e] conduct"; the direct victim was "the State that was being defrauded" via lost tax revenue *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006). Similarly, in *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010), the City of New York sued a New Mexico company that sold cigarettes online because they failed to file information with the State of New York which would have allowed the City of New York to collect tax revenue on cigarettes sold out of the state. The Court in *Hemi Group* held that the City of New York's purported injury by way of lost tax revenue was not direct enough to constitute proximate cause under civil RICO because the more direct victim was the State of New York; the State of New York was first in the chain of alleged victims. *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010). The Court further reasoned that the State of New York was a better situated plaintiff and had incentive to sue defendant Hemi Group because the State of New York had also lost out on tax revenue. *Id.* at 11-12.

In the FAC, Plaintiff claims that Defendants engaged in a scheme to use the JGH Intellectual Property to defraud JGH and JGFH passengers purchasing air transportation of more than $5 million in FET that clients were charged for and which was placed in a "trust fund" for the IRS as required by 26 U.S.C. § 4281. FAC ¶¶ 74-75.  Plaintiff further contends that the CFG Enterprise used the wires to charge customers the FET falsely claiming that the collected FET would be remitted to the IRS. FAC ¶ 95. These allegations reveal that the direct victim of the scheme is the United States Government and, possibly, any customers who paid the FET to JGH and may now be held responsible for Defendants' failure to remit the tax to the IRS.

22-cv-1164-GPC

With regard to himself, Plaintiff Stanz has failed to sufficiently allege that he is a direct victim of any purported RICO scheme. His alleged injury is premised on an attenuated and convoluted theory that his intellectual property was used to collect the unpaid FET and that the IRS is holding him personally responsible for the unpaid FET because of a JGH bank card he opened allegedly under duress. FAC ¶¶ 43-44, 93. However, as of this time, it does not appear that Plaintiff has paid any money to the IRS. Thus, the Court also cannot say he has suffered injury in the form money actually paid to the IRS.

RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. Here, Plaintiff is seeking treble damages for amounts owed by JGH customers to the IRS based on a convoluted set of facts that, at best, were indirectly caused by the misappropriation of IP or alleged wire fraud.  Plaintiff's damages theory requires the Court to move well beyond the first step involving the failure to pay the FET and cannot satisfy RICO's direct relationship requirement. Accordingly, the Court finds Plaintiff's asserted injuries do not meet the proximate cause requirement under civil RICO 18 U.S.C. § 1962, and the claims must be **DISMISSED**.

### v.    18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this subsection." A § 1962(d) claim necessarily relies on a claim under one of the other three subsections. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992). Because the Court finds Plaintiff has failed to plead a claim under any of the RICO subsections, this cause of action must also be **DISMISSED**.

### B. Second Cause of Action: Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1)

18 U.S.C. § 1836(b)(1), the Defendant Trade Secrets Act ("DTSA"), states that the "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade

secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." "Trade secret" is defined in 18 U.S.C. §1839(3) and "misappropriation" is defined in § 1839(5). To state a claim under the DTSA, a Plaintiff must plead sufficient facts to show: (1) that he owned a trade secret; (2) the trade secret was misappropriated by Defendants; and (3) Plaintiff suffered damages. *Gordon Grado, M.D., Inc. v. Phoenix Cancer and Blood Disorder Treatment Inst.*, 603 F. Supp. 3d 799, 800 (D. Ariz. May 16, 2022). Courts in this Circuit routinely find that although a plaintiff does not need to reveal the exact details of a trade secret, a plaintiff "must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018)). Defendants argue that Plaintiff's DTSA claim fails because he has not pled his alleged trade secrets with sufficient particularity. *See e.g.*, ECF No. 30-1 at 16-17. The Court agrees.

Courts in this Circuit have found that trade secrets defined as "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for produce enhancements" were not sufficiently particular to state a claim under the DTSA. *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018); *see also AlterG*, 388 F. Supp. 3d at 1145 (citing *Vendavo*). Trade secrets defined in these "broad, categorical terms" which are "more descriptive of the types of information that generally *may* qualify as protectable trade secrets," are not sufficiently particular. *See id.* at *4.

22-cv-1164-GPC

Here, Plaintiff alleges the following trade secrets have been misappropriated:

> The JGH Platform, Plaintiff's Technical Expertise, software architecture and source codes, websites, technology infrastructure, business models, web-servers, domain names such as jetcharter.com, jetagency.com, and flycfg.com, business methods, clients lists, proprietary designs, and trade secrets in the JGH Intellectual Property.

Compl. ¶ 122.

Plaintiff's trade secret allegations are indeed "broad, categorical" allegations that are "more descriptive of the types of information" that may qualify for protection. *Vendavo*, 2018 WL 1456697, at *4. Plaintiff does not attempt to concretely describe the trade secrets he alleges have been misappropriated or discuss the secrets with any manner of specificity beyond the general nature of the secret at issue. The Proprietary Information and Inventions Agreement (the Intellectual Property Assignment) does not provide any more specification on the types of trade secrets Plaintiff claims have been misappropriated. *See* Compl., Exh. B (ECF No. 29-2).  The failure to provide specific description of the intellectual property is problematic for the additional reason that the Intellectual Property Assignment appears to memorialize an agreement between JGH and Plaintiff that had existed since Plaintiff had commenced his employment with JGH and thus predates any alleged fraud. The Agreement, signed by Plaintiff on November 7, 2018 states:

> "The following confirms and memorializes an agreement that jet Genius Holdings, Inc., . . ., and I (Aaron Stanz) have had since the commencement of my employment (which term, for purposes of this agreement, shall be deemed to include any relationship of service to the Company that I may have had prior to actually becoming an employee) with the Company in any capacity and that is and has been a material part of the consideration for my employment by the Company."

