Matt Blum, Esq., SBN: 285944
The Law Office of Matt Blum
550 W C Street, Suite 960
San Diego, CA 92101
Mblumlaw@gmail.com
Tel: 860-271-6273
Fax: 619-238-1351

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaintiff AARON STANZ, individually and derivatively on behalf of Jet Genius Holdings, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Defendants JORDAN BROWN; JET GENIUS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3JETS LLC; BOWMAN AVIATION, INC.; JET AGENCY GLOBAL, LLC; C3 LIMO LLC; JETCHARTER.COM LLC; and DOES 1-20,<br><br>Defendants,<br><br>and<br><br>JET GENIUS HOLDINGS, INC.,<br>Nominal Defendant. | Case No. 3:22-cv-01164-GPC-JLB<br><br>Dist. Judge: Hon. Gonzalo P. Curiel<br>Mag. Judge: Hon. Jill L. Burkhardt<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR OSC AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILING TO COMPLY WITH A COURT ORDER**<br><br>Complaint Filed: August 8, 2022<br>SAC Filed: August 21, 2023<br>Trial Date: Not Yet Set |
| AND RELATED COUNTERCLAIM. | |

Plaintiff AARON STANZ, by and through his undersigned counsel, respectfully submits this Ex Parte Application for Order to Show Cause as to Why Defendants JORDAN BROWN, JET GENIUS HOLDINGS, INC., JET GENIUS FLORIDA

HOLDINGS, INC., BOWMAN AVIATION, INC., JET AGENCY GLOBAL, LLC, C3 JETS, LLC, and JETCHARTER.COM LLC ("Defendants") should not be held in contempt of court for failing to comply with the initial deadlines set forth in the Court's Order Granting Plaintiff's Motion to Compel (ECF No. 215).

## I. INTRODUCTION

On June 6, 2025, this Court granted Plaintiff's motion to compel and ordered Defendants to comply with a series of discovery directives within ten and fourteen days. (*See* ECF No. 215 at 26, ¶¶ 1–8, 10–11). **As of the date of this Application, Defendants remain in violation of every operative paragraph** other than single act of ostensible compliance to inspect hard-copy materials.

Plaintiff therefore respectfully petitions the Court to issue an Order to Show Cause requiring Defendants to appear and demonstrate why their continuing willful non-compliance should not be sanctioned under Fed. R. Civ. P. 37(b)(2) and Civil Local Rule 83.1. Absent the ordered discovery, Plaintiff is deprived of critical evidence necessary to prove the damages, scope, and participants of claims at bar and to test Defendants' defenses; meanwhile, the risk that responsive materials have been concealed, destroyed, or otherwise spoliated grows with each passing day.

Plaintiff is informed and believes, and the pattern of selective non-production strongly suggests, that Defendants have **open and notoriously** continued to exploit Plaintiff's intellectual property and erode its value by mismanaging corporate obligations, credit lines, and assets while channeling benefits through a network of affiliated entities, quasi-partnerships, family members, and family-trust transactions. For example, Exhibits A and B reveal communications involving Jordan Brown, former company counsel[1], and named custodians, that appear to document a plan to

---

1

This communication occurred while counsel was representing both Plaintiff and Defendant as company shareholders in an advisory capacity and prior to the commencement of this lawsuit.

move corporate assets from JGH into a newly formed, closely held entity in subversion of IRS corporate tax obligations. This conduct, taken together with Defendants' selective non-production, strongly reinforces the inference of an ongoing, self-concealing fraud. (*See* Exhibits A, B. to Blum Dec.)

Plaintiff cannot fairly prepare for trial, quantify damages, or safeguard shareholder interests while Defendants ignore the Court's explicit directives, directives that under paragraph 11 of the June 6, 2025 order (*See* ECF No. 215 at 26, ¶ 11), already warned Defendants that failure to comply would invite evidentiary and issue-preclusion sanctions. It would appear that only the coercive and compensatory remedies attendant to a contempt citation are likely to secure the production this Court has already deemed mandatory.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on August 8, 2022, alleging trade-secret misappropriation, contract breaches, fiduciary breaches, fraud, and other torts. After a first amendment in March 2023 and a counterclaim in April 2023, Plaintiff filed the operative Second Amended Complaint on August 21, 2023, expanding the claims to nineteen causes of action sounding in indemnity, fiduciary breach, fraud, statutory violations, conversion, and declaratory relief. Defendants answered in October 2023, and discovery thereafter devolved into a pattern of delay and non-compliance.

