Matt Blum, Esq., SBN: 285944
The Law Office of Matt Blum
550 W C Street, Suite 960
San Diego, CA 92101
Mblumlaw@gmail.com
Tel: 860-271-6273
Fax: 619-238-1351

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff AARON STANZ, individually and derivatively on behalf of Jet Genius Holdings, Inc.,

Plaintiff,

v.

Defendants JORDAN BROWN; JET GENIUS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3JETS LLC; BOWMAN AVIATION, INC.; JET AGENCY GLOBAL, LLC; C3 LIMO LLC; JETCHARTER.COM LLC; and DOES 1-20,

Defendants,

and

JET GENIUS HOLDINGS, INC.,
Nominal Defendant.

AND RELATED COUNTERCLAIM.

Case No. 3:22-cv-01164-GPC-JLB

Dist. Judge: Hon. Gonzalo P. Curiel
Mag. Judge: Hon. Jill L. Burkhardt

**DECLARATION OF ATTORNEY MATT BLUM IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR OSC AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT**

Complaint Filed: August 8, 2022
SAC Filed: August 21, 2023
Trial Date: Not Yet Set

I, Matthew Blum, hereby declare as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California and admitted to practice before this Court. I am counsel of record for Plaintiff Aaron Stanz in the above-captioned matter. I make this declaration based on my personal knowledge and my review of the files and records maintained in this case. If called as a witness, I could and would competently testify to the facts stated herein.

2. As of the date of this Application, Defendants are in violation of every operative paragraph of the June 6, 2025 order except paragraph 2's invitation to inspect hard-copy materials. No Brown declaration or bank statements (See No. ECF 215 at 26, ¶ 4) have been filed; no verified interrogatory answers (See id. ¶ 8) have been served; no productions or confirmations under ¶¶ 5–7 have issued (See id. ¶¶ 5-7); no privilege log for marital communications has been provided (See id. ¶ 10); and no access to e-mail accounts, servers, or custodians' devices (See id. ¶¶ 1-3) has been granted.

3. Before submitting this motion, I initiated the meet-and-confer process on June 17, 2025. Specifically, after Defendant missed multiple aspects of the initial 10-day post-order deadlines, I inquired with defense counsel as to whether the Defendant intended to comply with the Court's Order. The meet and confer call was made in a good faith effort to avoid wasting the Court's time with unnecessary motion practice. Defense counsel stated that he was working with his client, but made no promises. The subsequent 14-day-post-order deadline then came and went without the Defendant complying with a single additional aspect of the Court's June 6th Order. During the call, I informed counsel for Defendant that if his client continued to fail to abide by the Court's Order, I would have no choice but to seek immediate relief from the Court.

4. Attached as Exhibit A is a true and correct copy of an electronic mail correspondence that was produced by the Defendant Jet Genius Florida Holdings in

this action.

5. Attached as Exhibit B is a true and correct copy of a correspondence forwarded from Brown to Stanz in April of 2021. This correspondence was authenticated by Brown during his deposition.

6. Attached hereto as Exhibit C are true and correct copies of selected pages from the deposition of Jordan Brown, taken on January 27, 2025, before certified shorthand reporter Carissa Narciso Macagba. Exhibit C includes:

(a) the cover page identifying the case caption, date, location, and job number;

(b) the appearance pages;

(c) pages 74 through 78, which contain the testimony cited at page 8 of Plaintiff's Application; and

(d) the court reporter's certification and transcriber's certificate.

These pages are a true and correct copy of the original transcript produced by the court reporter and have not been altered in any way.

7. I make this declaration in support of Plaintiff's Ex Parte Application for an OSC as to Why Defendants Should Not Be Held in Contempt of Court.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

This declaration is executed on June 23, 2025 in San Diego, California.

DATED: June 25, 2025

By: ______________________

Matt Blum, Esq.

