

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON STANZ, individually and derivatively on behalf of Jet Genuis Holdings, Inc.,<br><br>          Plaintiff,<br><br>v.<br><br>JORDAN BROWN, et al.,<br><br>          Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 22-cv-01164-GPC-JLB<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND REPORT AND RECOMMENDATION RE: PLAINTIFF'S EX PARTE APPLICATION FOR OSC AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILING TO COMPLY WITH A COURT ORDER**<br><br>**[ECF No. 217]** |

Before the Court is Plaintiff Aaron Stanz's ("Plaintiff") *Ex Parte* Application for Order to Show Cause as to Why Defendants Should Not be Held in Contempt of Court for

1

Failing to Comply with a Court Order (*Ex Parte* Motion)[1]—namely, the Court's Order Granting Plaintiff's Motion to Compel (Motion to Compel Order or Order).[2] (ECF Nos. 215, 217; *see also* ECF No. 188.) Defendants Jordan Brown ("Brown"), Jet Genius Holdings, Inc. ("JGH"), Jet Genius Florida Holdings, Inc., Bowman Aviation, Inc., Jet Agency Global, LLC, C3 Jets, LLC, and C3 Limo, LLC (collectively, "Defendants") did not file an opposition. For the reasons set forth below, Plaintiff's request for attorney's fees is **GRANTED**, subject to Plaintiff's submission of a supporting declaration and documentation. The Court **RECOMMENDS** to the Honorable Gonzalo P. Curiel that the Court initiate civil contempt proceedings against Defendants. Further, the Court certifies the pertinent facts in connection with a civil contempt inquiry. The Court **RECOMMENDS** sanctions in the form of coercive per diem fines. However, the Court **RECOMMENDS** against the imposition of sanctions in the form of adverse inferences, issue preclusion, and entry of default judgment.

## I. BACKGROUND

### A. Second Amended Complaint

The following allegations are taken from the Second Amended Complaint:

Plaintiff is the creator and developer of software and systems that simplify and accelerate aircraft charter brokering, including JetXchange, The Grid, and the Charter Flight Group website, which are also supported by custom applications, reports, lead generation tools, databases, business analytics, and certain client lists (collectively, the

---

[1] By order dated August 13, 2025, the Court construed Plaintiff's *Ex Parte* Application for Order to Show Cause as to Why Defendants Should Not be Held in Contempt of Court for Failing to Comply with a Court Order as a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37. (*See* ECF No. 223 at 2.)

[2] On January 9, 2025, Plaintiff filed a Notice of Motion and Motion to Compel Production of Documents and for an Order Awarding Attorney's Fees (hereinafter "Motion to Compel"). (ECF No. 188.)

"JGH Platform").  (ECF No. 78 at 10, ¶ 38.)  The JGH Platform allows a charter aviation brokerage company to operate more efficiently by facilitating more trips per staff member than any charter brokerage competitor.  (*Id.* at 10-11, ¶ 38.)

Plaintiff and Brown formed JGH, a private jet charter broker, with a non-party, Alexander Wolf ("Wolf"), in 2016.  (*Id.* at 1, 11, ¶¶ 1, 39.)  Plaintiff contributed the JGH Platform to JGH and received a 49.5% ownership interest in the company.  (*Id.* ¶ 39.) Plaintiff and Brown are the two primary shareholders of JGH.  (*Id.* at 1, ¶ 1.)  Plaintiff served as the Chief Technology Officer and had principal responsibility for designing and implementing the JGH Platform.  (*Id.* at 1, 11, ¶¶ 1, 44.)  Since 2018, Brown has been JGH's Chief Executive Officer ("CEO") and sole director.  (*Id.* at 1-2, ¶ 1.)

In August 2018, Plaintiff, Wolf, and Brown entered into an agreement, whereby Plaintiff reduced his ownership interest in JGH from 49.5% to 25%, resigned from JGH's Board of Directors,[3] and assigned rights in the JGH Platform to JGH, and Brown became JGH's sole director.  (*Id.* at 15, 17, ¶¶ 62, 70.)  The agreement provided for certain safeguards to guarantee the collection and payment of FET and to minimize the opportunity for self-dealing by Brown.  (*See id.* at 15, 17, ¶¶ 65, 68.)[4]  According to Plaintiff, Brown "repeatedly assured" him that he would operate the business for the benefit of shareholders and that he would not form another business entity for the purposes of transferring JGH operations and leaving behind an "empty shell with only liabilities."  (*Id.* at 14, ¶ 57.)

Plaintiff alleges that Brown used JGH as his "personal piggy bank" and "raided JGH's assets through phony transactions, indefensible self-approved compensation, and wrongful diversion of corporate assets" to the tune of approximately $1.9 million.  (*Id.* at

---

[3] Wolf also stepped down from the Board of JGH pursuant to the agreement.  (ECF No. 78 at 15, ¶ 62.)

[4] For instance, the agreement provided that JGH would not loan money to or accept loans from a shareholder or its assigns without Plaintiff's prior written consent.  (ECF No. 78 at 15-16, ¶ 65.)

22-cv-01164-GPC-JLB

2, 18, ¶¶ 2, 71.)  Plaintiff further alleges that Brown "employs a shell game of entities to avoid paying Plaintiff amounts due to him and to avoid other company obligations." (*Id.* at 2, 18–27, ¶¶ 4, 76–136.)  For example, on September 16, 2019, Brown formed Jet Agency Global, LLC and transferred to Jet Agency ownership of, or licensed rights in and to, the JGH Platform without adequate consideration. (*Id.* at 19–20, ¶¶ 82, 89.)  Thereafter, on September 11, 2020, Brown formed C3 Limo, LLC with his wife Stacy Brown, who was listed as manager for six months before it was changed to Chasen Dobos, Brown's stepson. (*Id.* at 21, ¶ 94.)  Brown transferred to C3 Limo ownership of, or licensed rights in and to, parts of the JGH Platform without adequate consideration and transferred cash from JGH to C3 Limo. (*Id.* at 21, ¶¶ 95, 96.)  Less than a year later, on April 23, 2021, Brown formed C3 Jets and transferred $100,000 per month from JGH to the new company. (*Id.* at 21-22, ¶¶ 97-98.)  Brown had no plans to repay JGH for these fund transfers. (*Id.* at 21-22, ¶¶ 95–99.)

Plaintiff further alleges that Brown "seeks to avoid millions in assessed federal excise taxes ('FET') related to chartering aircrafts." (*Id.* at 2, ¶ 4.)  As a business that collected payment for commercial domestic transportation of persons, JGH was subject to an assessment of FET. (*Id.* at 12, ¶ 46.)  Brown failed to timely and fully pay the FET related to JGH's operations and instead "took actions to saddle Plaintiff personally with much of that burden—$1.3 million in unpaid FET—, despite assurances Brown would account for those taxes, while also shifting JGH's operations and assets to a new entity to avoid payments." (*Id.* at 2, 12–17, 23–25, ¶¶ 4, 50–70, 108–22.)  Plaintiff further alleges that Brown utilized Plaintiff's former cell phone number to impersonate him. (*Id.* at 2-3, 25–27, ¶¶ 5–6, 124–36.)

