UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON STANZ, individually and derivatively on behalf of Jet Genius Holdings, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>JORDAN BROWN; JET GENIUS HOLDINGS, INC.; JET GENIUS FLORIDA HOLDINGS, INC.; C3 JETS LLC; BOWMAN AVIATION, INC.; JET AGENCY GLOBAL LLC; C3 LIMO LLC; JETCHARTER.COM LLC; and DOES 1-20,<br><br>Defendants. | Case No. 3:22-CV-01164-GPC-JLB<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART THE MOTION OF CIVIL CONTEMPT OF COURT**<br><br>**[ECF Nos. 217, 228, 236]** |

Before the Court is Plaintiff Aaron Stanz ("Plaintiff")'s *Ex Parte* Application for Order to Show Cause as to Why Defendants Should Not be Held in Contempt of Court for Failing to Comply with a Court Order. ECF Nos. 217, 228. Defendants Jordan Brown ("Brown"), Jet Genius Holdings, Inc. ("JGH"), Jet Genius Florida Holdings, Inc., Bowman Aviation, Inc., Jet Agency Global, LLC, C3 Jets, LLC, and C3 Limo, LLC

1

(collectively, "Defendants") did not file an opposition. On January 29, 2026, Magistrate Judge Jill L. Burkhart issued a Report and Recommendation ("R&R") that this Court initiate civil contempt proceedings and impose sanctions in the form of coercive per diem fines but not in the form of adverse inferences, issue preclusion, and entry of default judgment. ECF No. 236. No opposition to the R&R was filed.

After careful consideration of the pleadings and relevant exhibits submitted by the parties, the Court ADOPTS the Magistrate Judge's R&R.

## BACKGROUND

Plaintiff is the creator and developer of software and systems that simplify and accelerate aircraft charter brokering, including JetXchange, The Grid, and the Charter Flight Group website, which are also supported by custom applications, reports, lead generation tools, databases, business analytics, and certain client lists (collectively, the "JGH Platform"). ECF No. 78 ("SAC") ¶ 38. The JGH Platform allows a charter aviation brokerage company to operate more efficiently by facilitating more trips per staff member than any charter brokerage competitor. *Id.* ¶ 38.

Plaintiff and Brown formed JGH, a private jet charter broker, with a non-party, Alexander Wolf ("Wolf"), in 2016. *Id.* ¶¶ 1, 39. Plaintiff contributed the JGH Platform to JGH and received a 49.5% ownership interest in the company. *Id.* ¶ 39. Plaintiff and Brown are the two primary shareholders of JGH. *Id.* ¶ 1. Plaintiff served as the Chief Technology Officer and had principal responsibility for designing and implementing the JGH Platform. *Id.* ¶¶ 1, 44. Since 2018, Brown has been JGH's Chief Executive Officer ("CEO") and sole director. *Id.* ¶ 1.

In August 2018, Plaintiff, Wolf, and Brown entered into an agreement, whereby Plaintiff reduced his ownership interest in JGH from 49.5% to 25%, resigned from JGH's Board of Directors, and assigned rights in the JGH Platform to JGH, allowing Brown to become JGH's sole director. *Id.* ¶¶ 62, 70. The agreement provided for certain safeguards

22-CV-01164-GPC-JLB

to guarantee the collection and payment of FET and to minimize the opportunity for self-dealing by Brown. *See id.* ¶¶ 65, 68. According to Plaintiff, Brown "repeatedly assured" him that he would operate the business for the benefit of shareholders and that he would not form another business entity for the purposes of transferring JGH operations, leaving behind an "empty shell with only liabilities." *Id.* ¶ 57.

Plaintiff alleges that Brown used JGH as his "personal piggy bank" and "raided JGH's assets through phony transactions, indefensible self-approved compensation, and wrongful diversion of corporate assets" to the tune of approximately $1.9 million. *Id.* ¶¶ 2, 71. Plaintiff further alleges that Brown "employs a shell game of entities to avoid paying Plaintiff amounts due to him and to avoid other company obligations." *Id.* ¶¶ 4, 76–136. For example, on September 16, 2019, Brown formed Jet Agency Global, LLC and transferred to Jet Agency ownership of, or licensed rights in and to, the JGH Platform without adequate consideration. *Id.* ¶¶ 82, 89. Thereafter, on September 11, 2020, Brown formed C3 Limo, LLC with his wife Stacy Brown, who was listed as manager for six months before it was changed to Chasen Dobos, Brown's stepson. *Id.* ¶ 94. Brown transferred to C3 Limo ownership of, or licensed rights in and to, parts of the JGH Platform without adequate consideration and transferred cash from JGH to C3 Limo. *Id.* ¶¶ 95, 96. Less than a year later, on April 23, 2021, Brown formed C3 Jets and transferred $100,000 per month from JGH to the new company. *Id.* ¶¶ 97-98. Brown had no plans to repay JGH for these fund transfers. *Id.* ¶¶ 95–99.