ECF No. 29-2 at 2.

22-cv-1164-GPC

By failing to specify what intellectual property forms the basis for his § 1836 claim, it is not possible to determine whether Plaintiff owns any intellectual property that is not covered by his 2018 Assignment.

Accordingly, the Court finds that Plaintiff's DTSA claim must be **DISMISSED**. In so doing, the Court does not purport to make any finding as to whether Plaintiff even owned the trade secrets, after November 7, 2018 or at any point, or whether Plaintiff has suffered any damage as a result of any misappropriated trade secrets. If Plaintiff chooses to amend his FAC, he should allege with "greater specificity the types of trade secrets that were misappropriated and the exact technology to which they pertain." *AlterG*, 388 F. Supp. 3d at 1146.

## III.   SUBJECT MATTER JURISDICTION

Because the Court has dismissed both of Plaintiff's federal causes of action, subject matter jurisdiction cannot exist under 28 U.S.C. § 1331. The Parties dispute whether diversity of citizenship exists to establish diversity jurisdiction under 28 U.S.C. § 1332. 28 U.S.C. § 1332(a) requires that (1) the amount in controversy exceed $75,000, and (2) the action is between citizens of different states. The Court finds there is not diversity of citizenship.

### A. Citizenship

A person is a "citizen" of the state in which they are domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person's domicile is [their] permanent home, where [they reside] with the intention to remain or to which [they] intend[] to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)). A person residing in a state is not necessary a citizen of that state. *Id.* An individual can reside in a state and be domiciled in another. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

22-cv-1164-GPC

To determine domicile, a court should analyze a number of factors, including the person's "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750. A person's old domicile is not relinquished until a new domicile is established. *Id.* "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* Diversity of citizenship is determined at the time the lawsuit is filed. *Grupo Dataflux v. Alas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

Plaintiff's initial Complaint filed in this Court on August 8, 2022 stated:

> Plaintiff . . . is a competent adult citizen of the State of California for all times relevant in this action until March 1, 2022, where he obtained a leasehold in the State of Kansas, but has not yet made his primary residency in the State of Kansas.

ECF No. 1 ⁋ 5; ECF No. 30, RJN 1.

Plaintiff's FAC, filed in this Court on March 2, 2023, states:

> Plaintiff is a competent adult and was a citizen of California until March 1, 2022, when he obtained a leasehold in the State of Kansas and now is a resident of the State of Kansas.

FAC ⁋ 8.

The Court finds this is not sufficient to determine that Plaintiff was a citizen of Kansas at the time he filed his lawsuit. As stated, "residence" is not enough to establish citizenship. Plaintiff would retain his California citizenship until he established his domicile in Kansas, and obtaining a leasehold and becoming a "resident" of the state does not necessarily constitute a change in citizenship. To support his citizenship claim, Plaintiff argues that "[a]fter commencing the underlying action, the IRS transferred [sic]

Plaintiff's case to the Kansas department of IRS, thus clarifying for Plaintiff he was free to properly maintain his valid Kansas citizenship." ECF No. 41 at 8 (citing FAC ⁋ 62). He also states he received mail from Defendants at his address in Kansas. *Id.*

Plaintiff's bears the burden of proving to this Court that subject matter jurisdiction exists, and his argument does not establish he was a citizen of Kansas *at the time his lawsuit was filed*. *See Grupo Dataflux*, 541 U.S. at 570-71. Indeed, the evidence he provides to support his assertion is an event that occurred *after* the lawsuit was filed (his IRS file was transferred to Kansas "after commencing the underlying action"). Further, simply receiving mail in Kansas, from Defendants or anyone else for that matter, is not enough for the Court to determine that Plaintiff had established a residence and developed an intent to remain in Kansas. Because Plaintiff remains a citizen of California until he establishes domicile in another state, the Court finds Plaintiff has not shown he was not a citizen of California when he filed the initial Complaint. Because at least one of the Defendants (JGH) is a citizen of California, diversity jurisdiction does not exist, and the Court lacks subject matter jurisdiction over Plaintiff's action. Accordingly, Plaintiff's remaining state law claims must be **DISMISSED**.

## IV.   LEAVE TO AMEND

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possible cure the deficiency.'" *DeSoto v. Yellow Freight Systs., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court grants Plaintiff **leave to amend** his First Amended Complaint. Plaintiff should address the deficiencies noted above but take note that Defendants raised a number of arguments in their Motions to Dismiss, and the Court does not purport to have made findings as to each.

22-cv-1164-GPC

## CONCLUSION

For the reasons above, the Court hereby **GRANTS** Defendants' Motion to Dismiss with **leave to amend**. If he desires, Plaintiff shall file a Second Amended Complaint on or before **June 30, 2023**.

**IT IS SO ORDERED.**

Dated:  June 8, 2023

Hon. Gonzalo P. Curiel
United States District Judge

22-cv-1164-GPC