Beginning in February 2024, Defendants repeatedly missed production deadlines, which required the parties to submit successive joint discovery statements and attend multiple discovery conferences at which the Court issued a series of incremental orders compelling supplemental responses, privilege logs, and document productions. Even after the Court entered a protective order and granted several extensions, Defendants failed to honor a September 13, 2024, production deadline, prompting further status conferences and additional directives. Supplemental responses served in late October 2024 were again deficient, leading the Court to

authorize a motion to compel and to extend deposition deadlines twice, while reiterating that full compliance was mandatory.

The present application arises from Defendants' most sweeping act of defiance to date. On June 6, 2025, the Court granted Plaintiff's motion to compel and set ten- and fourteen-day deadlines for a series of specific discovery actions, including but not limited to, Jordan Brown's declaration regarding responsive bank and credit-card statements, verified interrogatory answers, production and confirmation obligations, a privilege log for marital communications, and access to designated e-mail accounts, servers, and devices (*See* ECF No. 215 at 26, ¶¶ 1, 3-8, 10-11). Each of those deadlines has passed without compliance, save only paragraph 2's standing invitation to inspect hard-copy materials. (*See* ECF No. 215 at 26, ¶ 2)

## III. FACTS ESTABLISHING NON-COMPLIANCE

As of the date of this Application, Defendants are in violation of every operative paragraph of the June 6, 2025 order except paragraph 2's invitation to inspect hard-copy materials. *See The Declaration of Attorney Matt Blum "Blum Dec" at* ¶ *2.* No Brown declaration or bank statements (*See* No. ECF 215 at 26, ¶ 4) have been filed; no verified interrogatory answers (*See id.* ¶ 8) have been served; no productions or confirmations under ¶¶ 5–7 have issued (*See id.* ¶¶ 5-7); no privilege log for marital communications has been provided (*See id.* ¶ 10); and no access to e-mail accounts, servers, or custodians' devices (*See id.* ¶¶ 1-3) has been granted. *Ibid.*

## IV. MEET AND CONFER EFFORTS

Plaintiff's counsel initiated the meet-and-confer process on June 17, 2025. Specifically, after Defendant missed multiple aspects of the initial 10-day post-order deadlines[2], Plaintiff's counsel reached out to Defense counsel and inquired as to whether the Defendant intended to comply with the Court's Order. *Blum Dec at* ¶ *3.*

---

2

Paragraphs 4 and 8 of the Court Order required compliance by June 16th.

The meet and confer phone call was made in a good faith effort to avoid wasting the Court's time with unnecessary motion practice. *Ibid.* Defense counsel stated that he was working on it, but made no promises. *Ibid.* The subsequent 14-day-post-order[3] deadline then came and went without the Defendant complying with a single additional aspect of the Court's June 6th Order. *Ibid.*

During the call, counsel for Plaintiff informed counsel for Defendant that if his client continued to fail to abide by the Court's Order, he would have no choice but to seek immediate relief from the Court. *Ibid.* This notice was given in compliance with local rule 83.3(g).

## V. LEGAL STANDARD

Fed. R. Civ. P. 37(b)(2) empowers a district court to impose "further just orders" whenever a party, or its officers or agents, disobeys an order compelling discovery. Such orders may, without limitation, declare designated facts established, prohibit the recalcitrant party from supporting or opposing particular claims or defenses, strike pleadings in whole or in part, enter default or dismissal, award reasonable expenses and attorney's fees, or invoke the court's contempt power. The Southern District of California complements that authority through Civil Local Rule 83.1, which authorizes the full range of statutory, rule-based, and inherent sanctions, up to and including contempt, monetary penalties, default, and dismissal, for any failure to comply with the Federal Rules, the Local Rules, or a court order. Ex Parte relief is proper here, as time is of the essence due to pending trial deadlines as well as the risk of evidence spoliation. The extended delay in the bringing of this request via noticed motion would likely result in irreparable harm to Plaintiff but procedurally and substantively.