# EXHIBIT A

JETGENIUS HOLDINGS

**cfg archives <archive@flycfg.com>**

---

## Current Issues

9 messages

---

**Dubick, Mitchell B.** <dubick@higgslaw.com> Sun, Feb 28, 2021 at 7:28 PM
To: Jordan Brown <jordanb@flycfg.com>
Cc: "Katz, Joshua P." <katzj@higgslaw.com>, "debf@flycfg.com" <debf@flycfg.com>, "Mary Kay Jordan (MaryKay@MKJordan.com)" <marykay@mkjordan.com>

Jordan,
You asked me to summarize our Thursday afternoon telephone call, especially with respect to outstanding issues:

1. Mary Kay is completing her review of books and bank statements, with a focus directed toward cleaning things up so that the 2019 and 2020 income tax returns for JGH (Jet Genius Holdings, Inc.) can be prepared and so we can determine when JGH ceased operations and stopped having employees, and when JGF (Jet Genius Florida Holdings, Inc) started operations and started having employees. She plans to be done this week.
2. my understanding is that JGH is an S coorpration and that JGF is a C.
3. I still need a precise list (although assets such as computers or furniture can be listed by class ) of JGH's assets that are still held by it, and those that were transferred to JGF, including the price and mode of payment (or debt). If debt, I'd like to see the receivable/payable on the books of both companies. This is important; assets still held by JGH are subject to the claims of its creditors, including the IRS. More important, if we want to retain any hope of not having JGF be considered a successor in interest (and therefore liable for the debts of JGH) JGF must have purchased these assets like any unrelated purchaser. Keep in mind that JGF will get a new depreciable basis for these purchases, so it's not necessary to minimize the price so long as JGH can use the cash for to pay liabilities to third parties.
4. We also need to make sure that JGH's website is transferred to JGF, as well as any other intellectual property.
5. Jordan is talking with a potential new investor for JGF. Not only would this be good financially, but it would also be a huge factor in our argument that JGF is not merely a continuation of JGH. I would also be interested in hearing about other non-tax reasons for closing down JGH and forming JGF.
6. JGF owes about $400,000 in excise taxes. The plan is to pay the January and February liabilities in March, and to pay the 2020 liabilities over the next several months.
7. JGH owes some $2,200,000 in excise taxes. It will not be able to pay them; the IRS will assess Jordan for these trust fund taxes.
8. In July 2020, Cindy Grotsky emailed me that as of the end of 2019, Jordan owed JGH over $600,000 from advances made to him. Our plan has been to treat this as forgiven debt in 2020; this will produce income to Jordan unless he is insolvent; either way, any liability can be included in his anticipated Offer in Compromise, which will include both income and trust fund liabilities.
9. We want to protect Stacy's assets, so it will be necessary for them to file married filing separately.
10. Since Jordan left California in early 2020, including all the relief of indebtedness income later in the year would be helpful.
11. Cindy also said that as of the end of 2019, Bowman Aviation owed JGH almost $1,300,000. We need to know the current balances and whether these debts can be paid. If Jordan is the owner of Bowman, then the $1,300,000 can also be treated as the personal debt.
12. Stacy Brown has an IRS 2017 Statutory Notice of Deficiency for $3,554; it alleges some income omitted from her return. It doesn't make sense to pursue a tax court hearing for such a small amount, but I'm happy to provide a copy of the Notice so that you can see what the alleged omissions were.

JGFH_004020

13. We'll need to know the status of the Browns' 2018 and 2019 personal returns. Keep in mind that we can't resolve any of Jordan's issues or do an Offer until the IRS considers him to be in compliance, a process that includes filing all his outstanding returns.
14. Jordan agreed to have us withdraw JGH's Collection Due Process Hearing. It bought us a lot of time, but at this point, there's really nothing to be accomplished given JGH's status.
15. Similarly, while we are terribly late in responding to revenue Officer Miranda's request for information regarding JGH, I've put it off, hoping we could obtain the new JGF investor(s) or develop reasons for JGF's existence before responding.
16. f anyone thinks I've missed, missstated, or mis-analyzed anything, please let me know. There are a lot of moving pieces, and we don't want to get anything wrong. It's also important that we carry out the things discussed in this memo in a timely fashion.