In August 2022, Plaintiff initiated the instant suit. (*See* ECF No. 1.)  In a Second Amended Complaint filed in August 2023, Plaintiff, individually and derivatively on behalf of Jet Genius Holdings, Inc., levied 19 claims against Defendants, including express indemnity equitable indemnity, breach of duty to defend, breach of fiduciary duty, breach of contract, fraud, unjust enrichment, conversion, and a request for declaratory relief. (*Id.*

22-cv-01164-GPC-JLB

at 28-41.)  At the time the Second Amended Complaint was filed, Plaintiff remained the holder of 25% of the outstanding and issued shares of JGH.  (*Id.* at 9, ¶ 28.)

## B. Relevant Procedural Background

On February 29, 2024, Plaintiff and Defendants Brown, C3Jets LLC, C3 Limo LLC, Jet Agency Global, LLC, and Bowman Aviation, Inc. (collectively, the "Brown Defendants") lodged a Joint Discovery Statement concerning the Brown Defendants' failure to respond to Plaintiff's RFPs (Set One).  (ECF No. 102.)  The Court held a Discovery Conference on March 7, 2024, and ordered the Brown Defendants to provide supplemental responses and production no later than March 22, 2024. (ECF No. 103.)  The Brown Defendants failed to do so.

On April 4, 2024, Plaintiff and JGH lodged a Joint Discovery Statement, as did Plaintiff and the Brown Defendants.  (ECF No. 107.)  After a Discovery Conference, Defendants agreed, *inter alia*, to provide updated responses and supplemental production to Plaintiff's RFPs (Set One) by May 10, 2024.  (ECF No. 110.)  Plaintiff and Defendants lodged an updated Joint Discovery Statement on June 21, 2024.  (ECF No. 117.)  Plaintiff claimed that Defendants failed to timely serve supplemental responses to Plaintiff's RFPs and that he had received a document production in an unreadable format.  After another Discovery Conference, Defendants were ordered to serve second supplemental responses to Plaintiff's RFPs (Set One) and produce a complete privilege log by July 15, 2024.  (ECF No. 120.)

The Mandatory Settlement Conference was held on July 22, 2024.  (ECF No. 125.)  The case did not settle.  (*Id.*)  On July 30, 2024, the Court held another Discovery Conference. (ECF No. 126.)  On August 19, 2024, following another Status Conference, the Court ordered Defendants to complete their document production by September 13, 2024. (ECF No. 135.) On August 21, 2024, the parties left a joint voicemail with Chambers informing the Court that they had resolved their discovery dispute.  (ECF No. 136.)

22-cv-01164-GPC-JLB

Plaintiff's counsel withdrew from the case on September 23, 2024. (ECF No. 145.) On September 30, 2024, the Court ordered that all remaining depositions, including that of Plaintiff, be conducted by November 15, 2024, or fourteen days after Plaintiff retains counsel, whichever occurs first. (ECF No. 146.)

On October 16, 2024, the Court held a Status Conference because Defendants failed to meet the September 13, 2024 document production deadline. (ECF No. 150.) The Court ordered Defendants to provide Plaintiff with supplemental responses to the discovery requests at issue by October 21, 2024. (ECF No. 150.) Defendants did provide Plaintiff with supplemental responses on October 21. Ten days later, the parties lodged another Joint Discovery Statement concerning those responses, as Plaintiff asserted they were deficient. A Status Conference was held on November 12, 2024. (ECF No. 152.) The Court held a discovery hearing on November 19, 2024. (ECF Nos. 151, 153, 158, 162, 164.) Following the hearing, the Court authorized a motion to compel to resolve the dispute. (ECF No. 164.)

On November 20, 2024, the parties filed another Joint Discovery Statement concerning Defendants' interrogatory responses. (ECF No. 165.) On December 5, 2024, the Court held a Discovery Conference and resolved the dispute. (ECF No. 175.) On January 6, 2025, the Court extended the deposition deadline to January 31, 2025. (ECF No. 185.)

In January 2025, Plaintiff filed a Motion to Compel, seeking an order for the production of documents and an award of attorney's fees. (ECF No. 188.) Plaintiff sought to compel responses to Plaintiff's Requests for Production ("RFP") (Set One) served on Defendants. (*Id.* at 2.) Defendants filed an opposition (ECF No. 190), and Plaintiff filed a reply (ECF No. 191). On May 15, 2025, and May 28, 2025, the Court held hearings on Plaintiff's Motion to Compel. (ECF Nos. 207, 210, 213, 214.) The Court granted Plaintiff's Motion to Compel on June 6, 2025, and ordered the following:

> 1. Brown shall permit Plaintiff (or his designated expert or representative) to inspect the electronic storage media for all

22-cv-01164-GPC-JLB

agreed upon custodians,[5] to include providing access to their Gmail accounts, at a mutually agreeable date and time within **fourteen (14) days** of the date of this Order.

2. Brown shall permit Plaintiff (or his designated expert or representative) to inspect and copy physical items and documents that may contain responsive material at a mutually agreeable date and time within **fourteen (14) days** of the date of this Order.

3. To the extent Defendants have possession, custody, or control of the cell phones used by the agreed upon custodians, they shall make those phones available for inspection by Plaintiff at a mutually agreeable date and time within **fourteen (14) days** of the date of this Order.

4. Brown shall file a declaration with the Court within **ten (10) days** of the date of this Order confirming that he has requested all responsive bank statements and credit card statements. Brown shall produce these statements to Plaintiff within **seven (7) days** of receipt of the statements.

5. Within **fourteen (14) days** of the date of this Order, Defendant Jet Agency Global, LLC shall produce all documents in its possession, custody, or control responsive to RFP No. 5,[6] or allow Plaintiff (or his designated expert or representative) to inspect and copy the same at a mutually agreeable date and time. If no further documents exist, Defendant shall amend its response to state that a reasonable inquiry has been made, and no further responsive documents exist.

---

[5] These custodians include: (1) Brown; (2) personal assistants, presumed to be but not limited to, Ileana Garces, Marie Stone, Bianca Feller, Kimberlee Pouykham, and Emile Rosenow; Executives Chasen Dobos, Ryan Sargent, and Yves Brancheau; (3) accounting staff Roya Arabi, Deb Fouts, Cindy Grotsky, Maureen Bartzis, and Laurie Rector; (4) shareholder Wolf; and (5) Stacy Brown.

[6] Plaintiff's RFP No. 5 to Jet Agency Global, LLC requested all client invoices since December 13, 2016.  (ECF No. 188-3 at 55.)

22-cv-01164-GPC-JLB

6. Within **fourteen (14) days** of the date of this Order, Defendant C3 Jets, LLC shall produce all documents in its possession, custody, or control responsive to RFP No. 19[7], or allow Plaintiff (or his designated expert or representative) to inspect and copy the same at a mutually agreeable date and time. If no further documents exist, Defendant shall amend its response to state that a reasonable inquiry has been made, and no further responsive documents exist.

7. Within **fourteen (14) days** of the date of this Order, Defendants shall produce all responsive documents withheld on the basis of privilege, except for those documents over which Stacy Brown asserts the marital communications privilege.