Plaintiff further alleges that Brown "seeks to avoid millions in assessed federal excise taxes ('FET') related to chartering aircrafts." *Id.* ¶ 4. As a business that collected payment for commercial domestic transportation of persons, JGH was subject to an assessment of FET. *Id.* ¶ 46. Brown failed to timely and fully pay the FET related to JGH's operations and instead "took actions to saddle Plaintiff personally with much of that burden—$1.3 million in unpaid FET—, despite assurances Brown would account for

3

those taxes, while also shifting JGH's operations and assets to a new entity to avoid payments." *Id.* ¶¶ 4, 50–70, 108–22. Plaintiff further alleges that Brown utilized Plaintiff's former cell phone number to impersonate him. *Id.* ¶¶ 5–6, 124–36.

## PROCEDURAL HISTORY

On August 8, 2022, Plaintiff initiated the instant suit. *See* ECF No. 1. In a Second Amended Complaint filed in August 2023, Plaintiff, individually and derivatively on behalf of Jet Genius Holdings, Inc., levied 19 claims against Defendants, including express indemnity, equitable indemnity, breach of duty to defend, breach of fiduciary duty, breach of contract, fraud, unjust enrichment, conversion, and a request for declaratory relief. SAC at 28-41. At the time the Second Amended Complaint was filed, Plaintiff remained the holder of 25% of the outstanding and issued shares of JGH. *Id.* ¶ 28.

On February 29, 2024, Plaintiff and Defendants Brown, C3Jets LLC, C3 Limo LLC, Jet Agency Global, LLC, and Bowman Aviation, Inc. (collectively, the "Brown Defendants") lodged a Joint Discovery Statement concerning the Brown Defendants' failure to respond to Plaintiff's RFPs (Set One). ECF No. 102. Magistrate Judge Burkhart held a Discovery Conference on March 7, 2024 and ordered the Brown Defendants to provide supplemental responses and production no later than March 22, 2024. ECF No. 103. The Brown Defendants failed to do so.

On April 4, 2024, Plaintiff and JGH lodged a Joint Discovery Statement, as did Plaintiff and the Brown Defendants. ECF No. 107. After a Discovery Conference, Defendants agreed, *inter alia*, to provide updated responses and supplemental production to Plaintiff's RFPs (Set One) by May 10, 2024. ECF No. 110. Plaintiff and Defendants lodged an updated Joint Discovery Statement on June 21, 2024. ECF No. 117. Plaintiff claimed that Defendants failed to timely serve supplemental responses to Plaintiff's RFPs and that he had received a document production in an unreadable format. After another

22-CV-01164-GPC-JLB

Discovery Conference, Defendants were ordered to serve second supplemental responses to Plaintiff's RFPs (Set One) and produce a complete privilege log by July 15, 2024. ECF No. 120.

The Mandatory Settlement Conference was held on July 22, 2024. ECF No. 125. The case did not settle. *Id.* On July 30, 2024, Magistrate Judge Burkhart held another Discovery Conference. ECF No. 126. On August 19, 2024, following another Status Conference, the Court ordered Defendants to complete their document production by September 13, 2024. ECF No. 135. On August 21, 2024, the parties left a joint voicemail with the Magistrate Judge's Chambers informing the Court that they had resolved their discovery dispute. ECF No. 136.

Plaintiff's counsel withdrew from the case on September 23, 2024. ECF No. 145. On September 30, 2024, the Court ordered that all remaining depositions, including that of Plaintiff, be conducted by November 15, 2024, or fourteen days after Plaintiff retains counsel, whichever occurs first. ECF No. 146.

On October 16, 2024, Magistrate Judge Burkhart held a Status Conference because Defendants failed to meet the September 13, 2024 document production deadline. ECF No. 150. Defendants were ordered to provide Plaintiff with supplemental responses to the discovery requests at issue by October 21, 2024. ECF No. 150. Defendants did provide Plaintiff with supplemental responses on October 21. Ten days later, the parties lodged another Joint Discovery Statement concerning those responses, as Plaintiff asserted they were deficient. A Status Conference was held on November 12, 2024. ECF No. 152. The Court held a discovery hearing on November 19, 2024. ECF Nos. 151, 153, 158, 162, 164. Following the hearing, the Court authorized a motion to compel to resolve the dispute. ECF No. 164.