A finding of civil contempt is warranted upon clear and convincing evidence

---

[3] Paragraphs 1, 3, 5-7 and 10 of the June 6th Order required compliance within 14 days, or June 20th.

that a valid court order exists, the contemnor had actual knowledge of the order, and the contemnor disobeyed the order. *FTC v. Enforma Natural Products, Inc.,* 362 F.3d 1204 (9th Cir. 2004).

## VI. LEGAL ARGUMENT

The record satisfies each element required for a finding of civil contempt. The June 6, 2025 order is specific and unequivocal. Defendants received notice, participated in the underlying motion practice, and therefore knew exactly what was required. Yet more than fourteen days have elapsed without meaningful compliance. Clear and convincing evidence thus establishes that a valid order issued, Defendants knew of the order, and consciously declined to comply, satisfying the Ninth Circuit test for civil contempt.

Defendants' defiance is willful, not inadvertent. The Defendant's history within this litigation demonstrates a calculated pattern of delay: each prior production deadline has been met only after court intervention, and even then, the responses proved deficient. The Ninth Circuit has held that willfulness is established by conscious disregard of a court order, not by a requirement of subjective bad faith. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 56 F. App'x 826 (9th Cir. 2003). That standard is met here. Indeed, Defendants' disclosure of email addresses associated with individuals not identified as custodians in the Motion to Compel, an exchange that occurred between counsel during the May 28, 2025 hearing (*see* ECF No. 210), confirms that **Defendants possess the requisite technological capability to locate, access, and transmit electronically stored information responsive to Plaintiff's discovery requests**, notwithstanding their assertions to the contrary (*See* ECF No. 215 at 8:1-6); their present silence is therefore a matter of choice, not incapacity. Defendants' conduct appears consistent with a broader pattern of avoidance and non-compliance, as evidenced by recent defaults entered against the same parties in *Plane Talk Travel, Inc. v. Jet Genius Florida Holdings, Inc.*, Case No.

9:24-cv-80600-AMC (S.D. Fla.) and *Capital Jets, Inc. v. Jet Genius Florida Holdings, Inc.*, Case No. 502024CC017547XXXAMB (Fla. 15th Jud. Cir.).

Defendants' non-compliance immediately deprives Plaintiff of evidence needed to prove claims involving misappropriated assets, diverted tax proceeds, and self-dealing transactions that may expose unknown co-conspirators. The resulting prejudice is manifest: without the requested financial records and verified interrogatories, Plaintiff cannot quantify damages or test the veracity of Defendants' anticipated defenses. Courts in this Circuit routinely impose escalating sanctions—including evidentiary preclusion, issue deeming, and default—where a party's persistent discovery abuse threatens the integrity of the adversary process. *Computer Task Grp., Inc. v. Brotby,* 364 F.3d 1112 (9th Cir. 2004). Time is of the essence with this request, as evidentiary and trial deadlines are fast approaching. Further, any further delay on adds to the risk of spoliation of evidence. As such, immediate ex parte relief as sought herein is appropriate.

Defendants' serial, selective non-production is <u>not</u> the benign product of insolvency or disorganization; it is consistent with the jurisprudential concept of <u>self-concealing fraud</u>. *Bailey v. Glover*, 88 U.S. 342 (1874) (frauds 'kept concealed by the acts of the parties committing them' justify equitable tolling); *Estate of Amaro v. City of Oakland*, 653 F.3d 808 (9th Cir. 2011) (similar). That principle recognizes that a wrongdoer's very silence and obstruction may prevent the victim from identifying additional tortfeasors and quantifying damage. Here, Defendant's refusal to produce corporate financial records has the foreseeable, and likely intended effect of shielding other insiders, affiliates, and family-trust recipients from discovery, service, and liability.

In these circumstances, coercive and compensatory relief is both necessary and appropriate. Absent the compelled discovery, Plaintiff cannot calculate damages with anything approaching the precision demanded by Fed. R. Civ. P. 26(a)(1)(A)(iii). Nor

can the Court, at any judgment stage, test essential elements such as causation, reliance, and measure of harm.

Plaintiff respectfully requests that the Court (i) issue an Order to Show Cause requiring Defendants to appear and justify their ongoing non-compliance and (ii), if good cause is not shown, enter a finding of civil contempt and impose the remedies detailed in the Prayer for Relief, namely, coercive daily fines, adverse-inference or issue-preclusion sanctions, seizure of evidence, conditional default, and an award of fees and costs, or such further relief as the Court deems just. Only measures of that magnitude are likely to secure the discovery this Court has already deemed mandatory and to preserve the orderly administration of justice.