HIGGS | FLETCHER | MACK

Best Lawyers BEST LAW FIRMS U.S.News & World Report 2021

**Mitchell B. Dubick**
Partner

Phone (619) 236.1551
Direct (619) 595.4273
Fax (619) 696.1410
Email dubick@higgslaw.com

401 West A Street, Suite 2600, San Diego, CA 92101

www.higgslaw.com

Please read the legal disclaimers that govern this e-mail and any attachments.

*TAX ADVICE: Any federal tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending any transaction or matter discussed herein.*

---

**Mary Kay Jordan** <marykay@mkjordan.com> Fri, Mar 5, 2021 at 9:50 PM
To: "Dubick, Mitchell B." <dubick@higgslaw.com>, Jordan Brown <jordanb@flycfg.com>
Cc: "Katz, Joshua P." <katzj@higgslaw.com>, "debf@flycfg.com" <debf@flycfg.com>

Jordan and Deb,

I have reviewed the items requested by Mitch in item 1.

I have questions on some of the transactions. I have attached a detailed spreadsheet. It seems like more than it is, I was just trying to be thorough. I am happy to jump on a call next week if you would like to go over them with me.

- **2019 and 2020 income tax returns for JGH (Jet Genius Holdings, Inc.) can be prepared**

The use of the 1502-InterCo account in both Jet Genius Holdings and Jet Genius Florida, while a significant number of transactions from October 2019 on was done well and finished the year 2019 in balance. I do have some questions about it use as it pertains to Accounts Receivable that our outline

JGFH_004021

in my spreadsheet. I does go out of balance as of May 1st and will need to be completed for 2020 an confirmed in balance before the returns for 2020 can be completed.

Jet Genius Holdings 2019 books are on QB Online January – April and part of May, then on Right Networks for the remainder of the year. The information from QB Online was posted to Right Networks via lump sum journal entries at the end of the month January – April. This means the General Ledger in Right Networks is not complete. The CPA will need the GL from both QB Online and Right Networks. I have attached the reports I pulled from QB Online. It appears you cannot download to Excel from Right Networks, which CPAs prefer when preparing returns, but .pdfs can be created.

- **determine when JGH ceased operations**

  It does appear that operations stopped at the end of September. The outstanding questions pertain to the treatment of A/R and why some funds were still be received into JGH bank accounts into 2020. I tracked the entries between the companies and the income is being realized in JGF after 9/30/2019, but there may be questions as to why the funds were still coming into JGH

- **stopped having employees, -**

  Final wages were paid in in September 2019 and I received a copy of the 2019-Q4 941 that has no wages.

- **when JGF (Jet Genius Florida Holdings, Inc) started operations**

  JGF began operations in September 2019. I do not have bank statements, but the first banking activity posted is 96/27/2019

  The GL ran as of 8/31/2019 has one transaction – an $18 credit card charge for travel posted in August 2019

- **started having employees.**

  JGF - First payroll was run on 10/21/2019

- **I still need a precise list (although assets such as computers or furniture can be listed by class ) of JGH's assets that are still held by it**

  I reviewed the 2018 1120-S for JGH – I have attached the depreciation schedule from the return listing assets. There was $15,280.60IN additional Computer Equipment in 2019, but the total of $56,018.82 was transferred to JGF via JE on 10/1/2019 and the $4500 in Office Furniture was as transferred.

  The Security Deposit of $8071 was added to in QB Online on 3/4/2019 $1680 payment, but the total $9751 never made it on the books on Right Networks. Would need confirmation if that should have still been on the books in 2019 or if it was returned.