8. Within **ten (10) days** of the date of this Order, Defendants shall serve on Plaintiff signed copies of their interrogatories in compliance with Fed. R. Civ. P. 33.

9. Plaintiff shall file a declaration substantiating the reasonable fees incurred by his counsel in filing the reply and attending the two related hearings before the Court within **ten (10) days** of the date of this Order. Defendants may file any opposition challenging the reasonableness of the amount of attorney's fees within **five (5) days** of Plaintiff's filing of his declaration.

10. Within **fourteen (14) days** of the date of this Order, Defendants shall produce a privilege log of any communications as to which Stacy Brown is asserting marital communications privilege.

11. **Failure to timely comply with any aspect of this Order may expose Defendants to the imposition of sanctions up to and including evidentiary and issue preclusion sanctions**.

(ECF No. 215 at 25–27.)

---

[7] Plaintiff's RFP No. 19 to C3 Jets LLC requested production of all check registers and general ledgers since December 13, 2016. (ECF No. 188-4 at 30.)

22-cv-01164-GPC-JLB

After the initial 10-day timeframe for compliance set forth in the Motion to Compel Order passed, Plaintiff's counsel initiated the meet-and-confer process on June 17, 2025. (ECF No. 217 at 4.)  During the meet-and-confer phone call, Defendants' counsel informed Plaintiff's counsel that "he was working on it, but made no promises," with the subsequent 14-day windows for production eventually passing without any compliance from Defendants.  (*Id*. at 4-5 (citing ECF No. 217-1 at 2, ¶ 3.)

Plaintiff filed the instant *Ex Parte* Motion on June 25, 2025.  (ECF No. 217.) Pursuant to the undersigned's Chambers Rules, after service of an *ex parte* motion, opposing counsel has until 5:00 p.m. the next court day to file an opposition or to request an extension.  J. Burkhardt's Civ. Chambers R. § VII.  Defendants neither filed an opposition nor requested an extension.  On August 7, 2025, the parties lodged with the Court pursuant to § V of Judge Burkhardt's Civil Chambers Rules a Joint Discovery Statement, improperly styled a "Joint Motion for Determination of Discovery Dispute." Due to the substantial overlap between the lodged document and the instant *Ex Parte* Motion, the Court advised the parties that it would address all the issues in the context of the motion.  The Court provided an additional opportunity for briefing and directed the parties to address any issues not already included in the initial motion in the remaining briefing.  (ECF No. 223.)  Specifically, the Court ordered Defendants to file an opposition to the *Ex Parte* Motion by August 25, 2025, and Plaintiff to file a reply by September 2, 2025.  (ECF No. 223 at 2.)  Defendants again did not file an opposition.  Plaintiff filed a Notice of No Reply Brief, informing the Court that it did not file a reply "because there [was] no opposition for Plaintiff to address."  (ECF No. 225 at 2.)

In his *Ex Parte* Motion, Plaintiff represents that, with one exception, Defendants failed to comply with the Motion to Compel Order.  (ECF No. 217 at 2.)  However, a review of the subsequent Joint Discovery Statement reveals that Defendants produced *some* discovery subsequent to the filing of the *Ex Parte* Motion; thus, the *Ex Parte* Motion no longer accurately reflects the current status of Defendants' compliance or noncompliance with the Order (ECF No. 215).  (*See* ECF No. 226 at 1.)  The Court therefore ordered

Plaintiff to supplement its *Ex Parte* Motion no later than October 3, 2025, "to reflect the aspects of the [Motion to Compel Order] with which Plaintiff maintains Defendants have still failed to comply," and ordered Defendants to file an opposition by October 10, 2025. (*Id.* at 2.) Plaintiff filed the Court-ordered supplement ("Supplement") on October 3, 2025. (ECF No. 228.) Defendants once again filed no opposition.

As Defendants did not file an opposition despite three opportunities to do so, the Court deems Plaintiff's *Ex Parte* Motion unopposed. Because Plaintiff's representations in the *Ex Parte* Motion and the Supplement are facially plausible and uncontested by Defendants, the Court accepts them as true to the extent set forth in this Relevant Procedural Background, and the Court certifies them as part of this Report and Recommendation.

## II. DISCUSSION

### A. Plaintiff's Argument

#### 1. *Ex Parte* Motion

Plaintiff argues in his *Ex Parte* Motion that "other than [a] single act of ostensible compliance to inspect hard-copy materials" in accordance with paragraph 2, Defendants "remain in violation of every operative paragraph [of the Motion to Compel Order]," asserting that "[n]o declaration or bank statements have been filed; no verified interrogatory answers have been served; no productions or confirmations under [paragraphs] 5–7 have issued; no privilege log for marital communications has been provided; and no access to e-mail accounts, servers, or custodians' devices has been granted." (ECF No. 217 at 2, 4, 8.) Contending that he cannot "fairly prepare for trial, quantify damages, or safeguard shareholder interests while Defendants ignore the Court's explicit directives" Plaintiff maintains that "the risk that responsive materials have been concealed, destroyed, or otherwise spoliated grows with each passing day." (*Id.* at 2–3.) Plaintiff asserts that Defendants' noncompliance "deprives [him] of evidence needed to prove claims involving misappropriate assets, diverted tax proceeds, and self-dealing transactions that may expose unknown co-conspirators." (*Id.* at 7.) Further, Plaintiff insists

22-cv-01164-GPC-JLB

that Defendants' "serial, selective non-production is <u>not</u> the benign product of insolvency or disorganization," but rather demonstrates willful defiance. (*Id*. at 6–7.) Plaintiff alleges that during the May 28, 2025 hearing regarding the Motion to Compel, Defendants' counsel disclosed e-mail addressed associated with individuals not identified as custodians in the Motion to Compel, thus indicating that Defendants possess the requisite technological capability to locate, access, and transmit the electronically stored information responsive to Plaintiff's discovery requests. (*Id.* at 6.)

Plaintiff requests that the Court issue an order to show cause requiring Defendants to appear and to explain why the Court should not sanction their continued noncompliance with the Motion to Compel Order. (*Id.* at 8.) Should the Court determine that Defendants have failed to demonstrate good cause for their noncompliance, Plaintiff asks that the Court enter of finding of civil contempt and impose various sanctions. (*Id.*) Specifically, Plaintiff requests that the Court: (i) impose a coercive fine of $1,000 per day until Defendants achieve compliance; (ii) strike Defendants' answers and enter default judgment against Defendants "on all claims and counterclaims," followed by an expedited "prove-up" to determine damages; (iii) impose sanctions in the form of adverse inferences and issue preclusion;[8] (iv) order reimbursement of all reasonable attorney's fees and costs incurred since June 6, 2025, including those incurred preparing the instant *Ex Parte* Motion and as a result of Defendants' continued noncompliance; and (v) award Plaintiff "such further relief as the Court deems mandatory to preserve the orderly administration of justice." (*Id.* at 8–10.)

As addressed above, Defendants failed to oppose the *Ex Parte* Motion.