On November 20, 2024, the parties filed another Joint Discovery Statement concerning Defendants' interrogatory responses. ECF No. 165. On December 5, 2024, the

22-CV-01164-GPC-JLB

Court held a Discovery Conference and resolved the dispute. ECF No. 175. On January 6, 2025, the Court extended the deposition deadline to January 31, 2025. ECF No. 185.

In January 2025, Plaintiff filed a Motion to Compel, seeking an order for the production of documents and an award of attorney's fees. ECF No. 188. Plaintiff sought to compel responses to Plaintiff's Requests for Production ("RFP") (Set One) served on Defendants. *Id.* at 2. Defendants filed an opposition, ECF No. 190, and Plaintiff filed a reply, ECF No. 191. On May 15, 2025 and May 28, 2025, Magistrate Judge Burkhart held hearings on Plaintiff's Motion to Compel. ECF Nos. 207, 210, 213, 214. The Court granted Plaintiff's Motion to Compel on June 6, 2025, and ordered the following:

1. Brown shall permit Plaintiff (or his designated expert or representative) to inspect the electronic storage media for all agreed upon custodians, to include providing access to their Gmail accounts, at a mutually agreeable date and time within fourteen (14) days of the date of this Order.

2. Brown shall permit Plaintiff (or his designated expert or representative) to inspect and copy physical items and documents that may contain responsive material at a mutually agreeable date and time within fourteen (14) days of the date of this Order.

3. To the extent Defendants have possession, custody, or control of the cell phones used by the agreed upon custodians, they shall make those phones available for inspection by Plaintiff at a mutually agreeable date and time within fourteen (14) days of the date of this Order.

4. Brown shall file a declaration with the Court within ten (10) days of the date of this Order confirming that he has requested all responsive bank statements and credit card statements. Brown shall produce these statements to Plaintiff within seven (7) days of receipt of the statements.

22-CV-01164-GPC-JLB

5. Within fourteen (14) days of the date of this Order, Defendant Jet Agency Global, LLC shall produce all documents in its possession, custody, or control responsive to RFP No. 5,6 or allow Plaintiff (or his designated expert or representative) to inspect and copy the same at a mutually agreeable date and time. If no further documents exist, Defendant shall amend its response to state that a reasonable inquiry has been made, and no further responsive documents exist.

6. Within fourteen (14) days of the date of this Order, Defendant C3 Jets, LLC shall produce all documents in its possession, custody, or control responsive to RFP No. 197, or allow Plaintiff (or his designated expert or representative) to inspect and copy the same at a mutually agreeable date and time. If no further documents exist, Defendant shall amend its response to state that a reasonable inquiry has been made, and no further responsive documents exist.

7. Within fourteen (14) days of the date of this Order, Defendants shall produce all responsive documents withheld on the basis of privilege, except for those documents over which Stacy Brown asserts the marital communications privilege.

8. Within ten (10) days of the date of this Order, Defendants shall serve on Plaintiff signed copies of their interrogatories in compliance with Fed. R. Civ. P. 33.

9. Plaintiff shall file a declaration substantiating the reasonable fees incurred by his counsel in filing the reply and attending the two related hearings before the Court within ten (10) days of the date of this Order. Defendants may file any opposition challenging the reasonableness of the amount of attorney's fees within five (5) days of Plaintiff's filing of his declaration.

10. Within fourteen (14) days of the date of this Order, Defendants shall produce a privilege log of any communications as to which Stacy Brown is asserting marital communications privilege.

22-CV-01164-GPC-JLB

11. Failure to timely comply with any aspect of this Order may expose Defendants to the imposition of sanctions up to and including evidentiary and issue preclusion sanctions.

ECF No. 215 at 25–27.

After the initial 10-day timeframe for compliance set forth in the Motion to Compel Order passed, Plaintiff's counsel initiated the meet-and-confer process on June 17, 2025. ECF No. 217 at 4. During the meet-and-confer phone call, Defendants' counsel informed Plaintiff's counsel that "he was working on it, but made no promises," with the subsequent 14-day window for production eventually passing without any compliance from Defendants. *Id.* at 4-5 (citing ECF No. 217-1 ¶ 3).