Defendants' refusal to comply with paragraphs 1, 3-8, and 10—while offering a single, burdensome physical inspection under paragraph 2—appears to indicate a calculated program of self-concealing fraud: by controlling what evidence may surface and when, Jordan Brown preserves the illicit benefits of the scheme and insulates unnamed co-conspirators from scrutiny. Such conduct squarely implicates the fraudulent-concealment doctrine recognized by the Ninth Circuit and warrants the strongest remedial sanctions this Court is empowered to impose.

## VII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court (i) issue an Order to Show Cause requiring Defendants to appear and demonstrate why their ongoing non-compliance should not be sanctioned, and (ii) upon a determination that Defendants have failed to show good cause, enter a finding of civil contempt and impose the sanctions described herein.

The Ninth Circuit has long approved the use of coercive monetary sanctions to compel compliance with discovery directives. *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (affirming imposition of sanctions for willful noncompliance with discovery orders), *Behrmann v. Nat'l Heritage Found., Inc. (In re Nat'l Heritage*

*Found., Inc.*), 510 B.R. 526 (E.D. Va 2014) (affirming coercive daily fines for failure to comply with a contempt order). Consistent with that authority, Plaintiff asks that the Court impose a sanction of <u>$1,000 per Defendant per day</u>, payable to the Clerk, commencing on the date the contempt order is entered and disincentivize non-compliance until full compliance has been certified. Respectfully, a coercive sanction of this amount is proportionate here. The record demonstrates that Defendants stand to gain more from continued control of the misappropriated assets than they would lose through such a fine. In his deposition, Jordan Brown admitted that he withdrew "two and a half to three million dollars" from Jet Genius Holdings yet repaid "under a hundred grand," leaving the company "not in very good standing". Brown Dep. 74:10 - 78:1 (Jan 27, 2025) (Exhibit C to Blum Dec). These sworn admissions underscore a continuing financial incentive to delay compliance and conceal records from Defendant entities preliminarily valued at more than $65,000,000 (See Ex. E to First Amended Complaint, ECF No. 29). Plaintiff respectfully submits, that only a meaningful daily penalty, together with further appropriate sanctions, can neutralize that incentive and safeguard the corporate assets and intellectual property at issue pending final adjudication.

Because prior Court orders have proven ineffective, Plaintiff further requests that the Court strike Defendants' answers and enter default as to liability on all claims and counterclaims. The Ninth Circuit has upheld default where a party's pattern of discovery abuse renders lesser sanctions futile. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987). Upon entry of default, Plaintiff asks that the Court set an expedited prove-up to determine damages, shifting to Defendants the burden of disproving amounts that would have been ascertainable had they produced the ordered records, an approach endorsed in *Conn. Gen. Life,* 56 F. App'x 826 (upholding default and adverse-inference sanctions when a party's non-compliance denied its opponent access to critical evidence).

Plaintiff also seeks adverse-inference and issue-preclusion findings, including deeming all subsequently produced documents authentic and admissible and establishing that any destroyed, altered, or withheld item would have been unfavorable to Defendants. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90, 104 (D. Colo. 1996) (discussing and imposing adverse inference for withheld documents, subject to findings of materiality and prejudice). See also *Micron Technology, Inc. v. Rambus Inc.*, 255 F.R.D. 135, 146–48 (D. Del. 2009); *Mathias v. Jacobs*, 197 F.R.D. 29, 38 (S.D.N.Y. 2000); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 287–88 (E.D. Va. 2001)

Finally, pursuant to Fed. R. Civ. P. 37(b)(2)(C), Plaintiff seeks an award of all reasonable attorneys' fees and costs incurred since June 6, 2025, including those associated with preparing and prosecuting this Application and with any collection necessitated by continued non-compliance to ensure that Defendants do not profit from their discovery misconduct and to restore the parties to level litigation footing.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant the relief set forth above, and enter any additional orders necessary to compel compliance, and add any additional relief the Court deems just, to enforce its authority and protect the integrity of these proceedings.

DATED: June 25, 2025

By: *<u>/s/Matthew M. Blum</u>*

Matt Blum, Esq.
The Law Office of Matt Blum
Attorney for Plaintiffs