JGFH_004022

Mary Kay Jordan

**MKJ Accounting & Bookkeeping Services**

(760) 579-1425 phone

(760) 429-7686 fax

E-mail: MaryKay@MKJordan.com

--------------------- E-Mail Disclaimer ---------------------

This e-mail and any files transmitted with it may contain privileged and confidential information and are intended solely for the use of the individual or entity to which they are addressed. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail or any of its attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sending individual or entity by e-mail and permanently delete the original e-mail and attachment(s) from your computer system. Thank you for your cooperation.

[Quoted text hidden]

**6 attachments**

**Jet Genius Holding - 2019 - 2020 Review.pdf**
225K

**JGH - 2018 1120S Depreciation Schedule.pdf**
149K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._General+Ledger 2019.xlsx**
535K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Profit+and+Loss+Comparison 2018 & 2019.xlsx**
21K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Trial+Balance 2019.xlsx**
18K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Balance+Sheet+Comparison+2019 & 2018.xlsx**
17K

---

**debf@flycfg.com** <debf@flycfg.com> Mon, Mar 8, 2021 at 8:37 AM
To: Jordan Brown <jordanb@flycfg.com>

Morning,

Am I forwarding this to Luis or to Justin? I was going to print things out but the ledgers are huge, so I've printed everything but those. Let me know.

Deb

[Quoted text hidden]

**6 attachments**

**Jet Genius Holding - 2019 - 2020 Review.pdf**
225K

**JGH - 2018 1120S Depreciation Schedule.pdf**
149K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._General+Ledger 2019.xlsx**
535K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Profit+and+Loss+Comparison 2018 & 2019.xlsx**
21K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Trial+Balance 2019.xlsx**
18K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Balance+Sheet+Comparison+2019 & 2018.xlsx**
17K

---

**Jordan Brown** <jordanb@flycfg.com> Mon, Mar 8, 2021 at 8:53 AM
To: debf@flycfg.com
Cc: Jordan Brown <jordanb@flycfg.com>

To both and copy together
[Quoted text hidden]
--

Best Regards,

**Jordan Brown**
Managing Partner

Charter Flight Group Logo Logo

Boca Raton Office
3700 Airport Road, Suite 406
Boca Raton, FL 33431
**M:** 760-845-0743 | **T:** 888-634-7449

www.flycfg.com

---

**debf@flycfg.com** <debf@flycfg.com> Mon, Mar 8, 2021 at 8:59 AM
To: Justin Harahan <JHarahan@lindsayandbrownell.com>, Luisf@flycfg.com
Cc: Jordan Brown <jordanb@flycfg.com>

Good morning,

Jordan requested that I forward this email with all of the attachments to you both.

With kind regards,

**Deb Fouts**

Accounting

Boca Raton Office
3700 Airport Road, Suite 406
Boca Raton, FL 33431

**T:** 888-634-7449 | **M:** 239-404-7975

www.flycfg.com

**From:** Mary Kay Jordan <marykay@mkjordan.com>
**Sent:** Friday, March 5, 2021 9:51 PM

[Quoted text hidden]

[Quoted text hidden]

**6 attachments**

**Jet Genius Holding - 2019 - 2020 Review.pdf**
225K

**JGH - 2018 1120S Depreciation Schedule.pdf**
149K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._General+Ledger 2019.xlsx**
535K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Profit+and+Loss+Comparison 2018 & 2019.xlsx**
21K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Trial+Balance 2019.xlsx**
18K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Balance+Sheet+Comparison+2019 & 2018.xlsx**
17K

**debf@flycfg.com** <debf@flycfg.com> Thu, Mar 11, 2021 at 2:47 PM
To: Mary Kay Jordan <marykay@mkjordan.com>, "Dubick, Mitchell B." <dubick@higgslaw.com>, Jordan Brown <jordanb@flycfg.com>
Cc: "Katz, Joshua P." <katzj@higgslaw.com>

Hi Mitch,

Can you please provide a copy of the form/notice so that we can get this paid for Stacy, and reference the appropriate notice number, etc.?