///

---

[8] Plaintiff's request for sanctions in the form of adverse inferences and issue preclusion "includ[es] deeming all subsequently produced documents authentic and admissible and establishing that any destroyed, altered, or withheld item would have been unfavorable to Defendants." (ECF No. 217 at 10.)

22-cv-01164-GPC-JLB

### 2. Supplement to *Ex Parte* Motion

In the Supplement, Plaintiff asserts that "Defendants' selective, unusable, and incomplete production" has caused "concrete, case-dispositive prejudice[.]" (ECF No. 228 at 12.) Plaintiff contends that Defendants produced "a limited, mislabeled document-dump of compressed, partially corrupted ESI served without Bates labeling, load files/metadata, or the structured form required by Fed. R. Civ. P. 34(b)(2)(E)," consisting, in part, "of folders ('Profit & Loss,' 'Balance Sheets,' etc.) that are incongruent with their contents and cut off around April 10, 2024." (*Id.* at 3.) Further, Plaintiff maintains that Brown failed to comply with paragraph 1 and that Defendants took no action to comply with paragraphs 3, 7, and 10 of the Motion to Compel Order. (*Id.* at 4–8.) With respect to the remaining provisions in the order, Plaintiff represents the following:

> **ECF No. 215 Order ¶2:** [Brown shall p]ermit Plaintiff (or his designated expert or representative) to inspect and copy physical items and documents that may contain responsive material.
>
> Produced: Defendants[9] offered an in-person, paper-only inspection at a private residence within the 14-day window.
>
> Deficiency: On this record, no discrete violation of ¶2 is established. However, consistent with prior orders requiring that electronic production be delivered in parallel, ESI should be prioritized. A physical inspection should follow, rather than substitute for, completion of ESI production under Fed. R. Civ. P. 34(b)(2)(E), so that any on-site review is targeted, efficient, and facilitates organized collection rather than a burden-shifting paper exercise. The prior in-person invitation would have been congruent with the Court's directives had Defendants also complied with the ESI or cell phone inspection components; by electing to proceed only with an in-person limited paper inspection, Defendants rendered the visit largely untenable. Any

---

9 The Court notes that paragraph 2 of the Order mandated compliance from Brown only. (*See* ECF No. 215 at 25.)

22-cv-01164-GPC-JLB

Fed. R. Civ. P. 37 remedies for ESI noncompliance should guide the scope and logistics of any inspection under ¶2.

**Prejudice to Plaintiff:** Shifts burden to Plaintiff and is inferior to the ordered electronic production. Defendants ignored nearly every paragraph of the June 6, 2025 order, proffering only a 'hard-copy inspection[.'] This is classic burden shifting that is tangential to, and no substitute for, ordered electronic production under Rule 34(b)(2)(E). The Defendant entities operated on email, SMS texts, and cloud systems; paper records were highly limited and are valuable only in the context of full and complete ESI production as ordered by the Court. In light of Defendants' ongoing avoidance of ESI production, account inspection, and compliance, the probative value and reliability of any paper-only showing are suspect.

(*Id.* at 5–6; ECF No. 215 at 25.)

**ECF No. 215 Order ¶4:** Brown declaration confirming that he has requested all responsive bank statements. Brown shall produce these statements to Plaintiff.

**Produced:** No ¶4 declaration confirming issuer requests; no issuer-pulled bank or credit-card statements. Instead, Defendants produced a single personal Chase account (2017–2023) and selective and non-compliant consumer credit-card statements not tied to comprehensive issuer requests.

**Deficiency:** No issuer pulls; no confirmation of requests to all relevant issuers.

**Prejudice to Plaintiff:** Prevents tracing of revenues, distributions, and Federal Excise Tax ("FET") collections; invites selective curation.

(ECF No. 228 at 6.)

**ECF No. 215 Order ¶5:** Jet Agency Global, LLC to produce all doc[uments] responsive to RFP 5 or allow inspection; else amend to state non-existence after reasonable inquiry.

22-cv-01164-GPC-JLB

**Produced:** No conforming production; any materials received are facially deficient.

**Deficiency:** Invoices omitted; no amended response stating non-existence after reasonable inquiry.

**Prejudice to Plaintiff:** Forecloses receivables and FET tracing; impairs damages computation.

**ECF No. 215 Order ¶6:** C3 Jets, LLC to produce all doc[uments] responsive to RFP 19[10] or allow inspection; else amend to state non-existence after reasonable inquiry.

**Produced:** No conforming production; any materials received are facially deficient.

**Deficiency:** Registers and general ledgers omitted; no amended response stating non-existence after reasonable inquiry.

**Prejudice to Plaintiff:** Blocks fund-flow and inter-company analysis; invites self-contradictions.

(*Id.* at 6–7.)

**ECF No. 215 Order ¶8:** Serve signed interrogatory answers.

**Produced:** None.

**Deficiency:** Defendants served unverified interrogatory answers, a nullity under Fed. R. Civ. P. 33(b)(3), (5).[11]

---

[10] Plaintiff's RFP 19 to Brown requested all minutes of any meetings of any entity defendant's respective committees since December 13, 2016. (ECF No. 188-3 at 8.)

[11] Rule 33 of the Federal Rules of Civil Procedure provides, in pertinent part:

**(3) *Answering Each Interrogatory.*** Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
…

22-cv-01164-GPC-JLB

> **Prejudice to Plaintiff:** Presently unusable at trial; deprives Plaintiff of sworn admissions and fixed positions; forces litigation against a moving target and invites ambush via late verification; facilitates self-concealment by omission, prejudices due process by obscuring notice of positions and evidentiary bases, and veers toward de facto self-concealing misconduct.

(*Id.* at 7.)

Plaintiff maintains that Defendants' noncompliance "warrants calibrated, coercive remedies," including adverse inferences and evidentiary bars tied to the missing categories, signed verifications, and per-diem civil-contempt fines, until Defendants achieve full compliance with the Motion to Compel Order, and insists that such sanctions are necessary to "disincentivize ongoing misconduct" and to deter "continued self-dealing, personal enrichment, and dissipation of assets." (*Id.* at 14, 16.)

Defendants failed to file an opposition to the Supplement.

## B. Legal Standard

Rule 37 of the Federal Rules of Civil Procedure "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citation omitted); *see also Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 390 (N.D. Cal. 2012) ("As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37 the Defendants must have violated a Court Order"). Pursuant to Rule 37(b)(2)(A), "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery . . .

---

> **(5) *Signature.*** The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(3), (5).

the court where the action is pending may issue further just orders," which may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

There are two limitations to the application of a Rule 37(b)(2) sanction. "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (quoting Fed. R. Civ. P. 37(b)(2)). "Imposition of sanctions under Rule 37(b), and the selection of the particular sanction, are matters left to the discretion of the trial court." *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981). "The purpose of civil sanctions is to ensure compliance with court orders and to compensate aggrieved parties for the sanctioned party's failure to comply with court rules and orders." *Cruz v. Nike Retail Servs., Inc.*, 346

F.R.D. 107, 114 (S.D. Cal. 2024) (citing *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 858 (9th Cir. 2023)).[12]

**C. Analysis**

1. Civil Contempt

Plaintiff requests that the Court hold Defendants in contempt of court for failing to comply with the Motion to Compel and impose a coercive per diem fine of $1,000 per Defendant, payable to the Clerk, "commencing on the date the contempt order is entered" in order to "disincentivize non-compliance until full compliance has been certified." (ECF No. 217 at 9.)