Plaintiff filed the instant *Ex Parte* Motion on June 25, 2025. ECF No. 217. Pursuant to the Magistrate Judge's Chambers Rules, after service of an *ex parte* motion, opposing counsel has until 5:00 p.m. the next court day to file an opposition or to request an extension. J. Burkhardt's Civ. Chambers R. § VII. Defendants neither filed an opposition nor requested an extension. On August 7, 2025, the parties lodged with the Court pursuant to § V of Judge Burkhardt's Civil Chambers Rules a Joint Discovery Statement, improperly styled a "Joint Motion for Determination of Discovery Dispute." Due to the substantial overlap between the lodged document and the instant *Ex Parte* Motion, the Court advised the parties that it would address all the issues in the context of the motion. The Court provided an additional opportunity for briefing and directed the parties to address any issues not already included in the initial motion in the remaining briefing. ECF No. 223. Specifically, the Court ordered Defendants to file an opposition to the *Ex Parte* Motion by August 25, 2025 and Plaintiff to file a reply by September 2, 2025. ECF No. 223 at 2. Defendants again did not file an opposition. Plaintiff filed a Notice of No Reply Brief, informing the Court that it did not file a reply "because there [was] no opposition for Plaintiff to address." ECF No. 225 at 2.

22-CV-01164-GPC-JLB

In his *Ex Parte* Motion, Plaintiff represents that, with one exception, Defendants failed to comply with the Motion to Compel Order. ECF No. 217 at 2. However, a review of the subsequent Joint Discovery Statement revealed that Defendants produced some discovery subsequent to the filing of the *Ex Parte* Motion; thus, the *Ex Parte* Motion no longer accurately reflected the current status of Defendants' compliance or noncompliance with the Order. ECF No. 215. *See* ECF No. 226 at 1. The Court therefore ordered Plaintiff to supplement its *Ex Parte* Motion no later than October 3, 2025, "to reflect the aspects of the [Motion to Compel Order] with which Plaintiff maintains Defendants have still failed to comply," and ordered Defendants to file an opposition by October 10, 2025. *Id.* at 2. Plaintiff filed the Court-ordered supplement ("Supplement") on October 3, 2025. ECF No. 228.

In the Supplement, Plaintiff asserts that Defendants produced "a limited, mislabeled document-dump of compressed, partially corrupted ESI served without Bates labeling, load files/metadata, or the structured form required by Fed. R. Civ. P. 34(b)(2)(E)," consisting, in part, "of folders ('Profit & Loss,' 'Balance Sheets,' etc.) that are incongruent with their contents and cut off around April 10, 2024." ECF No. 228 at 3. Further, Plaintiff maintains that Brown failed to comply with directive 1 and that Defendants took no action to comply with directives 3, 7, and 10 of the Motion to Compel Order. *Id.* at 4–8. With respect to the remaining provisions in the order, Plaintiff represents the following:

**ECF No. 215 Order ¶2:** [Brown shall p]ermit Plaintiff (or his designated expert or representative) to inspect and copy physical items and documents that may contain responsive material.

**Produced**: Defendants offered an in-person, paper-only inspection at a private residence within the 14-day window.

22-CV-01164-GPC-JLB

**Deficiency**: On this record, no discrete violation of ¶2 is established. However, consistent with prior orders requiring that electronic production be delivered in parallel, ESI should be prioritized. A physical inspection should follow, rather than substitute for, completion of ESI production under Fed. R. Civ. P. 34(b)(2)(E), so that any on-site review is targeted, efficient, and facilitates organized collection rather than a burden-shifting paper exercise. The prior in-person invitation would have been congruent with the Court's directives had Defendants also complied with the ESI or cell phone inspection components; by electing to proceed only with an in-person limited paper inspection, Defendants rendered the visit largely untenable. Any Fed. R. Civ. P. 37 remedies for ESI noncompliance should guide the scope and logistics of any inspection under ¶2.

**Prejudice to Plaintiff:** Shifts burden to Plaintiff and is inferior to the ordered electronic production. Defendants ignored nearly every paragraph of the June 6, 2025 order, proffering only a 'hard-copy inspection[.'] This is classic burden shifting that is tangential to, and no substitute for, ordered electronic production under Rule 34(b)(2)(E). The Defendant entities operated on email, SMS texts, and cloud systems; paper records were highly limited and are valuable only in the context of full and complete ESI production as ordered by the Court. In light of Defendants' ongoing avoidance of ESI production, account inspection, and compliance, the probative value and reliability of any paper-only showing are suspect.

**ECF No. 215 Order ¶4:** Brown declaration confirming that he has requested all responsive bank statements. Brown shall produce these statements to Plaintiff.