1. Stacy Brown has an IRS 2017 Statutory Notice of Deficiency for $3,554; it alleges some income omitted from her return. It doesn't make sense to pursue a tax court hearing for such a small amount, but I'm happy to provide a copy of the Notice so that you can see what the alleged omissions were.

With thanks and kind regards,

Deb

**From:** Mary Kay Jordan <marykay@mkjordan.com>
**Sent:** Friday, March 5, 2021 9:51 PM

[Quoted text hidden]

JGFH_004025

[Quoted text hidden]

---

**Dubick, Mitchell B.** <dubick@higgslaw.com> Fri, Apr 16, 2021 at 6:06 PM
To: Jordan Brown <jordanb@flycfg.com>, "debf@flycfg.com" <debf@flycfg.com>
Cc: "Mary Kay Jordan (MaryKay@MKJordan.com)" <marykay@mkjordan.com>

Good Afternoon,
I want to check to see if you are still working on your response to Mary Kay's March 5th email, a copy of which is attached.
I am particularly interested in how you treated income during 2019 and 2020; for example, I understood from Mary Kay that certain matters were billed by JGHI and paid to JGHI but then had the income shifted to JGF. I need to better understand this, especially if we intend to maintain that JGF was not merely a continuation of JGHI and liable for its debts.
Mitch

Mitchell B. Dubick
Partner
Phone (619) 236.1551
Direct (619) 595.4273
Fax (619) 696.1410
Email dubick@higgslaw.com

---

**From:** Mary Kay Jordan <marykay@mkjordan.com>
**Sent:** Friday, April 16, 2021 1:45 PM
**To:** Dubick, Mitchell B. <dubick@higgslaw.com>
**Subject:** FW: Current Issues

Mary Kay Jordan
**MKJ Accounting & Bookkeeping Services**
(760) 579-1425 phone
(760) 429-7686 fax
E-mail: MaryKay@MKJordan.com

---------------------- E-Mail Disclaimer ----------------------
This e-mail and any files transmitted with it may contain privileged and confidential information and are intended solely for the use of the individual or entity to which they are addressed. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail or any of its attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sending individual or entity by e-mail and permanently delete the original e-mail and attachment(s) from your computer system. Thank you for your cooperation.

[Quoted text hidden]

---

**6 attachments**

**Jet Genius Holding - 2019 - 2020 Review.pdf**
225K

**JGH - 2018 1120S Depreciation Schedule.pdf**
149K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._General+Ledger 2019.xlsx**
535K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Profit+and+Loss+Comparison 2018 & 2019.xlsx**
21K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Trial+Balance 2019.xlsx**
18K

JGFH_004026

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Balance+Sheet+Comparison+2019 & 2018.xlsx**
17K

---

**debf@flycfg.com** <debf@flycfg.com> Fri, Aug 13, 2021 at 2:13 PM
To: Jordan Brown <jordanb@flycfg.com>

[Quoted text hidden]

**6 attachments**

**Jet Genius Holding - 2019 - 2020 Review.pdf**
225K

**JGH - 2018 1120S Depreciation Schedule.pdf**
149K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._General+Ledger 2019.xlsx**
535K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Profit+and+Loss+Comparison 2018 & 2019.xlsx**
21K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Trial+Balance 2019.xlsx**
18K

**OLD CO - Quickbooks online - Jet+Genius+Holdings,+Inc._Balance+Sheet+Comparison+2019 & 2018.xlsx**
17K

---

**cfg archives** <archive@flycfg.com> Tue, Mar 19, 2024 at 8:32 PM
To: Bianca Feller <biancaf@jetgenius.com>, Roya Arabi <royaa@flycfg.com>

---------- Forwarded message ---------
From: **Dubick, Mitchell B.** <dubick@higgslaw.com>
Date: Sun, Feb 28, 2021 at 7:28 PM
Subject: Current Issues
To: Jordan Brown <jordanb@flycfg.com>
[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT B