Except in limited circumstances not applicable here,[13] United States Magistrate Judges lack contempt authority. *See* 28 U.S.C. § 636(e); *see also HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12CV2884-BAS (MDD), 2014 WL 12102169, at *1 (S.D. Cal. Dec. 16, 2014) (citing 28 U.S.C. § 636(e); *Bingman v. Ward*, 100 F.3d 653, 656–657 (9th Cir. 1996) (explaining that "[m]agistrate judges themselves do not have authority to make any findings of contempt, so must certify their findings to the district judge"). Title 28, Section 636 of the United States Code provides, in pertinent part, that upon the commission of an act constituting a civil contempt,

> the magistrate judge shall forthwith certify the facts to a district judge[14] and may serve or cause to be served, upon any person

---

[12] "Even without a discovery order, discovery misconduct may be punished under the court's inherent powers to manage its affairs. *Guifu Li*, 281 F.R.D. at 390 n.13 (citation and quotation marks omitted).

[13] United States magistrate judges may, for instance, assert civil or criminal contempt authority in any case in which the magistrate judge presides with the consent of the parties and may exercise summary criminal contempt authority to sanction any obstruction of the administration of justice occurring "in the magistrate judge's presence." 28 U.S.C. § 636(e)(2), (4).

[14] "The magistrate judge's certification of facts serve[s] the function of the charging document," and "the district court conduct[s] a de novo hearing where it [may] take and

> whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii). "Essentially, the magistrate judge's role is to determine whether Plaintiff has established a prima facie case of contempt[.]" *Moog Inc. v. Skyryse, Inc.*, No. 2:22-CV-09094-GW (MAR), 2023 WL 12032095, at *2–3 (C.D. Cal. May 16, 2023).

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order."[15] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (citation and quotation marks omitted); *see also United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980) (citation omitted) (explaining that civil contempt is an appropriate remedy when a court aims to "enforce compliance with a court order"). "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through

---

consider additional evidence." 3A Fed. Prac. & Proc. Crim. § 715 (4th ed.); *see also* 7A Fed. Proc., L. Ed. § 17:12 ("Trying the contempt charges de novo, the district judge will hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish the person in the same manner and to the same extent as for a contempt committed before a district judge.").

[15] Federal Rule of Civil Procedure 37(b)(2)(A)(vii) permits the Court to treat as contempt of court the failure to obey any order to provide or permit discovery, except for an order to submit to a physical or mental examination. *See* Fed. R. Civ. P. 37(b)(2)(A)(vii).

22-cv-01164-GPC-JLB

obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *In re Dual-Deck*, 10 F.3d at 695 (citation and quotation marks omitted); *see also Bagwell*, 512 U.S. at 827 (stating that "civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard," further explaining that "[n]either a jury trial nor proof beyond a reasonable doubt is required").

Thus,

> [t]o establish a prima facie case for civil contempt, the moving party must show, "by clear and convincing evidence," that the non-moving party disobeyed "a specific and definite court order," and that such disobedience was "beyond substantial compliance" and "not based on a good faith and reasonable interpretation of the court's order."

*Daimler AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD), 2022 WL 281580, at *1 (S.D. Cal. Jan. 31, 2022) (quoting *In re Dual-Deck*, 10 F.3d at 695). "Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible." *HM Elecs., Inc.*, 2014 WL 12102169, at *1 (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)); *see also Coleman v. Newsom*, 131 F.4th 948, 956 (9th Cir. 2025) (explaining that "the substantial compliance defense excuses an alleged contemnor who, despite not achieving total compliance, has achieved near-total compliance through the exhaustion of all reasonable efforts"); *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (citation omitted) (stating that "[a]n alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply"); *In re Dual-Deck*, 10 F.3d at 695 (citation and quotation marks omitted)

22-cv-01164-GPC-JLB

("Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply").

Here, the undersigned Magistrate Judge concludes that Plaintiff's allegations establish a prima facie case for civil contempt. Defendants disobeyed "a specific and definite court order" by failing to substantially comply with all but one of the discovery directives set forth in the Motion to Compel Order. *Daimler AG*, 2022 WL 281580, at *1 (quoting *In re Dual-Deck*, 10 F.3d at 695). In his Supplement, Plaintiff concedes that Brown has comported, at least nominally, with the second discovery directive since the filing of the *Ex Parte* Motion. (*See* ECF No. 228 at 5 (Plaintiff's acknowledgement that "[o]n this record, no discrete violation of ¶2 is established"). With respect to the remaining discovery directives, however, Plaintiff's Supplement indicates that Defendant produced only minimal discovery, subsequent to the filing of the *Ex Parte* Motion, andthat Defendant's production was substantially incomplete and noncompliant. (*See* ECF No. 228 at 4–8.); *see also In re Heritage Bond Litig.*, 223 F.R.D. 527, 533 (C.D. Cal. 2004) (holding that plaintiffs demonstrated by clear and convincing evidence that defendants failed to comply with the court's order compelling the production of documents, thus warranting a finding of civil contempt under Federal Rule of Civil Procedure 37(b)(20(D), where it was "clear that the efforts by [] defendants to obtain relevant and significant documents for [] plaintiffs was minimal"). Thus, the burden shifts to Defendants to demonstrate a present inability to comply with the Order. *See Ayres*, 166 F.3d at 994. However, as noted above, Defendants failed to file an opposition to Plaintiff's *Ex Parte* Motion despite three opportunities to do so.

Moreover, as noted in the Motion to Compel Order, this Court has overseen discovery disputes regarding Defendants' responses to the discovery requests at issue for more than a year. (ECF No. 215 at 23.) On multiple occasions, Defendants agreed to supplement their responses in accordance with agreements reached at informal Discovery Conferences, only for Defendants to thereafter revoke or deny those agreements. (*Id*. at 23-24.) Further,

Defendants have repeatedly failed to meet deadlines set by the Rules of Civil Procedure and by Court orders.  (*Id*. at 24.)  That pattern continues, as Defendants persist in flagrantly disregarding the discovery directives set forth in the Order.  *See HM Elecs., Inc.*, 2014 WL 12102169, at *1 (quoting *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856–57 (9th Cir. 1992)) ("To assess whether an alleged contemnor has taken 'every reasonable step' to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion.").  Court orders are not something Defendants can merely "work on" but "make no promises" to comply with.  (*See* ECF No. 217 at 4.)  They **must** be adhered to.

Defendants have not opposed the Motion and have not met their burden to demonstrate they were unable to comply, despite taking all reasonable steps to do so.  *See Daimler AG*, 2022 WL 281580, at *1.

The Court therefore certifies the pertinent facts set forth above in the Relevant Procedural Background.  The Court further certifies that Defendants, individually and collectively, violated a specific and definite order of this Court; did not take every reasonable step to comply with the order; and have not established that they were unable to comply with the order.  Accordingly, the Court recommends that the Honorable Gonzalo P. Curiel initiate civil contempt proceedings against Defendants.