**Produced:** No ¶4 declaration confirming issuer requests; no issuer-pulled bank or credit-card statements. Instead, Defendants produced a single personal Chase account (2017–2023) and selective and non-compliant consumer credit-card statements not tied to comprehensive issuer requests.

**Deficiency:** No issuer pulls; no confirmation of requests to all relevant issuers.

**Prejudice to Plaintiff:** Prevents tracing of revenues, distributions, and Federal Excise Tax ("FET") collections; invites selective curation.

**ECF No. 215 Order ¶5:** Jet Agency Global, LLC to produce all doc[uments] responsive to RFP 5 or allow inspection; else amend to state non-existence after reasonable inquiry.

**Produced:** No conforming production; any materials received are facially deficient.

**Deficiency:** Invoices omitted; no amended response stating non-existence after reasonable inquiry.

**Prejudice to Plaintiff:** Forecloses receivables and FET tracing; impairs damages computation.

**ECF No. 215 Order ¶6:** C3 Jets, LLC to produce all doc[uments] responsive to RFP 19 or allow inspection; else amend to state non-existence after reasonable inquiry.

**Produced:** No conforming production; any materials received are facially deficient.

**Deficiency:** Registers and general ledgers omitted; no amended response stating non-existence after reasonable inquiry.

**Prejudice to Plaintiff:** Blocks fund-flow and inter-company analysis; invites self-contradictions.

**ECF No. 215 Order ¶8:** Serve signed interrogatory answers.

**Produced:** None.

22-CV-01164-GPC-JLB

**Deficiency:** Defendants served unverified interrogatory answers, a nullity under Fed. R. Civ. P. 33(b)(3), (5).

**Prejudice to Plaintiff:** Presently unusable at trial; deprives Plaintiff of sworn admissions and fixed positions; forces litigation against a moving target and invites ambush via late verification; facilitates self-concealment by omission, prejudices due process by obscuring notice of positions and evidentiary bases, and veers toward de facto self-concealing misconduct.

*Id.* at 5-7.

Defendants once again filed no opposition.

On January 29, 2026, Magistrate Judge Jill L. Burkhart issued a Report and Recommendation ("R&R") that this Court initiate civil contempt proceedings and impose sanctions in the form of coercive per diem fines but not in the form of adverse inferences, issue preclusion, and entry of default judgment. ECF No. 236. Neither party filed an opposition to the R&R.

## LEGAL STANDARD

### I.   Standard of Review of Magistrate Judge's Report and Recommendation

In reviewing a magistrate judge's report and recommendation, a district court "must make a de novo determination of those portions of the report ... to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

Where a party fails to object, however, the court is not required to conduct "any review at all ... of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed."); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("statute makes it clear that the

district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise"); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, de novo review of a R&R is only required when an objection is made to the R&R") (citing *Reyna-Tapia*, 328 F.3d at 1121); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (interpreting Ninth Circuit's decision in Reyna–Tapia as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"). Here, no objection was filed.

## II.    Civil Contempt and Sanctions

Federal Rule of Civil Procedure 70(e) allows the Court to find a party in contempt for failure to comply with a court order. Fed. R. Civ. P. 70(e). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)). However, good faith actions based on reasonable interpretations of a court order are a defense to civil contempt. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir.2006)

In a civil contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and internal quotation marks omitted).

If a party has been found in civil contempt, the Court has discretion to impose sanctions. *United States v. United Mine Works of Am.*, 330 U.S. 258, 701, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *United States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010) ("[A]lthough the district court generally must impose the minimum sanction necessary to

13

secure compliance ... the district court retains discretion to establish appropriate sanctions[.]"). Within the scope of civil contempt, courts can impose sanctions that (1) "coerce compliance with a court order" or (2) are "meant to compensate the complainant for actual losses." See *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013) ("[A] sanction generally is civil if it coerces compliance with a court order or is a remedial sanction meant to compensate the complainant for actual losses."); *Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 114 (S.D. Cal. 2024) ("The purpose of civil sanctions is to ensure compliance with court orders and to compensate aggrieved parties for the sanctioned party's failure to comply with court rules and orders.").

**DISCUSSION**

**I.    Civil Contempt**

As previously stated, civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)). However, good faith actions based on reasonable interpretations of a court order are a defense to civil contempt. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir.2006).