JETGENIUS HOLDINGS

**Angel Stanz <angels@flycfg.com>**

# Fwd: FW: Executive Summary of IP Transfer - Jet Genius Holdings, Inc.

1 message

**Jordan Brown** <jordanb@flycfg.com> Wed, Apr 14, 2021 at 9:29 AM
To: Angel Stanz <angels@flycfg.com>

Best Regards,

CFG CHARTER FLIGHT GROUP

Logo

**Jordan Brown**
Managing Partner
Boca Raton Office
3700 Airport Road, Suite 406
Boca Raton, FL 33431
**M:** 760-845-0743 | **T:** 888-634-7449

www.flycfg.com

---------- Forwarded message ---------
From: **Dubick, Mitchell B.** <dubick@higgslaw.com>
Date: Tue, Apr 13, 2021 at 9:43 PM
Subject: FW: Executive Summary of IP Transfer - Jet Genius Holdings, Inc.
To: Jordan Brown <jordanb@flycfg.com>

Jordan,

The four options outlined are fine, at least from a corporate perspective. All of them assume that the IP is owned by the California corporation, rather than an individual. It does not appear the writer knew about the California corporation's tax problems or yours, which make the issue of valuation more critical and make some of the options non-starters. If our plan were to have Florida pay off California's and your potential trust fund liability, it might make sense to pay top dollar for the California IP so that these liabilities could be satisfied. However, since our plan is to have you file an Offer in Compromise, our goal here is to get the IP into the hands of the Florida corporation at as low a value as possible. Accordingly, here's how I rate the alternatives presented:

1. Dividend and Contribution. In addition to the enumerated cons, this leaves the valuation question open, both for immediate tax to the shareholders on the dividend and, more importantly, on having to pay over the amount of the dividend to any creditor—including the IRS—pursuant to California Corporations Code section 500 et seq. As a result, the IRS would be greatly incentivized to pump up the IP value. In short, a non-starter.
2. Installment Sale. Similar problems in that the IRS would send a notice of levy, requiring Florida to make all payments owed to California directly to the IRS. They'd also push for a high valuation. However, this alternative would at least spread out the pain, both in terms of payments and in terms of income recognition.
3. License with Option to Purchase. I'm not sure I agree with the writer that appreciation need inure to the benefit of California, at least if the option exercise price were set at the outset of the transaction. I also don't understand why the writer states that the sale—but not the license--would be a taxable transaction for the shareholders. Payment

under the license or the sale would be taxable to the California S-corp shareholders, albeit in differing amounts. This alternative also raises the issue of whether the IRS would recognize the transaction as a true license, rather than as a disguised sale.

The main thing I like about this alternative is that if the IRS pounces, Florida can always walk away from the license, thereby limiting the damage.

4. Merger. A disaster because it could make Florida liable for all of California's problems. Merging an S corp into a C corp also raises several tax issues. Don't even consider this option.

Jordan, my hope has always been that the IP would be considered to have minimal—and declining--value. I would favor any approach that focused as little attention on the IP as possible. If that's not possible, I'd prefer any arrangement that lets Florida abort the transaction if necessary as painlessly as possible. Hence I favor option 3 among the 4 presented.

HIGGS | FLETCHER | MACK

Best Lawyers BEST LAW FIRMS U.S.News & WORLD REPORT 2021

**Mitchell B. Dubick**
Partner

Phone (619) 236.1551
Direct (619) 595.4273
Fax (619) 696.1410
Email dubick@higgslaw.com

401 West A Street, Suite 2600, San Diego, CA 92101

www.higgslaw.com

Please read the legal disclaimers that govern this e-mail and any attachments.