### a.  Coercive Fines

One form of relief requested by Plaintiff is the imposition of a coercive fine of $1,000 per day until Defendants achieve compliance.

"[A] per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" can constitute a coercive civil sanction.  *Coleman*, 131 F.4th at 962–63 (quoting *Bagwell*, 512 U.S. at 829).  "A court, in determining the amount and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  *Whittaker Corp. v. Execuair Corp.*, 953

F.2d 510, 516 (9th Cir. 1992) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947))).  The Court determines that daily coercive fines in the amounts set forth below are the appropriate sanction, carefully calculated to incentivize compliance with the Motion to Compel Order.

In *Falstaff Brewing Corp. v. Miller Brewing Co.*, the Ninth Circuit reversed an amended order of the district court holding plaintiff in contempt of court for, *inter alia*, failing to return documents as required by a protective discovery order.   702 F.2d 770, 777, 780, 783 (9th Cir. 1983).  The Court is mindful of *Falstaff*'s direction on the need to clearly differentiate between coercive civil contempt sanctions and punitive criminal contempt sanctions.[16]  Importantly, a coercive per diem fine cannot constitute a civil contempt sanction where the record shows that compliance with the court's order is impossible.  *See id.* at 782 (reasoning that "the district court's order of contempt simply [could not] be sustained as a coercive civil contempt order," where "it was impossible for [the contemnor] to purge itself of contempt by returning documents which were in the sole possession of its counsel").  "A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order." *Id*. at 778 (citing *Shillitani v. United States*, 384 U.S. 364, 371 (1966)).  Where a coercive sanction is imposed, the civil contemnor "carries the keys of his prison in his own pocket," either literally or figuratively; whereas if the penalty is fixed, the criminal contemnor "is furnished no key, and he cannot shorten the term by promising not to repeat the offense." *Gompers v. Buck's Stove & Range, Inc.*, 221 U.S. 418, 442 (quoting

---

[16] The *Falstaff* Court cautioned, "[w]here . . . a judgment of contempt contains an admixture of criminal and civil elements, 'the criminal aspect of the order fixes its character for purposes of procedure on review.'" *Falstaff*, 702 F.2d at 778 (quoting *Penfield Co. of California v. Securities & Exchange Commission*, 330 U.S. 585, 591 (1947)).  The Ninth Circuit also addressed the distinction between compensatory civil contempt sanctions, payable to the opposing party, and coercive civil contempt sanctions, payable to the Court. *See id.* at 779-80.  Here, Plaintiff is only requesting, and the Court is only recommending, the imposition of coercive civil contempt sanctions.

22-cv-01164-GPC-JLB

*In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)); *see also Coleman*, 131 F.4th at 962 (explaining that "just as a conditional sentence of imprisonment is coercive and civil if the contemnor 'carries the keys of his prison in his own pocket,' a purgeable civil fine is one that is forward-looking and conditional, allowing the contemnor to avoid its imposition by altering some behavior") (quoting *Bagwell*, 512 U.S. at 828).

In this case, certain aspects of the Order are, on their face, clearly well within Defendants' power to comply. All Defendants have failed to serve Plaintiff with signed interrogatory responses in violation of the Federal Rules of Civil Procedure and the Motion to Compel Order. Defendant Brown has failed to submit a declaration as ordered by the Court. All Defendants have failed to provide a privilege log as ordered by the Court. All Defendants have failed to produce discovery *they had agreed in their discovery responses and in the pleadings and hearings related to the Motion to Compel to produce*, even after production was ordered by the Court. With respect to other aspects of the Motion to Compel Order, specifically directives 1 and 3, it is not as obvious on its face that Defendants have the current ability to comply, but the burden had shifted to them to articulate reasons why compliance was not possible, and they declined to file any opposition to the *Ex Parte* Motion. Nonetheless, the Court, in this recommendation, still allows for Defendants to avoid civil coercive sanctions either by complying with directives 1 and 3 of the Order *or* by submitting declarations demonstrating impossibility. Thus, each Defendant truly "carries the keys of his prison in his own pocket," as each possesses the ability to purge contempt through compliance with any contempt order hereafter issued by Judge Curiel. *See Gompers*, 221 U.S. at 442.

The Court recommends daily coercive sanctions, to be paid to the Court, in the following amounts until the required actions are completed.

22-cv-01164-GPC-JLB

| Defendant | ¶ Number from Order/RFP Number | Required Action to End Sanctions | Daily Sanction Amount |
|---|---|---|---|
| Brown | ¶¶ 1, 3 RFP Nos. 28, 31, 32, 33, 37, 38, 39, 43, 53, 54, 58, 64, 65, 66, 67, 68, 69, 70 | Permit Plaintiff (or his designated expert or representative) to inspect the servers, email accounts, cell phones, and any other electronic storage media within Brown's possession, custody, or control for all agreed upon custodians AND file a declaration with the Court signed by Brown: (1) specifically identifying which electronic storage media he currently has possession, custody or control of and has made available to Plaintiff; (2) specifically identifying which electronic storage media he maintains he never had possession, custody or control of and the basis for that assertion; (3) specifically identifying any electronic media storage devices he previously had possession, custody or control of and no longer does; and (4) for each electronic storage media device identified under (3), setting forth why it is not available for inspection, when and how it became unavailable for inspection, and what efforts were made, and when, to preserve the devices and their data for this litigation. | $500 per day |
| Brown | ¶ 4 RFP Nos. 5, 7, 8, 9 | Produce all responsive bank and credit card statements to Plaintiff AND file a declaration with the Court confirming that he has requested all responsive bank statements and credit card statements from his financial institutions and that all responsive documents have been produced. All transactional information beyond that which is requested may be redacted. | $250 per day |

24

22-cv-01164-GPC-JLB

| Defendant | ¶ Number from Order/RFP Number | Required Action to End Sanctions | Daily Sanction Amount |
|---|---|---|---|
| Jet Agency Global, LLC | ¶ 5 RFP No. 5 | Produce all client invoices since December 13, 2016, AND file a declaration confirming that this has been completed. | $200 per day |
| C3 Jets, LLC | ¶ 6 RFP No. 19 | Produce all check registers and general ledgers since December 13, 2016 AND file a declaration confirming this has been completed. | $200 per day |
| All Defendants | ¶¶ 7, 10 | Produce a privilege log of any communications as to which Stacy Brown is asserting marital communications privilege; produce all responsive documents withheld on the basis of privilege, except for those documents over which Stacy Brown asserts the marital communications privilege; AND file a declaration with the Court affirming that no responsive documents are being withheld on the basis of privilege outside of those on the Stacy Brown marital communications privilege log. | $100 (joint and several) |
| All Defendants | ¶ 8 | Serve on Plaintiff signed copies of their interrogatories in compliance with Fed. R. Civ. P. 33 AND file a declaration with the Court confirming that it has been completed. | $100 per Defendant per day |

25

22-cv-01164-GPC-JLB

| Defendant | ¶ Number from Order/RFP Number | Required Action to End Sanctions | Daily Sanction Amount |
|---|---|---|---|
| All Defendants except for Brown, because, for Brown, this action is already addressed in the first entry in this chart | ¶ 3 | To the extent they have possession, custody, or control of the cell phones used by the agreed upon custodians, make those phones available for inspection by Plaintiff AND file a declaration with the Court: (1) specifically identifying which cell phones they currently have possession, custody or control of and have made available to Plaintiff; (2) specifically identifying which electronic cell phones they maintain they never had possession, custody or control of and the basis for that assertion; (3) specifically identifying any cell phones they previously had possession, custody or control of and no longer do; and (4) for each cell phone identified under (3), setting forth why it is not available for inspection, when and how it became unavailable for inspection, and what efforts were made, and when, to preserve the device and its data for this litigation. | $500 per Defendant per day |

Should Judge Curiel issue an order imposing the recommended civil coercive sanctions, the Court further recommends that the sanctions be suspended for five days after such order is issued.