Here, Defendants disobeyed "a specific and definite court order" by failing to substantially comply with all but one of the discovery directives set forth in the Motion to Compel Order. *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)). In the Supplement, Plaintiff concedes that Brown has comported, at least nominally, with the second discovery directive since the filing of the *Ex Parte* Motion. *See* ECF No. 228 at 5 ("On this record, no discrete violation of ¶2 is

established."). As for the remaining discovery directives, however, Plaintiff's Supplement indicates that Defendant produced only minimal discovery, subsequent to the filing of the *Ex Parte* Motion, and that Defendant's production was substantially incomplete and noncompliant. *See* ECF No. 228 at 4–8; *see also In re Heritage Bond Litig.*, 223 F.R.D. 527, 533 (C.D. Cal. 2004) (holding that plaintiffs demonstrated that defendants failed to comply with the court's order compelling the production of documents where it was "clear that the efforts by [ ] defendants to obtain relevant and significant documents for [ ] plaintiffs was minimal"). Thus, the burden shifts to Defendants to demonstrate a present inability to comply with the Order. *See United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999). However, Defendants failed to file an opposition to Plaintiff's *Ex Parte* Motion despite three opportunities to do so.

Moreover, "[t]o assess whether an alleged contemnor has taken 'every reasonable step' to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion." *See HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12CV2884-BAS (MDD), 2014 WL 12102169, at *1 (S.D. Cal. Dec. 16, 2014) (quoting *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856–57 (9th Cir. 1992)). On multiple occasions, Defendants agreed to supplement their responses in accordance with agreements reached at informal Discovery Conferences, only for Defendants to thereafter revoke or deny those agreements. *Id*. at 23-24. Defendants have also repeatedly failed to meet deadlines set by the Rules of Civil Procedure and by Court orders. *Id*. at 24. That pattern continues, as Defendants persist in disregarding the discovery directives despite the pendency of this instant motion. As highlighted by the R&R, court orders are not something Defendants can merely "work on" but "make no promises" to comply with. *See* ECF No. 217 at 4. They must be adhered to.

22-CV-01164-GPC-JLB

Given the above and that Defendants have not opposed the instant motion, have not opposed the Supplement, have not opposed the R&R, and have not established their burden of being unable to comply, the Court finds that Plaintiff has shown Defendants violated and continues to be in violation of the Court's discovery orders. Accordingly, the Court GRANTS the Plaintiff's motion for civil contempt and finds Defendants in contempt of the Motion to Compel Order.

**II.   Sanctions**

Rule 37 of the Federal Rules of Civil Procedure "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citation omitted); *see also Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 390 (N.D. Cal. 2012) ("As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37 the Defendants must have violated a Court Order"). Pursuant to Rule 37(b)(2)(A), "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders," which may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

22-CV-01164-GPC-JLB

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

There are two limitations to the application of a Rule 37(b)(2) sanction. "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (quoting Fed. R. Civ. P. 37(b)(2)).

Plaintiff requests that the Court: (i) impose a coercive fine of $1,000 per day until Defendants achieve compliance; (ii) strike Defendants' answers and enter default judgment against Defendants "on all claims and counterclaims," followed by an expedited "prove-up" to determine damages; (iii) impose sanctions in the form of adverse inferences and issue preclusion; (iv) order reimbursement of all reasonable attorney's fees and costs incurred since June 6, 2025, including those incurred preparing the instant *Ex Parte* Motion and as a result of Defendants' continued noncompliance; and (v) award Plaintiff "such further relief as the Court deems mandatory to preserve the orderly administration of justice." ECF No. 217 at 8–10.

### a. Coercive Fines

A coercive sanction is imposed to coerce further obedience with court order. *United States v. United Mine Works of Am.,* 330 U.S. 258, 701 (1947). A per diem fine imposed for each day a contemnor fails to comply with an affirmative court order "is fundamentally coercive and civil because, so long as 'the jural command is obeyed, the future, indefinite, daily fines are purged.'" *Coleman v. Newsom*, 131 F.4th 948, 963 (9th Cir. 2025) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)). "A court, in determining the amount and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy,

22-CV-01164-GPC-JLB

and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)). However, a coercive per diem fine cannot constitute a civil contempt sanction where the record shows that compliance with the court's order is impossible. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983) (reasoning that "the district court's order of contempt simply [could not] be sustained as a coercive civil contempt order," where "it was impossible for [the contemnor] to purge itself of contempt by returning documents which were in the sole possession of its counsel").

Here, all Defendants have failed to serve Plaintiff with signed interrogatory responses in violation of the Federal Rules of Civil Procedure and the Motion to Compel Order. Defendant Brown has failed to submit a declaration as ordered by the Court. All Defendants have failed to provide a privilege log as ordered by the Court. All Defendants have failed to produce discovery they had agreed upon in their discovery responses and in the pleadings and hearings related to the Motion to Compel.