*TAX ADVICE: Any federal tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending any transaction or matter discussed herein.*

---

**From:** Jordan Brown <jordanb@flycfg.com>
**Sent:** Tuesday, April 13, 2021 1:06 PM
**To:** Dubick, Mitchell B. <dubick@higgslaw.com>
**Subject:** Fwd: Executive Summary of IP Transfer - Jet Genius Holdings, Inc.

Four options for moving our IP. Thoughts?

Best Regards,

Logo**Jordan Brown**

Managing Partner

CHARTER FLIGHT GROUP

Boca Raton Office
3700 Airport Road, Suite 406
Boca Raton, FL 33431

**M:** 760-845-0743 | **T:** 888-634-7449

www.flycfg.com

---------- Forwarded message ---------
From: **Kyle Louramore** <klouramore@stearnsweaver.com>
Date: Tue, Apr 13, 2021 at 3:47 PM
Subject: Executive Summary of IP Transfer - Jet Genius Holdings, Inc.
To: Jordan Brown <jordanb@flycfg.com>, Angel Stanz <AngelS@flycfg.com>
Cc: David Seifer <DSeifer@stearnsweaver.com>

See attached.

Kyle M. Louramore, Esq.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

150 West Flagler Street, Suite 2200

Miami, FL 33130

Direct Number: 305-789-3417

Email: klouramore@stearnsweaver.com

www.stearnsweaver.com

STEARNS WEAVER MILLER

CONFIDENTIALITY NOTICE: The information contained in this E-mail message is attorney privileged and confidential information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message. Thank you.

**Executive Summary of IP Transfer - Jet Genius Holdings, Inc..DOC**
38K

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT COURT

________________________________

AARON STANZ, individually and derivatively on behalf of Jet Genius Holdings, Inc.,

Plaintiff,

v. Case No. 3:22-cv-01164-GPC-JLB

JORDAN BROWN; JET GENIUS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3JETS LLC; BOWMAN AVIATION, INC.; JET AGENCY GLOBAL, LLC; C3 LIMO LLC; JET CHARTER.COM LLC; and DOES 1-20,

Defendants.

________________________________

DEPOSITION OF

JORDAN BROWN

DATE: Monday, January 27, 2025

TIME: 9:46 a.m.

LOCATION: Remote Proceeding
Higgs, Fletcher & Mack
401 West "A" Street, Suite 2600
San Diego, CA 92101

OFFICIATED BY: Carissa Narciso Macagba

JOB NO.: 7129530

APPEARANCES

ON BEHALF OF PLAINTIFF AARON STANZ, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF JET GENIUS HOLDINGS, INC.:

MATTHEW M. BLUM, ESQUIRE (by videoconference)
The Law Office of Matt Blum
550 West C Street, Suite 960
San Diego, CA 92101
mblumlaw@gmail.com
(860) 271-6273

ON BEHALF OF DEFENDANTS JORDAN BROWN, JET GENIUS HOLDINGS, INC., JET GENIUS FLORIDA HOLDINGS, INC., C3JETS LLC, BOWMAN AVIATION, INC., JET AGENCY GLOBAL, LLC, C3 LIMO LLC, AND JET CHARTER.COM LLC:

NICHOLAS D. BRAUNS, ESQUIRE
Higgs Fletcher & Mack LLP
401 West "A" Street, Ste 2600
San Diego, CA 92101
braunsn@higgslaw.com
(619) 236-1551

ALSO PRESENT:

Aaron Stanz, Plaintiff (by videoconference)

Q Okay. And after it was -- this money, this two and a half to three million dollars was recategorized based on the advice of counsel and your CPA, did you then pay any of it back to the company?

A There have been funds transferred back into the company.

Q So is that a yes?

A Yes, I have -- or our accounting team has, yes, moved funds back into the company, yes.

Q How much of the two and a half to three million dollars that you originally took out as a loan from Jet Genius Holdings in 2017 to 2019 was re-transferred or paid back to the company?

A I do not recall.

Q Do you have an estimate?

A I do not.

Q $100,000?