### b. Default Liability on All Claims and Counterclaims

Plaintiff requests that the Court "strike Defendants' answers and enter default as to liability on all claims and counterclaims." (ECF No. 217 at 9.) Furthermore, "upon entry of default, Plaintiff asks that the Court set an expedited prove-up to determine damages, shifting to Defendants the burden of disproving amounts that would have been ascertainable had they produced the ordered records." (*Id*.)

22-cv-01164-GPC-JLB

The District Court has the discretion to strike pleadings, dismiss the action, or render default judgment in response to noncompliance with a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(iii, v-vi). "Dismissal, however, is authorized only in extreme circumstances and only where the violation is due to willfulness, bad faith, or fault of the party." *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (citation and quotation marks omitted); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (citationomitted) ("Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith.").

In deciding whether to dismiss a case or render default judgment, a court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [moving party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). "These factors are 'not a series of conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.'" *Id.* (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Int'l Corp.*, 913 F.2d at 1412. The moving party suffers prejudice where the actions of the non-moving party impair the "ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* "Delay alone has been held to be insufficient prejudice" but "[f]ailure to produce documents as ordered, . . . is considered sufficient prejudice." *Id.* "The district court's finding of prejudice deserves substantial deference because the district court is in the best position to assess prejudice." *In re Phenylpropanolamine*, 460 F.3d at 1228 (citation and quotation marks omitted).

22-cv-01164-GPC-JLB

Plaintiff argues that Defendants' "non-compliance immediately deprives [him] of evidence needed to prove claims involving misappropriated assets, diverted tax proceedings, and self-dealing transactions that may expose unknown co-conspirators. Further, Plaintiff insists that "[t]he resulting prejudice is manifest," as "without the requested financial records and verified interrogatories, [he] cannot quantify damages or test the veracity of Defendants' anticipated defenses." (ECF No. 217 at 7.)  The Ninth Circuit has held that "[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) 9citation omitted).  "Failure to Warn has frequently been a contributing factor in [Ninth Circuit] decisions to reverse orders of dismissal." *Id*. at 133 (citations omitted).  Reviewing courts may consider whether a district court: (1) explicitly discussed the feasibility of less drastic sanctions; (2) implemented alternative methods of sanctioning before ordering dismissal; or (3) warned the non-moving party of the possibility of dismissal before ordering dismissal. *Id.* at 132.  In this case, the Court expressly warned Defendants that failure to comply with the Motion to Compel Order could result in more serious sanctions, up to and including evidentiary and issue preclusion sanctions.  (ECF No. 215 at 27 ("Failure to timely comply with any aspect of this Order may expose Defendants to the imposition of sanctions up to and including evidentiary and issue preclusion sanctions.").)  Further, the Court previously ordered Defendants to pay, within 30 days, Plaintiff's reasonable attorney's fees incurred in bringing the Motion to Compel (ECF No. 224), which Defendants have allegedly failed to do.  (ECF No. 230).

The Court recognizes that Defendants' repeated failure to provide discovery beginning in February 2024, compounded by their continued refusal to comply with court orders, constitutes an interference with the rightful decision of the case.  However, the Court is not persuaded that invoking the drastic sanction of dismissal or default—which has been characterized as the "most severe penalty" authorized only in "extreme circumstances"—is appropriate **at this time**.  *U.S. for Use & Ben. of Wiltec Guam, Inc. v.*

*Kahaluu Const. Co.*, 857 F.2d 600, 603 & 603 n.5 (9th Cir. 1988) (citation omitted); *see also Gen. Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 307 (S.D. Cal. April 23, 1981) (citation omitted) ("[D]ismissal and default judgment, the sanctions of last resort, run counter to the strong public policy of deciding cases on their merits and affording litigants their fair day in court."). Instead, less drastic sanctions, such as those outlined in the instant Order, should be utilized first. Defendants are once again warned, though, that continued noncompliance may result in terminating sanctions. Because the Court recommends against entry of default, the Court need not address Plaintiff's request for an expedited prove-up to determine damages.

c. <u>Adverse Influence and Issue Preclusion</u>

In his *Ex Parte* Motion, Plaintiff requests sanctions in the form of "adverse-influence and issue-preclusion findings, including deeming all subsequently produced documents authentic and admissible and establishing that any destroyed, altered, or withheld item would have been unfavorable to Defendants." (ECF No. 217 at 10.) Plaintiff maintains that "Defendants' defiance is willful, not inadvertent." (*Id.* at 6.) In the court-ordered Supplement, Plaintiff asserts that the record in this case warrants the imposition of sanctions in the form of "adverse inferences and evidentiary bars tied to the missing categories[.]" (ECF No. 228 at 14.)

As a sanction for failure to comply with a discovery order, a District Court may issue an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i); *Guifu Li*, 281 F.R.D. at 393 (citation omitted). Courts have held that

> "[a]n adverse inference instruction can take many forms, [] ranging in degrees of harshness." *Apple Inc.* [*v. Samsung Elecs. Co., Ltd.*,], 881 F. Supp. 2d [1132,] 1150 [N.D. Cal. 2012]. The level of harshness should be commensurate with the egregiousness of the conduct. *Id.* There are three levels of instructions generally considered: (1) "when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true";

29

22-cv-01164-GPC-JLB

> (2) "when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption"; and (3) the least harsh instruction "permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id.* (citation omitted).

*Ramos v. Swatzell*, No. EDCV121089BROSPX, 2017 WL 2857523, at *14 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. ED CV 12-1089-BRO (SPx), 2017 WL 2841695 (C.D. Cal. June 30, 2017) (declining to impose a requested sanction in the form of an adverse inference jury instruction suggesting that defendants concealed evidence that one defendant was counseled for dishonesty in a government investigation, where plaintiffs "failed to show that was the case").