In terms of directives 1 and 3 of the Motion to Compel Order, it is not clear whether Defendants have the current ability to comply. However, the burden had shifted to them to articulate reasons why compliance was not possible, and they declined to file any opposition to the *Ex Parte* Motion. Nonetheless, this Court will adopt the Magistrate Judge's recommendation and allow for Defendant to avoid civil coercive sanctions either by complying with directives 1 and 3 of the Order or by submitting declarations demonstrating impossibility.

Thus, the Court imposes the following daily civil coercive sanctions, to be paid to the Court, in the following amounts until the required actions are completed. The sanctions, further, are to be suspended for five days after this instant order is issued.

18

22-CV-01164-GPC-JLB

| Defendant | ¶ Number from Order/RFP Number | Required Action to End Sanctions | Daily Sanction Amount |
|---|---|---|---|
| **Brown** | ¶¶ 1, 3 RFP Nos. 28, 31, 32, 33, 37, 38, 39, 43, 53, 54, 58, 64, 65, 66, 67, 68, 69, 70 | Permit Plaintiff (or his designated expert or representative) to inspect the servers, email accounts, cell phones, and any other electronic storage media within Brown's possession, custody, or control for all agreed upon custodians AND file a declaration with the Court signed by Brown: (1) specifically identifying which electronic storage media he currently has possession, custody or control of and has made available to Plaintiff; (2) specifically identifying which electronic storage media he maintains he never had possession, custody or control of and the basis for that assertion; (3) specifically identifying any electronic media storage devices he previously had possession, custody or control of and no longer does; and (4) for each electronic storage media device identified under (3), setting forth why it is not available for inspection, when | $500 per day |

19

22-CV-01164-GPC-JLB

| | | | |
|---|---|---|---|
| | | and how it became unavailable for inspection, and what efforts were made, and when, to preserve the devices and their data for this litigation. | |
| **Brown** | ¶ 4 RFP Nos. 5, 7, 8, 9 | Produce all responsive bank and credit card statements to Plaintiff AND file a declaration with the Court confirming that he has requested all responsive bank statements and credit card statements from his financial institutions and that all responsive documents have been produced. All transactional information beyond that which is requested may be redacted. | $250 per day |
| **Jet Agency Global, LLC** | ¶ 5 RFP No. 5 | Produce all client invoices since December 13, 2016, AND file a declaration confirming that this has been completed. | $200 per day |
| **C3 Jets, LLC** | ¶ 6 RFP No. 19 | Produce all check registers and general ledgers since December 13, 2016 AND file a declaration confirming this has been completed. | $200 per day |
| **All Defendants** | ¶¶ 7, 10 | Produce a privilege log of any communications as to which Stacy Brown is asserting marital | $100 (joint and several) |

20

| | | communications privilege; produce all responsive documents withheld on the basis of privilege, except for those documents over which Stacy Brown asserts the marital communications privilege; AND file a declaration with the Court affirming that no responsive documents are being withheld on the basis of privilege outside of those on the Stacy Brown marital communications privilege log. | |
|---|---|---|---|
| **All Defendants** | ¶ 8 | Serve on Plaintiff signed copies of their interrogatories in compliance with Fed. R. Civ. P. 33 AND file a declaration with the Court confirming that it has been completed. | $100 per Defendant per day |
| **All Defendants except for Brown, because, for Brown, this action is already addressed in the first** | ¶ 3 | To the extent they have possession, custody, or control of the cell phones used by the agreed upon custodians, make those phones available for inspection by Plaintiff AND file a declaration with the Court: (1) specifically identifying which cell phones they currently have possession, custody or control of and have made available to Plaintiff; (2) specifically | $500 per Defendant per day |

21

| entry in this chart | | identifying which electronic cell phones they maintain they never had possession, custody or control of and the basis for that assertion; (3) specifically identifying any cell phones they previously had possession, custody or control of and no longer do; and (4) for each cell phone identified under (3), setting forth why it is not available for inspection, when and how it became unavailable for inspection, and what efforts were made, and when, to preserve the device and its data for this litigation. | |

Accordingly, the Court GRANTS the motion as to sanctions in the form of coercive per diem fines.

### b. Default Liability on All Claims and Counterclaims

The District Court has the discretion to strike pleadings, dismiss the action, or render default judgment in response to noncompliance with a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(iii, v-vi). However, "[w]here the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (quoting *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985)); *see also In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir.