A I do not recall. There were -- it was my -- so there were credit cards involved too. I -- I'm going to try to expand beyond just a yes or no here for you, Mr. Blum. So my personal Amex would have different company expenses on it, and sometimes I got reimbursed for those.

And I would rely on my advisors, bookkeepers to -- what was what as far as some of -- some of the

funds that came to me personally were a reimbursement as well. So I had reimbursements, commissions, salary. So I remember there was a -- a conversation about being reimbursed for what was on my American Express card.

Q When this two and a half to three million dollars was repaid or a portion of it -- I'm sorry -- was repaid --

A Sure.

Q -- who made that repayment?

A I did.

Q How did you make it?

A Bank transfer.

Q And what is the total amount that you estimate you bank transferred back to Jet Genius Holdings from 2017 to 2019?

A I would estimate, on actual funds moving back, under a hundred grand.

Q And did anyone else make payments on your behalf in an effort to repay the two and a half to three million dollars that you loaned yourself from Jet Genius Holdings, Inc. from 2017 to 2019?

A Not to my recollection, no.

Q But just so we're clear, two and a half to three million dollars you took out of the Jet Genius Holdings bank account as a loan from 2070 to 2019. It

was then recategorized following advice from your counsel and your CPA, and then less than a hundred thousand dollars was eventually paid back to the company by you; is that accurate?

A To the best of my knowledge, yes. There -- yes.

Q You said you relied heavily on the recommendations of your CPA and of counsel. Sitting here today, do you believe that if you had not received those recommendations, you would not have recategorized the loan as salary or income?

MR. BRAUNS: Object. It's argumentative, calls of speculation, and the call of the question gets into attorney-client privileged information. I'm instructing him not to answer.

BY MR. BLUM:

Q When you first took out the two and a half to three million dollars as a loan from Jet Genius Holdings, Inc. from 2017 to 2019, did you intend to repay it?

A Yes.

Q And so somewhere along the line, that intention changed?

A It's --

MR. BRAUNS: Argumentative.

THE WITNESS: Yeah, that's total speculation.

BY MR. BLUM:

Q Did that intention change?

A No.

Q Well, the money was never repaid.

MR. BRAUNS: It's argumentative.

BY MR. BLUM:

Q Okay. Was the money ever repaid?

MR. BRAUNS: We just covered that over the past half hour. It's all been outlined.

THE WITNESS: I -- I --

MR. BRAUNS: You can tell him --

THE WITNESS: I answered yes. I answered yes to you with an estimation.

BY MR. BLUM:

Q Of how much was repaid?

A Yes, sir.

Q Okay. So if your original intent when you took out the loan was to pay it back, two and a half to three million dollars, but then less than a hundred thousand dollars was actually repaid, what changed?

A Nothing.

Q Why was it not repaid?

A Well, I can certainly tell you that the -- the



Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

company ended up not in very good standing.

Q Do you believe that you would have repaid the money had it not been recategorized by your attorney and your CPA as a salary and commission payment?

MR. BRAUNS: Incomplete hypothetical, calls for speculation, and gets into attorney-client privilege information. Instruct him not to answer.

MR. BLUM: So I don't think that the attorney-client privilege applies here under California Evidence Code 962, because you've got a situation where there was a dual representation. And if you want me to send you that statute, I can. But I'll just read it.

When two or more clients have -- well, when two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients and another of such clients.

MR. BRAUNS: So what client -- so that raises about a 15-minute conversation between you and I, first of all. Second of all, I don't think you've laid the foundation you need to apply that evidence code, because you haven't clarified what capacity that

CERTIFICATE OF DEPOSITION OFFICER

I, CARISSA NARCISO MACAGBA, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Date: February 7, 2025

CARISSA NARCISO MACAGBA
Notary Public in and for the
State of California

[X] Review of the transcript was requested.

CERTIFICATE OF TRANSCRIBER

I, RACHEL ROBERTS, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Date: February 7, 2025

RACHEL ROBERTS