Further, Rule 37(b)(2) sanctions are limited by two considerations: the sanction must be "just" and must be "specifically related to the particular claim which was at issue in the order to provide discovery." *Guifu Li*, 281 F.R.D. at 393 (quotation marks and citation omitted). Here, Plaintiff fails to specify which "particular claim[s]" of the 19 causes of action set forth in his Second Amended Complaint are at issue in connection with his request for Rule 37(b)(2) sanctions in the form of adverse inferences and issue preclusion. *See Guifu Li*, 281 F.R.D. at 393; (*see also* ECF No. 217 at 7) (contending generally that "Defendants' non-compliance immediately deprive[d] Plaintiff of evidence needed to prove claims involving misappropriated assets, diverted tax proceeds, and self-dealing transactions that may expose unknown co-conspirators"). Plaintiff also does not address whether the requested sanctions are "specifically related" to those claims. *Id.* at 393-94 (deeming facts pertaining to the issue of alter ego liability set forth in two paragraphs of the complaint established, subject to rebuttal at trial, where one defendant "repeatedly refused to produce documents and deponents that would clarify its corporate ownership and structure, concluding that "[t]his [was] an appropriate and narrowly tailored sanction to address the Court's orders that have been violated"). Moreover, despite raising the specter of the destruction of evidence by Defendants (*see* ECF No. 217 at 10), Plaintiff fails to develop this potential argument with any specificity. *See, e.g.*, *Ramos*, 2017 WL

22-cv-01164-GPC-JLB

2857523, at *13 (explaining that a party seeking an adverse inference instruction based on the destruction of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense). The record, at this time, does not establish that evidence has been destroyed. The Court is not persuaded that the imposition of adverse inference instructions and issue preclusion are the appropriate sanctions at this time. *See Dr. Lokesh Tantuwaya MD, Inc. v. Jetsuite, Inc.*, No. 19-CV-49-W-BLM, 2023 WL 6378012, at *6 (S.D. Cal. Sept. 27, 2023) (awarding attorneys' fees and costs but declining to impose terminating sanctions under Rule 37(b), where plaintiff failed to produce responsive documents, respond to interrogatories, participate in the meet and confer process, or respond to defendant's motion to compel); *see also AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-CV-3403 PSG, 2013 WL 3733390, at *4 (N.D. Cal. July 15, 2013) (citation and quotation marks omitted) (holding that sanctions in the form of adverse inferences "have similar effect to default judgment and should only be awarded with very great restraint"). The Court therefore recommends against imposing sanctions in the form of adverse inferences and issue preclusion.

## 2. Attorney's Fees

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), Plaintiff requests an award of all reasonable attorneys' fees and costs incurred since June 6, 2025, as a result of Defendants' noncompliance with the Motion to Compel Order, including all attorney's fees and costs incurred preparing the instant *Ex Parte* Motion. (ECF No. 217 at 10.) Plaintiff seeks "to ensure that Defendants do not profit from their discovery misconduct and to restore the parties to level litigation footing." (*Id.*)

"Imposition of sanctions under Rule 37(b), and the selection of the particular sanction, are matters left to the discretion of the trial court." *Liew*, 640 F.2d at 1050 (citations omitted). Federal Rule of Civil Procedure 37(b) provides, relevant part:

31

> *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order to provide or permit discovery], unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A), (C).  "The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his failure to comply 'substantially justified.'"  *Liew*, 640 F.2d at 1050 (quoting Fed. R. Civ. P. 37b)(2)).

As noted above, Defendants failed to oppose Plaintiff's *Ex Parte* Motion.  Thus, Defendants have not attempted to meet their burden of showing that special circumstances render their failure to comply with the Order "substantially justified."  *Id.*  The Court finds no substantial justification for Defendants' noncompliance and is not aware of any circumstances that would make awarding expenses unjust.  The Court therefore concludes that Plaintiff is entitled to reasonable attorney's fees and costs incurred following June 6, 2025, as a result of Defendants' noncompliance with the Motion to Compel Order.  *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1482-83 (9th Cir. 1992) (affirming award of approximately $24,000 in attorney's fees and costs incurred obtaining an order compelling discovery); *Ramos*, No. EDCV121089BROSPX, 2017 WL 2857523, at *15 (citing Fed. R. Civ. P. 37(b)(2)(C)) (holding that plaintiffs were entitled to monetary sanctions in the form of attorney's fees and expenses, where defendant failed to obey the court's order to produce documents").

It is of no moment that Plaintiff concedes in the Supplement that "[o]n this record, no discrete violation of ¶2 is established" where Brown afforded Plaintiff the opportunity to inspect and copy physical items and documents within the 14-day window provided for in the Motion to Compel Order (ECF No. 228 at 5) or that the Defendants partially complied with the Order in other, modest ways.

32

As Defendants' counsel has only been attorney of record since April 21, 2025 (ECF No. 204), and Defendants have been disregarding discovery deadlines since February 2024, the Court finds Defendants to be the disobedient party and orders the Defendants, jointly and severally, to pay the reasonable attorney's fees and costs.

However, Plaintiff has not detailed the amount of reasonable attorney's fees and costs incurred in connection with Defendants' noncompliance. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 523 (C.D. Cal. 2022) (stating that "[t]he party seeking the award of fees must submit evidence to support the request"). As this Court has explained:

> In the Ninth Circuit, a district court determines a reasonable fee award first by "calculating the lodestar amount, which is the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To assess a reasonable hourly rate, the court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). "Affidavits of the [fee applicant] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

*Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 20-CV-01712-LAB-JLB, 2021 WL 2633592, at *2–3 (S.D. Cal. June 25, 2021). Accordingly, Plaintiff **SHALL FILE** supporting declarations and documentation sufficient to support its request for attorney's fees and costs within **ten (10) days** of the date of this Order. *See id.* at *3 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing

22-cv-01164-GPC-JLB

in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation."); *McCwon v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted) ("The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested.")).    Defendants may file an opposition challenging the reasonableness of the amount of attorney's fees within **five (5) days** of the date of Plaintiff's filing of his declaration.  *See RG Abrams Ins.*, 342 F.R.D. at 523 ("The party opposing the fee request bears the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits.") (citation and quotation marks omitted).

## III. CONCLUSION AND RECOMENDATION

For the foregoing reasons, Plaintiff's request for attorney's fees is **GRANTED**. Plaintiff **SHALL FILE** a declaration and documentation sufficient to support its request for attorney's fees and costs within **ten (10) days** of the date of this Order.  Defendants may file an opposition challenging the reasonableness of the amount of attorney's fees within **five (5) days** of the date of Plaintiff's filing of his supporting declaration and documentation. The Court **RECOMMENDS** to the Honorable Gonzalo P. Curiel that the Court initiate civil contempt proceedings against Defendants.  Further, the Court certifies the pertinent facts in connection with a contempt inquiry, as set forth in the relevant procedural background above.  The Court **RECOMMENDS** that Plaintiff's request for sanctions in the form of coercive per diem fines be **GRANTED** in the amounts set forth in this Report and Recommendation.  The Court further **RECOMMENDS**, however, that Plaintiff's request for sanctions in the form of adverse inferences, issue preclusion, and entry of default judgment be **DENIED**.

**IT IS HEREBY ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party to this action may file written objections with the Court and serve a copy on all parties no

22-cv-01164-GPC-JLB

later than **February 12, 2026**.  The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that if objections are filed, any reply is due by **February 26, 2026**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  January 29, 2026

Hon. Jill L. Burkhardt
United States Magistrate Judge

35

22-cv-01164-GPC-JLB