22

1996) ("Dismissal, however, is authorized only in 'extreme circumstances' and only where the violation is 'due to willfulness, bad faith, or fault of the party.'").

In deciding whether to dismiss a case or render default judgment, a court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [other party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Int'l Corp.*, 913 F.2d at 1412.

As for the third factor, the moving party suffers prejudice where the actions of the non-moving party impair the "ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* "Delay alone has been held to be insufficient prejudice" but "[f]ailure to produce documents as ordered, ... is considered sufficient prejudice." *Id.*

Here, Plaintiff argues that Defendants' "non-compliance immediately deprives [him] of evidence needed to prove claims involving misappropriated assets, diverted tax proceedings, and self-dealing transactions that may expose unknown co-conspirators." ECF No. 217 at 7. Further, Plaintiff insists that "[t]he resulting prejudice is manifest," as "without the requested financial records and verified interrogatories, [he] cannot quantify damages or test the veracity of Defendants' anticipated defenses." *Id.*

However, in terms of the fifth factor, the Ninth Circuit has held that "[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. National Medical Enterprises*, Inc., 792 F.2d 906, 912 (9th Cir.1986). Reviewing courts

23

may consider whether a district court: (1) explicitly discussed the feasibility of less drastic sanctions; (2) implemented alternative methods of sanctioning before ordering dismissal; or (3) warned the non-moving party of the possibility of dismissal before ordering dismissal. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).

In this case, Magistrate Judge Burkhart expressly warned Defendants that failure to comply with the Motion to Compel Order could result in more serious sanctions, up to and including evidentiary and issue preclusion sanctions. ECF No. 215 at 27 ("Failure to timely comply with any aspect of this Order may expose Defendants to the imposition of sanctions up to and including evidentiary and issue preclusion sanctions."). Further, the Magistrate Judge previously ordered Defendants to pay, within 30 days, Plaintiff's reasonable attorneys' fees incurred in bringing the Motion to Compel, ECF No. 224, which Defendants have allegedly failed to do, ECF No. 230.

However, while Defendants' actions constitute interference with the processes of this case, the Court agrees with the Magistrate Judge and declines to invoke the drastic sanction of default as an appropriate sanction at this time. The per diem coercive fines should be utilized first. However, if Defendants continue their noncompliance, terminating sanctions may be warranted.

Accordingly, the Court DENIES the motion as to sanctions in the form of entry of default judgment.

### c. Adverse Influence and Issue Preclusion

As a sanction for failure to comply with a discovery order, a District Court may issue an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). However, Rule 37(b)(2) sanctions are limited by two considerations: the sanction must be "just" and must be "specifically related to the particular claim which was at issue in the order to provide discovery." *Ins. Corp. of*

24

*Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (citations and quotations omitted); *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373 (N.D. Cal. 2012).

Here, Plaintiff fails to specify which particular claims of the SAC's 19 causes of action are at issue in connection with his request for Rule 37(b)(2) sanctions in the form of adverse inferences and issue preclusion. *See* ECF No. 217 at 7 (contending generally that "Defendants' non-compliance immediately deprive[d] Plaintiff of evidence needed to prove claims involving misappropriated assets, diverted tax proceeds, and self-dealing transactions that may expose unknown co-conspirators"). Plaintiff also does not address whether the requested sanctions are specifically related to those claims.

Moreover, despite raising the specter of evidence destruction by Defendants, *see* ECF No. 217 at 10, Plaintiff fails to develop this potential argument with any specificity. *See*, *e.g.*, *Ramos v. Swatzell*, No. 12-CV-1089-BRO-SPX, 2017 WL 2857523 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. 12-CV-1089-BRO-SPX, 2017 WL 2841695 (C.D. Cal. June 30, 2017) (explaining that a party seeking an adverse inference instruction based on the destruction of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense). The record, at this time, does not establish that evidence has been destroyed.

Accordingly, the Court is not persuaded that the imposition of adverse inference instructions and issue preclusion are the appropriate sanctions at this time. The Court, thus, DENIES the motion as to sanctions in the form of adverse inferences and issue preclusion.

/ / /

25

22-CV-01164-GPC-JLB

## CONCLUSION

Based on the above, the Court ADOPTS the Report and Recommendation, GRANTS IN PART the motion as to civil contempt and as to sanctions in the form of coercive per diem fines, and DENIES IN PART the motion as sanctions in the form of adverse inferences, issue preclusion, and entry of default judgment.

**IT IS SO ORDERED.**

Dated: March 9, 2026

Hon. Gonzalo P. Curiel
United States District Judge

22-CV-01164-GPC-JLB